UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LILLIAN ROBERTS as Executive Director of District
Council 37, AFSCME, AFL-CIO, DISTRICT COUNCIL 37,
AFSCME, AFL-CIO, DENNIS IFILL, as President of the
Rent Regulation Services Unit Employees, Local 1359,
District Council 37, AFSCME, AFL-CIO, THE RENT
REGULATION SERVICES UNIT EMPLOYEES, LOCAL
1359, CLIFFORD KOPPELMAN, as President of the Court,
County and Department of Probation Employees Unit,
Local 1070, THE COURT, COUNTY, AND DEPARTMENT
OF PROBATION EMPLOYEES UNIT, LOCAL 1070 and
MILDRED BROWN, SHANOMAE WILTSHIRE, NORMA
GALLOWAY, CHARMAINE HARDAWAY, MAURICE
BOUYEA, STEVEN SCHWARTZ, on behalf of themselves
and all others similarly situated,

Plaintiffs,

-against-

THE STATE OF NEW YORK, ANDREW M. CUOMO, as
Governor of the State of New York, NEW YORK STATE
CIVIL SERVICE DEPARTMENT, PATRICIA A. HITE, as
Acting Commissioner, New York State Civil Service
Department, NEW YORK STATE CIVIL SERVICE
COMMISSION, CAROLINE W. AHL and J. DENNIS
HANRAHAN, as Commissioners of the New York State
Civil Service Commission, ROBERT L. MEGNA, as Director
of the New York State Division of the Budget, and THOMAS
P. DiNAPOLI, as Comptroller of the State of New York, and
NEW YORK STATE AND LOCAL RETIREMENT
SYSTEM,

Defendants.

**COMPLAINT**

**CLASS ACTION**

Civil Case No.:

1:12-CV-0046(MAD/DRH)

Plaintiffs, on behalf of themselves and all other similarly situated, by their attorneys, Mary J.

O'Connell, Esq. (Erica C. Gray-Nelson, of Counsel), as and for their Complaint respectfully set forth

as follows:

## NATURE OF ACTION

1.      State defendants violated plaintiffs' constitutional rights by impairing plaintiffs' contract rights as provided by their collective bargaining agreements ("CBAs") and the New York Civil Service Law when they unilaterally increased the contribution rates that plaintiffs-retirees must pay for the State's health insurance plan, consequently reducing plaintiffs' health insurance benefits.

2.      This is a class action for declaratory and injunctive relief pursuant to 28 USC §§ 2201 and 2202, and monetary damages, to redress the State defendants' deprivation of plaintiffs' rights secured pursuant to Article I, §10, the Contract Clause of the United States Constitution, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983, Article I, §6 of the New York State Constitution, for breach of contract resulting from the State defendants' unilateral change to the contribution rates that retired State employees are required to pay for their health insurance impairing their rights under the CBAs and New York Civil Service Law §167.

3.      Plaintiffs further seek an order declaring Chapter 491 of the Laws of 2011 amending Civil Service Law §167(8) unconstitutional, as applied, and enjoining the State defendants' implementation thereof, to the extent that said law and any regulations adopted thereunder impermissibly impair the obligation of contract of retired State employees, by increasing the contribution rates that such retirees are required to pay for health insurance benefits in retirement.

4.      Plaintiffs also seek an order declaring that State defendants' actions in administratively approving, extending and implementing increases in the contribution rates that retired State employees are required to pay for health insurance benefits in retirement are *ultra vires*, without any lawful authority, without authority under NY Civil Service Law §167, null and void.

2

5.      Finally, plaintiffs seek a judgment pursuant to Article 78 of the New York Civil Practice Law and Rules vacating and annulling the State defendants' administrative and *ultra vires* actions in administratively approving, extending and implementing increases in the contribution rates that retired State employees are required to pay for health insurance benefits in retirement, without any lawful authority, unauthorized pursuant to NY Civil Service Law §167, arbitrary and capricious, and which constitute an abuse of discretion.

## JURISDICTION

6.      This Court has original jurisdiction of this action pursuant to 28 USC §§1331 and 1343.

7.      This Court has supplemental jurisdiction to entertain plaintiffs' State law claims pursuant to 28 USC § 1367.

## VENUE

8.      Pursuant to 28 USC §1391(b), venue is proper in the United States District Court for the Northern District of New York because defendants' offices are located in Albany, New York and the acts complained of also occurred in Albany, New York.

## PARTIES

9.      Plaintiff Lillian Roberts, at all times pertinent to this action was and is the duly elected Executive Director and Chief Executive Officer of District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO (hereinafter "DC 37"), an amalgam of 55 local unions representing approximately 115,000 employees in the various agencies, authorities, boards and corporations in the City of New York and some 300 Executive Branch employees of the State of

3

New York in the Rent Regulation Services Unit ("RRSU") and approximately 1,687 members of the Court, County and Department of Probation Employees Unit ("Court Unit").

10.     Plaintiff DISTRICT COUNCIL 37, AFSCME, AFL-CIO ("DC 37"), is a not-for-profit corporation duly organized and existing under the laws of the State of New York, having its principal place of business at 125 Barclay Street, New York, New York, and is an employee organization under the Public Employees' Fair Employment Act, New York Civil Service Law Article 14 ("Taylor Law"). DC 37 is the duly recognized collective bargaining representative for RRSU and Court Unit employees, among others, who receive health benefits through the New York State Health Insurance Program ("NYSHIP").

11.     Plaintiff Dennis Ifill is the duly elected President of the Local 1359, is an active employee of the State of New York, a member of RRSU, is enrolled in and receiving dependent coverage health benefits through the NYSHIP, and is a vested member in the New York State Employees' Retirement System, sues herein pursuant to and within the scope of his authority as an officer of Local 1359, which represents approximately 302 bargaining unit members employed with the New York State Division of Housing and Community Renewal who receive benefits through NYSHIP. There are approximately 229 retired members of RRSU who are enrolled in and receive health benefits through NYSHIP.

12.     Plaintiff Clifford Koppelman is the duly elected President of Local 1070, the Court, County and Department of Probation Employees Unit, which represents approximately 1,687 members including 1,238 employees of the New York Unified Court System. There are

4

approximately 868 retired members of the Court Unit who receive health insurance benefits through the NYSHIP.

13.      Plaintiff Mildred Brown resides in Kings County, State of New York, and was a State employee for thirty-four (34) years. She was covered by the RRSU collective bargaining unit and held the title of Senior Clerk at the time of her retirement on July 28, 2008. She retired pursuant to the provisions of the New York Retirement and Social Security Law and is enrolled in and receiving dependent coverage through NYSHIP. From the date of her retirement until October 1, 2011, plaintiff Brown contributed twenty-five percent (25%) toward the cost of her health insurance which was unilaterally increased to twenty-seven percent (27%), effective October 1, 2011. In addition, Plaintiff's earned and remaining sick leave credits, which are being applied during her retirement to reduce her health insurance premium, have been reduced to pay a higher contribution rate for the NYSHIP.

14.      Plaintiff Shanomae Wiltshire resides in Kings County, State of New York and was a State employee for approximately twenty-six (26) years. She was covered by the RRSU collective bargaining unit and held the title of Rent Examiner I at the time of her retirement in December 16, 2011. She retired pursuant to the provisions of the New York Retirement and Social Security Law and is enrolled in and receiving individual coverage through NYSHIP. In addition, Plaintiff's earned and remaining sick leave credits to be applied during her retirement will be reduced to pay a higher contribution rate for the health insurance premium.

15.      Plaintiff Norma Galloway resides in New York County, State of New York and was a State employee for approximately thirty-two (32) years. She was covered by the RRSU collective

bargaining unit and held the title of keyboard specialist at the time of her retirement in April 30, 2009.  She retired pursuant to the provisions of the New York Retirement and Social Security Law and is enrolled in and receiving individual coverage through NYSHIP.  From the date of her retirement until October 1, 2011, plaintiff Galloway contributed ten percent (10%) toward the cost of her health insurance which was unilaterally increased to twelve percent (12%), effective October 1, 2011.  In addition, Plaintiff's earned and remaining sick leave credits, which are being applied during her retirement to reduce her health insurance premium, have been reduced to pay a higher contribution rate for the NYSHIP.

16.     Plaintiff Charmaine Hardaway resides in Kings County, State of New York and was a State employee for thirty-two (32) years.  She was covered by the RRSU collective bargaining agreement and held the title of Rent Examiner I at the time of her retirement on June 27, 2009.  She retired pursuant to the provisions of the New York Retirement and Social Security Law and is enrolled in and is receiving individual coverage through NYSHIP.  From the date of her retirement until October 1, 2011, plaintiff Hardaway contributed ten percent (10%) towards the cost of her health insurance which was unilaterally increased to twelve percent (12%), effective October 1, 2011.  In addition, Plaintiff's earned and remaining sick leave credits, which are being applied during her retirement to reduce her health insurance premium, have been reduced to pay a higher contribution rate for the NYSHIP.

17.     Plaintiff Maurice Bouyea resides in Queens County, State of New York and was a State employee for approximately thirty-three (33) years.  He was covered by the RRSU collective bargaining unit and held the title of Rent Examiner II at the time of his retirement in September 29,

6

2010. He retired pursuant to the provisions of the New York Retirement and Social Security Law and is enrolled in and receiving dependent coverage through NYSHIP. From the date of his retirement until October 1, 2011, plaintiff Bouyea contributed twenty-five percent (25%) toward the cost of his health insurance which was unilaterally increased to twenty-seven percent (27%), effective October 1, 2011. In addition, Plaintiff's earned and remaining sick leave credits, which are being applied during his retirement to reduce his health insurance premium, have been reduced to pay a higher contribution rate for the NYSHIP.

18.     Plaintiff Steven Schwartz resides in Bronx County, State of New York and was a State employee for approximately thirty-four (34) years. He was covered by the Court Unit collective bargaining agreement and held the title of Foreman of Laborers at the time of his retirement on July 1, 2011. He retired pursuant to the provisions of the New York Retirement and Social Security Law and is enrolled in and receiving individual coverage through NYSHIP. From the date of his retirement until October 1, 2011, plaintiff Schwartz contributed 10 percent toward the cost of his health insurance which was unilaterally increased to 12 percent, effective October 1, 2011. In addition, Plaintiff's earned and remaining sick leave credits, which are being applied during his retirement to reduce his health insurance premium, have been reduced to pay a higher contribution rate for the NYSHIP.

19.     Plaintiffs Brown, Wiltshire, Galloway, Hardaway, Bouyea and Schwartz and all others similarly situated, are DC 37 retirees who were covered by collective bargaining agreements between the State and DC 37, which guaranteed the continuation their health insurance benefits by contract and as required by New York Civil Service Law §167.

7

20.     Plaintiffs Brown, Wiltshire, Galloway, Hardaway, Bouyea and Schwartz and all others similarly situated were retroactively subjected to an increased share of the cost for health insurance in their retirement as a result of the State defendants' unilateral imposition of a reduction in the State's contribution rate for retirees, effective October 1, 2011.

21.     Defendant State of New York is and was the employer of current and former bargaining unit members represented by RRSU and the Court Unit, and provides retiree health insurance to State retirees including the plaintiffs-retirees herein and the class they represent.

22.     Defendant Andrew M. Cuomo is the Governor of the State of New York, and in such capacity is the chief executive officer of the State, with all the powers and duties set forth in the New York State Constitution, Executive Law, and as otherwise provided by law, statutes, rules and regulations.

23.     Upon information and belief, defendant Cuomo approved and directed the implementation of increased rates of contribution for health insurance benefits for retired State employees, effective October 1, 2011.

24.     Defendant Civil Service Department is a department within the Executive Branch of New York State government, with all the powers and duties set forth in the Civil Service Law and as otherwise prescribed by law, statutes, rules and regulations.

25.     Upon information and belief, defendant Civil Service Department adopted and implemented higher contribution rates for health insurance benefits for retired State employees, thereby, reducing their health insurance benefits, effective October 1, 2011.

8

26.     Defendant Civil Service Commission is a body within the Executive Branch of the New York State government, with all the powers and duties set forth in the Civil Service Law and as otherwise prescribed by law, statutes, rules and regulations.

27.     Upon information and belief, the office of President of the Civil Service Commission is vacant.

28.     Upon information and belief, the office of the Commissioner of the Civil Service Department is vacant.

29.     Defendant Patricia A. Hite is the Acting Commissioner of the Civil Service Department, with all the powers and duties set forth in the Civil Service Law and as otherwise prescribed by law, statutes, rules and regulations.

30.     Upon information and belief, defendant Hite approved and imposed without legal authority higher contribution rates for health insurance benefits for retired State employees, thereby reducing their health insurance benefits, effective October 1, 2011, at the direction of defendant Governor or his staff.

31.     Upon information and belief, defendant Hite has not attended or voted in an official capacity as Commission President or Acting President at any public meeting of the Commission.

32.     Defendants Caroline W. Ahl and J. Dennis Hanrahan together constitute the Civil Service Commission, with all the powers and duties set forth in the Civil Service Law and as otherwise prescribed by law, statutes, rules and regulations.

9

33.     Defendant Robert L. Megna is the duly appointed Director of the New York State Division of the Budget, with all of the powers and duties set forth in the Executive Law, Civil Service Law, and as otherwise prescribed by law, statutes, rules and regulations.

34.     Upon information and belief, defendant Megna approved the administrative increase in contribution rates for the health insurance plan for retired State employees, effective October 1, 2011, at the direction of defendant Governor or his staff.

35.     Defendant Thomas P. DiNapoli, as Comptroller of the State of New York, is the head of the Office of State Comptroller and the Department of Audit and Control, which is a department within the Executive Branch of the New York State Government, and as such, he is a necessary party because he is responsible for the administration of the New York State and Local Retirement System, including the monthly payment of pensions to eligible State retirees in the Employees' Retirement System, less any deductions for the payment of retiree health insurance premium costs.

36.     Defendant New York State and Local Retirement System is a necessary party because it is responsible for processing and making monthly pension payments to eligible retired State employees in the Employees' Retirement System, less any deductions for the payment of retiree health insurance premium costs.

### THE CLASS

37.     The Class represented by plaintiffs in this action consists of all living retired employees of the State of New York, who retired after January 1, 1983, who had been members represented by RRSU and the Court Unit at the time of their retirement, and all spouses and

dependents of such retirees where such retirees' spouses and dependents are receiving health benefits through NYSHIP, and are entitled to a continuation of such health benefits as hereafter described.

38.     The persons in the Class are so numerous that joinder of all members is impractical, and the disposition of their claims in a Class Action rather than individual actions will benefit the parties and the Court.

39.     Plaintiffs bring this Class Action, on their behalf and on behalf of all others similarly situated, under the provisions of Rule 23 of the Federal Rules of Civil Procedure for a declaration by this Court of the rights and other legal relations of the plaintiffs and the defendants under the United States Constitution, Article I, § 10; for a declaration of the rights of plaintiffs created by reason of the collective bargaining agreements hereafter described; for a declaration that the defendants are obligated to maintain certain health insurance contribution rates equivalent to those in effect at the time each plaintiff-retiree retired by reason of said agreements; for a declaration that a retiree's rights are dictated by the agreement in effect at the time of said retirement; for a declaration that each agreement constitutes a binding and enforceable contract between plaintiffs-retirees and defendant State of New York; for a declaration that the defendants have breached their obligations to each plaintiff-retiree pursuant to each respective agreement; for a declaration that defendants acted outside the scope of their authority and in an arbitrary and capricious manner, in violation of law, when defendants implemented the increase in retiree contribution rates effective October 1, 2011, and that the Court order and direct defendants to account to and pay each plaintiff-retiree for all additional outlays and expenditures made by such plaintiff-retiree because of the changes in health insurance instituted by the defendants.

11

40.     There are common questions of law and fact in the action that relate to and effect the rights of each member of the class, namely whether: (a) the passage and implementation of Chapter 491 of the Laws of 2011 substantially impaired the contractual rights of plaintiffs without serving a necessary or important public purpose; (b) all members of the class had received health insurance coverage from the State while employed by the State pursuant to a certain collective bargaining agreement between the State and RRSU; (c) when an employee retires under such an agreement, that agreement continues to dictate the rights of the retiree even after expiration of that agreement; (d) said health insurance coverage is a vested right of each retiree pursuant to said agreement; (e) said health insurance is deferred compensation for services faithfully rendered to the State by the retirees; (f) the State has breached said agreement by increasing the contribution rates for plaintiffs-retirees effective October 1, 2011; (g) defendants violated both the United States Constitution and New York State law in increasing the contribution rates of plaintiffs-retirees and the class they represent; and (h) that the defendants acted outside the scope of their authority and in an arbitrary and capricious manner, in violation of law, when defendants implemented the increase in retiree contribution rates effective October 1, 2011.

41.     The relief sought is common to the entire class.

42.     The claims of the named plaintiffs are typical of the claims of the Class in that the claims of all members of the class, including plaintiffs, depend on the showing of the unconstitutional, unilateral, improper acts of the defendants in altering vested benefits and rights, giving rise to the right of plaintiffs to the relief sought herein.

43.     Plaintiffs will fairly and adequately represent and protect the interests of the Class. There is no conflict as between any individually named plaintiff and other members of the class with respect to this action, or with respect to the claims for the relief set forth herein. Plaintiffs are committed to the vigorous prosecution of this action.

44.     This action is properly maintained as a class action in as much as the questions of law and fact common to the members of the Class predominate over any questions affecting only individual members and a Class Action is superior to other available methods for the fair and efficient adjudication of the controversy. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent adjudications with respect to individual class members which would establish incompatible standards of conduct for defendants, or adjudications regarding individual members of the Class would as a practical matter be dispositive of the interests of the other members who are not parties, or would substantially impair or impede their ability to protect their interests.

45.     State defendants have acted on grounds that apply generally to the Class, so final injunctive relief or corresponding declaratory relief is appropriate with respect to the Class as a whole.

46.     A Class Action is the best available method for the fair and efficient adjudication of this action. Since the similar damages suffered by individual class members, while not inconsequential, may initially be relatively small in certain instances, the expense and burden of individual litigation make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be required to be brought by each

individual member of the Class, the resulting multiplicity of lawsuits is therefore, the best method to assure that the wrongful conduct alleged herein is remedied, and that there is a fair, efficient, and full adjudication of this action.   Plaintiffs anticipate no undue difficulty in the management of this litigation as a Class Action.  The members of the Class are reasonably ascertainable through typical methods of Class Action practice and procedure and through the State defendants' own records.

## STATEMENT OF FACTS

### RRSU and Court Unit Employees' Contract Rights

47. Article 14 of the New York Civil Service Law ("the Taylor Law") governs collective bargaining agreements with the State public employees and authorizes DC 37 to collectively negotiate agreements with the State on behalf of RRSU and the Court Unit employees.

48. Pursuant to the Taylor Law, DC 37, on behalf of RRSU and the Court Unit, has consistently negotiated such agreements with the State and, as a result, has executed collective bargaining agreements with the State.

49. From 1984 to 2011 there have been eight (8) consecutive contracts between DC 37 and the State on behalf of RRSU.

50. The durations of the 8 RRSU contracts have been: 1984-1985, 1985-1988, 1988-1991, 1991-1995, 1995-1999, 1999-2003, 2003-2007, and 2007-2011.

51. For the past twenty-seven (27) years, RRSU current members and members who retired after January 1, 1983 paid a contribution rate of ten percent (10%) for individual coverage and twenty-five (25%) for dependent coverage, as per contract and the laws/regulations implementing those contracts, towards the cost for their health insurance.

14

52.     Each CBA between RRSU and the State since the 1984-1985 agreement contains the

following language in Article 9, in relevant part.

§9.1  Continuation
The State shall continue to provide all the forms and extent of
coverage as defined by the contracts in force on April 1, 2007
with the State's health insurance carriers unless specifically
modified or replaced pursuant to this Agreement.

§9.2(n) Eligibility
Effective January 1, 1992, an employee who is eligible to
continue health insurance coverage upon retirement and who
is entitled to sick leave credit to be used to defray any
employee contribution toward the cost of the premium, may
elect an alternative method of applying the basic monthly
value of the sick leave credit. Employees selecting the basic
sick leave credit may elect to apply up to 100 percent of the
calculated basic monthly value of the credit toward defraying
the required contribution to the monthly premium *during their
own lifetime.* If employees who elect that method predecease
their eligible covered dependents, the dependents may, if
eligible, continue to be covered, but must pay the applicable
dependent survivor share of the premium. Employees
selecting the alternative method may elect to apply only up to
70 percent of the calculated basic monthly value of the credit
toward the monthly premium *during their own lifetime.* Upon
the death of the employee, however, any eligible surviving
dependents may also apply up to 70 percent of the basic
monthly value of the sick leave credit toward the dependent
survivor share of the monthly premium for the duration of the
dependents' eligibility. The State has the right to make
*prospective* changes to the percentage of credit to be available
under this alternative method for future retirees as required to
maintain the cost neutrality of this feature of the plan. The
selection of the method of sick leave credit application must
be made at the time of retirement, and is irrevocable. In the
absence of a selection by the employee, the basic method shall
be applied. (Emphasis supplied).

15

§9.4  Empire Plan Premium
The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage toward hospital/medical/mental health and substance abuse/prescription drug components provided under the Empire Plan.

53.     From 1982 to 2011 there have been eight (8) consecutive contracts between DC 37 and the State on behalf of the Court Unit.

54.     The durations of the eight (8) Court Unit contracts have been: 1982-1985, 1985-1988, 1988-1991, 1991-1995, 1995-1999, 1999-2003, 2003-2007, and 2007-2011.

55.     The Court Unit agreements provide that:

§8.1  Health Insurance
The State shall continue to provide health and prescription drug benefits administered by the Department of Civil Service. Employees enrolled in such plans receive health and prescription drug benefits to the same extent, at the same contribution level and in the same form with the same co-payment structure that applies to the majority of represented Executive Branch employees covered by such plans.

56.     From January 1, 1983 until October 1, 2011, State employees who were members of RRSU and the Court Unit and who retired between January 1, 1983 and October 1, 2011 contributed ten percent (10%) towards the cost of individual coverage and 25 percent (25%) toward the cost of dependent coverage for health insurance in retirement as described in the above contracts.

**Statutory Health Benefits for State and Retired State Employees**

57.     Article XI of the New York Civil Service Law, entitled "Health Benefits for State and Retired State Employees", directs the President of the New York Civil Service Commission ("Commission President") to establish a health benefit plan for State employees and retired State employees including, but not limited to, health insurance, to provide for group hospitalization,

16

surgical and medical insurance against the financial costs of hospitalization, surgery, medical treatment and care (Civil Service Law §§160-170).

58.    The Commission President established the NYSHIP as the statewide health benefit plan on behalf of eligible State employees and retired State employees pursuant to Article XI of the Civil Service Law.

59.    Pursuant to Civil Service Law §167(1), the State is required to contribute a percentage of the cost of the health insurance premium or subscription charges for the coverage of State employees and retired State employees, and their dependents, enrolled in NYSHIP or an optional benefit plan under the State contribution rate.

60.    To the extent that the State contribution rate does not cover the full cost of health insurance premium or subscription costs, Civil Service Law §167(3) provides that covered State employees and retired State employees are required to pay the remainder by salary deduction or retirement allowance deduction, respectively.

61.    Chapter 14 of the Laws of 1983 was a Governor's Program bill introduced to implement contract provisions negotiated through collective bargaining between the State and various public employee unions regarding health insurance benefits and costs, including an agreed upon reduction of the State's contribution rate for the premium or subscription charges for employees enrolled in the NYSHIP, while continuing the State's full contribution for retired State employees who retired prior to January 1, 1983.

62.    The Governor's Memorandum in Support of Chapter 14 of the Laws of 1983 stated that the purpose of the statute was to "effectuate provisions of various memoranda of understanding

17

executed pursuant to the collectively-negotiated agreements between the State and the employee organizations ... dealing with health insurance."

63.     Prior to the enactment of Chapter 14 of the Laws of 1983, the State was required to pay the full cost of premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP.

64.     Chapter 14 of the Laws of 1983 amended Civil Service Law §167(1) to limit the amount that the State was required to pay towards the cost of premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP, by providing that the State was required to contribute nine-tenths (90%) of the cost of such premium or subscription charges for the individual coverage of State employees and retired State employees retiring on or after January 1, 1983.

65.     Civil Service Law 167(1)(a) provides, in relevant part, as follows:

> The full cost of premium or subscription charges for the coverage of retired state employees who are enrolled in the statewide and the supplementary health benefit plans established pursuant to this article and who retired prior to January first, nineteen hundred eighty-three shall be paid by the state. Nine-tenths of the cost of the premium or subscription charges for the coverage of state employees and retired state employees retiring on or after January first, nineteen hundred eighty-three who are enrolled in the statewide and supplementary health benefit plans shall be paid by the state. Three-quarters of the cost of premium or subscription charges for the coverage of dependents of such state employees and retired state employees shall be paid by the state.

66.     Chapter 14 of the Laws of 1983 as amended provides that the State will continue to pay the full cost of premium or subscription charges for the coverage of retired State employees enrolled in the NYSHIP who retired prior to January 1, 1983.

18

67.     Chapter 14 of the Laws of 1983 did not amend the State's contribution rate of three-quarters (75%) of the cost of premium or subscription charges for dependent coverage for State employees and retired State employees enrolled in the NYSHIP.

68.     The New York Legislature enacted Chapter 491 of the Laws of 2011 ("Chapter 491") on August 17, 2011, whereupon it was deemed to have been in full force and effect on and after April 2, 2011, to "amend the civil service law and the state finance law, in relation to compensation and other terms and conditions of employment of certain state officers and employees . . . to implement agreements between the state and an employee organization . . . ." (A copy of the legislation is attached hereto as Exhibit A).

69.     Prior to the enactment of Chapter 491, Civil Service Law §167(8) read as follows:

> Notwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible employees covered by such agreement may be increased pursuant to the terms of such agreement and for a duration provided by such agreement and pursuant to rules and regulations as may be established by the president. Such increase in state cost shall only apply during the period of eligibility provided by such agreement and *shall not be applied during retirement.* (Emphasis added).

70.     Chapter 491 amended Civil Service Law §167(8) as follows:

> Notwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible employees covered by such agreement may be **modified** pursuant to the terms of such agreement. **The president, with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement referenced above and shall**

19

**promulgate the necessary rules or regulations to implement this
provision.** (Emphasis in original).

71.     The enactment of Chapter 491 of the Laws of 2011 did not amend or repeal Civil

Service Law §167(1)(a), which provides that the State contribution rate towards the cost of health

insurance premium or subscription charges for the coverage of State employees and retired State

employees, and their dependents, enrolled in the NYSHIP or an optional benefit plan was one

hundred percent (100%) for individual coverage for retired State employees who retired before

January 1, 1983; ninety percent (90%) for individual coverage for State employees and retired State

employees who retired on or after January 1, 1983; and, seventy-five percent (75%) for dependent

coverage for State employees and retired State employees.

72.     There have been no new agreements executed between the State and DC 37 on behalf

of RRSU and the Court Unit subsequent to the 2007-2011 Agreement, which expired on March 31,

2011 but which remains in effect until a new agreement is reached.  While the Court Unit may be

bound by certain terms negotiated between the Civil Service Employees Association ("CSEA")

union, pursuant to its contract, RRSU is not bound by CSEA's agreement with the State.

73.     Therefore, Article 9 of RRSU's most recent CBA and in effect since April 1, 2007,

contractually obligates the State to continue to provide health insurance benefits under the NYSHIP,

to State employees who are RRSU members, including the continuation of the State contribution

rates set forth in paragraphs 64, 65, 67 and 71 above, until a successor collective bargaining

agreement specifically modifies or replaces such terms.

74.     The terms of Article 9 of RRSU's eight CBAs contractually obligate the State to

continue to provide health insurance benefits under the NYSHIP, including the continuation of the

20

State contribution rates set forth in paragraphs 64, 65, 67 and 71 above, to retired State employees who were former RRSU members and retired while said terms were in effect.

75.     With regard to the retired members of the Court Unit, the contribution rates set forth in paragraphs 64, 65, 67 and 71 are applicable as to them pursuant to Civil Service Law 167(1) (a) and pursuant to the agreements in effect upon their retirement.

76.     Even if, on behalf of members of the RRSU and the Court Unit, DC 37 had negotiated new agreements with the State to modify the contribution rates that members pay for the State's health insurance plan, DC 37 was not authorized to represent nor to bargain on behalf of former members who were already retired and were no longer members of RRSU or the Court Unit.

77.     The Taylor Law authorizes Plaintiff DC 37 to negotiate on behalf of the members of RRSU and the Court Unit terms and conditions of employment including *future* retirement health insurance benefits with defendant State.

### Unilateral Implementation of Higher
### Contribution Rates for 1983-2011 Retirees

78.     As previously noted, prior to the enactment of Chapter 491, Civil Service Law §167(8) provided, in relevant part, that the State cost of premium or subscription charges for employees may only be increased pursuant to the terms of a collective bargaining agreement; however, the statute further stated that such increase "shall not be applied during retirement."

79.     The amendment to Civil Service Law §167(8) by Chapter 491, states that "where and to the extent that an agreement between the state and an employee organization ... so provides" the contribution rates charged to "employees" may be "modified" pursuant to the terms of such agreement.

80.    With respect to retiree contribution rates, Chapter 491 further states: "The president [of the Civil Service Commission], with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for … retirees not subject to an agreement … and shall promulgate the necessary rules or regulations to implement this provision."

81.    However, Civil Service Law §167(1)(a) sets the levels of State contribution rates for retirees who retired after January 1, 1983 at ninety percent for individual coverage and seventy-five percent for dependent coverage, leaving the rates at ten percent for retirees with individual coverage and twenty-five percent for retirees with dependent coverage.

82.    Civil Service Law § 167(1)(a) further provides that retirees who retired before January 1, 1983 shall not contribute to the cost of premiums for individual coverage.

83.    At no time did the State Legislature amend Civil Service Law §167(1)(a) to raise the contribution rates for retiree health insurance above ten percent for individual and twenty-five percent for dependent coverage.

84.    At no time have the State defendants or the State legislature issued a declaration or any other kind of finding stating that it is necessary to raise the contribution rates that retirees contribute toward the cost of their health insurance to serve an important state purpose.

85.    Upon information and belief, raising the contribution rates for retirees was not part of the 2011-2012 State budget.

86.    Upon information and belief, defendant Hite has not been nominated by the Governor, has not been confirmed by the Senate and has not filed an oath of office as Commissioner of the Civil Service Department or President of the Civil Service Commission.

22

87.     Upon information and belief, defendant Hite, in her capacity as "Acting President" of the Civil Service Commission, has not attended or voted at any official meeting of the Civil Service Commission.

88.     Notwithstanding the failure of State defendants to properly appoint defendant Hite to these offices, defendant Hite sent a letter to defendant Budget Director Megna, dated September 21, 2011, purporting to increase the premium contribution rates plaintiffs-retirees and the class they represent pay from ten percent to twelve percent for individual coverage and from twenty-five percent to twenty-seven percent for dependent coverage.  (A copy of defendant Hite's letter is attached hereto as Exhibit B).

89.     Defendant Megna countersigned the September 21, 2011 Hite letter on September 22, 2011, indicating his agreement with the increased rates.  See Exhibit B.

90.     On or about September 27, 2011, State defendants approved and filed "emergency regulations." 4 NYCRR §§73.3(b) and 73.12, to implement the aforesaid increases in retiree contribution rates effective October 1, 2011.  (A copy of the "emergency regulations" is attached hereto as Exhibit C).

91.     In certifying the regulations on September 27, 2011 that increased the retiree contribution rates effective October 1, 2011, defendant Hite stated claimed in her written certification that she was implementing "the terms of a collective bargaining agreement".

92      However, contrary to defendant Hite's statement in her September 27, 2011 certification, there was no contract between RRSU and the State providing for an increase in retiree rates.

23

93.   As of September 27, 2011, the only contracts in existence between DC 37 and the State covering RRSU and Court Unit members were the 2007-2011 Agreements, and since no successor agreements have been negotiated, the 2007-2011 Agreements remain in effect pursuant the Taylor Law.

94.   The RRSU contract clearly provides that the State is obligated to pay 90 percent for individual coverage and 75 percent for dependent coverage.

95.   On October 1, 2011, State defendants implemented new retiree rates, which resulted in a two percent increase in the contribution rates for individual coverage, from 10 percent to 12 percent, and an increase from 25 percent to 27 percent for dependent coverage.

96.   The effect of this change in the retiree contribution rate was to require plaintiffs-retirees and the class they represent to pay more for their health insurance than they would have paid under the provisions of the contracts in effect on the dates of each plaintiff-retiree's retirement.

**Premature Announcement of Rate Change**

97.   On September 1, 2011, the Civil Service Department sent a mass mailing of its August 2011 newsletter entitled "Empire Plan Special Report" to all State retirees, including plaintiffs and the class they represent, announcing the implementation of the new increased retiree contribution rates. ( A copy of the newsletter is attached hereto as Exhibit D).

98.   The August 2011 newsletter was received by the retirees in early September 2011.

99.   However, at the time that the newsletter was mailed-out and received, the State defendants had not even attempted to comply with Civil Service Law §167(8), as amended by

24

Chapter 491, because defendants Hite and Megna had not approved the increase, nor had regulations been adopted by defendant Civil Service Department to increase the rates.

100.    By reason of defendants' unconstitutional actions, plaintiffs have suffered and will continue to suffer a deprivation of their constitutional, contractual and other legal rights.

### AS AND FOR A FIRST CAUSE OF ACTION
### (United States Constitution, Article I, §10, Impairment of Contract)

101.    Plaintiffs repeat and re-allege each and every preceding paragraph of this Complaint, as f fully set forth herein

102.    The United States Constitution, in Article I, § 10, Clause 1, provides, in relevant part:

> No State ... shall pass any ... law impairing the obligation of
> contracts.

103.    DC 37 has been party to eight (8) consecutive contracts with the State between 1984 and 2011 covering employees in the RRSU bargaining units.

104.    DC 37 has been party to eight (8) consecutive contracts with the UCS between 1982 and 2011 covering employees in the Court Unit.

105.    Plaintiffs and the class they represent have retired under one of the aforesaid contracts with ten or more years of service, or are the dependants of said retirees.

106.    At the time of the retirement of each plaintiff-retiree, she or he contributed ten percent (10%) toward the cost of individual coverage and twenty-five percent (25%) toward the cost of dependent coverage, which became a vested right for life on the date of each plaintiff-retiree's retirement.

25

107.   The passage and implementation of Chapter 491 raising plaintiffs-retirees' health insurance premium contribution rates from 10 percent to 12 percent toward the cost of individual coverage and from 25 percent to 27 percent toward the cost of dependent coverage constitutes an impairment of the aforesaid contracts by legislative act in violation of the impairment clause (Article 1, § 10, Clause 1) of the United States Constitution.

108.   Such impairment is substantial is not reasonable or necessary to achieve a significant public purpose.

109.   The defendants' substantial impairment of the contracts and contractual rights of plaintiffs was an abuse of police power, unreasonable and unnecessary to achieve legitimate government purposes.

110.   The State defendants failed to advance any legitimate rationale or significant public purpose for the substantial impairment of plaintiffs' contract rights to continued health insurance benefits.

111.   In fact, the only "rationale" or "purpose" asserted by the defendants for substantially impairing the plaintiffs' contract rights was that it was necessary to implement the negotiated agreement between the State and the CSEA.

112.   The substantial impairment of plaintiffs' contract rights was not necessary for the State to implement the negotiated agreement between the State and the CSEA and the substantial impairment of those rights served no legitimate public purpose.

26

113.    To the contrary, the substantial impairment of plaintiffs' contract rights actually defeats the significant public purpose of ensuring adequate and affordable healthcare for retirees who are least able to suffer such a retroactive diminution of their healthcare benefits.

114.    This sole "rationale" or "purpose" asserted by the State was and is, therefore, irrational, false and contrary to law.

115.    Such impairment has caused, and will continue to cause, injury and damages, including but not limited to, monetary damages and a deprivation of plaintiffs' rights under the United States Constitution.

116.    Plaintiffs-retirees are entitled to monetary damages to make them whole, and are entitled to prospective relief including, but not limited to, an order that State defendants reinstate the contribution rates of 10 percent toward the cost of individual coverage and 25 percent toward the cost of dependent coverage.

117.    By virtue of State defendants' violations of the United States Constitution, plaintiffs have stated a cause of action pursuant to 42 USC §1983 for a violation of their civil rights and are therefore also entitled to reasonable attorneys fees and the costs and disbursements of this action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

118.    Plaintiffs repeat and re-allege each and every preceding paragraph of this Complaint, as if fully set forth herein.

119.    Each plaintiff-retiree herein had, prior to his or her retirement, faithfully rendered services to the State and, as such, has completely performed his or her duties pursuant to the contract.

27

120.   The maintenance of contribution rates of 10 percent for individual coverage and 25 percent for dependent coverage after retirement is a bargained-for form of deferred compensation for services duly and faithfully rendered by each plaintiff- retiree pursuant to the respective contract retired under.

121.   Each plaintiff-retiree's rights are dictated by the agreement in effect at the time of his or her retirement regardless of whether the agreement expired thereafter as to active employees.

122.   Each of the contracts covering plaintiffs-retirees constitutes a binding and enforceable agreement between each retiree and the State, to provide health insurance at the contribution levels then in effect, for the life of the retiree and dependents.

123.   The State is thereby obligated to maintain the same contribution levels in effect at the time each plaintiff-retiree retired, by reason of the aforementioned contracts.

124.   Each plaintiff-retiree has relied on the aforesaid contracts in good faith and has fully performed all obligations under said contracts.

125.   The State has breached its contractual obligations to each plaintiff-retiree by failing to maintain the required contribution levels for health insurance effective October 1, 2011.

126.   Each plaintiff-retiree has been damaged by the defendants' breach of the referenced collective bargaining agreements and will continue to sustain such damage and further damage if the defendants are left to willy-nilly change contribution rates for retiree health insurance and renege on contractual requirements unfettered.

127.   By reason of defendants' breach of contract, plaintiffs and the class they represent are entitled to monetary damages to make them whole, and are entitled to prospective relief including,

28

but not limited to, an order that State defendants reinstate the contribution rates of 10 percent toward the cost of individual coverage and 25 percent toward the cost of dependent coverage.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Fourteenth Amendment Due Process Claim)

128.     Plaintiffs repeat and re-allege each and every preceding paragraph of this Complaint, as if fully set forth herein.

129.     The Fourteenth Amendment of the United States Constitution provides in relevant part that no State shall "deprive any person of life, liberty, or property, without due process of law."

130.     Under the Fourteenth Amendment, the State may not deprive a party to a contract of an essential contractual attribute without due process of law.

131.     Plaintiffs, and the class they represent, have a vested property right to maintain the same contribution rates contained in the contract that was in effect on the date each retiree retired.

132.     The health insurance benefits and contributions provided to plaintiffs by the State defendants pursuant to the terms of the RRSU and the Court Unit contracts constitute vested property rights.

133.     Pursuant to the Taylor Law, terms and conditions of employment, such as plaintiffs' health insurance benefits cannot be unilaterally changed by the State defendants absent collective bargaining.

134.     Plaintiffs Brown, Wilthsire, Galloway, Hardaway, Bouyea and Schwartz and all others similarly situated were State employees who rendered years of service in exchange for compensation including a fixed and vested right to receive such retirement health insurance benefits after their retirement.

29

135.   Upon vesting, plaintiffs' rights to fixed retirement health insurance benefits became a proprietary interest and property right.

136   Plaintiffs' retirement health insurance rights that vest in their collective bargaining agreements at the time of retirement survive the durational terms of those agreements.

137.   Plaintiffs' retirement health insurance benefits at issue were negotiated as a form and constitute deferred compensation.

138.   Plaintiffs had a reasonable expectation of a vested right to the future retirement health insurance benefits that are in issue in this proceeding.

139.   Plaintiffs have a legitimate expectation that retirement health insurance benefits were a fixed and vested right when conferred through their collective bargaining agreement.

140.   However, a union's duty of fair representation for each employee terminates once the employee retires.  Without vesting, members who retired during the course of a collective bargaining agreement would lose their ability to protect any retirement health insurance benefits conferred in that agreement after receiving the benefit.  Therefore, the respective collective bargaining agreements under which plaintiffs retired, constituted their only opportunity to ensure that the promised retirement health insurance benefits.

141.   In this case, plaintiffs were entitled to receive their vested benefits pursuant to the collective bargaining agreements and the statutory provisions of Civil Service Law §167 in effect at the time of their retirement.

30

142.    State defendants' increase in plaintiffs-retirees contribution rates for health insurance has deprived plaintiffs-retirees of their property and, absent due process, works an impermissible forfeiture of their vested property rights in violation of the Fourteenth Amendment.

143.    Plaintiffs, and the class they represent, have been deprived of this property right without adequate notice and a reasonable opportunity to be heard before being deprived of property to which they were lawfully entitled by the Fourteenth Amendment.

144.    Plaintiffs, and the class they represent, are entitled to a declaration that State defendants' actions are unconstitutional in violation of the Fourteenth Amendment, and a permanent injunction enjoining State defendants from implementing reduced State contribution rates for retired State employees and prohibiting the irreparable constitutional injury.

145.    Such violation of the Fourteenth Amendment has caused, and will continue to cause, injury and damages, including but not limited to, monetary damages and a deprivation of plaintiffs' rights under the United States Constitution.

146.    Plaintiffs-retirees are entitled to monetary damages to make them whole, and are entitled to prospective relief including, but not limited to, an order that State defendants reinstate the contribution rates of ten percent toward the cost of individual coverage and 25 percent toward the cost of dependent coverage.

147.    By virtue of State defendants' violations of the United States Constitution, plaintiffs have stated a cause of action pursuant to 42 USC §1983 for a violation of their Civil Rights and are therefore also entitled to reasonable attorneys fees and the costs and disbursements of this action.

31

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Violation of State Law)

148.    Plaintiffs repeat and re-allege each and every preceding paragraph of this Complaint, as f fully set forth herein.

149.    The State defendants' increase in plaintiff-retirees' health insurance contribution rates was implemented in an arbitrary and capricious manner, was contrary to law, including but not limited to the provisions of Civil Service Law §167(1)(a) and the amended Civil Service Law §167(8), and was an abuse of discretion.

150.    Civil Service Law §167(1)(a) provides that retirees shall contribute ten percent toward the premium cost of individual coverage and 25 percent toward the cost of dependent coverage. This provision has been in effect since 1983 and is still if full force and effect.

151.    Accordingly, State defendants' actions increasing retiree health insurance contribution rates above those rates dictated by Civil Service Law §167(1)(a) is in direct violation of that statute.

152.    Civil Service Law §167(8) provides that rates for retirees' health insurance premium contributions may be extended to retirees "not subject to an agreement;" however, plaintiffs-retirees and the class they represent have vested rights to the contribution rates provided by the collective bargaining agreement in effect on the date of each retiree's retirement.

153.    Therefore, plaintiffs-retirees were not in the statutorily-referenced category of retirees "not subject to an agreement." For that reason, Chapter 491 did not authorize the State defendants to increase the contribution rates charged to plaintiffs-retirees for health insurance. To the contrary, the contribution rates charged to plaintiffs-retirees are "subject to" the collective bargaining agreement

in effect on the date of each retiree's retirement and the rate was locked-in and vested for life as of his or her date of retirement.

154.   Civil Service Law §167(8) provides that retiree health insurance contribution rates may be modified based only on terms contained in a collective bargaining agreement, however, the relevant RRSU and Court Unit collective bargaining agreements did not provide for an increase in retiree rates.

155.   Therefore, State defendants' implementation of increased retiree contribution rates was not based on any collective bargaining agreement, as required by the statute, and was in direct violation of Civil Service Law §167(8).

156.   Civil Service Law §167(8) provides that only the president of the Civil Service Commission may take action to modify the contribution rates for State retirees, however, that office was vacant in September 2011 when defendant Hite purported to act in that capacity.

157.   During all relevant times herein, the office of President of the Civil Service Commission has been vacant, the Governor has not nominated nor has the State Senate confirmed an individual to fill that office, as required by law.

158.   Upon information and belief, defendant Hite, in her supposed capacity as "Acting Commissioner" of the Civil Service Department, and "Acting President" of the Civil Service Commission, has not filed an oath of office as Commissioner or President, respectively, nor has she attended or voted at any official meeting of the Civil Service Commission in that capacity.

159.   Defendant Hite lacked authority pursuant to Civil Service Law §167(8) to increase contribution rates for retirees, including plaintiffs and the class they represent.

33

160.    As a result of defendant Hite's lack of authority, defendant Megna lacked authority on September 22, 2011, to approve the increase contribution rates for retirees pursuant to Civil Service Law §167(8).

161.    For these reasons, Defendant Hite lacked authority pursuant to Civil Service Law §167(8) to approve a resolution on September 27, 2011, adopting regulations at 4 NYCRR §§73.3(b) and 73.12, to increase contribution rates for retirees, therefore, such regulations are null and void.

162.    The State defendant's actions pursuant to these "emergency regulations," raising retiree contribution rate, therefore, constitute an abuse of discretion.

163.    By reason of defendants' abuse of discretion, arbitrary and capricious implementation of the increased retiree contribution rates which are contrary to law, plaintiffs and the class they represent are entitled to monetary damages to make them whole, and are entitled to prospective relief including, but not limited to, an order that State defendants reinstate the contribution rates of 10 percent toward the cost of individual coverage and 25 percent toward the cost of dependent coverage.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (New York Constitution, Article 1, §6, Due Process)

164.    Plaintiffs repeat and re-allege each and every preceding paragraph of this Complaint, as if fully set forth herein.

165.    Article 1, §6, of the New York Constitution provides that no person "shall be deprived of life, liberty or property without due process of law."

166.    Under Article 1, §6, of the New York Constitution, the State may not deprive a party to a contract of an essential contractual attribute without due process of law.

34

167.    Plaintiffs, and the class they represent, have a vested property right to maintain the same contribution rates contained in the contract that was in effect on the date each retiree retired.

168.    State defendants' increase in plaintiffs-retirees contribution rates for health insurance has deprived plaintiffs-retirees of their property and, absent due process, works an impermissible forfeiture of their vested property rights in violation of New York Constitution Article I, §6.

169.    Plaintiffs, and the class they represent, have been deprived of this property right without the Due Process rights to be afforded adequate notice and a reasonable opportunity to be heard before being deprived of property to which they were lawfully entitled.

170.    Plaintiffs, and the class they represent, are entitled to a declaration that State defendants' actions are unconstitutional in violation of New York Constitution Article 1, §6, and a permanent injunction enjoining State defendants from implementing reduced State contribution rates for retired State employees and prohibiting the irreparable constitutional injury.

171.    Such impairment has caused, and will continue to cause, injury and damages, including but not limited to, monetary damages and a deprivation of plaintiffs' rights under the New York Constitution.

172.    Plaintiffs-retirees are entitled to monetary damages to make them whole, and are entitled to prospective relief including, but not limited to, an order that State defendants reinstate the contribution rates of ten percent toward the cost of individual coverage and 25 percent toward the cost of dependent coverage.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (New York Constitution, Article 3, §1)

173.    Plaintiffs repeat and re-allege each and every preceding paragraph of this Complaint, as if fully set forth herein.

174.    Article 3, Section 1 of the New York State Constitution provides: "The legislative power of this State shall be vested in the Senate and Assembly."

175.    Civil Service Law §167(1)(a), providing the 10/25 percent retiree health insurance contribution rates, has not been repealed, therefore, defendants Hite and Megna did not have authority to increase those statutorily established rates, and State defendants were attempting to serve in a legislative role by doing so.

176.    State defendants acted in a legislative capacity to set public policy by increasing retiree health insurance contribution rates, thereby acting outside the scope of their authority.

177.    By reason of defendants' violation of Article 3, Section 1 of the New York State Constitution, plaintiffs and the class they represent are entitled to monetary damages to make them whole, and are entitled to prospective relief including, but not limited to, an order that State defendants reinstate the contribution rates of ten percent toward the cost of individual coverage and 25 percent toward the cost of dependent coverage.

**WHEREFORE**, Plaintiffs respectfully pray for an Order and Judgment:

(a)    Declaring that State defendants' actions increasing contribution rates paid by plaintiffs and the class they represent, are unconstitutional in violation of the Contract Clause of Article I, §10, of the United States Constitution, and permanently enjoining State defendants from implementing same;

36

(b)     Declaring that State defendants' actions increasing contribution rates paid by plaintiffs and the class they represent violate the RRSU and Court Unit contracts with the State;

(c)     Declaring that State defendants' actions increasing contribution rates paid by plaintiffs and the class they represent, are unconstitutional in violation of Article I, §6, of the New York Constitution, and permanently enjoining State defendants from implementing same;

(d)     Declaring that State defendants' actions increasing contribution rates paid by Plaintiffs and the class they represent, are unconstitutional in violation of their Fourteenth Amendment Due Process rights under the United States Constitution, and permanently enjoining State defendants from implementing same;

(e)     Declaring Chapter 491 of the Laws of 2011 unconstitutional, as applied under Civil Service Law §167(8), to the extent that State defendants actions increased contribution rates paid by Plaintiffs and the class they represent which impair the Plaintiffs' contract rights;

(f)     Declaring that State defendants' actions increasing contribution rates paid by Plaintiffs and the class they represent, are unlawful, unauthorized pursuant to New York Civil Service Law §167(8), in excess of jurisdiction, and null and void;

(g)     Enjoining, prohibiting and restraining defendants DiNapoli and the Retirement System from making any deductions from the monthly pension payments of

37

retired State employees, including plaintiffs, and the class they represent, or passing along any additional costs or charges, as a result of the reduced State contribution rates implemented by State defendants challenged herein;

(h)   Directing State defendants to reimburse and make whole plaintiffs, and the class they represent, for any and all additional payments or deductions to pension payments, made as a result of the reduced State contribution rates implemented by State defendants challenged herein;

(i)   Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action pursuant to 42 USC §1988, and as otherwise allowed by law; and

(j)   Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
January 10, 2012

Respectfully submitted,

MARY J. O'CONNELL
GENERAL COUNSEL
DISTRICT COUNCIL 37,
AFSCME, AFL-CIO
Attorney for Plaintiffs

By: _/s/Erica Gray-Nelson_____
Erica C. Gray-Nelson, of Counsel
Bar Roll No.: 516294
125 Barclay Street, 5th Floor
New York, New York 10007
Tel. (212) 815-1450
Fax: (212) 815-1440
egray-nelson@dc37.net

38

TO:    STATE OF NEW YORK
Andrew M. Cuomo
Governor of the State of New York
Executive Chamber
State Capital
Albany, New York 12224

NEW YORK STATE CIVIL SERVICE DEPARTMENT
Alfred E. Smith Office Building
80 Swan Street
Albany, New York 12239

PATRICIA A. HITE
Acting Commissioner
New York State Civil Service Department
Alfred E. Smith Office Building
80 Swan Street
Albany, New York 12239

NEW YORK STATE CIVIL SERVICE COMMISSION
Alfred E. Smith Office Building
80 Swan Street
Albany, New York 12239

CAROLINE W. AHL
Commissioner
New York State Civil Service Commission
Alfred E. Smith Office Building
80 Swan Street
Albany, New York 12239

J. DENNIS HANRAHAN
Commissioner
New York State Civil Service Commission
Alfred E. Smith Office Building
80 Swan Street
Albany, New York 12239

ROBERT L. MEGNA
Director
New York State Division of Budget
State Capitol
Albany, New York 12224

THOMAS P. DiNAPOLI
Comptroller of the State of New York
110 State Street
Albany, New York 12236

NEW YORK STATE AND LOCAL RETIREMENT SYSTEM
110 State Street
Albany, New York 12236

40