# Quackenbush Appendix A



*Rec'd 2/12/11 @ 3:24*
*Hand delivered*

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ALBANY

---

| | |
|---|---|
| Retired Public Employees Association, Inc.; Stanley Winter, as an individual and President, Retired Public Employees Association, Inc.; Alan Dorn, as an individual and Executive Director, Retired Public Employees Association, Inc.; Hon. Jules L. Spodek; Hon. David R. Townsend; Helen M. Bulson; Victor L. Costello; Joy Godin; Francis Hamblin; A. Joanne Lantz; William C. Moore; John H. Neary; David B. Smingler; Kathleen Stallmer; and Frosine Stolis, | <u>NOTICE OF PETITION</u><br><br>ALBANY COUNTY<br><u>INDEX NO.</u> **7586-11**<br><br>RJI NO. _____<br><br>HON. _____ |

          Plaintiff-Petitioners,

    -Against-

Hon. Andrew Cuomo, Governor, State of New York; New York State Department of Civil Service; New York State Civil Service Commission; Patricia Hite, Acting President, New York State Civil Service Commission; New York State Health Insurance Program; State Director of the Budget; Director of Employee Relations, Governor's Office of Employee Relations; and New York State Comptroller as a necessary party,

          Defendant-Respondents.

---

SIRS AND MADAMES:

    PLEASE TAKE NOTICE, upon the annexed Verified Petition

sworn to on November 30, 2011, and the annexed affidavit of

Harvey Randall dated December 7, 2011 and all of the papers and exhibits attached thereto, an application will be made in the Supreme Court, Albany County, located in the Albany County Courthouse, 16 Eagle Street, Albany, New York 12207 on January 13, 2012 at 9:30 A.M. or as soon thereafter as counsel may be heard for a judgment and order pursuant to CPLR 3001 and Article 78 containing the following relief:

(a) Declaring that the administrative implementation of an increase in the percentages of the contributions for medical benefits under NYSHIP payable by State retirees and/or their dependents participating in NYSHIP in excess of that set forth in Civil Service Law 167(1)(a) allegedly effective on October 1, 2011 is invalid and null and void; and

(b) Declaring that the emergency regulation filed on September 27, 2011 and to take effect on October 1, 2011, and published in the State Register in an issue dated October 12, 2011 promulgated by the New York State Department of Civil Service purportedly implementing the increase in the percentages of contributions for NYSHIP by retirees participating in NYSHIP is invalid and null and void; and

(c) Granting a preliminary and permanent injunction prohibiting

-2-

the defendant-respondents or any of the their officers, agents, or employees from implementing the October 1, 2011 increases in the percentages of the contributions for health insurance benefits under NYSHIP by retirees participating in NYSHIP; and

(d) Directing that any increases for NYSHIP paid by State retirees since October 1, 2011 under color of the notification and/or said emergency regulation be refunded; and

(e) For the costs and disbursements of this action; and

(f) For such other and further relief as the Court may deem just and proper.

Venue is proper because the principal offices of the respondents are located in and the decision challenged was made in Albany County.

PLEASE TAKE NOTICE, that pursuant to CPLR 7804(c) answering papers must be served at least five days before the return date or will be rejected as untimely.

Oral argument is respectfully requested.

DATED:    Albany, New York
          December 7, 2011

Yours, etc.

*Lewis B. Oliver, Jr.*
LEWIS B. OLIVER, JR., ESQ.
Oliver Law Office
Attorney for Plaintiff-Petitioners
156 Madison Avenue
Albany, New York 12202
518-463-7962


TO:   Hon. Andrew M. Cuomo
      Governor of New York State
      New York State Capitol Building
      Albany, New York 12224

      New York State Department of Civil Service
      Alfred E. Smith State Office Building
      Albany, New York 12239

      New York State Civil Service Commission
      Alfred E. Smith State Office Building
      Albany, New York 12239

      Hon. Patricia Hite
      Acting President, New York State Civil Service Commission
      New York State Department of Civil Service
      Alfred E. Smith State Office Building
      Albany, New York 12239

      New York State Health Insurance Program
      Alfred E. Smith State Office Building
      Albany, New York 12239

State Director of the Budget
New York State Capitol Building
Albany, New York 12224

Director of Employee Relations
Governor's Office of Employee Relations
2 Empire State Plaza
Albany, New York 12223

New York State Comptroller
Office of the State Comptroller
110 State Street
Albany, New York 12236

Hon. Eric T. Schneiderman
Attorney General
Office of the Attorney General
The Capitol
Albany, New York  12224-0341

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ALBANY

Retired Public Employees Association, Inc.; Stanley Winter, as an individual and President, Retired Public Employees Association, Inc.; Alan Dorn, as an individual and Executive Director, Retired Public Employees Association, Inc.; Hon. Jules L. Spodek; Hon. David R. Townsend; Helen M. Bulson; Victor L. Costello; Joy Godin; Francis Hamblin; A. Joanne Lantz; William C. Moore; John H. Neary; David B. Smingler; Kathleen Stallmer; and Frosine Stolis,

**SUMMONS**

ALBANY COUNTY
INDEX NO. **1586-11**

RJI NO. _____

Plaintiff-Petitioners,

-Against-

HON. _____

Hon. Andrew Cuomo, Governor, State of New York; New York State Department of Civil Service; New York State Civil Service Commission; Patricia Hite, Acting President, New York State Civil Service Commission; New York State Health Insurance Program; State Director of the Budget; Director of Employee Relations, Governor's Office of Employee Relations; and New York State Comptroller as a necessary party,

Defendant-Respondents

TO:  NEW YORK STATE DEPARTMENT OF CIVIL SERVICE; PRESIDENT, NEW YORK STATE CIVIL SERVICE COMMISSION; NEW YORK STATE DIRECTOR OF THE BUDGET; NEW YORK STATE CIVIL SERVICE COMMISSION; NEW YORK STATE HEALTH INSURANCE PROGRAM; NEW YORK STATE COMPTROLLER

# YOU ARE HEREBY SUMMONED and required to

serve upon plaintiff's attorney an answer to the complaint in this action within twenty (20) days after service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York.  In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:     December 7, 2011

*Lewis B. Oliver, Jr,*

LEWIS B. OLIVER, JR., ESQ.
Oliver Law Firm
Attorney for Plaintiff-Petitioners
156 Madison Avenue
Albany, New York 12202
518-463-7962

*The basis for venue in Albany County in this case is that the principal office of the defendants is in Albany County, and the acts complained of occurred in Albany County.*

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ALBANY

---

| | |
|---|---|
| Retired Public Employees Association, Inc.; Stanley Winter, as an individual and President, Retired Public Employees Association, Inc.; Alan Dorn, as an individual and Executive Director, Retired Public Employees Association, Inc.; Hon. Jules L. Spodek; Hon. David R. Townsend; Helen M. Bulson; Victor L. Costello; Joy Godin; Francis Hamblin; A. Joanne Lantz; William C. Moore; John H. Neary; David B. Smingler; Kathleen Stallmer; and Frosine Stolis, | VERIFIED COMPLAINT-PETITION _____ <br><br><br> ALBANY COUNTY <br> INDEX NO. 7586-11 |

Plaintiff-Petitioners,

-Against-

Hon. Andrew Cuomo, Governor, State of New York; New York State Department of Civil Service; New York State Civil Service Commission; Patricia Hite, Acting President, New York State Civil Service Commission; New York State Health Insurance Program; State Director of the Budget; Director of Employee Relations, Governor's Office of Employee Relations; and New York State Comptroller as a necessary party,

Defendant-Respondents.

RJI NO. _____

HON. _____

---

Plaintiff-Petitioners Retired Public Employees Association,

Inc., Stanley Winter, Alan Dorn, Hon. Jules L. Spodek, Hon.

David R. Townsend, Helen M. Bulson, Victor L. Costello, Joy

-1-

Godin, Francis Hamblin, A. Joanne Lantz, William C. Moore, John H. Neary, David B. Smingler, Kathleen Stallmer, and Frosine Stolis by their duly authorized attorney Lewis B Oliver, Jr., Esq., hereby state for their combined declaratory judgment action and Article 78 petition as follows:

1.   This is a combined declaratory judgment action pursuant to CPLR 3001 and CPLR Article 78 proceeding to declare that implementation of an increase in the percentages of the contributions payable by retirees of the State of New York who retired on or after January 1, 1983 and prior to October 1, 2011 (hereafter "retirees") and are participating in the New York State Health Insurance Plan (hereafter NYSHIP), from 10% of the cost of premiums for individual medical coverage to 12%, and from 25% of the cost of premiums for dependent coverage to 27%, violates Civil Service Law 167(1)(a) and the Due Process Clause of the United States and New York State constitutions and other statutory and constitutional provisions.

## RELIEF REQUESTED

2.   The relief requested herein is a final judgment and order pursuant to CPLR 3001 and CPLR Article 78 containing the

following relief:

(a) Declaring that the administrative implementation of an increase in the percentages of the contributions for medical benefits under NYSHIP payable by State retirees and/or their dependents participating in NYSHIP in excess of that set forth in Civil Service Law 167(1)(a) allegedly effective on October 1, 2011 is invalid and null and void; and

(b) Declaring that the emergency regulation filed on September 27, 2011 and to take effect on October 1, 2011, and published in the State Register in an issue dated October 12, 2011 promulgated by the New York State Department of Civil Service purportedly implementing the increase in the percentages of contributions for NYSHIP by retirees participating in NYSHIP is invalid and null and void; and

(c) Granting a preliminary and permanent injunction prohibiting the defendant-respondents or any of the their officers, agents, or employees from implementing the October 1, 2011 increases in the percentages of the contributions for health insurance benefits under NYSHIP by retirees participating in NYSHIP; and

(d) Directing that any increases for NYSHIP paid by State retirees since October 1, 2011 under color of the notification

−3−

and/or said emergency regulation be refunded; and

(e) For the costs and disbursements of this action; and

(f) For such other and further relief as the Court may deem just and proper.

## PARTIES

3.    Plaintiff-Petitioner   the   Retired   Public   Employees Association, Inc. [hereafter "RPEA"] insofar as herein relevant, represents the interests of individuals receiving a retirement allowance,  or  who  are  eligible  for  a  vested  retirement allowance, from a public retirement system of New York State, or from an Optional Retirement Plan and their dependents.  RPEA has 19  chapters  in  New  York,  Florida,  and  the  Carolinas,  with membership of approximately 40,000 retirees from public service and their dependents in the State of New York.   All members of RPEA are retirees from service in New York State and municipal governments,  or  their  dependants.   RPEA  is  not  a  labor  union, but before their retirement its retiree members were formerly represented by the Civil Service Employees Association (CSEA), the  Public  Employees  Association  (PEF),  Council  82  New  York

-4-

State Law Enforcement Officers Union, or other unions, confidential-management employees who are members of the Organization of New York State Management Confidential Employees (OMCE), or other groups such as employees of the Legislature, State judges, other individuals serving in positions designated managerial or confidential within the meaning of Article 14 of the Civil Service Law, or individuals excluded from the definition of "employee" set out in Civil Service Law 201(7)(a). Retirees are not employees within the meaning of Article 14 of the Civil Service Law, and State employees are no longer represented by these unions or employee organizations when they become retired.   The purpose of RPEA is to provide effective advocacy and lobbying on behalf of retired public employees of New York State, to provide education and information to retirees about their rights as retired employees, to provide personal assistance, conduct research, and otherwise represent the interests of retirees from State government service.   In the past RPEA successfully lobbied for a permanent pension cost-of-living adjustment (COLA) to improve pension benefits for retirees, and has advocated against State and local governments unfairly cutting health insurance benefits for retirees.

-5-

Membership in RPEA is open to all former employees and retirees of New York State and its political subdivisions who have become retired from employment. Membership is open to all regardless of race, religion or national origin, or gender, age, disability, upon payment of annual dues in the mount of $24.00 per year. RPEA is governed by a Board of Directors, and has a president and other officers who are elected from the membership and are all volunteers. Stanley Winter is the President of RPEA, and Alan Dorn is the Executive Director of RPEA. The main office of RPEA is located at 435 New Karner Road, Albany, New York 12205. The Board of Directors of RPEA, by resolution, has duly authorized this litigation. RPEA is suing on behalf of all its members and other retirees including, but not limited to, Stanley Winter, Alan Dorn, Hon. Jules L. Spodek, Hon. David R. Townsend, Helen M. Bulson, Victor L. Costello, Joy Godin, Francis Hamblin, A. Joanne Lantz, William C. Moore, John H. Neary, David B. Smingler, Kathleen Stallmer, and Frosine Stolis and all other members adversely affected by the administrative implementation of an increase in the percentages of their contributions for medical benefits paid to NYSHIP by retirees and/or their dependents enrolled in NYSHIP in excess of that set

forth in Civil Service Law 167(1)(a).

4.     Plaintiff-Petitioner Stanley Winter resides at 255 Patroon Creek Boulevard, Apartment 4267, Albany, New York 12206. Mr. Winter was employed in the New York State Office of Parks, Recreation, and Historic Preservation for 39 years, where he held positions as Director of Human Resources, Director of Agency Manpower Management, and Director of Personnel.     During his employment with the State he was a Management Confidential employee and was not a member of any union.  Mr. Winter has been retired from State service for 16 years, and he has been a member of RPEA for 17 years. Mr. Winter is currently a participant in NYSHIP, and he is enrolled in CDPHP Medicare Advantage Plus plan with individual coverage.   Prior to October 1 his monthly contribution for the individual health insurance premium was $51.86 per month. After October 1, 2011 Mr. Winter continues being in CDPHP Medicare Advantage Plus plan under NYSHIP with individual coverage.   Under the proposed increase in the percentage of contributions for NYSHIP by retirees, Mr. Winter's contribution for NYSHIP will be $67.41 per month, which is an increase of $16.45 per month.   Mr. Winter is currently the president of RPEA, and he is suing as a member of RPEA, as

-7-

president of RPEA, and as an individual.

5.     Plaintiff-Petitioner Alan Dorn resides at 6 Wedge Road, Delmar, New York 12054. Mr. Dorn was employed in the New York State Department of Civil Service as Director of Human Resources, the New York State Office of Real Property Services as Director of Human Resources, and the Hudson Valley Community College as a professor for a total of 35 years.   During his employment with the State he was a management confidential employee and was not a member of any union.   Mr. Dorn has been retired from State service for 4 years, and he has been a member of RPEA for 4 years.   Mr. Dorn is currently a participant in NYSHIP, and he is enrolled in the EMPIRE plan with dependent coverage.   Prior to October 1 his monthly contribution for the individual health insurance premium was $250.12 per month. After October 1, 2011 Mr. Dorn expects to continue being enrolled in the EMPIRE plan with dependent coverage. Under the proposed increase in the percentage of contributions for NYSHIP by retirees, Mr. Dorn's contribution for NYSHIP will be $278.26 per month, which is an increase of $28.14 per month. Mr. Dorn is currently employed as the Executive Director of RPEA, and he is suing as a member of RPEA, as Executive Director of RPEA, and as

-8-

an individual.

6.      Plaintiff-Petitioner Hon. Jules L. Spodek resides at 75 Henry Street, Brooklyn, New York 11201.   Justice Spodek was employed in the New York State Supreme Court, Office of Court Administration Unified Court System, serving six years in Civil and Criminal Courts, and twenty-four years as a Justice of the Supreme Court of the State of New York.   During his employment with the State he was not a member of any union.   Justice Spodek has been retired from State service for about 7 years.   Justice Spodek is currently a participant in NYSHIP as an individual and has dependent coverage in addition.   Justice Spodek is a retired member in the New York State and Legal Employees Retirement System (NYSLERS).   Justice Spodek is currently a participant in NYSHIP, and he is enrolled in the Empire plan with dependent coverage.   Prior to October 1 his monthly contribution for the individual health insurance premium was $250.12 per month. After October 1, 2011 he expects to continue being enrolled in the Empire Family plan under NYSHIP as an individual. Under the proposed increase in the percentage of contributions for NYSHIP by retirees, Justice Spodek's contribution for NYSHIP will be $278.26 per month, which is an increase of $28.14 per month.

-9-

Justice Spodek is suing as an individual and as a member of
RPEA.

7.     Plaintiff-Petitioner Hon. David R. Townsend resides at
1524 Oyster Cove Road, Sylvan Beach, Virginia 13157.     Mr.
Townsend was elected to the New York State Assembly, where he
served as an Assemblyman in the Legislature for 20 years.
During his tenure with the State Assembly he was not a member of
any union.   Assemblyman Townsend has been retired from State
service for one year.   Mr. Townsend is currently a participant
in NYSHIP, and he is enrolled in the Empire plan with individual
coverage.   Prior to October 1 his monthly contribution for the
individual health insurance premium was $92.94 per month.     He
has not made a decision for a health care plan following
notification of the percentage of contribution changes.
Assemblyman Townsend is suing as an individual and as a member
of RPEA.

8.     Plaintiff-Petitioner Helen M. Bulson resides at 2
Wineberry Lane, Ballston Spa, New York 12020.   Ms. Bulson was
employed by the New York State Department of Motor Vehicles for
35 years, where she was employed as a Supervisor PrClerk-SrES
Clerk.   During her employment with the State she was formerly in

a negotiating unit represented by CSEA.  Ms. Bulson has been retired from State service for ten years, and she has been a member of RPEA for one year.  Ms. Bulson is currently a participant in NYSHIP, and she is enrolled in the Empire Plan with individual coverage.  Prior to October 1 her monthly contribution for the individual health insurance premium was $59.23 per month.  Under the proposed increases in the percentage of contribution for retirees, Ms. Bulson's payment for health insurance premium will be $67.72 per month, an increase of $8.49 per month.  Ms. Bulson is suing as an individual and as a member of RPEA.

9.    Plaintiff-Petitioner Victor L. Costello resides at 4 Lilliana Lane, New Hartford, New York 12413. Mr. Costello was employed by the New York State Office of Mental Health at the Utica Psychiatric Center for 20 years, where he held positions as an Attendant and Registered Nurse.  During his employment with the State he was formerly in a bargaining unit represented by CSEA or PEF.  Mr. Costello has been retired from State service for 20 years, he has been a member of RPEA for 20 years, and he is currently a member of RPEA's Board of Directors.  Mr. Costello is currently enrolled in the New York State Retirement

-11-

System and receives gross retirement payments of $1,008.00 per month.   He is currently a participant in NYSHIP, and he is enrolled in the Empire Plan with individual coverage.   Prior to October 1 his monthly contribution for the individual health insurance premium was $58.10 per month.   Under the proposed increase in the percentage of contributions for NYSHIP by retirees, Mr. Costello's contribution for NYSHIP will be $69.72 per month, an increase of $11.62 per month. Mr. Costello is suing as an individual and as a member of RPEA.

10.   Plaintiff-Petitioner Joy Godin resides at 133 East Duncan Hill Road, Dover Plains, New York 12522.   Ms. Godin was employed by Harlem Valley Psychiatric Center for 37 years, where she was employed as a Attendant Staff Nurse, Head Nurse and Supervisor, Administrative Assistant I.   During her employment with the State she was formerly in a negotiating unit represented by PEF.   Ms. Godin has been retired from State service for 21 years, and she has been a member of RPEA for many years.   Ms. Godin is currently enrolled in the New York State Retirees System and receives gross retirement payments of $400.00 per month.   Ms. Godin is currently a participant in NYSHIP, and she is enrolled in the Empire Plan with individual

-12-

coverage.   Prior to October 1 her monthly contribution for the individual health insurance premium was $59.23 per month.   Under the proposed increases in the percentage of contribution for retirees, Ms. Godin's payment for health insurance premium will be $69.72 per month, an increase of $10.49 per month.   Ms. Godin is suing as an individual and as a member of RPEA.

11.   Plaintiff-Petitioner Francis Hamblin resides at 99 Old Route 20, East Nassau, New York 12062.   Mr. Hamblin was employed by the New York State Office for Technology for 26 years, where he was employed as an unemployment insurance examiner, administrative analyst, computer programmer, and data communication specialist.   During his employment with the State he was formerly in a negotiating unit represented by PEF.   Mr. Hamblin has been retired from State service for ten years, and he has been a member of RPEA for one year.   Mr. Hamblin is currently a participant in NYSHIP, and he is enrolled in the CDPHP Health Plan with dependent coverage.   Prior to October 1 his monthly contribution for the family health insurance premium was $100.02 per month.   Under the proposed increases in the percentage of contribution for retirees, Mr. Hamblin's payment for health insurance premium will be $126.14 per month, an

-13-

increase of $26.12 per month.   Mr. Hamblin is suing as an individual and as a member of RPEA.

12.   Plaintiff-Petitioner A. Joanne Lantz resides at 20 Owls Nest Road, Saugerties, New York 12477. Ms. Lantz was employed by the New York State Department of Education where she held the position of Specialist in Pupil Personnel Guidance for 10 years.   During her employment with the State she was formerly in a negotiating unit represented by PEF.   Ms. Lantz has been retired from State service for 15 years, and she has been a member of RPEA for 11 years. Ms. Lantz is currently a participant in NYSHIP, and she is enrolled in the United Health Care Plan with individual coverage.   Prior to October 1 her monthly contribution for the individual health insurance premium was $170.78 per month.   Under the proposed increase in the percentage of contributions for NYSHIP by retirees, Ms. Lantz's payment for health insurance premium will be $198.92 per month, an increase of $28.14 per month.   Ms. Lantz is suing as an individual and as a member of RPEA.

13.   Plaintiff-Petitioner William C. Moore resides at 420 East 11th Street, Apartment 2804, New York, New York 10029.   Mr. Moore was employed by the New York State Department of Taxation

and Finance for 27 years, where he was employed as an auditor.
During his employment with the State he was formerly in a
negotiating unit represented by PEF. Mr. Moore has been retired
from State service for 15 years, he has been a member of RPEA
for 15 years, and he is currently a member of RPEA's Board of
Directors. Mr. Moore is currently enrolled in NYSLERS and
receives gross retirement payments of $2,308.00 per month. He
is currently a participant in NYSHIP, and he is enrolled as an
individual. Prior to October 1 his monthly contribution for the
individual health insurance premium was $59.23 per month. Under
the proposed increases in the percentage of contribution for
retirees, Mr. Moore's payment for health insurance premium will
be $69.72 per month, an increase of $10.49 per month. Mr. Moore
is suing as an individual and as a member of RPEA.

14. Plaintiff-Petitioner John H. Neary resides at 11 Pin
Oar Drive, Kinderhook, New York 12106. Mr. Neary was employed
by the New York State Department of Civil Service for 22 years,
where he was employed as a budget analyst. During his
employment with the State he was formerly a Management
Confidential employee, and was not a member of a union. Mr.
Neary has been retired from State service for 15 years, and he

has been a member of RPEA for 15 years.  Mr. Neary is currently
enrolled in the New York State Retirement System and receives
gross retirement payments of $2,000.00 per month.   He is
currently a participant in NYSHIP, and he is enrolled in the
Empire Plan with dependent coverage.   Prior to October 1 his
monthly contribution for his health insurance premium was
$250.12 per month.  Under the proposed increases in the
percentage of contribution for retirees, Mr. Neary's payment for
health insurance premium will be $278.26 per month, an increase
of $28.14 per month.  Mr. Neary is suing as an individual and as
a member of RPEA.

     15.    Plaintiff-Petitioner David B. Smingler resides at 4C
Cass Court, Ballston Lake, New York 12019.   Mr. Smigler was
employed in the New York State Senate for 32 years, where he
held positions of Legislative Assistant, Manager of Office
Automation, and Executive Assistant.   During his employment with
the State he was not a member of any union.  Mr. Smigler has
been retired from State service for 2 years and 11 months, and
he has been a member of RPEA for 6 months.   Mr. Smingler is
currently a participant in NYSHIP, and he is enrolled in the
Empire plan with individual coverage.   Prior to October 1 his

-16-

monthly contribution for the individual health insurance premium was $58.10 per month. Under the proposed increase in the percentage of contributions for NYSHIP by retirees, Mr. Smingler's contribution for health insurance premium will be $69.72 per month, an increase of $11.62 per month. Mr. Smingler is suing as an individual and as a member of RPEA.

16.    Plaintiff-Petitioner Kathleen Stallmer resides at 12 Sycaway Avenue, Troy, New York 12180. Ms. Stallmer was employed by SUNY Empire State College for over 40 years, where she was employed as a stenographer, senior stenographer, Secretary 2, HR Associate, SR. HR Associate, and Director of Human Resoures. During her employment with the State she was formerly in a negotiating unit represented by CSEA, and then served as a Management Confidential employee where she was not a member of any union. Ms. Stallmer has been retired from State service for 3 years. Ms. Stallmer is currently a participant in NYSHIP, and she is enrolled in the Empire Plan with dependent coverage. Prior to October 1 her monthly contribution for the family health insurance premium was $250.12 per month. Under the proposed increases in the percentage of contribution for retirees, Ms. Stallmer's payment for health insurance premium

-17-

will be $278.26 per month, an increase of $28.14 per month.  Ms. Stallmer is suing as an individual and as a member of RPEA.

17.   Plaintiff-Petitioner Frosine Stolis resides at 33 Moon Drive, Albany, New York 12205.  Ms. Stolis was employed in the New York State Department of Taxation and Finance for 22 years, where she held positions of File Clerk, Account Clerk, Taxpayer Services  Representative,  Principal  Clerk,  and  Senior Administrative Analyst.   During her employment with the State she was a member of a negotiating unit represented by either CSEA or PEF.  Ms. Stolis has been retired from State service for 8 years, and she has been a member of RPEA for 6 years.  Ms. Stolis is currently enrolled in NYSLERS and receives a gross retirement payment of $1,520.75 per month.   Ms. Stolis is currently a participant in NYSHIP, and she is enrolled in the Empire plan with individual coverage.   Prior to October 1 her monthly contribution for the individual health insurance premium was $59.23 per month.   Under the proposed increase in the percentage of contributions for NYSHIP by retirees, Ms. Stolis' payment for health insurance premiums will be $69.72 per month, an increase of $10.47 per month.   Ms. Stolis is suing as an individual and as a member of RPEA.

18.   Defendant-respondent Hon. Andrew Cuomo is Governor of the State of New York, and under the New York State Constitution and Executive Law is the chief executive officer of New York State.   Governor Cuomo is responsible for the appointment of the President and members of the New York State Civil Service Commission, the State Director of the Budget, the Director of Employee Relations in the Governor's Office of Employee Relations, and for the policies and administration of the State agencies under their authority.   The primary office of the Governor is at the New York State Capitol Building, Albany, New York 12224.

19.   Defendant-respondent New York State Department of Civil Service is a unit in the Executive Department of New York State government, and is governed by the New York Civil Service Law.   The Department of Civil Service is responsible for administration of the civil service laws for State and municipal employees.   One of the functions of The Department of Civil Service is administration of the New York State Health Insurance Plan_ (NYSHIP), which provides health insurance plans for State employees and retirees.   The primary office of the Department of Civil Service is located in the Alfred E. Smith State Office

-19-

Building, Albany, New York 12239.

20.    Defendant-respondent the New York State Civil Service Commission is a commission established by the New York Civil Service Law. The duties and responsibilities of the Civil Service Commission are set out in Civil Service Law 6, which duties and responsibilities include, but are not limited to, prescribing and amending suitable rules and regulations for carrying into effect the provisions of the Civil Service Law. See Civil Service Law 6(1).  The primary office of the Civil Service Commission is located in the Alfred E. Smith State Office Building, Albany, New York 12239.

21.    Defendant-respondent Patricia Hite is the Acting President of the New York State Civil Service Commission. The President is the head of the Civil Service Commission and the Department of Civil Service as provided by Civil Service Law 7. Under Civil Service Law 160 the President of the Civil Service Commission is responsible for promulgation of regulations governing the eligibility and cost of premiums for health care coverage for State active employees and retirees participating in NYSHIP. Civil Service Law 161-a vests in the President the authority as a matter of discretion, with the approval of the

−20−

Director of the Budget, to extend health insurance benefits negotiated with collective bargaining units (unions), in whole or in part, to employees not subject to the provisions of such a collective bargaining agreement. The primary office of Patricia Hite is located in the Alfred E. Smith State Office Building, Albany, New York 12239.

22. Defendant-respondent the New York State Health Insurance Program (NYSHIP) is administered by the Department of Civil Service which provides health benefit plans for State employees and retirees.   NYSHIP is administered by the Department of Civil Service, and the offices of NYSHIP are located within and are part of the offices of the Department of Civil Service.

23. Defendant-respondent Director of Employee Relations is the head of the Governor's Office of Employee Relations (GOER), which is a unit of the Executive Department of New York State. GOER is responsible for negotiating and implementing collective bargaining agreements and other aspects of employee relations with recognized or certified collective bargaining units (unions) representing employees of the State of New York. Pursuant to Civil Service Law 161-a(1), the Director of Employee

−21−

Relations provides written directives to the President of the Civil Service Commission to implement the provisions of the collective bargaining agreements negotiated with collective bargaining units (unions) pursuant to Article 14 of the Civil Service Law, known as the "Taylor Law". The Director of Employee Relations is Gary Johnson, and the principal office of the Director of Employee Relations is 2 Empire State Plaza, Albany, New York 12223.

24.   Defendant-respondent Director of the Budget of the State of New York is the head of the New York State Division of the Budget. Both Under Civil Service Law 161-a(1) and 167(8) the Director of the Budget is responsible for approving any proposed extension by the President of the Civil Service Commission of the terms of a collective bargaining agreement between the State and an employee organization (union) to employees who are not subject to the provisions of such agreement.   The Director of the Budget is Robert L. Megna, and the principal offices of the Director of the Budget are located at New York State Capitol Building, Albany, New York 12224.

25.   Defendant-respondent the New York State Comptroller is a statewide elected officer responsible for the financial

affairs of New York State. The Comptroller is responsible for issuing retirement pension payments for current State retirees in the New York State Retirement System, and for calculating and implementing deductions from said pension payments for retirees' health insurance coverage as may be directed by the President of the Civil Service Commission pursuant to a lawful rule or regulation. The New York State Comptroller is Thomas P. DiNapoli, and the primary office of the Comptroller is located at 110 State Street Albany, New York 12236.   The Comptroller is being sued as a necessary party.

26.    The plaintiff-petitioners have no adequate remedy or relief at law or in equity other than the relief requested herein.

27.    No previous application has been made by plaintiff-petitioners for the judicial relief requested herein.

28.    The venue in Albany County is proper because it is the county where plaintiff-petitioner RPEA has its primary office, and it is the county wherein each of the defendant-respondents have their primary office.

## FACTUAL BACKGROUND

29.    New York State Civil Service Law Article 11 governs health insurance for civil service employees and retirees in New York State.

30.    Civil Service Law 165, entitled "Termination of active employment", provides that the health benefit coverage of any employee and his or her dependants shall cease upon the discontinuance of his or her term of office or employment, subject to regulations which may be promulgated or prescribed by the President of the Civil Service Commission.

31.    Civil Service Law 163(3), in pertinent part, provides that: "The President shall adopt regulations prescribing the conditions under which an employee or retired employee may elect to participate in or withdraw from the plan … [upon] from a retirement or pension plan or system administered and operated by the State of New York, or a civil division thereof, including the New York State Teachers' Retirement system and the optional retirement programs established under Article 3 Part V, and Article 8-b of the Education Law."

32.    Civil Service Law 167(1)(a), entitled "Contributions",

governs contributions, if any, which must be made by retirees

for their health insurance benefits. Civil service Law 167(1)(a)

provides, in pertinent part, as follows:

> "The full cost of premium or subscription charges for
> the coverage of retired state employees who are
> enrolled in the statewide and the supplementary health
> benefit plans established pursuant to this article and
> who retired prior to January first, nineteen hundred
> eighty-three shall be paid by the state. Nine-tenths
> of the cost of the premium or subscription charges for
> the coverage of state employees and retired state
> employees retiring on or after January first, nine-
> teen hundred eighty-three who are enrolled in the
> statewide and supplementary health benefit plans shall
> be paid by the state. Three-quarters of the cost of
> premium or subscription charges for the coverage of
> dependents of such state employees and retired state
> employees shall be paid by the state."

A copy of the pertinent parts of the Bill Jacket for Laws of

1983 Chapter 14, which enacted Civil Service Law 167(a)(1) with

the current percentage contribution scheme for medical benefits

for retirees, is attached hereto as Exhibit A.

33.    Under the statute, retired State employees who retired

prior to January 1, 1983 do not contribute payment for their

health insurance coverage as an individual, and the State pays

the full_cost of health insurance benefits for employees who

retired prior to January 1, 1983.

34.    Under the statute, State employees who retired on or

–25–

after January 1, 1983 contribute 10% of the cost of their health insurance premiums for individual coverage, and 25% of the cost for dependent coverage; the State pays the remaining 90% for individual coverage and 75% for dependent coverage.

35.    The provisions of Civil Service Law 167(1)(a) have been implemented in the regulations of the Civil Service Commission at 4 NYCRR Part 73, which has language parallel to the statute.

36.    The plaintiff-petitioners herein, Stanley Winter, Alan Dorn, Hon. Jules L. Spodek, Hon. David R. Townsend, Helen M. Bulson, Victor L. Costello, Joy Godin, Francis Hamblin, A. Joanne Lantz, William C. Moore, John H. Neary, David B. Smingler, Kathleen Stallmer, and Frosine Stolis are all retirees who were retired from State service after December 31, 1982 but prior to October 1, 2011, and since their retirements pursuant to the mandates of Civil Service Law 167(1)(a) the contribution percentages of all said plaintiff-petitioners for their NYSHIP coverage has been at the statutory rate of 10% for individual coverage and where appropriate 25% for dependent coverage.

37.    Civil service Law 161-a entitled "Implementation of negotiated agreements" provides that should an agreement between

the State and an employee organization provide for health
benefits, the President of the Civil Service Commission, after
receipt of written directions from the Director of Employee
Relations, shall implement the provisions of the contract by the
adopting regulations and, with the approval of the Director of
the Budget, the President may extend such benefits to employees
not subject to the agreement [emphasis supplied]. Civil Service
Law 161-a provides as follows:

> "Where, and to the extent that, an agreement between
> the state and an employee organization entered into
> pursuant to article fourteen of this chapter provides
> for health benefits, the president, after receipt of
> written directions from the director of employee
> relations shall implement the provisions of such
> agreement consistent with the terms thereof and to the
> extent necessary shall adopt regulations providing for
> the benefits to be thereunder provided. The
> president, with the approval of the director of the
> budget, may extend such benefits, in whole or in part,
> to employees not subject to the provisions of such
> agreement.
>
> 2. Insofar as the provisions of this section are
> inconsistent with any other act, general or special,
> or any rule or regulation adopted thereunder, the
> provisions of this section shall be controlling and
> insofar as the regulations promulgated by the
> president pursuant to subdivision one of this section
> are inconsistent with any rule or regulation, the
> provisions of such regulations shall be controlling.
>
> 3. There is hereby created a council on employee
> health insurance to supervise the administration of
> changes to the health benefit plan negotiated in

-27-

collective negotiations and to provide continuing policy direction to insurance plans administered by the state the provisions of any other law to the contrary notwithstanding. The council shall consist of the president, the director of the division of the budget, and the director of employee relations."

(Added L.1979, c. 307, §19. Amended L.1985, c. 302, §7; L.2010, c. 56, pt. T, §10, eff. June 22, 2010, deemed eff. April 1, 2010.)

38.    Upon information and belief, during May and June 2011 the State of New York and the Civil Service Employee Association (CSEA), on behalf of individuals in certain collective bargaining units, entered into collective bargaining agreements (contracts) pursuant to Article 14 of the Civil Service Law that provided for an increase in the percentage of contribution for health care coverage to be paid by employees in the relevant collective bargaining units represented by CSEA. A copy of the press release by Governor Cuomo dated June 22, 2011 describing the terms of the CSEA contract is attached hereto as Exhibit B.

39.    The terms and conditions of the relevant collective bargaining agreements entered into between the State and CSEA did not apply to (a) State employees in collective bargaining units represented by other certified or recognized employee organizations (such as the Public Employees Federation [PEF], the second largest collective bargaining unit) for the purposes

-28-

of Article 14 of the Civil Service Law, nor did the terms and conditions of the collective bargaining agreements entered into between the State and CSEA obtain with respect to (b) employees designated managerial or confidential within the meaning of the Taylor Law, (c) unrepresented employees, or (d) retirees.

40.    Laws of 2011 Chapter 491 entitled "State officers and employees-collective-bargaining-compensation and salaries" went into effect on August 17, 2011. Laws of 2011 Chapter 491 contained provisions implementing the terms of the CSEA contracts negotiated by CSEA and the State of New York. A copy of Laws of 2011 Chapter 491 is attached hereto as Exhibit C, and a copy of the Memorandum in Support for Senate 5856, the bill which became Chapter 491, is attached hereto as Exhibit D.

41.    Laws of 2011 Chapter 491 did not amend the provisions of Civil Service Law 167(1)(a) which specifically provides that the State will pay 90% of the cost of the premium for health care coverage for retired State employees who retired after January 1, 1983 and are enrolled in the State health care benefit plan, and 75% of the cost of the premium for retired State employees with coverage for dependents.

42.    Laws of 2011 Chapter 491 did not amend the provisions

-29-

of Civil Service Law 161-a, which provides that the President of the Civil Service Commission shall promulgate regulations to implement a collective bargaining agreement only with respect to "employees" not subject to the provisions of such agreement, and that the regulations promulgated by the President shall be controlling insofar as they are inconsistent with any rule or regulation.

43.   During the last week in August 2011, the New York State Department of Civil Service, Employee Benefits Division, issued a notification concerning changes in the percentage of the contributions that retirees would be required to pay for NYSHIP which was entitled "NYSHIP Rate Changes Effective October 1, 2011". This notification was received by each of the plaintiff-petitioners herein during the last week in August 2011, and, on information and belief, was sent to all retirees of the State of New York as the employer and to all vestees [as defined in 4 NYCRR 73.1(g)*] affected by such changes during the last week in August 2011. A copy of the notification entitled "NYSHIP Rate Changes Effective October 1, 2011" dated August

---

* Although both retirees and other vestees were affected by the change and received the notification, all individuals affected by the change will hereafter be referred to as "retirees".

−30−

2011 [hereafter referred to as "notification"] is attached hereto as Exhibit E.

44. Under the notification, the Department of Civil Service notified the retirees that the Department of Civil Service was administratively changing the percentages of their contributions for NYSHIP based solely on the collective bargaining agreements entered into by the State and CSEA, wherein it was stated: "The terms of a collective bargaining agreement have been administratively extended to Retirees and Vestees of New York State Government and their enrolled dependents." See Exhibit E, p. 1.

45. The notification informed the retirees that the administrative change would result in a change in the percentages of retirees contribution to payment for NYSHIP that would be effective on October 1, 2011, wherein it was stated: "This will result in a NYSHIP rate change effective October 1; the new rates included in this publication will be in effect through the end of 2011." See Exhibit E, p. 1.

46. The notification informed the retirees that as a result of the changes in the percentages of their contribution for NYSHIP, such individuals would have a special option

-31-

transfer during September 2011 within which to choose a new health insurance program, and that no action was required if such an individual wished to keep his or her current health insurance option, wherein it was stated: "As a result of these rate changes, there will be a Special Option Transfer Period, September 1 through September 30, 2011. You may select the Empire Plan or a NYSHIP-approved Health Maintenance Organization (HMO) serving your area. No action is required if you wish to keep your current health insurance option." See Exhibit E, p. 1.

47.    The notification informed the retirees of the various health insurance coverage options from among which they might choose, and the monthly premium payments for each available to such individuals. See Exhibit E, pp. 2-3, Rate Sheet. The notification also informed the retirees that this was the only notice they would receive of a rate change in medical benefit programs wherein it was stated: "Check your plan - this is the only notice of a rate change." See Exhibit E, pp. 2-3, Rate Sheet.

48.    The notification did not inform retirees that there would be a percentage increase in contributions that retirees would be paying for their NYSHIP participation, but the

notification did provide a chart showing the dollar amount that retirees would be required to contribute for each of the health insurance programs from among which they might select the one in which they elected to participate. See Exhibit E, p.4, "Enrollee Contributions for Retirees and Vestees".

49.    The chart in the notification contained dollar amounts for NYSHIP which had calculated built-in increases in payments by retirees of 2% for each health insurance program. Thus, according to the figures in the chart, where retirees had formerly contributed 10% for individual health care insurance premiums, retirees with individual coverage would pay 12% commencing on October 1; and retirees who had formerly contributed 25% for family health insurance premiums would pay 27%. See Exhibit E, p. 4, "Enrollee Contributions for Retirees and Vestees".

50.    The notification informed retirees that in order to choose a different health care plan option they must submit a "NYSHIP Option Transfer Request" form to the Department of Civil Service Employee Benefits Division no later than September 30, 2011. See Exhibit E, pp. 5-6, "If You Are Changing Your Health Insurance Option" and "NYSHIP Option Transfer Request".

-33-

51.    The  notification  informed  retirees  that  deductions
from their monthly retirement pension checks or direct deposit
would   be   made   automatically   at   the   new   percentage   of
contribution for health insurance premiums commencing on October
1, 2011, and might be reflected in their September 30 pension
check. See Exhibit E, p. 7, "Sample Pension Check Stub".

52.    During  the  last  week  in  August  2011,  the  New  York
State Department of Civil Service, Employee Benefits Division,
also   issued   a   Special   Report   concerning   changes   in   the
percentage of contributions that retirees would be required to
pay for NYSHIP which was entitled "NYSHIP HMO SPECIAL REPORT."
This two page Special Report contains a summary of the changes
effective October 1, 2011 contained in the notification.    This
Special Report was received by each of the plaintiff-petitioners
herein  during  the  last  week  in  August  2011,  and,  upon
information and belief, was sent to all State retirees and
vestees affected by such changes during the last week in August
2011.  A copy of the Special Report entitled "NYSHIP HMO SPECIAL
REPORT" dated August 2011 [hereafter referred to as "special
report"] is attached hereto as Exhibit F.

53.    This   increase   of   the   percentage   of   retiree

contributions for NYSHIP was administratively imposed on retirees notwithstanding the fact that the State Legislature did not amend Civil Service Law 167(1)(a), nor otherwise provide any authorization for an increase in the percentage of a retiree's contribution for NYSHIP. See Affidavit of Harvey Randall attached hereto.

54. On August 23, 2011 Stanley Winter, President of RPEA, wrote a letter to Mr. Alphonso David, Deputy Secretary to Governor Cuomo, with a copy to Gary Johnson, Director of the Governor's Office of Employee Relations, requesting the that the Civil Service Commission and Governor Cuomo not increase the percentages of the contributions for NYSHIP for retirees. The letter recounted a conversation plaintiff-petitioner Winter had at a meeting with the Deputy Secretary to the Governor and Commissioner Gary Johnson on August 11, 2011, and at the meeting RPEA had advocated that there be no increase in the percentages of contributions for NYSHIP for current retirees. A copy of the letter from President Winter to the Deputy Secretary to the Governor and Director Gary Johnson dated August 23, 2011 is attached hereto as Exhibit G.

55. On September 14, 2011 Alan Dorn, Executive Director of

−35−

RPEA, wrote a letter to Patricia Hite, Acting President of the New York State Civil Service Commission, objecting to the extension of the terms of a collective bargaining agreement concerning increased percentages of contributions for NYSHIP to current retirees, since retirees are neither employees within the meaning of the Taylor Law nor subject to the terms and conditions of a collective bargaining agreement negotiated by the State and an employee organization pursuant to the Taylor Law. The letter stated that retired employees are not in a collective bargaining unit within the meaning of Article 14 of the Civil Service Law, and that employee organizations negotiating for health insurance benefits do not and may not represent retirees, and therefore there was no authority for the Department of Civil Service to extend the terms of a collective bargaining agreement to persons who have already retired. The letter requested that the percentages of the contributions being paid by retirees not be increased, and that any proposed regulations should not include any increases in the percentages of contributions for NYSHIP to be paid by retirees who had retired prior to October 1, 2011. A copy of the letter from Executive Director Alan Dorn to Patricia Hite, Acting New York

−36−

State Department of Civil Service Commission President, dated September 14, 2011 is attached hereto as Exhibit H, and a copy of a similar letter by Executive Director Dorn to Thomas DiNapoli, New York State Comptroller, also dated September 14, 2011, requesting the Comptroller not to deduct the increased percentages of contributions for NYSHIP from a retiree's retirement allowance, is attached hereto as Exhibit I.

56.    More than 30 days have elapsed since RPEA requested the Department of Civil Service not to increase the percentages of contributions for NYSHIP for retirees, and RPEA has not received any acknowledgement of its request, and has not been advised of any action taken in response to its letter.

57.    On October 12, 2011 the Department of Civil Service caused an emergency rulemaking notification to be published in the New York State Register under Rulemaking Activities, and this emergency rulemaking was entitled "Provision of the Health Benefit Plan for Active and Retired New York State Employees" (I.D. No. CVS-41-11-00007-E). A complete copy of the emergency rulemaking notification published by the Department of Civil Service on October 12, 2011 [hereafter referred to as "emergency rule"] is attached hereto as Exhibit J. The emergency rule

–37–

purports to extend the increases in the percentages of contributions for NYSHIP agreed to by CSEA on behalf of employees of the State in collective bargaining units represented by CSEA and to unilaterally impose such changes in the percentages of the contributions for NYSHIP set out in the collective bargaining agreements between the State and CSEA to retirees including the plaintiff-petitioners.

58.     On October 20, 2011 Alan Dorn, Executive Director of RPEA, wrote a letter to Patricia Hite, Acting President of the New York State Civil Service Commission, objecting to the emergency rule published in the State Register on October 12, 2011.     The letter also pointed out that the introducer's Memorandum in support of S5486, which was enacted as Laws of 2011 Chapter 491 and in pertinent part amended Civil Service Law 167(8), stated that the amendment applied to "employers and employees" share of health premium costs under NYSHIP, not retirees.     A copy of the letter from Executive Director Alan Dorn to Patricia Hite, Acting New York State Civil Service Commission President, dated October 20, 2011 is attached hereto as Exhibit K.

## FIRST CAUSE OF ACTION

59.   The allegations contained in paragraphs numbered 1 through 58 above are hereby repeated and realleged as if fully set forth herein.

60.   The first cause of action is that the increase in the percentage of contribution by State retirees to pay for health insurance premiums administratively implemented by the Department of Civil Service violates the plain language of Civil Service Law 167(1)(a) and is ultra vires.

61.   Civil Service Law 167(1)(a) mandates that the State pay 90% of the cost of the premium for individual health care coverage of retired State employees, and 75% of the cost for dependent coverage, for employees of the State as the employer who retired on or after January 1, 1983.

62.   Pursuant to Civil Service Law 167(1)(a) the resulting maximum percentage of contributions for the cost of the premium for retirees participating in NYSHIP is 10% for individual coverage and 25% for dependent coverage.

63.   The notification and emergency rule issued by the

Department of Civil Service purport to administratively increase the percentages of contributions for NYSHIP by retirees to 12% for individual coverage, and to 27% for dependent coverage .

64.    The notification and emergency rule issued by the Department of Civil Services purports to increase the percentages of contributions for NYSHIP by retirees for their participation in NYSHIP by 2% across-the-board.

65.    The increase in percentages of contributions for NYSHIP by retirees for health care coverage is in direct contradiction to mandate set out in Civil Service Law 167(1)(a).

66.    The Department of Civil Service and other defendant-respondents have no authority to increase the percentage of contribution retirees must pay for their health care plans.

67.    The language in Civil Service Law 167(1)(a) limiting the percentages of contributions by retirees for NYSHIP to 10% for individual coverage and to 25% for dependent coverage is mandatory.

68.    The language in Civil Service Law 167(1)(a) limiting the percentages of contributions for NYSHIP by retirees to 10% for individual coverage and to 25% for dependent coverage, is clear and unambiguous and does not require any special expertise

$-40-$

to interpret or decipher.

69.   The Department of Civil Service and other defendant-respondents have no authority to increase a retiree's percentages of contributions for NYSHIP for individual and/or dependent health care coverage to exceed that mandated by Civil Service Law 167(1)(a)

70.   The Department of Civil Service and other defendants-respondents who increased or approved the increase in the percentages of contributions for NYSHIP required of retirees for their NYSHIP individual and/or dependent coverages acted contrary to law, arbitrary and capricious, without authority and ultra vires.

71.   The purported increase in the percentages of contributions for NYSHIP by retirees for their individual and dependent coverage described in the notification and emergency rule, and the coming regulations, by the President of the Civil Service Commission and other defendant-respondents violates Civil Service Law 167(1)(a) and should be declared invalid and null and void.

## SECOND CAUSE OF ACTION

72.    The allegations contained in paragraphs numbered 1 through 71 above are hereby repeated and realleged as if fully set forth herein.

73.    The second cause of action is that the administrative increase in the percentage of contribution to be paid by State retirees for NYSHIP violates the Contract Clause in Article I, Section 10(1) of the United States Constitution and Article I Section 6 of the New York State Constitution.

74.    Article I, Section 10(1) of the United States Constitution provides that "[n]o State shall......pass any ...... Law impairing the Obligation of Contracts."

75.    Similarly, Article I, Section 6 of the New York State Constitution provides "[n]o person shall be deprived of life, liberty or property without due process of law", which means that the State may not deprive a party to a contract of an essential contractual attribute without due process of law.

76.    Civil Service Law 167(1)(a) creates a property interest in behalf of State retirees in the percentage of

−42−

payments for medical benefits under NYSHIP to be paid by the State of 90% for individual coverage and 75% for dependent coverage.

77. Civil Service Law 167(1)(a) creates contractual rights in behalf of State retirees which are binding on the State of New York.

78. The notification and emergency rule, and forthcoming regulations, are an impairment of the promise by the State contained in Civil Service Law 167(1)(a).

79. The administrative increase in the percentage of contribution proposed to be paid by State retirees for their medical coverage under NYSHIP is not related to promotion of the health, comfort, safety or welfare of society in general, and is not an exercise of the police power of the State.

80. The administrative increase in the percentage of contribution proposed to be paid by State retirees for their medical coverage under NYSHIP does not have a reasonable relationship to any legitimate goal under the State's police power.

81. The administrative increase in the percentage of contribution proposed to be paid by State retirees for their

medical coverage under NYSHIP is purely a revenue measure, which is insufficient to abrogate the State's obligations to retirees.

82.   The administrative increase in the percentage of premiums proposed to be paid by State retirees for health care coverage under NYSHIP violates the Contract Clause of the United States and New York State constitutions, and the notification and emergency rule, and the coming regulations, implemented by the President of the Civil Service Commission and other defendant-respondents should be declared invalid and null and void.

## THIRD CAUSE OF ACTION

83.   The allegations contained in paragraphs numbered 1 through 82 above are hereby repeated and  realleged as if fully set forth herein.

84.   The third cause of action is that the administrative increase in the percentage of contribution to be paid by State retirees for NYSHIP violates Article 3 Section 1 of the New York State Constitution because the Legislature has not delegated authority to increase contributions by retirees for medical

benefits to the President of the Civil Service Commission or any other agency.

85. Article 3, Section 1 of the New York State Constitution provides that "The legislative power of this State shall be vested in the Senate and Assembly."

86. An administrative agency such as the President of the Civil Service Commission and other defendant-respondents possess only those powers delegated to it by the Legislature, together with those powers required by necessary implication.

87. The Legislature has not repealed the provisions of Civil Service Law 167(1)(a) which obligate the State of New York to pay 90% of the premiums for individual coverage under NYSHIP and 75% of the premiums for dependent coverage for State retirees.

88. The Legislature has not delegated authority to the President of the Civil Service Commission, or any of the other defendant-respondents, to repeal or modify Civil Service Law 167 (1)(a).

89. The administrative increase in the percentage of premiums proposed to be paid by State retirees for their health care coverage violates the power of the State legislature to fix

-45-

public policy with regard to payment of medical benefits for State retirees.

90.    The administrative increase in the percentage of premiums paid by State retirees for their medical benefits contained in the notification and emergency rule, and the coming regulations, are invalid because legislative power was not delegated to the President of the Civil Service Commission, and the said increases should be declared invalid and null and void.

WHEREFORE, it is respectfully requested that this Court grant a final judgment and order pursuant to CPLR 3001 and CPLR Article 78 containing the following relief:

(a) Declaring that the administrative implementation of an increase in the percentages of the contributions for medical benefits under NYSHIP payable by State retirees and/or their dependents participating in NYSHIP in excess of that set forth in Civil Service Law 167(1)(a) allegedly effective on October 1, 2011 is invalid and null and void; and

(b) Declaring that the emergency regulation filed on September 27, 2011 and to take effect on October 1, 2011, and published in the State Register in an issue dated October 12, 2011 promulgated by the New York State Department of Civil Service

-46-

purportedly implementing the increase in the percentages of contributions for NYSHIP by retirees participating in NYSHIP is invalid and null and void; and

(c) Granting a preliminary and permanent injunction prohibiting the defendant-respondents or any of the their officers, agents, or employees from implementing the October 1, 2011 increases in the percentages of the contributions for health insurance benefits under NYSHIP by retirees participating in NYSHIP; and

(d) Directing that any increases for NYSHIP paid by State retirees since October 1, 2011 under color of the notification and/or said emergency regulation be refunded; and

(e) For the costs and disbursements of this action; and

(f) For such other and further relief as the Court may deem just and proper.

DATED: Albany, New York
       November 30, 2011

LEWIS B. OLIVER, JR., ESQ.
Oliver Law Office
Attorney for Plaintiff-Petitioners
156 Madison Avenue
Albany, New York 12202
518-463-7962




# EXHIBIT A

PROGRAM BILL # 1

*Schermerhorn*

GOVERNOR'S PROGRAM BILL

1983

M E M O R A N D U M

AN ACT to amend the civil service
law to implement agreements
between the state and
employee organizations

## Purpose of the Bill:

To effectuate provisions of various memoranda of understanding executed pursuant to the collectively-negotiated agreements between the State and the employee organizations representing its employees dealing with health insurance benefits and costs.

## Summary of Provisions of the Bill:

The bill amends Section 167 of the Civil Service Law to decrease the State's contribution for premium or subscription charges on behalf of current employees enrolled in the statewide health insurance plan from the current one hundred percent contribution to nine-tenths of such charges. The bill would have retroactive effect from December 15, 1982.

The bill also appropriates $1.6 million to implement revised health insurance benefit packages for employees of signatory employee organizations and unrepresented State employees.

## Statement in Support of the Bill:

The burgeoning cost of employee health insurance premiums has severely strained the financial resources of the State. The State and the employee organizations representing State workers have agreed to a reduction of the State's contribution for the

000007

-2-

premium or subscription charges for employees enrolled in the
statewide health insurance plan.  At present, the State pays the
full cost of such charges.  This bill would reduce the State's
contribution to 90% or nine-tenths of premium or subscription
costs for current employees.  The State would continue full
contribution for employees who retired prior to January 1, 1983.
This bill would provide immediate financial relief for the State
in reference to insurance costs and would assist the long-term
effort to contain employee insurance costs.

Fiscal Implications:

The bill includes an appropriation of $1,683,000 from the
General Fund-State Purposes.

B-201

10-Day Bill
BUDGET REPORT ON BILLS          Session Year: 19 83

**SENATE**                     Introduced by:              **ASSEMBLY**
                               Sen. Schermerhorn
No. 1257-A                                                 No.

Law:      Civil Service         Sections: 167, subd. 1

Division of the Budget recommendation on the above bill:

Approve: ____X____ Veto: _____ No Objection: _____ No Recommendation: _____

1. **Subject and Purpose:** This bill would implement certain unenacted portions of
   collectively negotiated health insurance benefit and cost agreements
   between the State and the employee organizations representing certain
   State employees.

2. **Summary of Provisions:** Effective December 15, 1982, this measure would
   decrease the State's contribution for premium or subscription charges on
   behalf of all employees (including employees designated management/
   confidential) enrolled in the statewide health insurance plan from the
   existing 100 percent contribution rate to ninety percent of such charges.
   The State shall continue to cover the full costs of premium or subscription
   charges for those State employees enrolled in the statewide health
   insurance plan who retired prior to January 1, 1983; however, the State
   contribution rate for such coverage for employees who retire on or after
   January 1, 1983 shall be limited to ninety percent of such charges.

3. **Legislative History:** Chapters 78, 218, 220, 465 and 924 of the Laws
   of 1982 enacted the major compensation and benefit provisions of the
   collective bargaining agreements covering State employees.  Chapter 5
   of the Laws of 1983 provided appropriations necessary to cover expenses
   associated with provisions of certain other negotiated health benefits
   and services.

4. **Arguments in Support:**

   a. This measure provides the necessary authorization to implement
      negotiated agreements between the State and employee organizations
      representing State employees.  This action is appropriate in view
      of the "good faith" efforts of the State and the employee organi-
      zations to reach agreement on this critical issue.

   b. The State would save ten percent of those costs which
      it must currently allocate for employee health insurance sub-
      scriptions.  Reducing the current 100 percent contribution rate
      to ninety percent would result in direct cost savings to the State
      of approximately $10,000,000 annually.  This cost-sharing approach
      would be consistent with the State's other efforts to contain costs
      and would be highly appropriate in view of efforts generally in the
      health care field to manage or contain escalating health care costs.

## 000012

Date _____  Examiner: _____

Disposition: _____  Chapter No: 14          Veto No.

- 2 -

5.  Possible Objections:  None known.

6.  Other State Agencies Interested:  The Office of Employee Relations and
    the Department of Civil Service support this bill.  The Department
    of Audit and Control would be likely to have an interest in this bill.

7.  Known Position of Others:  None known, but the employee organizations
    representing State employees would be likely to have an interest
    in this bill.

8.  Budgetary Implications:  If this measure is enacted, the State will save
    approximately $10,000,000 annually in direct costs of health insurance
    coverage for State employees.

9.  Recommendation:  Because this measure would implement certain unenacted
    portions of collectively negotiated health insurance benefit and
    cost agreements between the State and employee organizations repre-
    senting certain State employees and result in significant direct cost
    savings to the State, we recommend its approval.

3/3/83

000013

S-1257-A

NEW YORK STATE DEPARTMENT OF CIVIL SERVICE                    March 28, 1983

SENATE
1257-A
                                              Introduced by Senator Schermerhorn

RECOMMENDATION:        Approval.

STATUTES INVOLVED:     Civil Service Law, §167(1)

EFFECTIVE DATE:        Immediately and deemed to be in effect on and after
                       December 15, 1982.

DISCUSSION:

        This bill would decrease the State's contribution for premium or
subscription charges on behalf of current employees enrolled in the statewide
health insurance plan from the current one hundred percent contribution to
nine-tenths of such charges.   The bill would have retroactive effect to
December 15, 1982.   However, the State would continue full contribution for
employees who retired prior to January 1, 1983.

        We were consulted concerning the drafting of this bill and we fully
support its enactment.

        The burgeoning cost of employee health insurance premiums has severely
strained the financial resources of the State.   The employee organizations
representing the State workers that would be effected by this bill have agreed to
a reduction of the State's contribution for these charges.   The estimated cost
savings to the State from the enactment of this bill for just the 2¼ year period
covering January 1, 1983 to March 31, 1985 is $32.7 million.


                                    Joseph A. F. Valenti
                              President, Civil Service Commission


000016

*S 1257-A*



**STATE OF NEW YORK**
**INSURANCE DEPARTMENT**
**TWO WORLD TRADE CENTER**
**NEW YORK 10047**

James P. Corcoran
SUPERINTENDENT OF INSURANCE

March 24, 1983

Honorable Alice Daniel
Counsel to the Governor
Executive Chamber
State Capitol
Albany, New York 12224

Re:  Senate Bill 1257-A
     (Sen. Schermerhorn)

Dear Ms. Daniel:

This is in response to your request for our comments concerning the cap-
tioned bill.  The bill, which would be retroactive to December 15, 1982,
would amend Section 167 of the Civil Service Law to effect certain reduc-
tions in the State's contributions to the cost of health insurance for
employees of New York State.

At present Section 167 provides that the State shall pay the full cost of
the health insurance for both active and retired State employees.

Under the amended section the State would continue to pay the full cost
for employees who had retired prior to January 1, 1983.  After that date
the State would pay 90% of the health insurance cost for active employees
and for those retiring on and after January 1, 1983.  There is no change
with respect to the health insurance of dependents, for which the State
continues to pay 75% of the cost.

The changes in the Civil Service Law embodied in the bill have already been
negotiated with the employee representatives.

The Department has no objection to the measure.

Very truly yours,

James P. Corcoran
Superintendent of Insurance

000017

S 5846 ROBACH  Same as Uni. A 8513 Abbate
**Governor Program # 22**
ON FILE: 06/22/11 Civil Service Law
TITLE....Relates to compensation and other terms and conditions
of employment of certain state officers and employees
**Currently on Senate Committee Agenda**
Senate Standing Committee on Rules
Senator Dean G. Skelos, Chair
June 22, 2011

| | |
|---|---|
| 06/22/11 | REFERRED TO RULES |
| 06/22/11 | ORDERED TO THIRD READING CAL.1524 |
| 06/22/11 | MESSAGE OF NECESSITY |
| 06/22/11 | PASSED SENATE |
| 06/22/11 | DELIVERED TO ASSEMBLY |
| 06/23/11 | referred to ways and means |
| 06/23/11 | substituted for a8513 |
| 06/23/11 | ordered to third reading rules cal.605 |
| 06/23/11 | message of necessity - 3 day message |
| 06/23/11 | passed assembly |
| 06/23/11 | returned to senate |
| 08/05/11 | DELIVERED TO GOVERNOR |
| 08/17/11 | SIGNED CHAP.491 |

A8513 Abbate  Same as Uni. S 5846  ROBACH
**Governor Program # 22**
Civil Service Law
TITLE....Relates to compensation and other terms and conditions of
employment of certain state officers and employees
**Currently on Assembly Committee Agenda**
Rules (SILVER)
OFF THE FLOOR, Thursday, June 23, 2011

ADDENDUM
**Currently on Assembly Committee Agenda**
Ways and Means (FARRELL)
OFF THE FLOOR, Thursday, June 23, 2011

| | |
|---|---|
| 06/22/11 | referred to ways and means |
| 06/23/11 | reported referred to rules |
| 06/23/11 | reported |
| 06/23/11 | rules report cal.605 |
| 06/23/11 | substituted by s5846 |
| S05846 | **ROBACH** |
| 06/22/11 | REFERRED TO RULES |
| 06/22/11 | ORDERED TO THIRD READING CAL.1524 |
| 06/22/11 | MESSAGE OF NECESSITY |
| 06/22/11 | PASSED SENATE |
| 06/22/11 | DELIVERED TO ASSEMBLY |
| 06/23/11 | referred to ways and means |
| 06/23/11 | substituted for a8513 |
| 06/23/11 | ordered to third reading rules cal.605 |
| 06/23/11 | message of necessity - 3 day message |
| 06/23/11 | passed assembly |
| 06/23/11 | returned to senate |
| 08/05/11 | DELIVERED TO GOVERNOR |
| 08/17/11 | SIGNED CHAP.491 |

| | | | | |
|---|---|---|---|---|
| 06/23/11 | S5846 | Assembly Vote | Yes: 136 | No : 1 |
| 06/22/11 | S5846 | Senate Vote | Aye: 62 | Nay: 0 |

Go to Top of Page

**Floor Votes:**

06/23/11 S5846  Assembly Vote Yes: 136 No : 1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Yes | Abbate | Yes | Abinanti | Yes | Amedore | ER | Arroyo |
| Yes | Aubry | Yes | Barclay | Yes | Barron | Yes | Benedetto |
| Yes | Bing | Yes | Blankenbush | ER | Boyland | Yes | Boyle |
| Yes | Braunstein | Yes | Brennan | Yes | Bronson | Yes | Brook-Krasny |
| Yes | Burling | Yes | Butler | Yes | Cahill | Yes | Calhoun |
| Yes | Camara | Yes | Canestrari | Yes | Castelli | Yes | Castro |
| Yes | Ceretto | Yes | Clark | Yes | Colton | Yes | Conte |
| Yes | Cook | Yes | Corwin | ER | Crespo | ER | Crouch |
| Yes | Curran | Yes | Cusick | Yes | Cymbrowitz | Yes | DenDekker |
| Yes | Dinowitz | Yes | Duprey | Yes | Englebright | Yes | Farrell |
| Yes | Finch | Yes | Fitzpatrick | Yes | Friend | Yes | Gabryszak |
| Yes | Galef | Yes | Gantt | ER | Gibson | Yes | Giglio |
| Yes | Glick | Yes | Goodell | Yes | Gottfried | Yes | Graf |
| Yes | Gunther A | Yes | Hanna | ER | Hawley | Yes | Hayes |
| Yes | Heastie | Yes | Hevesi | Yes | Hikind | Yes | Hooper |
| Yes | Hoyt | Yes | Jacobs | Yes | Jaffee | Yes | Jeffries |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Yes | Johns | Yes | Jordan | Yes | Katz | Yes | Kavanagh |
| Yes | Kellner | ER | Kirwan | Yes | Kolb | Yes | Lancman |
| Yes | Latimer | Yes | Lavine | Yes | Lentol | Yes | Lifton |
| Yes | Linares | Yes | Lopez P | ER | Lopez V | Yes | Losquadro |
| Yes | Lupardo | No | Magee | Yes | Magnarelli | Yes | Maisel |
| Yes | Malliotakis | Yes | Markey | Yes | McDonough | Yes | McEneny |
| Yes | McKevitt | Yes | McLaughlin | Yes | Meng | Yes | Miller D |
| Yes | Miller J | Yes | Miller M | Yes | Millman | Yes | Molinaro |
| Yes | Montesano | Yes | Morelle | Yes | Moya | Yes | Murray |
| Yes | Nolan | Yes | Oaks | Yes | O'Donnell | Yes | Ortiz |
| Yes | Palmesano | Yes | Paulin | Yes | Peoples-Stokes | Yes | Perry |
| Yes | Pretlow | Yes | Ra | Yes | Rabbitt | Yes | Raia |
| Yes | Ramos | Yes | Reilich | Yes | Reilly | Yes | Rivera J |
| Yes | Rivera N | Yes | Rivera P | Yes | Roberts | ER | Robinson |
| Yes | Rodriguez | Yes | Rosenthal | Yes | Russell | Yes | Saladino |
| Yes | Sayward | Yes | Scarborough | Yes | Schimel | Yes | Schimminger |
| Yes | Schroeder | Yes | Simotas | Yes | Smardz | Yes | Spano |
| Yes | Stevenson | Yes | Sweeney | Yes | Tedisco | Yes | Tenney |
| Yes | Thiele | Yes | Titone | Yes | Titus | Yes | Tobacco |
| Yes | Weinstein | Yes | Weisenberg | Yes | Weprin | Yes | Wright |
| Yes | Zebrowski K | Yes | Mr. Speaker | | | | |

Go to Top of Page

**Floor Votes:**

06/22/11 S5846 Senate Vote Aye: 62 Nay: 0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Aye | Adams | Aye | Addabbo | Aye | Alesi | Aye | Avella |
| Aye | Ball | Aye | Bonacic | Aye | Breslin | Aye | Carlucci |
| Aye | DeFrancisco | Aye | Diaz | Aye | Dilan | Aye | Duane |
| Aye | Espaillat | Aye | Farley | Aye | Flanagan | Aye | Fuschillo |
| Aye | Gallivan | Aye | Gianaris | Aye | Golden | Aye | Griffo |
| Aye | Grisanti | Aye | Hannon | Aye | Hassell-Thompson | Aye | Huntley |
| Aye | Johnson | Aye | Kennedy | Aye | Klein | Aye | Krueger |
| Aye | Kruger | Aye | Lanza | Aye | Larkin | Aye | LaValle |
| Aye | Libous | Aye | Little | Aye | Marcellino | Aye | Martins |
| Aye | Maziarz | Aye | McDonald | Aye | Montgomery | Aye | Nozzolio |
| Aye | O'Mara | Aye | Oppenheimer | Aye | Parker | Aye | Peralta |
| Aye | Perkins | Aye | Ranzenhofer | Aye | Ritchie | Aye | Rivera |
| Aye | Robach | Aye | Saland | Aye | Sampson | Aye | Savino |
| Aye | Serrano | Aye | Seward | Aye | Skelos | Aye | Smith |
| Aye | Squadron | Aye | Stavisky | Aye | Stewart-Cousins | Aye | Valesky |
| Aye | Young | Aye | Zeldin | | | | |

## CHAPTER LAW MEMORANDA

permissive referendum to the voters on their own motion. This authority was inadvertently removed by last year's law. In the absence of such authority, county electors will be required to bear the trouble and expense of a petition campaign. Such efforts by the voters ought not be required where it is obvious that a referendum will be necessary because of the resolution's controversial nature. Additionally, the deletion made by Chapter 210 of Laws of 1982 has rendered a provision found in §34(4) of the Municipal Home Rule Law ineffective. This section provides that a county legislative body may submit certain categories of charters or local laws to the voters "on its own motion, in the manner provided by subdivision (4) of Section 101 of the County Law..." Unless the deleted language is restored to Section 101 of the County Law, this language in the Municipal Home Rule Law can not be implemented.

---

#### Governor's Program Memorandum

**Civil Service: Health Insurance**
S. 1257-A Schermerhorn   Ch. 14
*Civil Service Law: §167.* The purpose of this bill is to effectuate provisions of various memoranda of understanding executed pursuant to the collectively-negotiated agreements between the State and the employee organizations representing its employees dealing with health insurance benefits and costs. The burgeoning cost of employee health insurance premiums has severely strained the financial resources of the State. The State and the employee organizations representing State workers have agreed to a reduction of the State's contribution for the premium or subscription charges for employees enrolled in the statewide health insurance plan. At present, the State pays the full cost of such charges. This bill would reduce the State's contribution to 90% or nine-tenths of premium or subscription costs for current employees. The State would continue full contribution for employees who retired prior to January 1, 1983. This bill would provide immediate financial relief for the State in reference to insurance costs and would assist the long-term effort to contain employee insurance costs.

---

#### Memorandum of the Senate Finance Committee

**NYS Budget Financing**
A. 4259-A Budget   Ch. 15
S. 3459-B Budget
*Tax Law: Amend Generally; Penal Law: §60.35; Criminal Procedure Law: §420.35; Vehicle and Traffic Law: §§148-a, 205, 317, 363, 370, 401, 410, 420, 503. Add §§121-d, -e, 137-a, 1809; Alcoholic Beverage Control Law: Repeal and Add §67; State Finance Law: Add §14-a; Environmental Conservation Law: Add §§71-4101, -4103; Commerce Law: Repeal Article 4-A; New York City Administrative Code: §§T46-112.0, -118.0 -122.0, -184.0, -188.0, -297.0; Real Property Tax Law: §485; Executive Law: §§529, 817; Civil Practice Law and Rules: §§8018, 8020; Uniform District Court Act: §1911; Uniform City Court Act: §1911; Judiciary Law: §39; Transportation Law: Repeal §§86, 92, 93, Add §§92-94; Banking Law: §17; Insurance Law: §32-a; Public Service Law: §18-a; Workers' Compensation Law: §§50, 151, 228; Education Law: §§3006, 6525, 6605, 6707, 6711-a, 6735, 6806, 6907, 7207, 7305, 7325, 7406, 7604, 7705, 7905; Abandoned Property Law: §§300, 1315, 1316. This bill*

29




# EXHIBIT B

Governor Andrew Cuomo Announces Five Year Labor Agreement wi...          http://www.governor.ny.gov/print/704

Published on *Governor Andrew M. Cuomo* (http://www.governor.ny.gov)

Home › Printer-friendly



# Governor Andrew Cuomo Announces Five Year Labor Agreement with Civil Service Employees Association

[1]
Albany, NY (June 22, 2011)

Governor Andrew M. Cuomo today announced that his administration has reached a five-year labor agreement with the Civil Service Employees Association (CSEA). CSEA represents 66,000 New York State employees and is one of the largest public employee unions in the state. Upon ratification, this agreement would provide CSEA protection from broad layoffs.

The agreement includes a freeze on base wages for 3 years and a redesign of the employee health care contribution and benefit system, saving $73 million this fiscal year and $93 million next fiscal year. If adopted by the state's other collective bargaining units, the agreement will reduce workforce costs by $1.63 billion over the course of the agreement, including $1.27 billion of savings in healthcare costs, and would achieve sufficient savings to avoid the need for broad layoffs arising from the gap in the state operations budget. Overall, the five-year agreement if adopted statewide would be $3.8 billion less expensive to the state than the previous four-year agreement reached in 2007.

"I applaud CSEA's leadership for their hard work to reach this deal which is a win-win for CSEA members and the State of New York," Governor Cuomo said. "This tentative contract, if adopted by the other bargaining units, means layoffs needed to achieve needed workforce savings would be avoided. CSEA members are the backbone of state government, responsible for delivering services to 19 million New Yorkers. I commend the union and its leadership for making a significant contribution to help get the state's fiscal house in order and making the shared sacrifices these difficult times require. Working together, we will turn this state around and get our economy moving once again."

CSEA President Danny Donohue said "These are not ordinary times and CSEA and the Cuomo Administration have worked very hard at the bargaining table to produce an agreement that balances shared sacrifice with fairness and respect. CSEA stepped up to help produce the labor savings that Governor Cuomo sought while the Governor responded to CSEA's concerns about job security along with a wage and benefit package that recognizes the pressures on working people. I have known Governor Cuomo for many years and I know that his commitment to organized labor and working families is deeply held and second to no one."

**Base Wages:** Under the five year agreement, there will be no general salary increase in Fiscal Year 2011-12; 2012-13; 2013-14. Employees will receive a 2 percent increase in 2014-15 and 2015-16.

| 2011-12 | 2012-13 | 2013-14 | 2014-15 | 2015-16 |
|---------|---------|---------|---------|---------|
| 0% | 0% | 0% | 2% | 2% |

Savings: The 2011 wage agreement is $2.5 billion less costly to the state than the 2007 agreement, if adopted through the state workforce.

Health Care System Redesign: The agreement includes a series of reforms in the employee health care system which saves $61 million annually in the CSEA contract and $263 million over the contract term. If adopted by all bargaining units, these reforms would save $1.27 billion. The components of the health system redesign are:

Health Care Contributions: The agreement includes substantial changes to employee health care contributions bringing public employee benefits more in line with the private sector. The contribution for health care benefits have not changed in 30 years, while the cost of the state's health care program has increased 100 percent in the past decade. The agreement reflects a two percent increase in contributions for Grade 9 employees and below, and a six percent increase for Grade 10 employees and above. (Under the agreement,

or example, the state will pay 69 percent family coverage for a Grade 10 employee and abo d the emp oyee will pay 31 percent. The prior split was 75 percent state/25 percent employee. For individual coverage, a Grade 10 employee and a bove will pay 16 percent and the state share will be 84 percent. The prior split was 10 percent employee/90 percent state).

Savings: The CSEA agreement results in $30 million in annual savings from this provision, and $141.7 million over the contract term. If adopted for the entire workforce, this change will save $165 million per year, and $764 million over the term of the contract.

**Health Care Opt Out:** For the first time, the state is offering an opt-out option. Health care premiums cost $16,000 for family coverage and $7300 for individual coverage. Employees electing to opt out of the health insurance program must provide proof of alternative coverage and will receive $1000 or $3000 for the cessation of individual or family coverage, respectively. This will save the state thousands of dollars for each employee who opts out.

Savings: The opt-out will save $7.3 million annually and $31 million over the contract term for CSEA alone. The opt-out achieves $21.8 million in annual savings, and $91.8 million over the five year term if adopted statewide.

**Health Benefit Redesign:** The health benefit plan system of co-pays, deductibles, and programs has been redesigned to encourage healthy choices and control costs of pharmaceutical products. For example, for the first time the plan will cover the use of nurse practitioners and "minute clinics" and encourage employees to use these services when appropriate instead of hospital emergency rooms.

Savings: The CSEA savings for this provision are $22.3 million annually and $95.7 million over the contract term. If adopted by all bargaining units, these changes generate $85.5 million annually when adopted statewide, and $361.4 million over the term of the contract.

**Deficit Reduction Leave:** Under the agreement, employees will take a five day unpaid deficit reduction leave during fiscal year 2011-12 and four days unpaid leave during fiscal year 2012-13. The value of the days taken not worked will be deducted from employee pay over the remaining pay periods equally during the fiscal year in which they are taken. Employees will be repaid the value of the 4 days from 2012-13 in equal installments starting at the end of the contract term.

Savings: The furloughs will yield $380 million in savings if adopted by all bargaining units.

**Performance advances, longevity and retention payments:** Performance advances and longevity payments will continue to be in effect. Current employees who remain active through 2013 will earn a onetime retention payment of $775 in 2013 and $225 in 2014 in recognition of working without a wage increase for three years.

**Patient Abuse Reforms:** Both CSEA and the State agree that the system in place for investigating allegations of abuse of patients at state facilities does not adequately protect our most vulnerable population in state care. While CSEA employees are dedicated caretakers, allegations of abuse must be dealt with thoroughly. Under the agreement, the State and CSEA will take a number of steps to improve the quality of care, including creating a completely new Select Panel on Patient Abuse with A-list arbitrators and creating a table of penalties for increasingly severe acts of misconduct, along with a number of other reforms.

**Review of Temporary Employees:** The State and CSEA will form a joint committee to review the use of temporary employees and contractors and make recommendations to the Division of Budget and Department of Civil Service.

**Layoff Protection:** CSEA employees will receive broad layoff protection for fiscal year 2011-12 and 2012-13 a ising from the $450 million budget gap. Workforce reductions due to management decisions to close or restructure facilities authorized by legislation, SAGE

recommendations or material or unar█████ed changes in the State's fiscal circumstances are█████vered by this limitation.

The tentative agreement must be ratified by CSEA rank and file members.

Negotiations for the State were led by a special team appointed by the Governor comprising Todd R. Snyder, Senior Managing Director of Rothschild Inc. and Co-Head of Rothschild's Restructuring and Reorganization group; and Joseph M. Bress, former head of the Governor's Office of Employee Relations and former Vice President of Labor Relations at Amtrak, under the direction of Howard Glaser, Director of State Operations.

Source URL: http://www.governor.ny.gov/press/082211csaeaagreement

Links:
[1] http://www.governor.ny.gov/

New York Reaches Deal With Largest Public-Employee Union - NY...      http://www.nytimes.com/2011/06/23/nyregion/new-york-reaches-de...



**The New York Times** Reprints

This copy is for your personal noncommercial use only. You can order presentation-ready copies for distribution to your colleagues, clients or customers here or use the "Reprints" tool that appears next to any article. Visit www.nytreprints.com for samples and additional information. Order a reprint of this article now.



Descendants
New Blvd

June 22, 2011

# Cuomo Secures Big Givebacks in Union Deal

**By DANNY HAKIM**

ALBANY — The state's largest public-employee union, acknowledging the pressures on government workers around the nation, agreed on Wednesday to major wage and benefits concessions in a pact to avoid sweeping layoffs.

The five-year agreement between Gov. Andrew M. Cuomo, a Democrat, and the Civil Service Employees Association, includes a three-year wage freeze, the first furloughs ever for state workers and an increase in the amount employees must pay toward their health insurance.

Savings would amount to $73 million this year, and as much as $1.6 billion over five years, if other labor unions representing public workers agreed to similar concessions. Absent those agreements, there could still be layoffs of some public workers, the Cuomo administration said.

The agreement was announced as the governor and lawmakers negotiated over a number of issues in the waning hours of the legislative session. Senate Republicans had not decided on Wednesday night whether to allow a vote on the most contentious issue, the proposed legalization of same-sex marriage.

The negotiations between Mr. Cuomo and the union, which represents about a third of the 186,000 state workers, were largely free of the public rancor that accompanied efforts to reduce spending on labor in New Jersey and Wisconsin.

"I want to applaud C.S.E.A. for understanding, truly, the situation that the state is in," the governor told reporters on Wednesday night. "The union really stepped up and helped the state out at a very precarious time, from a financial point of view."

In a statement, Danny Donohue, the president of the union, said, "These are not ordinary times, and C.S.E.A. and the Cuomo administration have worked very hard at the bargaining table to produce an agreement that balances shared sacrifice with fairness and respect."

The deal is subject to ratification by union members, who will vote by mail over the next several weeks. It would provide pay raises of 2 percent in the fourth and fifth years of the contract.

Mr. Cuomo, facing shrinking resources because of the recession, had earlier in the legislative session won approval of a state budget that depended on a $450 million cut in labor costs, either from layoffs or union concessions.

He had also proposed reducing pension benefits for new government workers; that proposal is unlikely to be approved in this session, but will be a potential flash point going forward.

Edmund J. McMahon, director of the Empire Center for New York State Policy, a research group that favors reduced government spending, called the deal a mixed bag.

On one hand, Mr. McMahon said, the agreement was not an effort at significant transformation, like that tried by Gov. Scott Walker of Wisconsin, who sought to end collective bargaining for many public-employee unions. On the other hand, he said, the New York deal marked a sharp departure from the state's previous four-year labor contract, which put in place base wage increases of 3 percent a year for the first three years and 4 percent in the fourth year.

"In Wisconsin, they tried to change the rules," Mr. McMahon said, adding, "If you're negotiating within the rules of the game, this is probably the best deal you can get."

Under the terms of the deal announced on Wednesday, lower-paid employees — those whose salaries start at about $33,000 or less — will have their share of health care premiums rise to 12 percent, from 10 percent, for individuals. More highly paid employees will have their share rise to 16 percent. The cost of family health coverage will also increase; for more highly paid employees, for example, the share will rise to 31 percent, from 25 percent. State officials expect that, as in the past, the health care changes will also apply to retirees, a potentially critical part of the overall savings.

In addition to taking a five-day furlough in the current fiscal year, employees must take a four-day leave in the year after, though the second-year furlough will be repaid at the end of the contract term.

Employees who remain through 2013 will earn one-time bonus payments of $775 in 2013 and $225 in 2014 — such one-time payments do not compound over time like salary increases, which increase long-term cash costs for the state and the burden on the pension system.

In addition to the wage and benefits concessions, the union also agreed to an overhaul of the disciplinary procedures for state employees accused of abuse or neglect of the developmentally disabled. The state and the union will develop a series of punishments for employees who commit disciplinary offenses in an effort to end the seemingly random punishments handed out by arbitrators to employees in the past. And there will also be an overhaul of the current arbitration panel and higher pay in an effort to recruit better arbitrators.

The Cuomo administration had pressed for the changes after a series of articles in The New York Times examining the treatment of the disabled in group homes and state-run institutions. Among the newspaper's findings: The state has retained workers who committed physical or sexual abuse, rehired many workers it had fired, shunned whistle-blowers and rarely reported allegations of abuse to law enforcement officials.

While employees represented by the Civil Service Employees Association averted layoffs, the Cuomo administration is still negotiating with a number of other unions, including the Public Employees Federation, which represents 56,000 employees and is the second-largest union of state employees. The state has put forward a July 15 deadline for layoffs in other unions if an agreement is not reached to reduce their wages and benefits.

The Public Employees Federation has had more contentious talks thus far with the Cuomo administration, going so far as to post the administration's negotiating position on the Internet, but its position was weakened by the agreement announced on Wednesday.

Ken Brynien, president of the Public Employees Federation, issued only a brief statement, saying his union "stands ready to meet with the state's negotiators to reach an agreement."

 

# CSEA announces tentative agreement on 5-year contract

(Rick Karlin/Times Union)

Based on the details in the union's release, the offer to CSEA is far better than the Cuomo administration's most recent offer to PEF — although it's worth noting that that offer never even got to the press-release stage.

CSEA's leaders met at the Desmond on Wednesday morning to discuss the details of the offer. The main ingredients, from CSEA's release:

### Wages

- No across the board salary increase in FY 2011 and 2012;
- $1,000 (not added to base pay) starting April 1, 2013; ($775 lump sum payable April 1, 2013 / $225
- lump sum payable April 1, 2014)
- 2 percent across the board increase payable April 1, 2014;
- 2 percent across the board increase payable April 1, 2015;
- No changes in payments of step increments;
- No changes in Longevity payments.

### Furloughs

- Five unpaid days off in FY 2011; (The value of the five days will be spread over the remaining pay periods equally.)
- Four unpaid days off in FY 2012. (The value of the four days will be spread equally over pay period in the fiscal year — employees will be reimbursed for the value of these days starting in year five of the contract.)

### Health Benefits

- Grade 9 employees and below – 2 percent increase in premium; (Individuals – 10 percent increasin to 12 percent and family coverage – 25 percent increasing to 27 percent of premium cost.)
- Grade 10 employees and above – 6 percent increase in premium; (Individuals – 10 percent increasing to 16 percent and family coverage – 25 percent increasing to 31 percent of premium cost.)
- Various incremental changes in coverage provisions, co-payments and prescription drug benefits;
- Maintains funding for dental, prescription eyeglass and other benefits provided through the CSEA Employee Benefit Fund;
- No change in ability to use sick leave credits to help defray the cost of health insurance premiums in retirement.

A 2 p.m. press conference is planned at the union's headquarters on Washington Avenue.

Here's CSEA's full press release:

CSEA – New York's leading union – has reached a tentative contract agreement with New York state on a five-year deal to avert impending layoffs of CSEA-represented state employees and keep people working. The agreement was reached after challenging negotiations with the Cuomo administration that will provide long term benefits to both to the 66,000 CSEA-represented state Executive Branch employees and New
York taxpayers.

"I applaud CSEA's leadership for their hard work to reach this deal which is a win-win for CSEA members and the State of New York," said Governor Andrew Cuomo. "I commend the union and its leadership for making a significant contribution to help get the state's fiscal house in order and making the shared sacrifices these difficult times require. Working together, we will turn this state around and get our economy moving once again."

"These are not ordinary times and CSEA and the Cuomo administration have worked very hard at the bargaining table to produce an agreement that balances shared sacrifice with fairness and respect," said CSEA President Danny Donohue.

"CSEA stepped up to help produce the labor savings that Governor Cuomo sought while the governor responded to CSEA's concerns about job security along with a wage and benefit package that recognizes the pressures on working people," Donohue said.

"CSEA believes our members and all fair-minded New Yorkers will see this agreement as a responsible labor-management approach to facing the challenges in front of our state," Donohue said.

 

The agreement includes provisions to keep CSEA-represented state employees on-the job delivering essential services to New Yorkers. it will rescind imminent plans to issue layoff notices to CSEA-represented employees included n the 9,800 reductions previously announced by the Cuomo administration. It also provides other job security assurances for the life of the contract.

Wages:

- • No across the board salary increase in FY 2011 and 2012;
- • $1,000 (not added to base pay) starting April 1, 2013; ($775 lump sum payable April 1, 2013 / $225
- lump sum payable April 1, 2014)
- • 2 percent across the board increase payable April 1, 2014;
- • 2 percent across the board increase payable April 1, 2015;
- • No changes in payments of step increments;
- • No changes in Longevity payments.

Furloughs

- • Five unpaid days off in FY 2011; (The value of the five days will be spread over the remaining pay periods equally.)
- • Four unpaid days off in FY 2012. (The value of the four days will be spread equally over pay period in the fiscal year – employees will be reimbursed for the value of these days starting in year five of the contract.)

Health Benefits

- • Grade 9 employees and below – 2 percent increase in premium: (Individuals – 10 percent increasin to 12 percent and family coverage – 25 percent increasing to 27 percent of premium cost.)
- • Grade 10 employees and above – 6 percent increase in premium; (Individuals – 10 percent increasing to 16 percent and family coverage – 25 percent increasing to 31 percent of premium cost.)
- • Various incremental changes in coverage provisions, co-payments and prescription drug benefits;
- • Maintains funding for dental, prescription eyeglass and other benefits provided through the CSEA Employee Benefit Fund;
- • No change in ability to use sick leave credits to help defray the cost of health insurance premiums in retirement.

The agreement would also maintain all side letter labor-management agreements currently in place between CSEA and New York state and establishes a committee to address the state's use of temporary employees, consultants and contractors to determine how state employees can be better utilized to fill this role. The tentative agreement must be acted upon by the state legislature and ratified by CSEA rank and file members. CSEA will be conducting informational meetings and providing full details of the agreement to all members prior to the ratification vote which will be conducted by mail in the coming weeks.

CSEA negotiating team is comprised of 23 CSEA state employees selected to represent their coworkers. They were led at the table by CSEA Director of Contract Administration Ross Hanna and the union's professional negotiating staff.

# EXHIBIT C

 

Westlaw Delivery Summary Report for OLIVER,LEWIS B J

| | |
|---|---|
| Your Search: | "chapter 491" /s 2011 |
| Date/Time of Request: | Thursday, October 20, 2011 16:26 Central |
| Client Identifier: | LO |
| Database: | USER-DEFINED-MB |
| Citation Text: | NY LEGIS 491 (2011) |
| Lines: | 1423 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Westlaw.

2011 Sess. Law News of N.Y. Ch. 491 (S. 5846) (McKINNEY'S)

McKINNEY'S 2011 SESSION LAW NEWS OF NEW YORK
234th LEGISLATURE


Additions are indicated by **Text**; deletions by
~~Text~~.
Vetoes are indicated by ~~Text~~;
stricken material by ~~Text~~.


CHAPTER 491
S. 5846
STATE OFFICERS AND EMPLOYEES--COLLECTIVE BARGAINING--COMPENSATION AND SALARIES


Approved and effective August 17, 2011

AN ACT to amend the civil service law and the state finance law, in relation to compensation and other terms and conditions of employment of certain state officers and employees, to authorize funding of joint labor-management committees, to implement agreements between the state and an employee organization; to amend chapter 333 of the laws of 1969 amending the civil service law and other laws relating to salary increases for certain state officers and employees, in relation to rates of pay for certain state employees; to repeal certain provisions of the civil service law relating thereto; and making an appropriation for the purpose of effectuating certain provisions hereof (Part A); to amend the civil service law and the correction law, in relation to salaries; to repeal certain provisions of such laws relating thereto; and making an appropriation for the purpose of effectuating certain provisions hereof (Part B) .

The People of the State of New York, represented in Senate and Assembly, do enact as follows:

§ 1. This act enacts into law legislation necessary to implement collective bargaining agreements, to make changes to an existing

collective bargaining agreement, and to implement changes to salary and benefits for certain state officers and employees excluded from collective negotiating units. Each component is wholly contained within a Part identified as Parts A through B. The effective date for each particular provision contained within such Part is set forth in the last section of such Part. Any provision in any section contained within a Part, including the effective date of the Part, which makes reference to a section "of this act", when used in connection with that particular component, shall be deemed to mean and refer to the corresponding section of the Part in which it is found. Section two of this act sets forth the general severability clause applying to this act. Section three of this act sets forth the general effective date of this act.

PART A

COLLECTIVE BARGAINING AGREEMENT BETWEEN

THE STATE OF NEW YORK AND THE CIVIL SERVICE

EMPLOYEES ASSOCIATION, INC. FOR 2011–2016

§ 1. Subparagraphs 1, 2, 3 and 4 of paragraph a of subdivision 1 of section 130 of the civil service law are REPEALED and three new subparagraphs 1, 2 and 3 are added to read as follows:

<< NY CIV SERV § 130 >>

(1) **Effective April first, two thousand ten for officers and employees on the administrative payroll and effective March twenty-fifth, two thousand ten for officers and employees on the institutional payroll:**

| SG | HR | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | | JR INCR |
|----|------|--------|--------|--------|--------|--------|--------|-------|---------|
| 1  | 22041 | 22785 | 23529 | 24273 | 25017 | 25761 | 26505 | 27249 | 744 |
| 2  | 22883 | 23663 | 24443 | 25223 | 26003 | 26783 | 27563 | 28343 | 780 |
| 3  | 24025 | 24840 | 25655 | 26470 | 27285 | 28100 | 28915 | 29730 | 815 |
| 4  | 25074 | 25937 | 26800 | 27663 | 28526 | 29389 | 30252 | 31115 | 863 |
| 5  | 26274 | 27178 | 28082 | 28986 | 29890 | 30794 | 31698 | 32602 | 904 |
| 6  | 27744 | 28683 | 29622 | 30561 | 31500 | 32439 | 33378 | 34317 | 939 |
| 7  | 29278 | 30263 | 31248 | 32233 | 33218 | 34203 | 35188 | 36173 | 985 |
| 8  | 30928 | 31951 | 32974 | 33997 | 35020 | 36043 | 37066 | 38089 | 1023 |
| 9  | 32653 | 33722 | 34791 | 35860 | 36929 | 37998 | 39067 | 40136 | 1069 |
| 10 | 34521 | 35642 | 36763 | 37884 | 39005 | 40126 | 41247 | 42368 | 1121 |
| 11 | 36523 | 37700 | 38877 | 40054 | 41231 | 42408 | 43585 | 44762 | 1177 |
| 12 | 38612 | 39830 | 41048 | 42266 | 43484 | 44702 | 45920 | 47138 | 1218 |
| 13 | 40903 | 42177 | 43451 | 44725 | 45999 | 47273 | 48547 | 49821 | 1274 |
| 14 | 43270 | 44596 | 45922 | 47248 | 48574 | 49900 | 51226 | 52552 | 1326 |
| 15 | 45781 | 47163 | 48545 | 49927 | 51309 | 52691 | 54073 | 55455 | 1382 |

| 16 | 48346 | 49792 | 51238 | 52684 | 54130 | 55576 | 57022 | 58468 | 1446 |
| 17 | 51067 | 52595 | 54123 | 55651 | 57179 | 58707 | 60235 | 61763 | 1528 |
| 18 | 54018 | 55614 | 57210 | 58806 | 60402 | 61998 | 63594 | 65190 | 1596 |
| 19 | 56912 | 58587 | 60262 | 61937 | 63612 | 65287 | 66962 | 68637 | 1675 |
| 20 | 59889 | 61630 | 63371 | 65112 | 66853 | 68594 | 70335 | 72076 | 1741 |
| 21 | 63101 | 64924 | 66747 | 68570 | 70393 | 72216 | 74039 | 75862 | 1823 |
| 22 | 66484 | 68389 | 70294 | 72199 | 74104 | 76009 | 77914 | 79819 | 1905 |
| 23 | 70038 | 72026 | 74014 | 76002 | 77990 | 79978 | 81966 | 83954 | 1988 |
| 24 | 73850 | 75908 | 77966 | 80024 | 82082 | 84140 | 86198 | 88256 | 2058 |
| 25 | 77931 | 80080 | 82229 | 84378 | 86527 | 88676 | 90825 | 92974 | 2149 |

(2) Effective March twenty-seven, two thousand fourteen for officers and employees on the administrative payroll and effective April three, two thousand fourteen for officers and employees on the institutional payroll:

| SG | HR | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | | JR INCR |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 22482 | 23241 | 24000 | 24759 | 25518 | 26277 | 27036 | 27795 | 759 |
| 2 | 23341 | 24137 | 24933 | 25729 | 26525 | 27321 | 28117 | 28913 | 796 |
| 3 | 24506 | 25337 | 26168 | 26999 | 27830 | 28661 | 29492 | 30323 | 831 |
| 4 | 25575 | 26455 | 27335 | 28215 | 29095 | 29975 | 30855 | 31735 | 880 |
| 5 | 26799 | 27721 | 28643 | 29565 | 30487 | 31409 | 32331 | 33253 | 922 |
| 6 | 28299 | 29257 | 30215 | 31173 | 32131 | 33089 | 34047 | 35005 | 958 |
| 7 | 29864 | 30869 | 31874 | 32879 | 33884 | 34889 | 35894 | 36899 | 1005 |
| 8 | 31547 | 32590 | 33633 | 34676 | 35719 | 36762 | 37805 | 38848 | 1043 |
| 9 | 33306 | 34396 | 35486 | 36576 | 37666 | 38756 | 39846 | 40936 | 1090 |
| 10 | 35211 | 36354 | 37497 | 38640 | 39783 | 40926 | 42069 | 43212 | 1143 |
| 11 | 37253 | 38454 | 39655 | 40856 | 42057 | 43258 | 44459 | 45660 | 1201 |
| 12 | 39384 | 40626 | 41868 | 43110 | 44352 | 45594 | 46836 | 48078 | 1242 |
| 13 | 41721 | 43020 | 44319 | 45618 | 46917 | 48216 | 49515 | 50814 | 1299 |
| 14 | 44135 | 45488 | 46841 | 48194 | 49547 | 50900 | 52253 | 53606 | 1353 |
| 15 | 46697 | 48107 | 49517 | 50927 | 52337 | 53747 | 55157 | 56567 | 1410 |
| 16 | 49313 | 50788 | 52263 | 53738 | 55213 | 56688 | 58163 | 59638 | 1475 |
| 17 | 52088 | 53647 | 55206 | 56765 | 58324 | 59883 | 61442 | 63001 | 1559 |
| 18 | 55098 | 56726 | 58354 | 59982 | 61610 | 63238 | 64866 | 66494 | 1628 |
| 19 | 58050 | 59759 | 61468 | 63177 | 64886 | 66595 | 68304 | 70013 | 1709 |
| 20 | 61087 | 62863 | 64639 | 66415 | 68191 | 69967 | 71743 | 73519 | 1776 |
| 21 | 64363 | 66222 | 68081 | 69940 | 71799 | 73658 | 75517 | 77376 | 1859 |
| 22 | 67814 | 69757 | 71700 | 73643 | 75586 | 77529 | 79472 | 81415 | 1943 |
| 23 | 71439 | 73467 | 75495 | 77523 | 79551 | 81579 | 83607 | 85635 | 2028 |
| 24 | 75327 | 77426 | 79525 | 81624 | 83723 | 85822 | 87921 | 90020 | 2099 |
| 25 | 79490 | 81682 | 83874 | 86066 | 88258 | 90450 | 92642 | 94834 | 2192 |

(3) Effective March twenty-six, two thousand fifteen for officers and employees on the administrative payroll and effective



April two, two thousand fifteen for officers and employees on the institutional payroll:

| SG | HR | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | | JR INCR |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 22932 | 23706 | 24480 | 25254 | 26028 | 26802 | 27576 | 28350 | 774 |
| 2 | 23808 | 24620 | 25432 | 26244 | 27056 | 27868 | 28680 | 29492 | 812 |
| 3 | 24996 | 25844 | 26692 | 27540 | 28388 | 29236 | 30084 | 30932 | 848 |
| 4 | 26087 | 26985 | 27883 | 28781 | 29679 | 30577 | 31475 | 32373 | 898 |
| 5 | 27335 | 28275 | 29215 | 30155 | 31095 | 32035 | 32975 | 33915 | 940 |
| 6 | 28865 | 29842 | 30819 | 31796 | 32773 | 33750 | 34727 | 35704 | 977 |
| 7 | 30461 | 31486 | 32511 | 33536 | 34561 | 35586 | 36611 | 37636 | 1025 |
| 8 | 32178 | 33242 | 34306 | 35370 | 36434 | 37498 | 38562 | 39626 | 1064 |
| 9 | 33972 | 35084 | 36196 | 37308 | 38420 | 39532 | 40644 | 41756 | 1112 |
| 10 | 35915 | 37081 | 38247 | 39413 | 40579 | 41745 | 42911 | 44077 | 1166 |
| 11 | 37998 | 39223 | 40448 | 41673 | 42898 | 44123 | 45348 | 46573 | 1225 |
| 12 | 40172 | 41439 | 42706 | 43973 | 45240 | 46507 | 47774 | 49041 | 1267 |
| 13 | 42555 | 43880 | 45205 | 46530 | 47855 | 49180 | 50505 | 51830 | 1325 |
| 14 | 45018 | 46398 | 47778 | 49158 | 50538 | 51918 | 53298 | 54678 | 1380 |
| 15 | 47631 | 49069 | 50507 | 51945 | 53383 | 54821 | 56259 | 57697 | 1438 |
| 16 | 50299 | 51804 | 53309 | 54814 | 56319 | 57824 | 59329 | 60834 | 1505 |
| 17 | 53130 | 54720 | 56310 | 57900 | 59490 | 61080 | 62670 | 64260 | 1590 |
| 18 | 56200 | 57861 | 59522 | 61183 | 62844 | 64505 | 66166 | 67827 | 1661 |
| 19 | 59211 | 60954 | 62697 | 64440 | 66183 | 67926 | 69669 | 71412 | 1743 |
| 20 | 62309 | 64120 | 65931 | 67742 | 69553 | 71364 | 73175 | 74986 | 1811 |
| 21 | 65650 | 67546 | 69442 | 71338 | 73234 | 75130 | 77026 | 78922 | 1896 |
| 22 | 69170 | 71152 | 73134 | 75116 | 77098 | 79080 | 81062 | 83044 | 1982 |
| 23 | 72868 | 74937 | 77006 | 79075 | 81144 | 83213 | 85282 | 87351 | 2069 |
| 24 | 76834 | 78975 | 81116 | 83257 | 85398 | 87539 | 89680 | 91821 | 2141 |
| 25 | 81080 | 83316 | 85552 | 87788 | 90024 | 92260 | 94496 | 96732 | 2236 |

§ 2. Subdivision 8 of section 167 of the civil service law, as added by chapter 442 of the laws of 1999, is amended to read as follows:

<< NY CIV SERV § 167 >>

8. Notwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible employees covered by such agreement may be ~~increased~~ modified pursuant to the terms of such agreement ~~and for a duration provided by such agreement and pursuant to rules and regulations as may be established by the president. Such increase in state cost shall only apply during the period of eligibility provided by such agreement and shall not be applied during retirement.~~ The president, with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement referenced above and shall promulgate the necessary rules or regulations to implement this provision.

 

§ 3. Subdivision 2 of section 208 of the civil service law, as amended by section 3 of part A of chapter 10 of the laws of 2008, is amended to read as follows:

<< NY CIV SERV § 208 >>

2. An employee organization certified or recognized pursuant to this article shall be entitled to unchallenged representation status until seven months prior to the expiration of a written agreement between the public employer and said employee organization determining terms and conditions of employment. For the purposes of this subdivision, (a) any such agreement for a term covering other than the fiscal year of the public employer shall be deemed to expire with the fiscal year ending immediately prior to the termination date of such agreement, (b) any such agreement having a term in excess of three years shall be treated as an agreement for a term of three years, provided, however, any such agreement between the state and an employee organization representing employees in the executive or judicial branches which commences in the calendar year two thousand ~~seven~~ eleven having a term in excess of three years shall be treated as an agreement for a term certain specified in such agreement but in no event for a term greater than four years, **and** (c) extensions of any such agreement shall not extend the period of unchallenged representation status ~~;~~ ~~and (d) notwithstanding any provision of law to the contrary, the interest arbitration award issued pursuant to the provisions of paragraph (e) of subdivision four of section two hundred nine of this article binding the executive branch of the state of New York and the employee organization which represents the collective negotiating unit consisting of troopers and the unit consisting of commissioned and noncommissioned officers in the division of state police, covering a period commencing April first, nineteen hundred ninety-nine, shall be treated as a written agreement for the term specified in such award solely for the representation purposes of this section.~~

§ 4. Paragraph (e) of subdivision 3 of section 130 of the civil service law, as amended by section 4 of part A of chapter 10 of the laws of 2008, is amended to read as follows:

<< NY CIV SERV § 130 >>

(e) ~~(i) Prior to April first, two thousand ten, and notwithstanding any inconsistent provision of law, officers and employees to whom paragraph a of subdivision one of this section applies who, on or after April first, nineteen hundred eighty-seven, on their anniversary date have five or more years of continuous service as defined by paragraph (c) of this subdivision at a basic annual salary rate equal to or in excess of the job rate or maximum salary of their salary grade, but below the first longevity step and whose performance for the most recent rating period was rated at least "satisfactory" or its equivalent, shall have their basic annual salary increased to the first longevity step or shall have their basic annual salary as otherwise effective increased by seven hundred fifty dollars, or by eight hundred seventy-five dollars on or after April first, two thousand seven; or by one thousand dollars on or after April first, two thousand eight; or by one thousand one hundred twenty-five dollars on or after April first, two thousand nine or as much of that amount as will not result in the new basic annual salary exceeding the step two longevity step. Notwithstanding any inconsistent provision of law, officers and employees to whom paragraph a of subdivision one of this section apply who, on or after April first, nineteen hundred eighty-seven, on their anniversary date have ten or more years of continuous service as defined by paragraph (c) of this subdivision at a basic annual salary rate equal to or in excess of the job rate or maximum salary of their salary grade, but below the second longevity step and whose performance for the most recent rating period was rated at least "satisfactory" or its equivalent, shall have their basic annual salary increased to the second longevity step as found in paragraph a of subdivision one of this section. Such increases to longevity steps by eligible officers or employees shall become effective on the first day of the payroll period which next begins following the anniversary date which satisfies the prescribed service requirements. For the purposes of this paragraph the term continuous service as defined by paragraph (c) of this subdivision for employees in the division of military and naval affairs unit shall refer to uninterrupted service in the civilian service of the division of military and naval affairs.~~




(ii) Officers Where, and to the extent that, an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter on behalf of officers and employees serving in positions in the administrative services unit, institutional services unit, operational services unit or military and naval affairs unit so provides officers and employees to whom paragraph a of subdivision one of this section applies who, on or after April first, two thousand ten eleven, on their anniversary date have five or more years , but less than ten years, of continuous service as defined by paragraph (c) of this subdivision at a basic annual salary rate equal to or in excess of the job rate or maximum salary of their salary grade, shall receive a lump sum payment in the amount of one thousand two hundred fifty dollars. Officers Where, and to the extent that, an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter on behalf of officers and employees serving in positions in the administrative services unit, institutional services unit, operational services unit or military and naval affairs unit so provides officers and employees to whom paragraph a of subdivision one of this section applies who, on or after April first, two thousand ten eleven, on their anniversary date have ten or more years of continuous service as defined by paragraph (c) of this subdivision at a basic annual salary rate equal to or in excess of the job rate or maximum salary of their salary grade shall receive a lump sum payment in the amount of two thousand five hundred dollars.

Such lump sum payment shall be in addition to and not part of the employee's basic annual salary, provided however that any amount payable by this paragraph shall be included as compensation for overtime and retirement purposes.

Such lump sum payment shall be payable in April of each fiscal year, or as soon as practicable thereafter, for those eligible employees who have achieved five or more, or ten or more years of continuous service as defined by paragraph (c) of this subdivision at a basic annual salary rate equal to or in excess of the job rate or maximum salary of their salary grade during the period October first through March thirty-first of the previous fiscal year. Such payment shall be payable in October of each fiscal year, or as soon as practicable thereafter, for those eligible employees who have achieved five or more, or ten or more years of continuous service as defined by paragraph (c) of this subdivision at a basic annual salary rate equal to or in excess of the job rate or maximum salary of their salary grade during the period April first through September thirtieth of that same fiscal year. All compensation already included in an employee's basic annual salary pursuant to subparagraph (i) of this paragraph shall remain included in such basic annual salary.

§ 5. Subdivision 12–d of section 8 of the state finance law, as amended by section 5 of part A of chapter 10 of the laws of 2008, is amended to read as follows:

<< NY STATE FIN § 8 >>

12–d. Notwithstanding any inconsistent provision of the court of claims act, examine, audit and certify for payment any claim submitted and approved by the head of a state department or agency, other than a department or agency specified in subdivision twelve of this section, for personal property of an employee damaged or destroyed in the course of the performance of official duties without fault on his part by an inmate, patient or client of such department or agency after March thirty-first, two thousand seven eleven and prior to April first, two thousand eleven sixteen, provided no such claim may be certified for payment to an officer or employee who is in a collective negotiating unit until the director of employee relations shall deliver to the comptroller a certificate letter that there is in effect with respect to such negotiating unit a written collectively negotiated agreement with the state pursuant to article fourteen of the civil service law which provides therefor. Payment of any such claim shall not exceed the sum of three hundred dollars. No person submitting a claim under this subdivision shall have any claim for damages to such personal property approved pursuant to the provision of subdivision four of section five hundred thirty of the labor law or any other applicable provision of law.

§ 6. Subdivision 12–e of section 8 of the state finance law, as amended by section 6 of part A of chapter 10 of the laws of 2008, is amended to read as follows:

<< NY STATE FIN § 8 >>

12–e. Notwithstanding any inconsistent provision of the court of claims act, where, and to the extent that, an agreement between the state and an employee organization entered into pursuant to article fourteen of the civil service law on behalf of officers and employees serving in positions in the professional, scientific and technical services unit, administrative services unit, institutional services unit, operational services unit or and military and naval affairs unit so provides, examine, audit and certify for payment any claim submitted and approved by the head of a state department or agency for personal property of an officer or employee damaged or destroyed in the actual performance of official duties without fault or negligence of the officer or employee other than a claim specified and covered by subdivision twelve or twelve-d of this section after March thirty-first, two thousand ~~seven eleven~~ and before April first, two thousand ~~eleven~~ sixteen. Payment of such claim shall not exceed the sum of three hundred fifty dollars. Where an agreement between the state and such employee organization entered into pursuant to article fourteen of the civil service law provides for payment to be made to officers and employees by a state department or agency, such payments for claims not in excess of the amount specified in subdivision three of section one hundred fifteen of this chapter may be made from a petty cash account established pursuant to section one hundred fifteen of this chapter and in the manner prescribed therein and pursuant to regulations of the comptroller. No person submitting a claim under this subdivision shall have any claim for damages to such personal property approved pursuant to the provisions of subdivision four of section five hundred thirty of the labor law or any other applicable provision of law.

§ 7. Section 200 of the state finance law is amended by adding a new subdivision 5 to read as follows:

<< NY STATE FIN § 200 >>

5. Notwithstanding any law to the contrary, by agreement between the state and an employee organization entered into pursuant to article fourteen of the civil service law, or by an interest arbitration award binding the state and an employee organization pursuant to article fourteen of the civil service law, or by the director of budget for state officers and employees in the executive branch who are in positions which are not in collective negotiating units, plans may be established to reduce the basic annual salary, hourly rate or per diem for any employee within the purview of such agreement, interest arbitration award, or the budget director's authority. Any plan or plans established under this section will be implemented when the budget director notifies the director of the governor's office of employee relations and delivers such plan or plans to the comptroller, at which point the comptroller will take the necessary actions to reduce, restore, or repay compensation, provided however, that the comptroller must take such actions wholly within the fiscal year that such plan requires. After the cessation of such plan, the comptroller shall restore such salary, hourly rate or per diem to the amount in effect immediately before the commencement of such plan.

§ 8. Subdivision 1 of section 135 of the civil service law is amended adding a new paragraph (d) to read as follows:

<< NY CIV SERV § 135 >>

(d) payments made pursuant to a collective bargaining agreement negotiated pursuant to article fourteen of this chapter or regulations promulgated by the president pursuant to subdivision three of section one hundred sixty-three of this chapter permitting payment to an employee or officer in exchange for the employee's election to withdraw from the health insurance

https://web2.westlaw.com/print/printstream.aspx?rs=WLW11.10&vr=

plan established pursuant to article eleven of this chapter. Such payments shall not be considered part of an employee's basic annual salary and shall not be considered compensation for the purposes of overtime calculation or retirement.

§ 9. Compensation for certain state officers and employees in collective negotiating units. 1. The provisions of this section shall apply, except as otherwise stated in this section, to all full-time officers and employees in the collective negotiating units designated as the administrative services unit, the institutional services unit, the operational services unit, or the division of military and naval affairs unit established pursuant to article 14 of the civil service law.

2. (a) Effective March 28, 2013 for officers and employees on the administrative payroll and effective April 4, 2013 for officers and employees on the institutional payroll pursuant to article 14 of the civil service law a lump sum payment of $775 shall be made to each employee in such units in full-time annual salaried employment status who was (i) active on the date of ratification of the agreement between the state and the negotiating unit covering such employee and (ii) in continuous service, as defined by paragraph (c) of subdivision 3 of section 130 of the civil service law, from that date until March 28, 2013 for officers and employees on the administrative payroll and on April 4, 2013 for officers and employees on the institutional payroll. Such lump sum shall be considered salary for final average salary retirement purposes but shall not become part of basic annual salary. Notwithstanding the foregoing provisions of this subdivision, officers and employees who would have otherwise been eligible to receive such lump sum payment, but who were not on the payroll on such date, shall be eligible for said payment if they return to full-time employment status during the fiscal year 2013–2014 without a break in continuous service.

(b) Effective March 27, 2014 for officers and employees on the administrative payroll and effective April 3, 2014 for officers and employees on the institutional payroll pursuant to article 14 of the civil service law a lump sum payment of $225 shall be made to each employee in such units in full-time annual salaried employment status who was (i) active on the date of ratification of the agreement between the state and the negotiating unit covering such employee and (ii) in continuous service, as defined by paragraph (c) of subdivision 3 of section 130 of the civil service law, from that date until March 28, 2013 for officers and employees on the administrative payroll and April 4, 2013 for officers and employees on the institutional payroll. Such lump sum shall be considered salary for final average salary retirement purposes but shall not become part of basic annual salary.

3. Effective March 27, 2014 for officers and employees on the administrative payroll and effective April 3, 2014 for officers and employees on the institutional payroll, the basic annual salary of officers and employees in full-time annual salaried employment status on the day before such payroll period shall be increased by two percent adjusted to the nearest whole dollar amount.

4. Effective March 26, 2015 for officers and employees on the administrative payroll and effective April 2, 2015 for officers and employees on the institutional payroll, the basic annual salary of officers and employees in full-time annual salaried employment status on the day before such payroll period shall be increased by two percent adjusted to the nearest whole dollar amount.

5. Notwithstanding the provisions of subdivisions three and four of this section, if the basic annual salary of an officer or employee to whom the provisions of this section apply is identical with the hiring rate, step one, two, three, four, five, six or job rate of the salary grade of his or her position on the effective dates of the increases provided in these subdivisions, such basic annual salary shall be increased to the hiring rate, step one, two, three, four, five, six or job rate, respectively, of such salary grade as contained in the appropriate salary schedules in subparagraphs 2 and 3 of paragraph a of subdivision 1 of section 130 of the civil service law, as added by section one of this act, to take effect on the dates provided in subparagraphs 2 and 3, respectively. The increases in basic annual salary provided by this subdivision shall be in lieu of any increase in basic annual salary provided for in subdivisions three and four of this section.

6. Payments pursuant to the provisions of subdivision 6 of section 131 of the civil service law for full-time annual salaried officers

and employees entitled to such payments to whom the provisions of this section apply shall be payable in accordance with the terms of an agreement reached pursuant to article 14 of the civil service law between the state and an employee organization representing employees subject to the provisions of this section.

7. If an unencumbered position is one which if encumbered, would be subject to the provisions of this section, the salary of such position shall be increased by the salary increase amounts specified in this section. If a position is created, and filled by the appointment of an officer or employee who is subject to the provisions of this section, the salary otherwise provided for such position shall be increased in the same manner as though such position had been in existence but unencumbered.

8. The increases in salary provided in subdivisions three and four of this section, and also the payments provided in subdivision two of this section, shall apply on a prorated basis to officers and employees, otherwise eligible to receive an increase in salary, who are paid on an hourly or per diem basis, employees serving on a part-time or seasonal basis and employees paid on any basis other than at an annual salary rate. Notwithstanding the foregoing, the provisions of subdivision six of this section shall not apply to employees serving on an hourly, per diem, or seasonal basis, except as determined by the director of the budget.

9. In order to provide for the officers and employees to whom this section applies who are not allocated to salary grades, but are paid on an annual basis, increases and payments pursuant to subdivision six of this section in proportion to those provided to persons to whom this section applies who are allocated to salary grades, the director of the budget is authorized to add appropriate adjustments and/or payments to the compensation which such officers and employees are otherwise entitled to receive. The director of the budget shall issue certificates which shall contain schedules of positions and the salaries and/or payments thereof for which adjustments and/or payments are made pursuant to the provisions of this subdivision, and a copy of each such certificate shall be filed with the state comptroller, the state department of civil service, the chairman of the senate finance committee and the chairman of the assembly ways and means committee.

10. Notwithstanding any other provision of this section, the provisions of this section shall not apply to officers or employees paid on a fee schedule basis.

11. Notwithstanding any other provision of this section, any increase in compensation for any officer or employee appointed to a lower graded position from a redeployment list pursuant to subdivision 1 of section 79 of the civil service law who continues to receive his or her former salary pursuant to such subdivision shall be determined on the basis of such lower graded position provided, however, that the increases in salary provided in this section shall not cause such officer's or employee's salary to exceed the job rate of such lower graded position.

12. Notwithstanding any of the foregoing provisions of this section or of any law to the contrary, the director of the budget may reduce the salary of any position which is vacant or which becomes vacant, so long as the position, if encumbered, would be subject to the provisions of this section. The director of the budget does not need to provide a reason for such reduction.

13. Notwithstanding any of the foregoing provisions of this section or of any law to the contrary, any increase in compensation may be withheld in whole or in part from any employee to whom the provisions of this section are applicable when, in the opinion of the director of the budget and the director of employee relations, such increase is not warranted or is not appropriate for any reason.

§ 10. Compensation for certain employees of the contract colleges at Cornell and Alfred universities. 1. During the period April 1, 2011 to March 31, 2016, the basic annual salaries of positions in the nonprofessional service, except those positions in the Cornell service and maintenance unit which are subject to the terms of a collective bargaining agreement between Cornell University and the

employee organization representing employees in such positions and except those positions in the Alfred service and maintenance unit which are subject to the terms of a collective bargaining agreement between Alfred University and the employee organization representing employees in such positions, in institutions under the management and control of Cornell and Alfred universities as representatives of the board of trustees of the state university may be increased pursuant to plans approved by the state university trustees. Such plans may include new salary schedules which shall supersede the salary schedules then in effect applicable to such employees. Such increases in basic annual salary rates, exclusive of performance advancement payments or merit recognition payments, shall not exceed in the aggregate the payments provided in subdivisions two, three, and four of section nine of this act, for incumbents of positions subject to this subdivision. Such plans may provide, within the appropriations available therefor, an amount for distribution in whole or in part for meritorious service by Cornell and Alfred universities, in their discretion, with the approval of the state university trustees to the incumbents of such positions.

2. For the purposes of this section, the basic annual salary of employees is that salary which is obtained through direct appropriation of state moneys for the purpose of paying wages. Nothing in this section shall prevent payment of additional amounts to incumbents of such positions in the nonprofessional service in addition to the basic annual salary; provided, however, that the amounts required for such additional payment, and the cost of fringe benefits attributable to such payment, as determined by the comptroller, are made available to the state in accordance with the procedures established by the state university for such purposes.

3. Notwithstanding the foregoing provisions of this section, any increase in compensation provided by this section may be withheld in whole or in part from any officer or employee when, in the opinion of the director of the budget, such withholding is necessary to reflect the job performance of such officer or employee, or to maintain appropriate salary relationships among officers or employees of the state, or to reduce state expenditures to acceptable levels, or when such increase is not warranted or is not appropriate for any reason and the salary of such officer or employee is set at the discretion of the appointing authority.

4. Notwithstanding the foregoing provisions of this subdivision or act or any other provision of law, rule or regulation to the contrary, the contract colleges at Cornell and Alfred universities are authorized to provide for a procedure for the repayment of salaries withheld from incumbents of positions subject to this subdivision as described in subdivision one of this section, pursuant to subdivision 2–a of section 200 of the state finance law in lieu of the lump sum payment authorized by subparagraph 3 of paragraph (a) of subdivision 2–a of section 200 of the state finance law, subject to the approval of the state university trustees. Further, Cornell and Alfred universities are authorized to provide that the salary of employees newly hired on or after September 1, 1992 shall not be subject to the provisions of subdivision 2–a of section 200 of the state finance law.

§ 11. Location compensation for certain state officers and employees in collective negotiating units. Notwithstanding any inconsistent provisions of law, full-time annual salaried officers and employees, as well as non-annual salaried seasonal officers and employees who shall receive the compensation provided for pursuant to this section on a prorated basis, except non-annual salaried officers and employees who are not seasonal, in the collective negotiating units designated as the administrative services unit, the institutional services unit, the operational services unit, or the division of military and naval affairs unit established pursuant to article 14 of the civil service law, whose principal place of employment or, in the case of a field employee, whose official station as determined in accordance with the regulations of the comptroller is located (1) in the county of Monroe and who were eligible to receive location pay on March 31, 1985, shall receive location pay at the rate of $200 per year provided they continue to be otherwise eligible or (2) in the city of New York, or in the county of Rockland, Westchester, Nassau or Suffolk shall, effective April 1, 2011, continue to receive a downstate adjustment at the annual rate of $3,026 (3) in the county of Dutchess, Putnam or Orange shall, effective April 1, 2011, continue to receive a mid-Hudson adjustment at the annual rate of $1,513. Such location payments shall be in addition to and shall not be a part of an officer's or employee's basic annual salary, and shall not affect or impair any performance advancements or other rights or benefits to which an officer or employee may be entitled by law, provided, however, that location payments shall be included as compensation for purposes of computation of overtime pay and for retirement purposes. For the sole purpose of continuing eligibility for location pay in Monroe county, an officer or employee previously eligible to receive location pay on March 31, 1985 who is on an approved leave of absence or participates in an



employer program to reduce to part-time service during summer months shall continue to be eligible for said location pay upon return to full-time state service in Monroe county.

§ 12. Continuation of location compensation for certain officers and employees of the Hudson Valley developmental disabilities services office. 1. Notwithstanding any law, rule or regulation to the contrary, any officer or employee of the Hudson Valley developmental disabilities services office represented in the collective negotiating units designated as the administrative services unit, the institutional services unit or the operational services unit, who is receiving location pay pursuant to section 5 of chapter 174 of the laws of 1993 shall continue to receive such location pay under the conditions and at the rates specified by such section.

2. Notwithstanding any law, rule or regulation to the contrary, any officer or employee of the Hudson Valley developmental disabilities services office represented in the collective negotiating units designated as the administrative services unit, the institutional services negotiating unit or the operational services negotiating unit, who is receiving location pay pursuant to subdivision 2 of section 9 of chapter 315 of the laws of 1995 shall continue to receive such location pay under the conditions and at the rates specified by such subdivision.

3. Notwithstanding section eleven of this act or any other law, rule or regulation to the contrary, any officer or employee of the Hudson Valley developmental disabilities services office represented in the collective negotiating units designated as the administrative services unit, the institutional services unit or the operational services unit, who is receiving location pay pursuant to such section eleven shall continue to be eligible for such location pay if such officer's or employee's principal place of employment is changed to a location outside of the county of Rockland as the result of a reduction or redeployment of staff, provided, however, that such officer or employee is reassigned to or otherwise appointed or promoted to a different position at another work location within the Hudson Valley developmental disabilities services office located outside of the county of Rockland. The rate of such continued location pay shall not exceed the rates such officer or employee is receiving on the date of such reassignment, appointment or promotion.

§ 13. Notwithstanding any law, rule or regulation to the contrary, certain full-time employees of the office for people with developmental disabilities in the collective negotiating unit designated as the institutional services unit who are required to sleep over at their work site shall continue to receive inconvenience pay pursuant to section 17 of chapter 333 of the laws of 1969 as amended, in accordance with and subject to the conditions established by the terms of a negotiated agreement between the state and an employee organization representing such unit and the resolution of a contract grievance bearing identification number 98–04–448.

§ 14. Additional compensation for certain employees in recognition of pre-shift briefing. 1. In recognition of the general requirement for full-time employees of the state in the collective negotiating unit designated as the division of military and naval affairs unit, established pursuant to article 14 of the civil service law, to assemble for briefing prior to the commencement of duties, each such employee shall receive additional compensation at the rate of $60 per biweekly payroll period in accordance with the terms of a collectively negotiated agreement between the state and an employee organization representing such employees pursuant to article 14 of the civil service law. Such additional compensation shall be paid in addition to and shall not be a part of the employee's basic annual salary. Notwithstanding the foregoing provisions of this section, or of any other law, such additional compensation as added by this section shall be in lieu of the continuation of any other additional compensation for such employees paid prior to June 2, 1988, in recognition of pre-shift briefing.

2. Notwithstanding any inconsistent provisions of law, effective April 1, 2011, where and to the extent that, an agreement between the state and an employee organization entered into pursuant to article 14 of the civil service law so provides, in recognition of the general requirement that certain full-time employees of the state in the collective negotiating unit designated as the institutional services unit, established pursuant to article 14 of the civil service law, in the employ of the office of children and family services,

https://web2.westlaw.com/print/printstream.aspx?rs=WLW11.10&vr=

to assemble for briefing prior to the commencement of duties, each such employee shall receive additional compensation in the amount of $4.80, or one-quarter hour of their overtime rate, whichever is higher, when they are required to and actually assemble for such briefing. Such additional compensation shall be paid in addition to and shall not be a part of the employee's basic annual salary.

§ 15. Assignment to duty pay. Notwithstanding any inconsistent provisions of law, effective April 1, 2011, where and to the extent that, an agreement between the state and an employee organization entered into pursuant to article 14 of the civil service law so provides, an assignment to duty lump sum shall be paid each year to an employee who is serving in a particular assignment deemed qualified pursuant to such agreement. Such payment shall be in an amount negotiated for those employees assigned to qualifying work assignments and who work such assignments for the minimum periods of time in a year provided in the negotiated agreement. Assignment to duty pay shall not be paid in any year an employee does not meet the minimum period of time in such qualifying assignment required by the agreement or upon cessation of the assignment to duty program on March 30, 2016 unless an extension is negotiated by the parties. Such lump sum shall be considered salary only for final average salary retirement purposes.

§ 16. Long term seasonal employees. Notwithstanding any inconsistent provisions of law, effective April 1, 2011, where and to the extent that, an agreement between the state and an employee organization entered into pursuant to article 14 of the civil service law so provides, a lump sum shall be paid each year to an employee who is serving in a qualifying long term seasonal position. Such payment shall be in an amount negotiated and pursuant to negotiated qualifying criteria and shall be considered salary only for final average salary retirement purposes. Such benefit shall be available until March 30, 2016.

§ 17. In recognition of the specific requirements for winter maintenance activity for full-time employees of the state department of transportation in the collective negotiating unit designated as the operational services unit, established pursuant to article 14 of the civil service law, and to the extent the terms of a negotiated agreement between the state and an employee organization representing such unit entered into pursuant to article 14 of the civil service law so provides, such employees shall receive payments for winter maintenance shifts and call-out responses if otherwise eligible and in accordance with such negotiated agreement.

§ 18. Subdivision 2 of section 17 of chapter 333 of the laws of 1969 amending the civil service law and other laws relating to salary increases for certain state officers and employees, as amended by chapter 214 of the laws of 2009, is amended to read as follows:

2. Any employee subject to this section who is required to work a tour of duty which includes four or more hours between the hours of six p.m. and six a.m., exclusive of any hours for which he or she receives overtime compensation, shall be entitled to inconvenience pay for such tour of duty in an amount equal to the daily rate equivalent of four hundred dollars per year, unless a higher daily rate is authorized under the terms of a collective negotiated agreement between the state and an employee organization pursuant to article 14 of the civil service law, or is authorized by the director of the budget for employees excluded from negotiating rights under article 14 of the civil service law, in which case such daily rate may be up to five hundred seventy-five dollars per year, **shall continue** effective April 2, 2007 **2011**. The provisions of this subdivision shall apply on a prorated basis to officers and employees serving on a seasonal basis in the collective negotiating units designated as the administrative services unit, the institutional services unit, the operational services unit, and the division of military and naval affairs unit, and officers and employees excluded from collective negotiating units established pursuant to article 14 of the civil service law.

§ 19. Notwithstanding any inconsistent provision of law, where and to the extent that any agreement between the state and an employee organization entered into pursuant to article 14 of the civil service law so provides on behalf of employees in the collective negotiating units designated as the administrative, institutional, operational services negotiating units or the military and naval affairs negotiating unit established pursuant to article 14 of the civil service law, the state shall contribute an amount designated in such agreement and for the period covered by such agreement to the accounts of such employees enrolled for

dependent care deductions pursuant to subdivision 7 of section 201–a of the state finance law. Such amounts shall be from funds appropriated in this act and shall not be part of basic annual salary for overtime or retirement purposes.

§ 20. Notwithstanding any provision of law to the contrary, the appropriations contained in this act shall be available to the state for the payment and publication of grievance and arbitration settlements and awards pursuant to articles 33 and 34 of the collective negotiating agreement between the state and the employee organization representing the collective negotiating units designated as the administrative services unit, the institutional services unit, the operational services unit or the division of military and naval affairs unit established pursuant to article 14 of the civil service law.

§ 21. During the period April 2, 2011 through April 1, 2016, there shall be a statewide labor-management committee continued and administered pursuant to the terms of the agreement negotiated between the state and an employee organization representing employees in the collective negotiating units designated as the administrative services unit, the institutional services unit, the operational services unit or the division of military and naval affairs unit established pursuant to article 14 of the civil service law which shall, after April 2, 2011, have the responsibility of studying and making recommendations concerning the major issues of productivity, the quality of work life and implementing the agreements reached.

§ 22. The salary increases, salary deductions, salary reductions, benefit modifications, and any other modifications to terms and conditions of employment provided for by this act for state employees in the collective negotiating units designated as the administrative services unit, the institutional services unit, the operational services unit or the division of military and naval affairs unit established pursuant to article 14 of the civil service law shall not be implemented until the director of employee relations shall have delivered to the director of the budget and the comptroller a letter certifying that there is in effect with respect to such negotiating units collectively negotiated agreements, ratified by the membership, which provide for such increases, deductions, reductions and modifications.

§ 23. Use of appropriations. The comptroller is authorized to pay any amounts required during the fiscal years commencing April 1, 2011 by the foregoing provisions of this act for any state department or agency from any appropriation or other funds available to such state department or agency for personal service or for other related employee benefits during such fiscal year. To the extent that such appropriations in any fund are insufficient to accomplish the purposes herein set forth, the director of the budget is authorized to allocate to the various departments and agencies, from any appropriations available in any fund, the amounts necessary to pay such amounts.

§ 24. Effect of participation in special annuity program. No officer or employee participating in a special annuity program pursuant to the provisions of article 8–C of the education law shall, by reason of an increase in compensation pursuant to this act, suffer any reduction of the salary adjustment to which he or she would otherwise be entitled by reason of participation in such program, and such salary adjustment shall be based upon the salary of such officer or employee without regard to the reduction authorized by such article.

§ 25. The several amounts as hereinafter set forth, or so much thereof as may be necessary, are hereby appropriated from the fund so designated for use by any state department or agency for the fiscal year beginning April 1, 2011 to supplement appropriations from each respective fund available for personal service, other than personal service and fringe benefits, and to carry out the provisions of this act. No money shall be available for expenditure from this appropriation until a certificate of approval has been issued by the director of the budget and a copy of such certificate or any amendment thereto has been filed with the state comptroller, the chair of the senate finance committee and the chair of the assembly ways and means committee.

ALL STATE DEPARTMENTS AND AGENCIES



SPECIAL PAY BILLS

General Fund / State Operations
State Purposes Account--003

Nonpersonal Service

| | |
|---|---:|
| Joint committee on health benefits | 1,331,000 |
| Employee training and development | 10,714,000 |
| Safety and health maintenance committee | 637,000 |
| Employment security committee | 525,000 |
| Family Benefits Committee | 2,582,000 |
| Discipline | 381,000 |
| Employee assistance program | 648,000 |
| Statewide performance rating committee | 41,000 |
| Property damage | 32,000 |
| Work related clothing (operational services unit) | 1,071,000 |
| Tool allowance (operational services unit) | 77,000 |
| Tool insurance (operational services unit) | 26,000 |
| Uniform allowance (institutional services unit) | 430,000 |
| Work related clothing (institutional services unit) | 80,000 |
| Contract Administration | 400,000 |

§ 26. This act shall take effect immediately and shall be deemed to have been in full force and effect on and after April 2, 2011. Appropriations made by this act shall remain in full force and effect for liabilities incurred through March 31, 2012.


PART B

SALARIES AND BENEFITS FOR CERTAIN STATE

OFFICERS AND EMPLOYEES EXCLUDED FROM

COLLECTIVE NEGOTIATING UNITS FOR 2011–2016

Section 1. Paragraph d of subdivision 1 of section 130 of the civil service law is REPEALED and a new paragraph d is added to read as follows:


<< NY CIV SERV § 130 >>


d. Salary grades for positions in the competitive, noncompetitive and labor classes of the classified service of the state of



New York designated managerial or confidential pursuant to article fourteen of this chapter, civilian state employees of the division of military and naval affairs of the executive department whose positions are not in, or are excluded from representation rights in, any recognized or certified negotiating unit, and those excluded from representation rights under article fourteen of this chapter pursuant to rules or regulations of the public employment relations board shall be as follows on the effective dates indicated:

(1) Effective April first, two thousand eleven:

| GRADE | HIRING RATE | JOB RATE |
|---|---|---|
| M/C 3 | $22,547 | $28,824 |
| M/C 4 | $23,542 | $30,132 |
| M/C 5 | $24,955 | $31,594 |
| M/C 6 | $26,014 | $33,215 |
| M/C 7 | $27,514 | $35,013 |
| M/C 8 | $29,024 | $36,818 |
| M/C 9 | $30,682 | $38,776 |
| M/C 10 | $32,335 | $40,927 |
| M/C 11 | $34,296 | $43,200 |
| M/C 12 | $36,106 | $45,466 |
| M/C 13 | $38,208 | $47,991 |
| M/C 14 | $40,477 | $50,631 |
| M/C 15 | $42,729 | $53,366 |
| M/C 16 | $45,138 | $56,212 |
| M/C 17 | $47,698 | $59,312 |
| M/C 18 | $47,952 | $59,504 |
| M/C 19 | $50,524 | $62,597 |
| M/C 20 | $53,099 | $65,737 |
| M/C 21 | $55,963 | $69,132 |
| M/C 22 | $58,971 | $72,765 |
| M/C 23 | $61,993 | $77,454 |
| M 1 | $66,914 | $84,581 |
| M 2 | $74,210 | $93,803 |
| M 3 | $82,363 | $104,080 |
| M 4 | $91,096 | $114,961 |
| M 5 | $101,149 | $127,794 |
| M 6 | $111,992 | $140,864 |
| M 7 | $123,446 | $152,886 |
| M 8 | $104,082+ | |

(2) Effective April first, two thousand fourteen:

| GRADE | HIRING RATE | JOB RATE |
|---|---|---|

| GRADE | HIRING RATE | JOB RATE |
|---|---|---|
| M/C 3 | $22,998 | $29,400 |
| M/C 4 | $24,013 | $30,735 |
| M/C 5 | $25,454 | $32,226 |
| M/C 6 | $26,534 | $33,879 |
| M/C 7 | $28,064 | $35,713 |
| M/C 8 | $29,604 | $37,554 |
| M/C 9 | $31,296 | $39,552 |
| M/C 10 | $32,982 | $41,746 |
| M/C 11 | $34,982 | $44,064 |
| M/C 12 | $36,828 | $46,375 |
| M/C 13 | $38,972 | $48,951 |
| M/C 14 | $41,287 | $51,644 |
| M/C 15 | $43,584 | $54,433 |
| M/C 16 | $46,041 | $57,336 |
| M/C 17 | $48,652 | $60,498 |
| M/C 18 | $48,911 | $60,694 |
| M/C 19 | $51,534 | $63,849 |
| M/C 20 | $54,161 | $67,052 |
| M/C 21 | $57,082 | $70,515 |
| M/C 22 | $60,150 | $74,220 |
| M/C 23 | $63,233 | $79,003 |
| M 1 | $68,252 | $86,273 |
| M 2 | $75,694 | $95,679 |
| M 3 | $84,010 | $106,162 |
| M 4 | $92,918 | $117,260 |
| M 5 | $103,172 | $130,350 |
| M 6 | $114,232 | $143,681 |
| M 7 | $125,915 | $155,944 |
| M 8 | $106,164+ | |

(3) Effective April first, two thousand fifteen:

| GRADE | HIRING RATE | JOB RATE |
|---|---|---|
| M/C 3 | $23,458 | $29,988 |
| M/C 4 | $24,493 | $31,350 |
| M/C 5 | $25,963 | $32,871 |
| M/C 6 | $27,065 | $34,557 |
| M/C 7 | $28,625 | $36,427 |
| M/C 8 | $30,196 | $38,305 |
| M/C 9 | $31,922 | $40,343 |
| M/C 10 | $33,642 | $42,581 |
| M/C 11 | $35,682 | $44,945 |

| M/C 12 | $57,565 | $47,303 |
|--------|---------|---------|
| M/C 13 | $39,751 | $49,930 |
| M/C 14 | $42,113 | $52,677 |
| M/C 15 | $44,456 | $55,522 |
| M/C 16 | $46,962 | $58,483 |
| M/C 17 | $49,625 | $61,708 |
| M/C 18 | $49,889 | $61,908 |
| M/C 19 | $52,565 | $65,126 |
| M/C 20 | $55,244 | $68,393 |
| M/C 21 | $58,224 | $71,925 |
| M/C 22 | $61,353 | $75,704 |
| M/C 23 | $64,498 | $80,583 |
| M 1 | $69,617 | $87,998 |
| M 2 | $77,208 | $97,593 |
| M 3 | $85,690 | $108,285 |
| M 4 | $94,776 | $119,605 |
| M 5 | $105,235 | $132,957 |
| M 6 | $116,517 | $146,555 |
| M 7 | $128,433 | $159,063 |
| M 8 | $108,287+ | |

§ 2. Subdivision 1 of section 19 of the correction law is REPEALED and a new subdivision 1 is added to read as follows:

<< NY CORRECT § 19 >>

1. This section shall apply to each superintendent of a correctional facility appointed on or after August ninth, nineteen hundred seventy-five and any superintendent heretofore appointed who elects to be covered by the provisions thereof by filing such election with the commissioner.

a. The salary schedule for superintendents of a correctional facility with an inmate population capacity of four hundred or more inmates shall be as follows:

Effective April first, two thousand eleven:

| Hiring Rate | Job Rate |
|-------------|----------|
| $105,913 | $144,535 |

Effective April first, two thousand fourteen:

| Hiring Rate | Job Rate |
|-------------|----------|
| $108,031 | $147,426 |

Effective April first, two thousand fifteen:

 

| Hiring Rate | Job Rate |
|---|---|
| $110,192 | $150,375 |

b. The salary schedule for superintendents of correctional facilities with an inmate population capacity of fewer than four hundred inmates shall be as follows:

Effective April first, two thousand eleven:

| Hiring Rate | Job Rate |
|---|---|
| $82,363 | $104,081 |

Effective April first, two thousand fourteen:

| Hiring Rate | Job Rate |
|---|---|
| $84,010 | $106,163 |

Effective April first, two thousand fifteen:

| Hiring Rate | Job Rate |
|---|---|
| $85,690 | $108,286 |

§ 3. Compensation for certain state officers and employees. 1. The provisions of this section shall apply to the following full-time state officers and employees:

(a) officers and employees whose positions are designated managerial or confidential pursuant to article 14 of the civil service law;

(b) civilian state employees of the division of military and naval affairs in the executive department whose positions are not in, or are excluded from representation rights in, any recognized or certified negotiating unit;

(c) officers and employees excluded from representation rights under article 14 of the civil service law pursuant to rules or regulations of the public employment relations board; and

(d) officers and employees whose salaries are prescribed by section 19 of the correction law.

2. For such officers and employees the following increases shall apply:

(a) Effective April 1, 2014, the basic annual salary of officers and employees to whom the provisions of this subdivision apply shall be increased by two percent adjusted to the nearest whole dollar amount.

(b) Effective April 1, 2015, the basic annual salary of officers and employees to whom the provisions of this subdivision apply shall be increased by two percent adjusted to the nearest whole dollar amount.

3. (a) Effective April 1, 2013, for officers and employees to whom the provisions of this subdivision apply, a lump sum payment of

$775 shall be made to each employee in such units in full-time employment status who was (i) active on the effective date of this act and (ii) in continuous service, as defined by paragraph (c) of subdivision 3 of section 130 of the civil service law, from that date until April 1, 2013. Such lump sum shall be considered salary for final average salary retirement purposes but shall not become part of basic annual salary. Notwithstanding the foregoing provisions of this subdivision, officers and employees who would have otherwise been eligible to receive such lump sum payment, but who were not on the payroll on said April 1, 2013, shall be eligible for said payment if they return to full-time employment status during the fiscal year 2013–2014 without a break in continuous service.

(b) Effective April 1, 2014, for officers and employees to whom the provisions of this subdivision apply, a lump sum payment of $225 shall be made to each employee in such units in full-time employment status who was (i) active on the effective date of this act and (ii) in continuous service, as defined by paragraph (c) of subdivision 3 of section 130 of the civil service law, from that date until April 1, 2013. Such lump sum shall be considered salary for final average salary retirement purposes but shall not become part of basic annual salary.

4. If an unencumbered position is one that, if encumbered, would be subject to the provisions of this section, the salary of such position shall be increased by the salary increase amounts specified in this section. If a position is created and is filled by the appointment of an officer or employee who is subject to the provisions of this section, the salary otherwise provided for such position shall be increased in the same manner as though such position had been in existence but unencumbered.

5. The increases in salary and the lump sum payment payable pursuant to this section shall apply on a prorated basis in accordance with guidelines issued by the director of the budget to officers and employees otherwise eligible to receive an increase in salary or the lump sum payment pursuant to this act who are paid on an hourly or per diem basis, employees serving on a part-time or seasonal basis, and employees paid on any basis other than at an annual salary rate.

6. Notwithstanding any of the foregoing provisions of this section, the provisions of this section shall not apply to the following except as otherwise provided by law:

(a) officers or employees paid on a fee schedule basis;

(b) officers or employees whose salaries are prescribed by section 40, 60, or 169 of the executive law;

(c) officers or employees in collective negotiating units established pursuant to article 14 of the civil service law.

7. Officers and employees to whom the provisions of this section apply who are incumbents of positions that are not allocated to salary grades specified in paragraph d of subdivision 1 of section 130 of the civil service law and whose salary is not prescribed in any other statute shall receive the salary increases and the lump sum payment specified in subdivisions two and three of this section.

8. In order to provide for the officers and employees to whom this section applies who are not allocated to salary grades performance advancements, merit awards, longevity payments and in lieu payments, and special achievement awards in proportion to those provided to persons to whom this section applies who are allocated to salary grades, the director of the budget is authorized to add appropriate adjustments to the compensation that such officers and employees are otherwise entitled to receive. The director of the budget shall issue certificates that shall contain schedules of positions and the salaries or payments thereof for which adjustments or payments are made pursuant to the provisions of this subdivision, and a copy of each such certificate shall be filed with the state comptroller, the department of civil service, the chairman of the senate finance committee and the chairman of the



assembly ways and means committee.

9. Notwithstanding any of the foregoing provisions of this section, any increase in compensation for any officer or employee appointed to a lower graded position from a redeployment list pursuant to subdivision 1 of section 79 of the civil service law who continues to receive his or her former salary pursuant to such subdivision shall be determined on the basis of such lower graded position provided, however, that the increases in salary provided in subdivision two of this section shall not cause such officer's or employee's salary to exceed the job rate of any such lower graded position at salary grade.

10. Notwithstanding any of the foregoing provisions of this section or of any law to the contrary, the director of the budget may reduce the salary of any position which is vacant or which becomes vacant, so long as the position, if encumbered, would be subject to the provisions of this section. The director of the budget does not need to provide a reason for such reduction.

§ 4. Compensation for certain state officers and employees in the division of state police. 1. The provisions of this section shall apply to officers and employees whose salaries are provided for by paragraph (a) of subdivision 1 of section 215 of the executive law.

2. (a) Effective April 1, 2014, the basic annual salary of officers and employees to whom the provisions of this subdivision apply shall be increased by two percent adjusted to the nearest whole dollar amount.

(b) Effective April 1, 2015, the basic annual salary of officers and employees to whom the provisions of this subdivision apply shall be increased by two percent adjusted to the nearest whole dollar amount.

3. (a) Effective April 1, 2013, for officers and employees to whom the provisions of this subdivision apply, a lump sum payment of $775 shall be made to each employee in such units in full-time employment status who was (i) active on the effective date of this act and (ii) in continuous service, as defined by paragraph (c) of subdivision 3 of section 130 of the civil service law, from that date until April 1, 2013. Such lump sum shall be considered salary for final average salary retirement purposes. Notwithstanding the foregoing provisions of this subdivision, officers and employees who would have otherwise been eligible to receive such lump sum payment, but who were not on the payroll on said April 1, 2013, shall be eligible for said payment if they return to full-time employment status during the fiscal year 2013–2014 without a break in continuous service.

(b) Effective April 1, 2014, for officers and employees to whom the provisions of this subdivision apply, a lump sum payment of $225 shall be made to each employee in such units in full-time employment status who was (i) active on the effective date of this act and (ii) in continuous service, as defined by paragraph (c) of subdivision 3 of section 130 of the civil service law, from that date until April 1, 2013. Such lump sum shall be considered salary for final average salary retirement purposes.

4. The increases in salary and the lump sum payments payable pursuant to this section shall apply on a prorated basis in accordance with guidelines issued by the director of the budget to officers and employees otherwise eligible to receive an increase in salary or the lump sum payment pursuant to this act who are paid on an hourly or per diem basis, employees serving on a part-time or seasonal basis, and employees paid on any basis other than at an annual salary rate.

5. Notwithstanding any of the foregoing provisions of this section, any increase in compensation for any officer or employee appointed to a lower graded position from a redeployment list pursuant to subdivision 1 of section 79 of the civil service law who continues to receive his or her former salary pursuant to such subdivision shall be determined on the basis of such lower graded position provided, however, that the increases in salary provided in subdivision two of this section shall not cause such officer's or

employee's salary to exceed the job rate of any such lower graded position at salary grade.

§ 5. Compensation for certain state employees in the state university and certain employees of contract colleges at Cornell and Alfred universities.

1. Effective April 1, 2014 and April 1, 2015, the basic annual salary of incumbents of positions in the professional service in the state university that are designated, stipulated, or excluded from negotiating units as managerial or confidential as defined pursuant to article 14 of the civil service law, may be increased pursuant to plans approved by the state university trustees. Such increases in basic annual salary rates shall not exceed in the aggregate two percent of the total basic annual salary rates in effect on March 31, 2014 and two percent of the total basic annual salary rates in effect on March 31, 2015.

2. Effective April 1, 2014 and April 1, 2015, the basic annual salary of incumbents of positions in the institutions under the management and control of Cornell and Alfred universities as representatives of the board of trustees of the state university that, in the opinion of the director of employee relations, would be designated managerial or confidential were they subject to article 14 of the civil service law may be increased pursuant to plans approved by the state university trustees. Such increases in basic annual salary rates shall not exceed in the aggregate two percent of the total basic annual salary rates in effect on March 31, 2014 and two percent of the total basic annual salary rates in effect on March 31, 2015.

3. (a)(i) Effective April 1, 2013, the state university trustees, at their discretion, may provide to incumbents of positions in the professional service in the state university that are designated, stipulated, or excluded from negotiating units as managerial or confidential as defined pursuant to article 14 of the civil service law, who was (I) active on the effective date of this act and (II) in continuous service, as defined by paragraph (c) of subdivision 3 of section 130 of the civil service law, from that date until April 1, 2013, a non-recurring lump sum payment in an amount not to exceed $775.

(ii) Effective April 1, 2014, the state university trustees, at their discretion, may provide to incumbents of positions in the professional service in the state university that are designated, stipulated, or excluded from negotiating units as managerial or confidential as defined pursuant to article 14 of the civil service law, who was (I) active on the effective date of this act and (II) in continuous service, as defined by paragraph (c) of subdivision 3 of section 130 of the civil service law, from that date until April 1, 2013, a non-recurring lump sum payment in an amount not to exceed $225.

(iii) Payments provided in this subdivision shall be in addition to and shall not be a part of the employee's basic annual salary, provided, however, that any amounts payable pursuant to this subdivision shall be included as compensation for retirement purposes.

(b)(i) Effective April 1, 2013, Cornell and Alfred universities may provide to incumbents of positions in the institutions under the management and control of Cornell and Alfred universities as representatives of the board of trustees of the state university that, in the opinion of the director of employee relations, would be designated managerial or confidential were they subject to article 14 of the civil service law, who are (I) active on the effective date of this act and (II) in continuous service, as defined by paragraph (c) of subdivision 3 of section 130 of the civil service law, from that date until April 1, 2013, a non-recurring lump sum payment in an amount not to exceed $775, for distribution in whole or in part by Cornell and Alfred universities, in their discretion, with the approval of the state university trustees.

(ii) Effective April 1, 2014, Cornell and Alfred universities may provide to incumbents of positions in the institutions under the management and control of Cornell and Alfred universities as representatives of the board of trustees of the state university that, in

the opinion of the director of employee relations, would be designated managerial or confidential were they subject to article 14 of the civil service law, who are (I) active on the effective date of this act and (II) in continuous service, as defined by paragraph (c) of subdivision 3 of section 130 of the civil service law, from that date until April 1, 2013, a non-recurring lump sum payment in an amount not to exceed $225, for distribution in whole or in part by Cornell and Alfred universities, in their discretion, with the approval of the state university trustees.

(iii) Payments provided in this subdivision shall be in addition to and shall not be a part of the employee's basic annual salary, provided, however, that any amounts payable pursuant to this subdivision shall be included as compensation for retirement purposes.

4. During the period April 1, 2014 through March 31, 2016, the basic annual salary of incumbents of positions in the non-professional service that, in the opinion of the director of employee relations, would be designated managerial or confidential were they subject to article 14 of the civil service law, except those positions in the Cornell service and maintenance unit that are subject to the terms of a collective bargaining agreement between Cornell university and the employee organization representing employees in such positions and except those positions in the Alfred service and maintenance unit that are subject to the terms of a collective bargaining agreement between Alfred university and the employee-organization representing employees in such positions, in institutions under the management and control of Cornell and Alfred universities as representatives of the board of trustees of the state university may be increased pursuant to plans approved by the state university trustees. Such plans may include new salary schedules which shall supersede the salary schedules then in effect applicable to such employees. Such plans shall provide for increases in basic annual salaries, which, exclusive of performance advancement payments or merit recognition payments, shall not exceed in the aggregate two percent of the total basic annual salary rates in effect on March 31, 2014 and two percent of the total basic annual salary rates in effect on March 31, 2015.

5. For the purposes of this section, the basic annual salary of an employee is that salary that is obtained through direct appropriation of state moneys for the purpose of paying wages. Nothing in this part shall prevent increasing amounts paid to incumbents of such positions in the professional service in addition to the basic annual salary, provided, however, that the amounts required for such increase and the cost of fringe benefits attributable to such increase, as determined by the comptroller, are made available to the state in accordance with the procedures established by the state university, with the approval of the director of the budget, for such purposes.

§ 6. Location compensation for certain state officers and employees.

1. This section shall apply to all full-time annual salaried state officers and employees and non annual salaried seasonal state officers and employees except the following:

(a) officers and employees of the legislature and the judiciary, including officers and employees of boards, bodies and commissions that are deemed to be part of the legislature or judiciary for the purposes of section 49 of the state finance law;

(b) officers and employees whose salaries are prescribed by or determined in accordance with section 40, 60, 169, 215, or 216 of the executive law;

(c) incumbents of allocated or unallocated positions in the professional service in the state university and in institutions under the management and control of Cornell and Alfred universities as representatives of the board of trustees of the state university;

(d) officers and employees who are in recognized or certified collective negotiating units pursuant to article 14 of the civil service law.

2. Notwithstanding the provisions of section 15 of chapter 333 of the laws of 1969, as amended, officers and employees subject to this section whose principal place of employment or, in the case of field employees, whose official station as determined in accordance with the regulations of the comptroller is located:

(a) in the county of Monroe and who were eligible to receive location pay on March 31, 1985, shall receive location pay at the rate of two hundred dollars per year provided they continue to be otherwise eligible.

(b) in the city of New York, or in the county of Rockland, Westchester, Nassau, or Suffolk shall continue to receive a downstate adjustment at the rate of three thousand twenty-six dollars effective October 1, 2008.

(c) in the county of Dutchess, Orange, or Putnam shall continue to receive a mid-Hudson adjustment at the rate of one thousand five hundred thirteen dollars effective October1, 2008. Such location payments shall be in addition to and shall not be a part of an employee's basic annual salary, and shall not affect or impair any advancements or other rights or benefits to which an employee may be entitled by law, provided, however, that location payments shall be included as compensation for purposes of computation of overtime pay and for retirement purposes. For the sole purpose of continuing eligibility for location pay in Monroe county, an employee previously eligible to receive location pay on March 31, 1985 who is on an approved leave of absence or participates in an employer program to reduce to part-time service during summer months shall continue to be eligible for said location pay upon return to full-time state service in Monroe county.

§ 7. Continuation of location compensation for certain officers and employees of the Hudson Valley developmental disabilities services office. 1. Notwithstanding any law, rule or regulation to the contrary, any officer or employee of the Hudson Valley developmental disabilities services office not represented in collective negotiating units established pursuant to article 14 of the civil service law who is receiving location pay pursuant to section 5 of chapter 174 of the laws of 1993 shall continue to receive such location pay under the conditions and at the rates specified by such section.

2. Notwithstanding section seven of this act or any other law, rule or regulation to the contrary, any officer or employee of the Hudson Valley developmental disabilities services office not represented in collective negotiating units established pursuant to article 14 of the civil service law who is receiving location pay pursuant to said section seven of this act shall continue to be eligible for such location pay if such officer's or employee's principal place of employment is changed to a location outside of the county of Rockland as the result of a reduction or redeployment of staff, provided, however, that such officer or employee is reassigned to or otherwise appointed or promoted to a different position at another work location within such Hudson Valley developmental disabilities services office located outside of the county of Rockland. The rate of such continued location pay shall not exceed the rate such officer or employee is receiving on the date of such reassignment, appointment, or promotion.

§ 8. Overtime meal allowance. Notwithstanding any other provision of law to the contrary, individuals in positions in the classified service of the state of New York designated managerial or confidential pursuant to article 14 of the civil service law, shall continue to receive, effective April 1, 2011, an overtime meal allowance in the amount of $5.50 pursuant to eligibility guidelines developed by the director of employee relations.

§ 9. Notwithstanding any provision of law to the contrary, the appropriations contained in this act shall be available to the state for the payment of grievance settlements and awards pursuant to executive order 42, dated October 14, 1970, and title 9, part 560,

https://web2.westlaw.com/print/printstream.aspx?rs=WLW11.10&vr=



official compilation of codes, rules and regulations of the state of New York.

§ 10. Use of appropriations. The comptroller is authorized to pay any amounts required during the fiscal years commencing April 1, 2011 by the foregoing provisions of this act for any state department or agency from any appropriation or other funds available to such state department or agency for personal service or for other related employee benefits during such fiscal year. To the extent that such appropriations in any fund are insufficient to accomplish the purposes herein set forth, the director of the budget is authorized to allocate to the various departments and agencies, from any appropriations available in any fund, the amounts necessary to pay such amounts.

§ 11. Effect of participation in special annuity program. No officer or employee participating in a special annuity program pursuant to the provision of article 8–C of the education law shall, by reason of an increase in compensation pursuant to this act, suffer any reduction of the salary adjustment to which that employee would otherwise be entitled by reason of participation in such program, and such salary adjustment shall be based upon the salary of such officer or employee without regard to the reduction authorized by such article.

§ 12. Date of entitlement to salary increase. Notwithstanding the provisions of this act or of any other law, the increase in salary or compensation of any officer or employee provided by this act shall be added to the salary or compensation of such officer or employee at the beginning of that payroll period the first day of which is nearest to the effective date of such increase as provided in this act, or at the beginning of the earlier of two payroll periods the first days of which are nearest but equally near to the effective date of such increase as provided in this act, provided, however, that for the purposes of determining the salary of such officer or employee upon reclassification, reallocation, appointment, promotion, transfer, demotion, reinstatement or other change of status, such salary increase shall be deemed to be effective on the date thereof as prescribed in this act, and the payment thereof pursuant to this section on a date prior thereto, instead of on such effective date, shall not operate to confer any additional salary rights or benefits on such officer or employee.

§ 13. 1. Notwithstanding the provisions of any other section of this act or any other provision of law to the contrary, any increase in compensation, including any lump sum payment, provided: (a) in this act, or (b) as a result of a promotion, appointment, or advancement to a position in a higher salary grade, or (c) pursuant to paragraph (c) of subdivision 6 of section 131 of the civil service law, or (d) pursuant to paragraph (b) of subdivision 8 of section 130 of the civil service law, or (e) pursuant to paragraph (a) of subdivision 3 of section 13 of chapter 732 of the laws of 1988, as amended, may be withheld in whole or in part from any officer or employee when, in the opinion of the director of the budget, such withholding is necessary to reflect the job performance of such officer or employee, or to maintain appropriate salary relationships among officers or employees of the state, or to reduce state expenditures to acceptable levels or when, in the opinion of the director of the budget, such increase is not warranted or is not appropriate.

2. Notwithstanding the provisions of any other section of this act, the salary increases and lump sum payments provided for in this act shall not be implemented until the director of the budget delivers notice to the comptroller that such amounts may be paid.

3. Notwithstanding the provisions of any other section of this act or any other provisions of law, for state officers and employees in the executive branch who are in positions which are not in collective negotiating units, the director of the budget shall have the authority to devise and implement a plan to reduce the basic annual salary, hourly rate or per diem of any such employee for the time and by the rate established by such plan for the time period specified in such plan. Such plan shall contain salary schedules appropriate for the plan and such other provisions necessary for the implementation and continued execution of the plan for the period established by the plan. After the cessation of such plan, the salary, rate or per diem shall be restored to the amount in effect immediately before the commencement of such plan.

 

§ 14. The several amounts as hereinafter set forth, or so much thereof as may be necessary, are hereby appropriated from the fund so designated for use by any state department or agency for the fiscal year beginning April 1, 2011 to supplement appropriations from each respective fund available for personal service, other than personal service and fringe benefits, and to carry out the provisions of this act. No money shall be available for expenditure from this appropriation until a certificate of approval has been issued by the director of the budget and a copy of such certificate or any amendment thereto has been filed with the state comptroller, the chairman of the senate finance committee and the chairman of the assembly ways and means committee.

ALL STATE DEPARTMENTS AND AGENCIES

SPECIAL PAY BILLS

General Fund / State Operations
State Purposes Account--003

Nonpersonal Service

| | |
|---|---|
| Family benefits | 310,000 |
| Medical flexible spending account | 500,000 |
| Pre-tax transportation benefit | 550,000 |
| Management training | 1,018,000 |
| Uniform allowance | 245,000 |
| Tuition reimbursement | 250,000 |
| M/C share of negotiated programs | 570,000 |

§ 15. This act shall take effect immediately and shall be deemed to have been in full force and effect on and after April 1, 2011. Appropriations made by this act shall remain in full force and effect for liabilities incurred through March 31, 2012.

§ 2. Severability clause. If any clause, sentence, paragraph, subdivision, section or part contained in any part of this act shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder thereof, but shall be confined in its operation to the clause, sentence, paragraph, subdivision, section or part contained in any part thereof directly involved in the controversy which such judgment shall have been rendered. It is hereby declared to be the intent of the legislature that this act would have been enacted even if such invalid provisions had not been included herein.

§ 3. This act shall take effect immediately provided, however, that the applicable effective date for Parts A through B of this act shall be as specifically set forth in the last section of such Part.

NY LEGIS 491 (2011)

END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT D

**NEW YORK STATE SENATE**
**INTRODUCER'S MEMORANDUM IN SUPPORT**
submitted in accordance with Senate Rule VI. Sec 1

BILL NUMBER: S5846

SPONSOR: ROBACH

TITLE OF BILL:

An act to amend the civil service law and the state finance law, in
relation to compensation and other terms and conditions of employment of
certain state officers and employees, to authorize funding of joint
labor-management committees, to implement agreements between the state
and an employee organization; to amend chapter 333 of the laws of 1969
amending the civil service law and other laws relating to salary
increases for certain state officers and employees, in relation to rates
of pay for certain state employees; to repeal certain provisions of the
civil service law relating thereto; and making an appropriation for the
purpose of effectuating certain provisions hereof (Part A); to amend the
civil service law and the correction law, in relation to salaries; to
repeal certain provisions of such laws relating thereto; and making an
appropriation for the purpose of effectuating certain provisions hereof
(Part B)

PURPOSE OF THE BILL:

Part A of this bill implements the terms of a collective bargaining
agreement (the "Agreement") between the executive branch of the State of
New York and the employee organization representing members of the
collective negotiating units designated as the Administrative Services
Unit, the Institutional Services Unit, the Operational Services Unit and
the Division of Military and Naval Affairs Unit ("the units"), entered
into pursuant to article 14 of the Civil Service Law.

Part B of this bill provides the State's approximately 12,000 unrepre-
sented employees who are prohibited from collective negotiations by the
Taylor Law, including managerial or confidential ("M/C") employees, with
benefits and increases in compensation at levels that are comparable to
the benefits and increases in compensation received by employees repres-
ented by employee organizations.

This bill would continue comparability of benefits by supplementing
existing appropriations to provide benefits and other aspects of employ-
ment that are on a par with those negotiated for represented employees
by their respective employee organizations. These funds would provide
for employee benefit and training and development programs, and the M/C
share of negotiated programs.

SUMMARY OF PROVISIONS:

PART A OF THE BILL:

Section 1 of this part repeals and replaces subparagraphs 1, 2, 3 and 4
of Civil Service Law § 130(1)(a) and adds new subparagraphs 1, 2 and 3
to provide for the application of new salary schedules for officers and
employees in the units.

Section 2 of this part amends Civil Service Law § 167(8) to provide
authority to modify the employer and employee shares of health premium
and subscription costs under the New York State Health Insurance Plan.

Section 3 of this part amends Civil Service Law § 208(2) to provide for
the period of unchallenged representation status for employee organiza-
tions for a period of four years with the Executive Branch of the State
that commence in 2011.

Section 4 of this part amends Civil Service Law § 130(3)(e), governing
longevity payments for employees who attain five and ten years of
continuous service at the job rate. This section continues longevity
payments to the extent provided in the collective bargaining agreement.

Sections 5 and 6 of this part amend State Finance Law §§ 8(12-d) and
(12-e) to continue payments to employees for personal property damaged

or destroyed in the course of the performance of official duties.

Section 7 of this part amends State Finance Law § 200 to provide the authority for the Comptroller to reduce, restore and/or repay basic annual salaries, hourly rates or per diems of employees. Such action(s) will be effective for employees in collective negotiating units in accordance with the terms of a collective bargaining agreement or interest arbitration award, and for employees not in collective negotiating units, when the director of budget authorizes a plan for such action(s).

Section 8 of this part authorizes the State to make payments to employees for withdrawing from the health insurance plan in accordance with the terms of the collective bargaining agreements or regulations promulgated by the Department of Civil Service.

Section 9 of this part provides for salary increases as follows:

a) a lump sum payment of $775 in 2013 and $225 in 2014;
b) a 2 percent basic annual salary increase effective March 27, 2014 for officers and employees on the administrative payroll and effective April 3, 2014 for officers and employees on the institutional payroll; and
c) a 2 percent basic annual salary increase effective March 26, 2015 for officers and employees on the administrative payroll and effective April 2, 2015 for officers and employees on the institutional payroll.

Section 10 of this part provides for annual salary increases for positions in the nonprofessional service at the contract colleges of Cornell and Alfred Universities not to exceed those set forth in Section 9 of this part.

Section 11 of this part continues existing location compensation for employees whose principal place of employment is located in New York City, or the counties of Westchester, Rockland, Suffolk, Nassau, Dutchess, Putnam, Orange and Monroe. Employees in the counties of Dutchess, Putnam or Orange continue to receive location compensation at the annual rate of $1,513. Employees in New York City, or in the counties of Rockland, Westchester, Nassau or Suffolk shall receive location compensation at the annual rate of $3,026. For the county of Monroe, only employees hired before March 31, 1985 shall be eligible for continued location compensation of $200 per year.

Section 12 of this part continues location compensation for certain officers and employees of the Hudson Valley Developmental Disabilities Services Office.

Section 13 of this part continues the provision of inconvenience pay to certain full-time employees of the Office for People with Developmental Disabilities who are required to sleep over at their work site.

Section 14 of this part continues pre-shift briefing compensation for certain employees of the State in the Division of Military and Naval Affairs Unit who are required to assemble for briefing prior to the commencement of duties. This section also continues the program for pre-shift briefing compensation for certain employees of the State employed by the Office of Children and Family Services who are members of the Institutional Services Unit.

Section 15 of this part continues assignment to duty pay in the form of an annual lump sum payment to employees in particular assignments provided for by the agreement. Such benefit shall be available until March 30, 2016, unless an extension is negotiated by the parties to the agreement.

Section 16 of this part provides for the continuation of an annual lump sum payment to long-term seasonal employees in an amount specified by, and subject to, the qualifying criteria established by the agreement. Such benefit shall be available until March 30, 2016.

Section 17 of this part continues winter maintenance shift pay for eligible full-time employees of the Department of Transportation in the Operational Services negotiating unit, in accordance with the agreement.

Section 18 of this part continues inconvenience pay for certain employees who work in the overnight hours at a rate of $575 per year.

Section 19 of this part authorizes contributions to employee dependent care accounts in amounts and for the time periods specified by the agreement.

Section 20 of this part provides for the payment and publication of grievance and arbitration settlements and awards pursuant to the agree-

ment.

Section 21 of this part continues a statewide labor-management committee
to address issues of productivity and quality of work life in accordance
with agreement.

Section 22 of this part requires that, prior to implementation of any
salary increase, salary deduction, salary reduction, benefit modifica-
tion, or modification to terms and conditions of employment, the Direc-
tor of Employee Relations submit a letter to the Director of the Budget
and the State Comptroller certifying that the collectively negotiated
agreement has been ratified by the membership.

Section 23 of this part authorizes the State Comptroller to pay any
amounts required by this bill during the fiscal years commencing April
1, 2011 for any state department or agency from any appropriation or
other funds available to such state department or agency for personal
service or for other related employee benefits during such fiscal year.
To the extent that such appropriations in any fund are insufficient, the
Director of the Budget is authorized to allocate to the various depart-
ments and agencies, from any appropriations available in any fund, the
amounts necessary to pay such amounts.
Section 24 of this part provides that employees who participate in a
special annuity program under article 8-C of the Education Law shall not
suffer any reduction of the salary adjustment to which they are other-
wise entitled under the program, as a result of an increase in compen-
sation provided for in this bill.

Section 25 of this part appropriates funding for statewide labor-manage-
ment committees dealing with issues of productivity, the quality of work
life and other issues in accordance with the collectively negotiated
agreement.

Section 26 of this part provides for an immediate effective date of this
part, which shall be deemed to have been in full force and effect on and
after April 2, 2011. Appropriations made by this chapter shall remain in
full force and effect for liabilities incurred through March 31, 2012.

PART B OF THE BILL:

Section 1 of this part repeals Civil Service Law § 130(1)(d) and
replaces it with a new paragraph (d), which includes new salary sched-
ules for competitive, noncompetitive and labor class employees desig-
nated M/C, or who are otherwise excluded from representation rights.

Section 2 of this part repeals Correction Law § 19(1), and replaces it
with a new subdivision 1 providing new salary schedules for superinten-
dents of correctional facilities.

Section 3 of this part authorizes an increase in basic annual salary of
2 percent effective April 1, 2014 and 2 percent effective April 1, 2015.
It provides for a lump sum payment of $775 effective April 1, 2013 and a
lump sum payment of $225 effective April 1, 2014. Additionally, this
section provides for performance advances, merit awards and longevity
payments for non-statutorily paid employees.

Sections 4 and 5 of this part provide salary increases and lump sum
payments consistent with the salary increases provided in Section 3 of
this part for certain State officers and employees in the Division of
State Police, certain State employees in the State University and
certain employees of the contract colleges at Cornell and Alfred.

Section 6 of this part continues existing location compensation for
employees whose principal place of employment is located in New York
City, or the counties of Westchester, Rockland, Suffolk, Nassau, Dutch-
ess, Putnam, Orange and Monroe. Employees in the counties of Dutchess,
Putnam or Orange continue to receive location compensation at the annual
rate of $1,513. Employees in New York City, or in the counties of Rock-
land, Westchester, Nassau or Suffolk shall receive location compensation
at the annual rate of $3,026. For the county of Monroe, only employees
hired before March 31, 1985 shall be eligible for continued location
compensation of $200 per year.

Section 7 of this part continues location compensation for certain offi-
cers and employees of the Hudson Valley Developmental Disabilities
Services Office.

Section 8 of this part provides for the continuation of an overtime meal
allowance for employees covered by this part.

Section 9 of this part continues authorization for payment of grievance



settlements and awards pursuant to the Executive Order No.  42 grievance
procedure, which applies to M/C employees.

Section 10 of this part authorizes the State Comptroller to make
payments required during the fiscal years commencing April 1, 2011.

Section 11 of this part provides that employees who participate in a
special annuity program under article 8-C of the Education Law shall not
suffer any reduction of the salary adjustment to which they are other-
wise entitled under the program, as a result of an increase in compen-
sation provided for in this bill.

Section 12 of this part provides that salary increases, pursuant to this
bill, shall be effective on the first day of the first pay period near-
est to the effective date of any such salary Increase.

Section 13 of this part provides that the Director of the Budget may
withhold any salary increase in order to: reflect the job performance of
an officer or of an employee, maintain appropriate salary relationships
among employees, reduce state expenditures to acceptable levels, or
whenever such increase is not warranted or appropriate. Additionally,
this section provides that the Director of the Budget may devise and
implement a salary reduction plan covering employees covered by this
part.

Section 14 of this part appropriates additional funding to supplement
currently available appropriations to carry out the benefits and train-
ing and development programs. In addition, funding is included to cover
the pro rata M/C share of negotiated programs.

Section 15 of this part provides for an immediate effective date of this
part, which shall be deemed to have been in full force and effect on and
after April 1, 2011. Appropriations made by this chapter shall remain in
full force and effect for liabilities incurred through March 31, 2012.


STATEMENT IN SUPPORT OF THE BILL:


PART A OF THE BILL:

This part of the bill implements the terms of a collective bargaining
agreement covering members of the Administrative Services Unit, the
Institutional Services Unit, the Operational Services Unit and the Divi-
sion of Military and Naval Affairs Unit represented by CSEA.  Approxi-
mately 59,000 full-time annual employees are covered by the Agreement,
including keyboard specialists, clerks, cleaners, developmental and
mental health therapy aides, nurses and highway maintenance workers.

The prior agreement governing these employees expired on April 1, 2011.
Under Article 14 of the Civil Service Law, the Agreement is binding on
all parties to it. This bill incorporates the terms of that Agreement
relating to salary increases, salary deductions, salary reductions,
benefit modifications, and modifications to terms and conditions of
employment and appropriates funds necessary to pay for it, in accordance
with the State's obligations.


PART B OF THE BILL:

This part of the bill establishes terms and conditions of employment for
M/C and other unrepresented employees.

This part of the bill provides M/C and other unrepresented employees
with compensation increases and payments that are comparable to recently
negotiated increases and payments for certain represented employees.
Such parity is essential to provide for appropriate salary adminis-
tration (by maintaining proper salary relationships and mitigating sala-
ry compression), assure productivity, maintain good morale, and to allow
for the recruitment and retention of competent staff.


FISCAL IMPLICATIONS OF THE BILL:

Part A of the bill would provide appropriations totaling approximately
$19 million to pay for the cost of the negotiated agreement during the
period April 2, 2011 to March 31, 2012.

Part B of the bill would provide appropriations totaling approximately
$3.5 million to pay its cost during the period April 1, 2011 to March
31, 2012.



EFFECTIVE DATE:
Part A of the bill takes effect retroactively as of April 2, 2011 and
Part B of the bill takes effect retroactively as of April 1, 2011.

**S 5846 ROBACH**  Same as Uni. A 8513 Abbate
**Governor Program # 22**
ON FILE: 06/22/11 Civil Service Law
TITLE....Relates to compensation and other terms and conditions of employment of certain state officers and employees
**Currently on Senate Committee Agenda**
Senate Standing Committee on Rules
Senator Dean G. Skelos, Chair
June 22, 2011

| | |
|---|---|
| 06/22/11 | REFERRED TO RULES |
| 06/22/11 | ORDERED TO THIRD READING CAL.1524 |
| 06/22/11 | MESSAGE OF NECESSITY |
| 06/22/11 | PASSED SENATE |
| 06/22/11 | DELIVERED TO ASSEMBLY |
| 06/23/11 | referred to ways and means |
| 06/23/11 | substituted for a8513 |
| 06/23/11 | ordered to third reading rules cal.605 |
| 06/23/11 | message of necessity - 3 day message |
| 06/23/11 | passed assembly |
| 06/23/11 | returned to senate |
| 08/05/11 | DELIVERED TO GOVERNOR |
| 08/17/11 | SIGNED CHAP.491 |

**A8513 Abbate**   Same as Uni. S 5846 ROBACH
**Governor Program # 22**
Civil Service Law
TITLE....Relates to compensation and other terms and conditions of employment of certain state officers and employees
**Currently on Assembly Committee Agenda**
Rules (SILVER)
OFF THE FLOOR, Thursday, June 23, 2011

ADDENDUM
**Currently on Assembly Committee Agenda**
Ways and Means (FARRELL)
OFF THE FLOOR, Thursday, June 23, 2011

| | |
|---|---|
| 06/22/11 | referred to ways and means |
| 06/23/11 | reported referred to rules |
| 06/23/11 | reported |
| 06/23/11 | rules report cal.605 |
| 06/23/11 | substituted by s5846 |
| **S05846** | **ROBACH** |
| 06/22/11 | REFERRED TO RULES |
| 06/22/11 | ORDERED TO THIRD READING CAL.1524 |
| 06/22/11 | MESSAGE OF NECESSITY |
| 06/22/11 | PASSED SENATE |
| 06/22/11 | DELIVERED TO ASSEMBLY |
| 06/23/11 | referred to ways and means |
| 06/23/11 | substituted for a8513 |
| 06/23/11 | ordered to third reading rules cal.605 |
| 06/23/11 | message of necessity - 3 day message |
| 06/23/11 | passed assembly |
| 06/23/11 | returned to senate |
| 08/05/11 | DELIVERED TO GOVERNOR |
| 08/17/11 | SIGNED CHAP.491 |

---

| | | | | |
|---|---|---|---|---|
| 06/23/11 | S5846 | Assembly Vote | Yes: 136 | No : 1 |
| 06/22/11 | S5846 | Senate Vote | Aye: 62 | Nay: 0 |

Go to Top of Page

**Floor Votes:**

06/23/11 S5846  Assembly Vote Yes: 136 No : 1

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Yes | Abbate | Yes | Abinanti | Yes | Amedore | ER | Arroyo |
| Yes | Aubry | Yes | Barclay | Yes | Barron | Yes | Benedetto |
| Yes | Bing | Yes | Blankenbush | ER | Boyland | Yes | Boyle |
| Yes | Braunstein | Yes | Brennan | Yes | Bronson | Yes | Brook-Krasny |
| Yes | Burling | Yes | Butler | Yes | Cahill | Yes | Calhoun |
| Yes | Camara | Yes | Canestrari | Yes | Castelli | Yes | Castro |
| Yes | Ceretto | Yes | Clark | Yes | Colton | Yes | Conte |
| Yes | Cook | Yes | Corwin | ER | Crespo | ER | Crouch |
| Yes | Curran | Yes | Cusick | Yes | Cymbrowitz | Yes | DenDekker |
| Yes | Dinowitz | Yes | Duprey | Yes | Englebright | Yes | Farrell |
| Yes | Finch | Yes | Fitzpatrick | Yes | Friend | Yes | Gabryszak |
| Yes | Galef | Yes | Gantt | ER | Gibson | Yes | Giglio |
| Yes | Glick | Yes | Goodell | Yes | Gottfried | Yes | Graf |
| Yes | Gunther A | Yes | Hanna | ER | Hawley | Yes | Hayes |
| Yes | Heastie | Yes | Hevesi | Yes | Hikind | Yes | Hooper |
| Yes | Hoyt | Yes | Jacobs | Yes | Jaffee | Yes | Jeffries |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Yes | Johns | Yes | Jordan | Yes | Katz | Yes | Kavanagh |
| Yes | Kellner | ER | Kirwan | Yes | Kolb | Yes | Lancman |
| Yes | Latimer | Yes | Lavine | Yes | Lentol | Yes | Lifton |
| Yes | Linares | Yes | Lopez P | ER | Lopez V | Yes | Losquadro |
| Yes | Lupardo | No | Magee | Yes | Magnarelli | Yes | Maisel |
| Yes | Malliotakis | Yes | Markey | Yes | McDonough | Yes | McEneny |
| Yes | McKevitt | Yes | McLaughlin | Yes | Meng | Yes | Miller D |
| Yes | Miller J | Yes | Miller M | Yes | Millman | Yes | Molinaro |
| Yes | Montesano | Yes | Morelle | Yes | Moya | Yes | Murray |
| Yes | Nolan | Yes | Oaks | Yes | O'Donnell | Yes | Ortiz |
| Yes | Palmesano | Yes | Paulin | Yes | Peoples-Stokes | Yes | Perry |
| Yes | Pretlow | Yes | Ra | Yes | Rabbitt | Yes | Raia |
| Yes | Ramos | Yes | Reilich | Yes | Reilly | Yes | Rivera J |
| Yes | Rivera N | Yes | Rivera P | Yes | Roberts | ER | Robinson |
| Yes | Rodriguez | Yes | Rosenthal | Yes | Russell | Yes | Saladino |
| Yes | Sayward | Yes | Scarborough | Yes | Schimel | Yes | Schimminger |
| Yes | Schroeder | Yes | Simotas | Yes | Smardz | Yes | Spano |
| Yes | Stevenson | Yes | Sweeney | Yes | Tedisco | Yes | Tenney |
| Yes | Thiele | Yes | Titone | Yes | Titus | Yes | Tobacco |
| Yes | Weinstein | Yes | Weisenberg | Yes | Weprin | Yes | Wright |
| Yes | Zebrowski K | Yes | Mr. Speaker | | | | |

Go to Top of Page

**Floor Votes:**

06/22/11 S5846  Senate Vote  Aye: 62  Nay: 0

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Aye | Adams | Aye | Addabbo | Aye | Alesi | Aye | Avella |
| Aye | Ball | Aye | Bonacic | Aye | Breslin | Aye | Carlucci |
| Aye | DeFrancisco | Aye | Diaz | Aye | Dilan | Aye | Duane |
| Aye | Espaillat | Aye | Farley | Aye | Flanagan | Aye | Fuschillo |
| Aye | Gallivan | Aye | Gianaris | Aye | Golden | Aye | Griffo |
| Aye | Grisanti | Aye | Hannon | Aye | Hassell-Thompson | Aye | Huntley |
| Aye | Johnson | Aye | Kennedy | Aye | Klein | Aye | Krueger |
| Aye | Kruger | Aye | Lanza | Aye | Larkin | Aye | LaValle |
| Aye | Libous | Aye | Little | Aye | Marcellino | Aye | Martins |
| Aye | Maziarz | Aye | McDonald | Aye | Montgomery | Aye | Nozzolio |
| Aye | O'Mara | Aye | Oppenheimer | Aye | Parker | Aye | Peralta |
| Aye | Perkins | Aye | Ranzenhofer | Aye | Ritchie | Aye | Rivera |
| Aye | Robach | Aye | Saland | Aye | Sampson | Aye | Savino |
| Aye | Serrano | Aye | Seward | Aye | Skelos | Aye | Smith |
| Aye | Squadron | Aye | Stavisky | Aye | Stewart-Cousins | Aye | Valesky |
| Aye | Young | Aye | Zeldin | | | | |

# EXHIBIT E

August 2011

# NYSHIP Rate Changes

## Effective October 1, 2011

For Retirees and Vestees of New York State Government and their Enrolled Dependents

### Special Option Transfer Period (September 1 through September 30, 2011)

*The terms of a collective bargaining agreement have been administratively extended to Retirees and Vestees of New York State Government and their enrolled dependents. This will result in a NYSHIP rate change effective October 1; the new rates included in this publication will be in effect through the end of 2011. As a result of these rate changes, there will be a Special Option Transfer Period during the month of September. The annual rate change for 2012 will occur on the first of this year, as usual.*

### How will the Special Option Transfer Period work?

As a result of the rate changes, there will be a Special Option Transfer Period, **September 1 through September 30, 2011.** You may select The Empire Plan or a NYSHIP-approved Health Maintenance Organization (HMO) serving your area.

**No action is required if you wish to keep your current health insurance option.**

PLEASE NOTE: A change during this Special Option Transfer Period will not be counted as an option change for the purpose of the once in a 12-month period limit for retirees. In addition, health insurance rates and benefit plan information for the 2012 plan year will be available at the end of the 2011 calendar year as they normally are and you will have the opportunity to review this material and change options again at that time if you wish to do so.

### *Choices* and *The Empire Plan Special Report* Explain Your Current Plan and Other Available Plans

If you are considering changing your health insurance plan or wish to review your current plan, refer to the *Choices for 2011* booklet that was mailed to your home last fall (also available from the Employee Benefits Division). You can also visit our web site at https://www.cs.ny.gov for this information. Click on Benefit Programs, then NYSHIP Online. Select your group if prompted, and then click on Health Benefits & Option Transfer. Choose Rates and Health Plan Choices for the most up-to-date option transfer information.

Also, please reference the August 2011 *Empire Plan Special Report* with the *Empire Plan Preventive Care Coverage* chart for Empire Plan benefit changes, including preventive care services required by the federal Patient Protection and Affordable Care Act (PPACA). You should have received this *Report* in the mail separately. You can also access this *Report* on our web site at https://www.cs.ny.gov. Click on Benefits and Publications.

If you have questions about The Empire Plan, call toll free at 1-877-7-NYSHIP (1-877-769-7447). Select the Medical Program and then the appropriate prompt for Option Transfer benefit questions.

If you have questions about NYSHIP HMOs, call the HMOs directly. (See the rate listing inside for telephone numbers.) Be sure you understand how your benefits will be affected if you change plans.

*Continued on page 7*



New York State Department of Civil Service, Employee Benefits Division
Alfred E. Smith State Office Building, Albany, New York 12239
https://www.cs.ny.gov

# New York State Health Insurance Program 2011 Rates

# Check your plan – this is your only notice of a rate change.

| Code | Plan and Service Area |
|---|---|
| 001 | **The Empire Plan** (available to enrollees and their eligible dependents worldwide) 1-877-7-NYSHIP (1-877-769-74… Medical/Surgical Program: UnitedHealthcare, PO Box 1600, Kingston, NY 12402-1600 (TTY: 1-888-697-9054) Hospital Program: Empire BlueCross BlueShield, NYS Service Center, PO Box 1407, Church Street Station, New Yor Mental Health/Substance Abuse Program: UnitedHealthcare/OptumHealth, PO Box 5190, Kingston, NY 12402-519 Prescription Drug Program: UnitedHealthcare/Medco Health Solutions, PO Box 5900, Kingston, NY 12402-5900 (T |
| 210 | **Aetna\*†** 99 Park Ave., New York, NY 10016 1-800-323-9930 (TTY: 1-800-654-5984) www.aetna.com Serving Bronx, Kings, Nassau, New York, Orange, Putnam, Queens, Richmond, Rockland, Suffolk, Sullivan and Wes |
| 066 | **Blue Choice †** 165 Court St., Rochester, NY 14647 585-454-4810 or 1-800-462-0108 (TTY: 1-877-398-2282) www.ex |
| 063 | **Capital District Physicians' Health Plan (CDPHP) (Capital)†** 500 Patroon Creek Blvd., Albany, NY 12206-1057 51 Serving Albany, Columbia, Fulton, Greene, Montgomery, Rensselaer, Saratoga, Schenectady, Schoharie, Warren ar |
| 300 | **Capital District Physicians' Health Plan (CDPHP) (Central)†** 500 Patroon Creek Blvd., Albany, NY 12206-1057 51 Serving Broome, Chenango, Delaware, Essex, Hamilton, Herkimer, Madison, Oneida, Otsego and Tioga counties |
| 310 | **Capital District Physicians' Health Plan (CDPHP) (Hudson Valley)†** 500 Patroon Creek Blvd., Albany, NY 12206- |
| 067 | **Community Blue\*†** PO Box 80, Buffalo, NY 14240-0080 716-887-8840 or 1-877-576-6440 (TTY: 1-888-249-2583) w |
| 280 | **Empire BlueCross BlueShield HMO (Upstate)** 11 Corporate Woods Blvd., PO Box 11800, Albany, NY 12211-0800 Serving Albany, Clinton, Columbia, Delaware, Essex, Fulton, Greene, Montgomery, Rensselaer, Saratoga, Schenect… |
| 290 | **Empire BlueCross BlueShield HMO (Downstate)** 11 Corporate Woods Blvd., PO Box 11800, Albany, NY 12211-0… Serving Bronx, Kings, Nassau, New York, Queens, Richmond, Rockland, Suffolk and Westchester counties |
| 320 | **Empire BlueCross BlueShield HMO (Mid-Hudson)** 11 Corporate Woods Blvd., PO Box 11800, Albany, NY 12211-… |
| 220 | **GHI HMO** 789 Grant Ave., Lake Katrine, NY 12449 or PO Box 4181, Kingston, NY 12401 1-877-244-4466 (TTY: 1-877-2C |
| 350 | **GHI HMO** 789 Grant Ave., Lake Katrine, NY 12449 or PO Box 4181, Kingston, NY 12401 1-877-244-4466 (TTY: 1-877 |
| 050 | **HIP Health Plan of New York†** 55 Water St., New York, NY 10041 1-877-861-0175 (TTY: 1-888-447-4833) hipusa.cc |
| 072 | **HMOBlue Excellus BlueCross BlueShield (Central New York Region)** 333 Butternut Dr., Syracuse, NY 13214 1-8 Serving Broome, Cayuga, Chemung, Cortland, Onondaga, Oswego, Schuyler, Steuben, Tioga and Tompkins counti |
| 160 | **HMOBlue Excellus BlueCross BlueShield (Utica Region)** 12 Rhoads Dr., Utica, NY 13502 1-800-722-7884 (TTY: 1- Serving Chenango, Clinton, Delaware, Essex, Franklin, Fulton, Herkimer, Lewis, Madison, Montgomery, C |
| 059 | **Independent Health†** 511 Farber Lakes Dr., Buffalo, NY 14221 1-800-501-3439 (TTY: 716-631-3108) www.indepen |
| 058 | **MVP Health Care (Rochester)†** PO Box 2207, 625 State St., Schenectady, NY 12301-2207 1-888-MVP-MBRS (1-888 Serving Genesee, Livingston, Monroe, Ontario, Orleans, Seneca, Steuben, Wayne, Wyoming and Yates counties |
| 060 | **MVP Health Care (East)†** PO Box 2207, 625 State St., Schenectady, NY 12301-2207 1-888-MVP-MBRS (1-888-687-6 Serving Albany, Columbia, Greene, Hamilton, Montgomery, Rensselaer, Saratoga, Schenectady, Schoharie, |
| 330 | **MVP Health Care (Central)†** PO Box 2207, 625 State St., Schenectady, NY 12301-2207 1-888-MVP-MBRS (1-888-68 Serving Broome, Cayuga, Chenango, Cortland, Delaware, Herkimer, Jefferson, Lewis, Madison, Oneida, Onondaga, |
| 340 | **MVP Health Care (Mid-Hudson)†** PO Box 2207, 625 State St., Schenectady, NY 12301-2207 1-888-MVP-MBRS (1-888 |
| 360 | **MVP Health Care (North)** PO Box 2207, 625 State St., Schenectady, NY 12301-2207 1-888-MVP-MBRS (1-888-687- |

Please read this rate sheet carefully to find the rate that applies to you. There are different rates for different groups as a result of legislation and administrative agreements.

s://www.cs.ny.gov

008-1407 (TTY: 1-800-241-6894)

1-800-855-2881)

)-759-1089)

counties in New York State, and all counties in New Jersey

:bs.com Serving Livingston, Monroe, Ontario, Seneca, Wayne and Yates counties

700 or 1-800-777-2273 (TTY: 1-877-261-1164) www.cdphp.com

ington counties

700 or 1-800-777-2273 (TTY: 1-877-261-1164) www.cdphp.com

8-641-3700 or 1-800-777-2273 (TTY: 1-877-261-1164) www.cdphp.com Serving Dutchess, Orange and Ulster counties

swny.com Serving Allegany, Cattaraugus, Chautauqua, Erie, Genesee, Niagara, Orleans and Wyoming counties

53-0113 (TTY: 1-800-241-6894) www.empireblue.com

oharie, Warren and Washington counties

0-453-0113 (TTY: 1-800-241-6894) www.empireblue.com

300-453-0113 (TTY: 1-800-241-6894) www.empireblue.com Serving Dutchess, Orange, Putnam, Sullivan and Ulster counties

) www.ghi.com Serving Albany, Columbia, Delaware, Greene, Rensselaer, Saratoga, Schenectady, Warren and Washington counties

20) www.ghi.com Serving Dutchess, Orange, Putnam, Rockland, Sullivan and Ulster counties

ng Bronx, Kings, Nassau, New York, Queens, Richmond, Suffolk and Westchester counties

6269 (TTY: 1-877-398-2275) www.excellusbcbs.com

3-2275) www.excellusbcbs.com

Otsego and St. Lawrence counties

alth.com Serving Allegany, Cattaraugus, Chautauqua, Erie, Genesee, Niagara, Orleans and Wyoming counties

77) (TTY: 1-800-662-1220) www.joinmvp.com

Y: 1-800-662-1220) www.joinmvp.com

and Washington counties

(TTY: 1-800-662-1220) www.joinmvp.com

o, Otsego, Tioga and Tompkins counties

7) (TTY: 1-800-662-1220) www.joinmvp.com  Serving Dutchess, Orange, Putnam, Rockland, Sullivan and Ulster counties

TY: 1-800-662-1220) www.joinmvp.com  Serving Franklin and St. Lawrence counties

Monthly Rates: Rates for retirees do not reflect sick leave credit. (See page 8 for more information on how sick leave credit impacts your premium.)

| A | | B | | C | |
|---|---|---|---|---|---|
| Ind | Fam | Ind | Fam | Ind | Fam |
| 0.00 | 193.09 | 69.72 | 278.26 | 580.96 | 1353.34 |
| 170.53 | 928.55 | 238.05 | 1011.56 | 733.21 | 2072.27 |
| 0.00 | 159.68 | 55.49 | 227.94 | 462.44 | 1101.15 |
| 3.42 | 211.87 | 67.41 | 291.18 | 536.63 | 1319.68 |
| 83.74 | 413.95 | 148.14 | 493.77 | 620.41 | 1529.12 |
| 104.82 | 466.11 | 169.09 | 545.77 | 640.39 | 1578.89 |
| 0.00 | 311.29 | 66.11 | 395.64 | 550.95 | 1507.69 |
| 114.48 | 567.20 | 183.24 | 652.75 | 687.50 | 1770.17 |
| 217.98 | 837.86 | 286.80 | 923.49 | 791.51 | 2041.96 |
| 219.73 | 842.60 | 288.62 | 928.31 | 793.82 | 2047.93 |
| 173.26 | 747.65 | 243.98 | 835.53 | 762.63 | 1980.68 |
| 235.11 | 915.67 | 305.83 | 1003.55 | 824.47 | 2148.69 |
| 52.15 | 319.43 | 119.40 | 402.69 | 612.57 | 1480.26 |
| 127.76 | 511.83 | 192.93 | 592.34 | 670.80 | 1630.55 |
| 91.37 | 475.71 | 154.37 | 553.77 | 616.40 | 1565.46 |
| 0.00 | 195.30 | 63.96 | 274.89 | 532.96 | 1314.17 |
| 0.00 | 166.28 | 54.94 | 234.52 | 457.82 | 1122.94 |
| 0.00 | 174.77 | 57.69 | 246.45 | 480.75 | 1179.85 |
| 26.40 | 266.04 | 89.26 | 343.94 | 550.22 | 1353.93 |
| 17.80 | 243.27 | 80.24 | 320.64 | 538.09 | 1323.66 |
| 106.20 | 468.21 | 170.13 | 547.47 | 638.95 | 1575.82 |

# Enrollee contributions for Retirees and Vestees

To enroll in an HMO or to remain enrolled in your current HMO, you must live or work‡ in the HMO's NYSHIP service area.

**A** Retirement Prior to 1/1/1983

**B** Retirement on or after 1/1/1983

**C** Vestees and Long Term Disability Enrollees

\* These two HMOs will provide nongrandfathered benefits, including preventive care services required by the federal Patient Protection and Affordable Care Act (PPACA). Contact the HMO directly for specific information.

† Medicare-primary enrollees will be enrolled in this plan's Medicare Advantage Plan. As a rule, the Centers of Medicare & Medicaid Services (CMS) states that, except under certain circumstances, if an enrollee's temporary residence is out of the HMO's Medicare Advantage Plan service area for more than six consecutive months, the enrollee will be disenrolled from that HMO Medicare Advantage Plan.

‡ If Medicare-primary, check with the plan.

# If You Are Changing Your Health Insurance Option

1. Complete the NYSHIP Option Transfer Request form on page 6. **Enrollee signature is required.**

2. Send the completed form to the Employee Benefits Division at the address provided by September 30, 2011.

3. **If you are enrolling in or transferring out of one of the following Medicare Advantage Plans...**

| | | | |
|---|---|---|---|
| Option 210 | Aetna | Option 050 | HIP Health Plan of New York |
| Option 066 | Blue Choice | Option 059 | Independent Health |
| Option 063 | CDPHP | Option 058 | MVP Health Care (Rochester) |
| Option 300 | CDPHP | Option 060 | MVP Health Care (East) |
| Option 310 | CDPHP | Option 330 | MVP Health Care (Central) |
| Option 067 | Community Blue | Option 340 | MVP Health Care (Mid-Hudson) |

**...the Social Security number, Medicare identification number and signature of each Medicare-primary dependent are also required.**

If you are Medicare-primary and plan to change options into or out of one of the Medicare Advantage HMOs listed above, Medicare works with NYSHIP to coordinate enrollment within the NYSHIP rules. The effective date of your requested change is dependent upon the date it is received and processed by the Employee Benefits Division and the date the HMO has completed the Medicare-required enrollment process. Therefore, if you are requesting a change involving a Medicare Advantage HMO, submit your request as soon as possible.

# NYSHIP Option Transfer Request

**No action is required if you wish to keep your current health insurance.**

**Please fill in this form and return it by September 30, 2011 to:**

NYS Department of Civil Service Employee Benefits Division, Operations Unit
Alfred E. Smith State Office Building, Albany, New York 12239
Call us at 518-457-5754 or 1-800-833-4344 (U.S., Canada, Puerto Rico, Virgin Islands)
if you have any questions about this form.

---

Enrollee Name _____

Social Security Number (SSN) _____

Address _____

_____

County* _____ City or Post Office _____

State _____ ZIP Code _____ Telephone Number (_____) _____

Is this a new address?   ☐ Yes   ☐ No        Date of New Address: _____

---

Medicare ☐ Yes ☐ No  If Yes: Part A Effective Date: _____ Part B Effective Date: _____

Dependent Medicare    ☐ Yes ☐ No

If Yes:  Part A Effective Date _____ Part B Effective Date _____

Are you or your dependent reimbursed from another source for Part B coverage?    ☐ Yes    ☐ No

If Yes, by whom? _____ Amount $ _____

---

Effective October 1, 2011, please change my health insurance option.

From: Current Option Code Number _____ Current Plan Name _____

To: New Option Code Number _____ New Plan Name _____

Date _____ Enrollee Signature *(required)* _____

If you have Family coverage, please complete the following for each dependent enrolled in Medicare

*(attach a separate sheet of paper if necessary):*

Dependent Name _____ SSN _____

Medicare ID # *(on his or her Medicare card)* _____

Date _____ Dependent Signature *(required)* _____

Dependent Name _____ SSN _____

Medicare ID # *(on his or her Medicare card)* _____

Date _____ Dependent Signature *(required)* _____

☐ I have no Medicare-eligible dependents

* If you are enrolling in an HMO, please double check the enclosed rate chart or the HMO's page in *Choices.*
  Is the HMO approved by NYSHIP to serve your county?

**USE THIS FORM FOR OPTION CHANGE ONLY**

# Sample Pension Check Stub

## 1. Medicare Premium and Your Credit (Reimbursement) Will Not Change

If you or your dependent is Medicare primary, the State's reimbursement of the standard Part B premium is shown as a credit in the box, unless you or your dependent receive reimbursement from another source. The standard Medicare Part B premium varies somewhat depending on your individual circumstances, such as when you first became Medicare-eligible.

## 2. Insurance Premium Deduction

Your share of the NYSHIP premium, less any sick leave credit, is shown as a deduction in this box.

Your retirement check will reflect the October 2011 rate change.

The deduction of your new health insurance premium (due to the rate changes) or for your new health insurance plan (if you change plans) plus or minus any retroactive adjustment needed will be reflected no earlier than your September 30 pension check. The date of the adjustment will depend on when your health insurance plan change request is received and processed.

*Choices Explaining Current Plan*, continued from page 1

Changing plans may result in substantially different coverage. If you decide to change plans, complete the Option Transfer Request form on page 6 (see instructions on page 5) and mail it to the Employee Benefits Division by September 30, 2011 at the address provided.

## To Contact the Employee Benefits Division

You may call the Employee Benefits Division at 518-457-5754 or 1-800-833-4344 (U.S., Canada, Puerto Rico, Virgin Islands). Please call Monday through Friday between 9 a.m. and 3 p.m. Eastern time to speak to a representative, or any time to use our automated telephone service.

## Your Retirement Check and "Notice of Change" Document

Your deductions will change to reflect the changes to the 2011 health insurance rates of your 2011 health insurance plan. The 2011 monthly Medicare reimbursement for the Medicare Part B premium will not change.

If you receive your pension by direct deposit, your retirement system will notify you of any deduction changes. The sample check stub and "Notice of Change" document (for the direct deposit enrollee) shown to the left are from the New York State and Local Employees' Retirement System. Note: If you receive your pension from another retirement program, your check stub and "Notice of Change" document will be different.

## Enrollees Who Pay the Employee Benefits Division Directly

If you remain in your current plan, the October 2011 rate change will be reflected in your bill due September 30, which bills for your October coverage.

If you change plans, the October 2011 rate change for your new health insurance plan will be reflected in your October 31 bill with any retroactive adjustments.

## Keep Your Health Insurance Up to Date

You must write to the Employee Benefits Division at the New York State Department of Civil Service, Alfred E. Smith State Office Building, Albany, New York 12239, when changes in your family or marital status affect your coverage or if your address changes. Be sure to sign your letter and include your Social Security number, telephone number and address in your letter. Act Promptly. Deadlines may apply. See your *NYSHIP General Information Book* for details.

*Continued on back cover*

New York State
Department of Civil Service
Employee Benefits Division
P.O. Box 1068
Schenectady, New York 12301-1068
https://www.cs.ny.gov



**NYSHIP**
New York State Health Insurance Program

Address Service Requested

Time-Sensitive Materials

**Your Only Notice of Health Insurance Rate Changes for October 1, 2011**

Important Health Insurance Information
for the Enrollee, Enrolled Spouse/Domestic Partner
and Other Enrolled Dependents

*NYSHIP Rate Changes for NY Retirees – August 2011*

**Please do not send mail or correspondence to the return address listed above. See page 1 for address.**

---

It is the policy of the New York State Department of Civil Service to provide reasonable accommodation to ensure effective communication of information in benefits publications to individuals with disabilities. These publications are also available on the Department of Civil Service web site (https://www.cs.ny.gov). Click on Benefit Programs then NYSHIP Online for timely information that meets universal accessibility standards adopted by New York State for NYS agency web sites. If you need an auxiliary aid or service to make benefits information available to you, please contact your agency Health Benefits Administrator. COBRA Enrollees: Contact the Employee Benefits Division at 518-457-5754 or 1-800-833-4344 (U.S., Canada, Puerto Rico, Virgin Islands).

2011 NYSHIP Rate Changes for NY Retirees 08/11

♻ *NYSHIP Rate Changes* was printed on paper containing recycled fiber using environmentally sensitive inks.          AL1100

---

*Continued from page 7*

## Lifetime Sick Leave Credit

When you retired, you may have been entitled to convert your unused sick leave into a lifetime monthly credit that reduces your cost for health insurance for as long as you remain enrolled in NYSHIP. Your monthly credit remains the same throughout your lifetime. However, the balance you pay for your health insurance premium is likely to change. When the premium or your contribution rate rises, the balance you must pay may also rise. To calculate the balance you will pay for the remainder of 2011, subtract your monthly sick leave credit from your new monthly premium.

# EXHIBIT F





# NYSHIP HMO SPECIAL REPORT

**In This Report**

Changes Effective
October 1, 2011

- Special Option Transfer
  Period in September

- Option Transfer
  Period for 2012

NYSHIP Changes

- Your Monthly Premium
  Contribution Rate

**August 2011**

**New York State Health Insurance Program (NYSHIP)**
**for New York State Retirees, Vestees, Dependent Survivors,**
their enrolled Dependents, COBRA Enrollees with their Empire Plan
Benefits and Young Adult Option Enrollees

# Changes Effective October 1, 2011

This *Report* describes changes affecting your NYSHIP coverage that will take effect on October 1, 2011. These changes are the result of collective bargaining, which have been administratively extended to NY retirees. They include:

## NYSHIP Changes

• A change in the NYSHIP premium cost sharing between the State and its retirees

## Special Option Transfer Period in September

As a result of these changes, there will be an October 1 rate change and a Special Option Transfer Period during the month of September. You will have the opportunity to change your NYSHIP option for October 2011. A change during this Special Option Transfer Period will not be counted as an option change for the purpose of the once per 12-month limit for retirees.

**Your cost of coverage under a NYSHIP HMO or The Empire Plan for October through the end of 2011 will be posted on the Department web site, https://www.cs.ny.gov, no later than August 31, 2011. A rate flyer also will be mailed to your home on or before that date.** The web site and the rate flyer will provide details of the Special Option Transfer Period.

## Option Transfer Period for 2012

The annual option transfer will be held, as usual, at the end of the year with changes effective for the 2012 plan year. There also will be NYSHIP rate changes for 2012. You will receive the Option Transfer publication, *Choices for 2012*, along with *Rates and Information for 2012* in a package in the mail later this fall. Rates for 2012 will be posted online and Option Transfer information will be mailed to you as soon as they are approved.

# NYSHIP Change 

## Your Monthly Premium Contribution Rate

New York State helps pay for your health insurance coverage in retirement. After the State's contribution, you are responsible for paying the balance of your premium through monthly deductions from your pension check or direct billings.

Effective October 1, 2011, your share of the cost is based upon your retirement date as shown below.

| Retirement Date | Individual Coverage | | Dependent Coverage | |
|---|---|---|---|---|
| | State Share* | Employee Share | State Share* | Employee Share |
| Prior to January 1, 1983 | 100% | 0% | 75% | 25% |
| On or after January 1, 1983 and before January 1, 2012 | 88% | 12% | 73% | 27% |

\* The State's contribution to the cost of HMO coverage is capped based on the cost of The Empire Plan. If the dollar amount the State contributes for the hospital, medical and mental health/substance abuse components of The Empire Plan are lower than the employer contribution for the same components of an HMO, you are responsible for the full amount of the difference.

**Note:** This information does not apply to COBRA enrollees or Young Adult Option enrollees. These enrollees will have a rate change, however, as a result of the October 1 benefit changes.

It is the policy of the New York State Department of Civil Service to provide reasonable accommodation to ensure effective communication of information in benefits publications to individuals with disabilities. These publications are also available on the Department of Civil Service web site (https://www.cs.ny.gov). Click on Benefit Programs, then NYSHIP Online for timely information that meets universal accessibility standards adopted by New York State for NYS agency web sites. If you need an auxiliary aid or service to make benefits information available to you, please contact your agency Health Benefits Administrator. New York State and Participating Employer Retirees and COBRA Enrollees: Contact the Employee Benefits Division at 518-457-5754 or 1-800-833-4344 (U.S., Canada, Puerto Rico, Virgin Islands).

This *NYSHIP Health Maintenance Organization Special Report* is published by the Employee Benefits Division of the New York State Department of Civil Service. The Employee Benefits Division administers the New York State Health Insurance Program (NYSHIP). NYSHIP provides your health insurance benefits.



New York State Department of Civil Service
Employee Benefits Division, Albany, New York 12239
518-457-5754 or 1-800-833-4344 (U.S., Canada, Puerto Rico, Virgin Islands) https://www.cs.ny.gov

 This *Report* was printed using recycled paper and environmentally sensitive inks.     AL1101           HMO Special Report: Retiree 2011

HMO Special -RET-11-1

# EXHIBIT G

August 23, 2011

Mr. Alphonso David
Deputy Secretary to the Governor
Executive Chamber
Capitol - Room 242
Albany, NY 12224

Dear Deputy Secretary David:

We appreciate the time you and Director Johnson spent at our meeting on August 11, 2011. The Retired Public Employee's Association (RPEA) is ready to continue our dialog and provide our support and assistance to you and the State of New York. RPEA is the only organization solely representing State and local retirees. As you requested, we have identified some of the policy issues, problems and solutions facing public service retirees in New York State:

1. **There should be no increase in the rate of contribution for health insurance coverage for current State retirees.** New York State retirees enrolled in the New York State Health Insurance Plan (NYSHIP), except for those who retired before January 1, 1983, contribute 10 percent of the cost of premiums for individual coverage — slightly less than the national average — and 25 percent of the premiums for family coverage.

2. **All local governments should provide their employees and retirees with health insurance.** Given the fact that New York has 3,175 local governments, including counties, cities, towns, villages and school and special districts, the State should enhance the ability of municipalities to cooperatively provide and manage employee benefits in a manner that reduces the cost of providing such benefits, but which gives such municipal employees choices in the benefits provided. By cooperatively administering the provision of such employee benefits through the establishment of Municipal Cooperative Health Insurance Plans, perhaps, some of the functions of participating municipalities can be consolidated to further reduce overhead costs.

3. **There should be a 90 day notification to retirees before a local government can change coverage or contribution rates for their retirees.** RPEA has legislation introduced in the Assembly (A.7872, Abinanti) to effectuate this proposal and will have a Senate sponsor for the bill before the start of the 2012 Legislative Session.

4. **There should be a requirement that there be a minimum number of employees and retirees for a municipality or a group of them to self-insure.** At present there is virtually no regulatory oversight of government self-insured plans of the reserves and solvency. Oversight should require minimum size of self insured plans so that they are actuarially sound to insure continued viability of the plans.

5. **Retirees and/or dependents that live in areas not well served by the Empire Plan under NYSHIP should be provided the employer share of premiums on proof of enrollment in an accepted health insurance plan.** This will help out–of-state retirees not well served by the United Health Care network.

6. **Otherwise eligible retirees who opt out of health insurance coverage at retirement (in order to be covered under another plan) should be able to rejoin when the other coverage ceases.** This would result in savings to the State and local governments.

To supplement our comments made during our meeting on August 11, 2011 regarding maintaining the *status quo* with respect to the ratio of the employer/employee contribution rate for health insurance in place at the time of a State employee's retirement, there is a long-standing practice of continuing the specific ratio, if any, then in place for such retirees. When a different ratio has been implemented, the law has been amended to "hold harmless" existing retirees.

For example, Civil Service Law, §167, in pertinent part, provides:

"§167. Contributions. 1.(a) The full cost of premium or subscription charges for the coverage of retired state employees who are enrolled in the statewide and the supplementary health benefit plans established pursuant to this article and who retired prior to January first, nineteen hundred eighty-three shall be paid by the state."

This statute, reflecting a change in the employer/employee ratio to be paid by State employees and State retirees participating in NYSHIP after December 31, 1982, then continues:

"Nine-tenths of the cost of premium or subscription charges for the coverage of state employees and retired state employees retiring on or after January first, nineteen hundred eighty-three who are enrolled in the statewide and supplementary health benefit plans shall be paid by the state. Three-quarters of the cost of premium or subscription charges for the coverage of dependents of such state employees and retired state employees shall be paid by the state."

 

In other words, pre-January 1, 1983 retirees were "held harmless" and continued participating in NYSHIP at the "old ratio" -- i.e., the State's continuing to pay the full cost of such premiums for both individual and individual and dependent coverage -- notwithstanding the change in the State's NYSHIP employer/employee ratio for such premiums effective January 1, 1983 whereby active State employees and those State employees retiring on or after January 1, 1983 would pay 10 percent of NYSHIP premiums for individual coverage and 25 percent of NYSHIP premiums for dependent coverage.

This, in our view, recognizes the implied contractual nature of the employer/employee contribution ratio for NYSHIP premiums with respect to those already retired in contrast to those not yet retired.

On behalf of the Retired Public Employees Association, we thank you for providing a means to have retirees' interests and concerns on health insurance and pension issues heard by the State administration. We look forward to working with Governor Cuomo and you in shaping a fair, appropriate and sustainable system for health insurance for those who have devoted their careers to serving the people of the State of New York.

Sincerely,


Stanley Winter
President


cc: Director Gary Johnson

# EXHIBIT H



# Retired Public Employees Association, Inc.

435 NEW KARNER ROAD • ALBANY, NY 12205 • (518) 869-2542 • FAX (518) 869-0631 e-mail: mail@rpea.org
Stanley Winter, President                                    Michael B. Fitzgerald, Executive Director

September 14, 2011

The Honorable Patricia Hite
Acting NYS Department of Civil
  Service Commission President
NYS Department of Civil Service
Alfred E. Smith State Office Building
Albany, NY 12239

CERTIFIED MAIL-RETURN RECEIPT REQUESTED

Dear President Hite:

I am writing on behalf of all members of the New York State Employees'
Retirement System, the New York State Teachers' Retirement System and, or,
an Optional Retirement Plan established pursuant to the Education Law currently
receiving a retirement allowance or benefit now participating in the Statewide
Health Insurance Plan, or an optional benefits plan thereof  [hereinafter
collectively "NYSHIP"].

The New York State Department of Civil Service has indicated that certain terms
of recently negotiated collective bargaining agreements resulting in an increase
in the percentage or ratios of employee contributions for NYSHIP premiums will
be imposed on retirees effective October 1, 2011. This unilateral action
presumably will affect individuals who retired on or after January 1, 1983 enrolled
in NYSHIP.

Significantly, retired employees are not in a collective bargaining unit within the
meaning of Article 14 of the Civil Service Law. Accordingly, employee
organizations may only negotiate with respect to health insurance benefits upon
retirement on behalf of individuals in the collective bargaining unit then active
employees.

Thus there is no authority in law or contract justifying the Department of Civil
Service applying, or extending, a term or condition of employment negotiated on
behalf of active employees by an employee organization to an individual then
retired.

The Retired Public Employees Association (RPEA) maintains that there is
significant legal and historical precedent barring any change in the percentages
or ratios of the State's "employer contributions" for NYSHIP premiums for
individuals already receiving a retirement allowance or benefit.

These legal and historical precedents indicate that whenever there is a change in
the percentages or ratios of "employer contributions" for NYSHIP premiums that



would adversely affect a retiree, the then existing "employer contribution" percentages or ratios are continued without change for individuals who retired before the effective date of any such change in the percentages or ratios of "employer contributions." In other words, such retirees are "grandfathered in" with respect to continuation of the ratios or percentages of "employer contributions" for NYSHIP at the level set by law, rule or regulation in effect prior to the effective date of any change in the ratios or percentages of "employer contributions" on behalf of individuals retiring prior to the effective date of the change to avoid such an adverse impact.

RPEA has therefore taken the liberty of attaching a proposed amendment to the President's Regulations set out in 4 NYCRR 73.3, such amendment to be adopted by the President pursuant to the authority set out in Civil Service Law §167.8, as amended. In summary, it provides for the reduction of the ratios or percentages of "employer contributions" with respect to those retiring on or after October 1, 2011 while fixing the existing 90% "employer contribution" for a retiree's individual coverage and the existing 75% "employer contribution" for dependent coverage for individuals who retired on or before September 30, 2011.

This proposed amendment to the President's Regulations tracks the legislative intent in its various amendments of Civil Service Law §167.1, formerly §127 of the Civil Service Law added by Chapter 641 of the Laws of 1956. See, for example, Chapter 14, §1 of the Laws of 1983 with respect to changes in the ratios or percentages of employer contributions to be made on behalf of employees with respect to employees and individuals retiring on or after January 1, 1983 while insulating individuals who retired prior to January 1, 1983 from such changes.

Of course, as earlier noted, RPEA believes that the ratios or percentages of "employer contributions" to be made on behalf of public employees retiring on or after October 1, 2011, the effective date of such changes set out in the relevant recent collective bargaining agreements, may be increased by administrative action.

We respectfully request that this proposed amendment to the President's Regulations be promulgated immediately.

Thank you for your prompt attention to this matter. We are available to meet with you at your convenience to discuss this matter further.


                                        Sincerely,



                                        Alan Dorn
                                        Executive Director



# Retired Public Employees Association, Inc.

435 NEW KARNER ROAD • ALBANY, NY 12205 • (518) 869-2542 • FAX (518) 869-0631 e-mail: mail@rpea.org
Stanley Winter, President                                                                Michael B. Fitzgerald, Executive Director

Proposed Rule amendment in 4 NYCRR 73.3 with respect to state officers and employees retiring on or after October 1, 2011 and state officers and employees retiring on or before September 30, 2011, as follows:

1. Except as otherwise provided by a collective bargaining agreement between the state and an employee organization negotiated pursuant to Article 14 of the Civil Service Law, eighty-eight percent of the cost of premium or subscription charges for the coverage of state employees retiring on or after October first, two thousand eleven who are enrolled in the statewide and supplementary health insurance plans shall be paid by the state. Seventy-three percent of the cost of premium or subscription charges for the coverage of dependents of such state employees retiring on or after October first, two thousand eleven shall be paid by the state. The state shall contribute toward the premium or subscription charges for the coverage of each state employee retiring on or after October first, two thousand eleven who is enrolled in an optional benefit plan and for the dependents of such state employee or retired state employee the same dollar amount which would be paid by the state for the premium or subscription charges for the coverage of such state employee or retired state employee and his or her dependents if he or she were enrolled in the statewide and the supplementary health insurance plans, but not in excess of the premium or subscription charges for the coverage of such retired state employee and his or her dependents under such optional benefit plan. For the purposes of this subdivision, employees of the state colleges of agriculture, home economics, industrial labor relations, and veterinary medicine, the state agricultural experiment station at Geneva, and any other institution or agency under the management and control of Cornell university as the representative of the board of trustees of the state university of New York, and employees of the state college of ceramics under the management and control of Alfred university as the representative of the board of trustees of the state university of New York, shall be deemed to be state employees whose salaries or compensation are paid directly by the state.

2. Except as otherwise provided by a collective bargaining agreement between the state and an employee organization negotiated pursuant to Article 14 of the Civil Service Law, nine-tenths of the cost of premium or subscription charges for the coverage of state employees retiring on or before September thirtieth, two thousand eleven who are enrolled in the statewide and supplementary health insurance plans shall be paid by the state. Three-quarters of the cost of premium or subscription charges for the coverage of dependents of such state employees retiring on or before September thirtieth, two thousand eleven shall be paid by the state. The state shall contribute toward the premium or subscription charges for the coverage of each state employee retiring on or after October first, two thousand eleven who is enrolled in an optional benefit plan and for the dependents of such state employee or retired state employee the same dollar amount which would be paid by the state for the premium or subscription charges for the coverage of such state employee or retired state employee and his or her dependents if he or she were enrolled in the statewide and the supplementary health insurance plans, but not in excess of the premium or subscription charges for the coverage of



such retired state employee and his or her dependents under such optional benefit plan. For the purposes of this subdivision, employees of the state colleges of agriculture, home economics, industrial labor relations, and veterinary medicine, the state agricultural experiment station at Geneva, and any other institution or agency under the management and control of Cornell university as the representative of the board of trustees of the state university of New York, and employees of the state college of ceramics under the management and control of Alfred university as the representative of the board of trustees of the state university of New York, shall be deemed to be state employees whose salaries or compensation are paid directly by the state.

# EXHIBIT I



# Retired Public Employees Association, Inc.

435 NEW KARNER ROAD • ALBANY, NY 12205 • (518) 869-2542 • FAX (518) 869-0631 e-mail: mail@rpea.org
Stanley Winter, President                                            Michael B. Fitzgerald, Executive Director

September 14, 2011

The Honorable Thomas DiNapoli
NYS Comptroller
Office of the State Comptroller
110 State Street
Albany, NY 12236

<u>CERTIFIED MAIL-RETURN RECEIPT REQUESTED</u>

Dear Comptroller DiNapoli:

The Retired Public Employee Association [RPEA] notes that the New York State Department of Civil Service has indicated that certain terms of recently negotiated collective bargaining agreements providing for an increase in the percentage or ratios of employee contributions for the statewide and the supplementary health benefit plans, [hereinafter "NYSHIP"] will be imposed on retirees effective October 1, 2011. This unilateral action presumably will affect individuals who retired on or after January 1, 1983 enrolled in NYSHIP.

In view of the absence of any law, rule or regulations providing for any change in the ratios or percentages of "employer contributions" for NYSHIP premiums made on behalf of individuals who retired on or after January 1, 1983, RPEA believes that the decision of the Department of Civil Service in this regard constitutes an ultra vires action by the Department and thus a legal nullity.

In support of RPEA's view in this regard, it notes that Civil Service Law §167.1.(a), "Contributions," provides, in pertinent part, as follows:

"The full cost of premium or subscription charges for the coverage of retired state employees who are enrolled in the statewide and the supplementary health benefit plans established pursuant to this article and who retired prior to January first, nineteen hundred eighty-three shall be paid by the state. Nine-tenths of the cost of premium or subscription charges for the coverage of state employees and retired state employees retiring on or after January first, nineteen hundred eighty-three who are enrolled in the statewide and supplementary health benefit plans shall be paid by the state. Three-quarters of the cost of premium or subscription charges for the coverage of dependents of such state employees and retired state employees shall be paid by the state...."

RPEA also notes that Civil Service Law §167.1.(b), in pertinent part, provides as follows:

"Effective January first, nineteen hundred eighty-nine, notwithstanding any other law, rule or regulation, and where, and to the extent that, an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides or where and to the extent the employee health insurance council so directs with respect to any other state employees and for retired state employees retiring on or after January first, nineteen hundred eighty-three, the state shall contribute nine-tenths of the cost of premiums or subscription charges for coverage of each such state employee or retired state employee who is enrolled in an optional benefit plan and three-fourths of such premium or subscription charges for dependents of such state employees or retired state employees enrolled in such optional benefit plan ...."

Suffice it to note that the terms and conditions of employment set out in a collective bargaining agreement negotiated pursuant to Article 14 of the Civil Service Law, the Taylor Law, control only with respect to active employee in the negotiating unit and any provisions addressing benefits upon retirement apply only to a then active employee upon his or her retirement during the life of that agreement.

Further, 4 NYCRR 73.3 essentially tracks the provisions of Civil Service Law §167.1(a) and (b).

In addition, attached is a copy of our letter to the Acting President of the NYS Civil Service Commission informing her of our position with respect to the proper "employer contribution" rates allowed by law and suggesting an appropriate Rule to be promulgated with respect to "employer contribution" rates for current retirees under Civil Service Law, §167.

Accordingly, RPEA respectfully requests that you continue deducting the "employee contributions" for retirees, or their survivors, participating in NYSHIP at the ratios or percentages of "employee contributions" now authorized by law pursuant to the authority vested in you by Civil Service Law §167.3 with respect to such deductions from the retirement allowance of a retiree or a duly filed written request of a survivor of a retiree.

Sincerely,

Alan Dorn
Executive Director

Attachments



# Retired Public Employees Association, Inc.

435 NEW KARNER ROAD • ALBANY, NY 12205 • (518) 869-2542 • FAX (518) 869-0631 e-mail: mail@rpea.org
Stanley Winter, President                                    Michael B. Fitzgerald, Executive Director

Proposed Rule amendment to 4 NYCRR 73.3 with respect to state officers and employees retiring on or after October 1, 2011 and state officers and employees retiring on or before September 30, 2011, as follows:

1. Except as otherwise provided by a collective bargaining agreement between the state and an employee organization negotiated pursuant to Article 14 of the Civil Service Law, eighty-eight percent of the cost of premium or subscription charges for the coverage of state employees retiring on or after October first, two thousand eleven who are enrolled in the statewide and supplementary health insurance plans shall be paid by the state. Seventy-three percent of the cost of premium or subscription charges for the coverage of dependents of such state employees retiring on or after October first, two thousand eleven shall be paid by the state. The state shall contribute toward the premium or subscription charges for the coverage of each state employee retiring on or after October first, two thousand eleven who is enrolled in an optional benefit plan and for the dependents of such state employee or retired state employee the same dollar amount which would be paid by the state for the premium or subscription charges for the coverage of such state employee or retired state employee and his or her dependents if he or she were enrolled in the statewide and the supplementary health insurance plans, but not in excess of the premium or subscription charges for the coverage of such retired state employee and his or her dependents under such optional benefit plan. For the purposes of this subdivision, employees of the state colleges of agriculture, home economics, industrial labor relations, and veterinary medicine, the state agricultural experiment station at Geneva, and any other institution or agency under the management and control of Cornell university as the representative of the board of trustees of the state university of New York, and employees of the state college of ceramics under the management and control of Alfred university as the representative of the board of trustees of the state university of New York, shall be deemed to be state employees whose salaries or compensation are paid directly by the state.

2. Except as otherwise provided by a collective bargaining agreement between the state and an employee organization negotiated pursuant to Article 14 of the Civil Service Law, nine-tenths of the cost of premium or subscription charges for the coverage of state employees retiring on or before September thirtieth, two thousand eleven who are enrolled in the statewide and supplementary health insurance plans shall be paid by the state. Three-quarters of the cost of premium or subscription charges for the coverage of dependents of such state employees retiring on or before September thirtieth, two thousand eleven shall be paid by the state. The state shall contribute toward the premium or subscription charges for the coverage of each state employee retiring on or after October first, two thousand eleven who is enrolled in an optional benefit plan and for the dependents of such state employee or retired state employee the same dollar amount which would be paid by the state for the premium or subscription charges for the coverage of such state employee or retired state employee and his or her dependents if he or she were enrolled in the statewide and the supplementary health insurance plans, but not in excess of the premium or subscription charges for the coverage of such retired state employee and his or her dependents under such optional benefit plan. For



the purposes of this subdivision, employees of the state colleges of agriculture, home economics, industrial labor relations, and veterinary medicine, the state agricultural experiment station at Geneva, and any other institution or agency under the management and control of Cornell university as the representative of the board of trustees of the state university of New York, and employees of the state college of ceramics under the management and control of Alfred university as the representative of the board of trustees of the state university of New York, shall be deemed to be state employees whose salaries or compensation are paid directly by the state.



# Retired Public Employees Association, Inc.

435 NEW KARNER ROAD • ALBANY, NY 12205 • (518) 869-2542 • FAX (518) 869-0631 e-mail: mail@rpea.org
Stanley Winter, President                                                                Michael B. Fitzgerald, Executive Director

September 15, 2011

The Honorable Patricia Hite
Acting NYS Department of Civil
  Service Commission President
NYS Department of Civil Service
Alfred E. Smith State Office Building
Albany, NY 12239

CERTIFIED MAIL-RETURN RECEIPT REQUESTED

Dear President Hite:

I am writing on behalf of all members of the New York State Employees'
Retirement System, the New York State Teachers' Retirement System and, or,
an Optional Retirement Plan established pursuant to the Education Law currently
receiving a retirement allowance or benefit now participating in the Statewide
Health Insurance Plan, or an optional benefits plan thereof  [hereinafter
collectively "NYSHIP"].

The New York State Department of Civil Service has indicated that certain terms
of recently negotiated collective bargaining agreements resulting in an increase
in the percentage or ratios of employee contributions for NYSHIP premiums will
be imposed on retirees effective October 1, 2011. This unilateral action
presumably will affect individuals who retired on or after January 1, 1983 enrolled
in NYSHIP.

Significantly, retired employees are not in a collective bargaining unit within the
meaning of Article 14 of the Civil Service Law. Accordingly, employee
organizations may only negotiate with respect to health insurance benefits upon
retirement on behalf of individuals in the collective bargaining unit then active
employees.

Thus there is no authority in law or contract justifying the Department of Civil
Service applying, or extending, a term or condition of employment negotiated on
behalf of active employees by an employee organization to an individual then
retired.

The Retired Public Employees Association (RPEA) maintains that there is
significant legal and historical precedent barring any change in the percentages
or ratios of the State's "employer contributions" for NYSHIP premiums for
individuals already receiving a retirement allowance or benefit.

These legal and historical precedents indicate that whenever there is a change in
the percentages or ratios of "employer contributions" for NYSHIP premiums that



would adversely affect a retiree, the then existing "employer contribution" percentages or ratios are continued without change for individuals who retired before the effective date of any such change in the percentages or ratios of "employer contributions." In other words, such retirees are "grandfathered in" with respect to continuation of the ratios or percentages of "employer contributions" for NYSHIP at the level set by law, rule or regulation in effect prior to the effective date of any change in the ratios or percentages of "employer contributions" on behalf of individuals retiring prior to the effective date of the change to avoid such an adverse impact.

RPEA has therefore taken the liberty of attaching a proposed amendment to the President's Regulations set out in 4 NYCRR 73.3, such amendment to be adopted by the President pursuant to the authority set out in Civil Service Law §167.8, as amended. In summary, it provides for the reduction of the ratios or percentages of "employer contributions" with respect to those retiring on or after October 1, 2011 while fixing the existing 90% "employer contribution" for a retiree's individual coverage and the existing 75% "employer contribution" for dependent coverage for individuals who retired on or before September 30, 2011.

This proposed amendment to the President's Regulations tracks the legislative intent in its various amendments of Civil Service Law §167.1, formerly §127 of the Civil Service Law added by Chapter 641 of the Laws of 1956. See, for example, Chapter 14, §1 of the Laws of 1983 with respect to changes in the ratios or percentages of employer contributions to be made on behalf of employees with respect to employees and individuals retiring on or after January 1, 1983 while insulating individuals who retired prior to January 1, 1983 from such changes.

Of course, as earlier noted, RPEA believes that the ratios or percentages of "employer contributions" to be made on behalf of public employees retiring on or after October 1, 2011, the effective date of such changes set out in the relevant recent collective bargaining agreements, may be increased by administrative action.

We respectfully request that this proposed amendment to the President's Regulations be promulgated immediately.

Thank you for your prompt attention to this matter. We are available to meet with you at your convenience to discuss this matter further.

                                        Sincerely,


                                        Alan Dorn
                                        Executive Director

# EXHIBIT J

# RULE MAKING ACTIVITIES

Each rule making is identified by an I.D. No., which consists of 13 characters. For example, the I.D. No. AAM-01-96-00001-E indicates the following:

AAM    -the abbreviation to identify the adopting agency
01    -the *State Register* issue number
96    -the year
00001    -the Department of State number, assigned upon receipt of notice.
E    -Emergency Rule Making—permanent action not intended (This character could also be: A for Adoption; P for Proposed Rule Making; RP for Revised Rule Making; EP for a combined Emergency and Proposed Rule Making; EA for an Emergency Rule Making that is permanent and does not expire 90 days after filing.)

Italics contained in text denote new material. Brackets indicate material to be deleted.

## Department of Civil Service

### EMERGENCY RULE MAKING

**Provision of the Health Benefit Plan for Active and Retired New York State Employees**

**I.D. No.** CVS-41-11-00007-E
**Filing No.** 854
**Filing Date:** 2011-09-27
**Effective Date:** 2011-09-27

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

*Action taken:* Amendment of sections 73.3(b) and 73.12 of Title 4 NYCRR.

*Statutory authority:* Civil Service Law, sections 160(1), 161-a and 167(8)

*Finding of necessity for emergency rule:* Preservation of general welfare.

*Specific reasons underlying the finding of necessity:* These amendments are adopted as an emergency measure because time is of the essence. The amendment conforms Sections 73.3(b) and 73.12 of Title 4 NYCRR with Chapter 491 of the Laws of 2011, which implements the terms of a collective bargaining agreement covering members of the Administrative Services Unit, the Institutional Services Unit, and Operational Services Unit, and the Division of Military and Naval Affairs Unit represented by the Civil Service Employees Association (CSEA). The Chapter also establishes terms and conditions of employment for employees designated as Management / Confidential (M/C) and other unrepresented employees. The Chapter provides that modified state cost of premium or subscription charges for health insurance coverage may be extended to M/C and other unrepresented employees and retirees. The Chapter also provides M/C and

other unrepresented employees with compensation increases, payments, and benefits comparable to negotiated increases and benefits for represented employees. This emergency rule ensures that upon approval by the Director of the Budget, the President implements these essential benefits and provisions in a timely fashion for M/C and other unrepresented employees and retirees in the manner required by Chapter and in accordance with the State's obligations. Accordingly, these amendments must be adopted as emergency rules in accordance with Section 202(6) of the State Administrative Procedure Act.

*Subject:* Provision of the health benefit plan for active and retired New York State employees.

*Purpose:* To conform 4 NYCRR 73.12 with Chapter 491 of the Laws of 2011.

*Text of emergency rule:* RESOLVED, That the first paragraph of subdivision (b) of section 73.3 of Title 4 NYCRR is hereby amended to read as follows:

73.3(b) Rate of contribution

The rate of contribution of New York State on account of the coverage of its employees, post retirees and their dependents shall be 100 percent of the charge on account of individual coverage and 75 percent of the charge on account of dependent coverage, except that for the [optional benefit plans] *Health Maintenance Organization options* the State's contribution shall not exceed the same dollar amount as is paid by the State under the basic benefit plan. *Effective October 1, 2011, for those employees employed in a title allocated or equated to salary grade 9 or below, the State's rate of contribution for such employees and their dependents enrolled in the Empire Plan or a Health Maintenance Organization shall be 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage; provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan. For employees employed in a title allocated or equated to salary grade 10 or above, the State's rate of contribution for such employees and their dependents enrolled in the Empire Plan or a Health Maintenance Organization shall be 84 percent of the charge on account of individual coverage and 69 percent of the charge on account of dependent coverage, provided, however, that for hospital/ medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan. Effective October 1, 2011, the rate of contribution on account of the coverage of post retirees shall be as follows:*

*(i) for retirees who retired on or after January 1, 1983, and employees retiring prior to January 1, 2012, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan;*

*(ii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 9 or below, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan;*

*(iii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 10 or above, New York State shall contribute 84 percent of the charge on account of individual coverage and 69 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse*

1

 

**Rule Making Activities**

*coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan.*

The rate of contribution of a participating employer on account of the coverage of its employees, post retirees and their dependents shall be not less than 50 percent of the charge on account of individual coverage and 35 percent of the charge on account of dependent coverage. A participating employer may elect to pay higher rates of contribution for the coverage of its employees, retired employees and their dependents; provided, however, that if a participating employer so elects to pay a higher or lower rate of contribution for its retired employees or their dependents, or both, than that paid by the State for its retired employees or their dependents, or both, amounts withheld from the retirement allowances of its retired employees for their share of premium or subscription charges, if any, shall, if the president so requires, be paid to such participating employer which shall pay into the health insurance fund the full cost of premium or subscription charges for the coverage of such retired employees and their dependents; and provided that notice of such election shall be furnished to the Department of Civil Service not less than 60 days prior to the date on which it is proposed to make such higher rate of contribution effective. The contributions payable by a prior retiree shall be equal to the contributions payable by active employees and post retirees having similar coverages; the employer's contributions shall be the difference between the contributions of the prior retiree and the total charges on account of coverage for such prior retiree. Notwithstanding the foregoing provisions:

FURTHER, Section 73.12 of Title 4 NYCRR is hereby amended to read as follows:

The provisions of this Chapter, insofar as they apply to employees in the negotiating units established pursuant to article 14 of the Civil Service law and their dependents, shall be continued; provided, however, that during periods of time when there is in effect an agreement between the State and an employee organization reached pursuant to the provision of said article 14, the provisions of such agreement and the provisions of this Chapter shall both be applicable. In the event the provisions of the agreement are different from the provisions of this Chapter, the provisions of the agreement shall be controlling. The president may, upon [certification] *approval* by the Director of [Employee Relations] *the Budget*, provide for the [supplementation of benefits] *extension of the negotiated provisions of such agreement, in whole or in part,* [provided hereinabove for] *to* officers and employees not in a negotiating unit within the meaning of article 14 of the Civil Service Law *and may extend provisions regarding the modified state cost of premium or subscription charges to such employees or retirees.*

*This notice is intended* to serve only as a notice of emergency adoption. This agency intends to adopt this emergency rule as a permanent rule and will publish a notice of proposed rule making in the *State Register* at some future date. The emergency rule will expire December 25, 2011.

*Text of rule and any required statements and analyses may be obtained from:* Shirley LaPlante, NYS Department of Civil Service, AESSOB, Albany, NY 12239, (518) 473-6598, email: shirley.laplante@cs.state.ny.us

*Regulatory Impact Statement*

1. Statutory authority: Section 160 (1) of the Civil Service Law authorizes the President of the State Civil Service Commission to establish regulations concerning the eligibility of active and retired employees to participate in the health benefit plan authorized by Article XI of the Civil Service Law. Section 161-a of the Civil Service Law authorizes the President of the State Civil Service Commission to implement those provisions of a collective bargaining agreement between the state and an employee organization which provide for health benefits in a manner consistent with the terms thereof, and to extend such benefits in whole or in part to employees not subject to the provisions of such agreement. Section 167(8) of the Civil Service Law provides that notwithstanding any inconsistent provision of law, where and to the extent that a collective bargaining agreement between the State and an employee organization provides that the cost of premium or subscription charges for eligible employees covered by such agreement may be modified pursuant to the terms of such agreement, the President of the State Civil Service Commission, upon approval of the Director of the Budget, may extend the modified State cost of premiums or subscription charges for employees not subject to a collective bargaining agreement and retirees and shall promulgate the necessary rules or regulations to implement this provision.

2. Legislative objectives: The President of the State Civil Service Commission has been granted broad authority to prescribe regulations concerning the administration of the health benefit plan authorized by Article XI of the Civil Service Law. Consistent with such authority, the President is amending the Rules and Regulations of the Department of Civil Service with respect to the extension of health plan benefits provided to active and retired employees not subject to collective bargaining.

3. Needs and benefits: Chapter 491 of the Laws of 2011 implements the

terms of a collective bargaining agreement covering members of the Administrative Services Unit, the Institutional Services Unit, and Operational Services Unit, and the Division of Military and Naval Affairs Unit represented by the Civil Service Employees Association (CSEA). The Chapter also establishes terms and conditions of employment for employees designated as Management/ Confidential (M/C) and other unrepresented employees. The Chapter provides that modified state cost of premium or subscription charges for health insurance coverage may be extended to M/C and other unrepresented employees and retirees. The Chapter also provides M/C and other unrepresented employees with compensation increases, payments, and benefits comparable to negotiated increases and benefits for represented employees. This emergency rule ensures that the President implements these essential benefits and provisions in a timely fashion for M/C and other unrepresented employees and retirees in the manner required by the Chapter and in accordance with the State's obligations.

4. Costs:

a. Cost to regulated parties for the implementation of and continuing compliance with the rule: This rule conforms the Regulations of the Department of Civil Service with Chapter 491 of the Laws of 2011 and relevant provisions of such law will be implemented through ministerial acts performed by the New York State Department of Civil Service as administrator of the New York State Health Insurance Program. There are no specific costs associated with implementation of and continuing compliance with this rule.

b. Costs to the agency, the State and local governments for the implementation and continuation of the rule: This rule conforms the Regulations of the Department of Civil Service with Chapter 491 of the Laws of 2011 and will be implemented through ministerial acts performed by the New York State Department of Civil Service as administrator of the New York State Health Insurance Program. There are no specific costs to New York State associated with implementation and continuation of this rule and, as the proposal applies only to certain State employees and retirees, it will not impose any costs upon local governments.

c. The information, including the source(s) of such information, and methodology upon which the cost analysis is based: Preliminary estimates regarding administrative costs associated with providing the subject benefits to M/C and other unrepresented employees and retirees have been evaluated by the Department of Civil Service.

5. Local government mandates: The proposal applies only to certain State Classified Service employees and retirees and will not impose any mandates upon local governments.

6. Paperwork: The proposal will not require any new or additional application or reporting forms.

7. Duplication: The proposal does not duplicate or conflict with any State or federal requirements.

8. Alternatives: This rule reflects the only appropriate method of implementing the provisions of Chapter 491 of the Laws of 2011 with respect to providing M/C and other unrepresented employees and retirees with the health plan benefits in the manner required by the Chapter timely and in accordance with the State's obligations.

9. Federal standards: This proposal does not exceed any minimum standards of the federal government for the same or similar subject areas.

10. Compliance schedule: Compliance will commence automatically upon the effective date of this proposal.

*Regulatory Flexibility Analysis*

Since this emergency rule serves only to provide for essential health plan benefits for certain M/C and other unrepresented employees and retirees, it has no economic impact and places no reporting, recordkeeping or other compliance requirements upon small businesses, as defined by Section 102(8) of the State Administrative Procedure Act, or any local government. Therefore, a Regulatory Flexibility Analysis (RFA) is not required by Section 202-b of such Act.

*Rural Area Flexibility Analysis*

Since this emergency rule serves only to provide for essential health plan benefits for certain M/C and other unrepresented employees and retirees, without regard to the geographic distribution of personal residences or work locations of such employees and retirees, this emergency rule will not impose any adverse economic impact or create reporting, recordkeeping or other compliance requirements for public and private entities in rural areas, as defined in Section 102(10) of State Administrative Procedure Act. Therefore, a Rural Area Flexibility Analysis (RAFA) is not required by Section 202-bb of such Act.

*Job Impact Statement*

By modifying Title 4 NYCRR to provide for essential health plan benefits for certain M/C and other unrepresented employees and retirees, this emergency rule will positively impact jobs or employment opportunities for covered employees, as set forth in Section 201-a(2)(a) of the State

 

Italics contained in text denote new material. Brackets indicate material to be deleted.

# Department of Civil Service

EMERGENCY
RULE MAKING

Provision of the Health Benefit Plan for Active and Retired New York State Employees

I.D. No. CVS-41-11-00007-E

Filing No. 854

Filing Date: 2011-09-27

Effective Date: 2011-09-27

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following action:

**Action taken:** Amendment of sections 73.3(b) and 73.12 of Title 4 NYCRR.

**Statutory authority:** Civil Service Law, sections 160(1), 161-a and 167(8)

**Finding of necessity for emergency rule:** Preservation of general welfare.

**Specific reasons underlying the finding of necessity:** These amendments are adopted as an emergency measure because time is of the essence. The amendment conforms Sections 73.3(b) and 73.12 of Title 4 NYCRR with Chapter 491 of the Laws of 2011, which implements the terms of a collective bargaining agreement covering members of the Administrative Services Unit, the Institutional Services Unit, and Operational Services Unit, and the Division of Military and Naval Affairs Unit represented by the Civil Service Employees Association (CSEA). The Chapter also establishes terms and conditions of employment for employees designated as Management / Confidential (M/C) and other unrepresented employees. The Chapter provides that modified state cost of premium or subscription charges for health insurance coverage may be extended to M/C and other unrepresented employees and retirees. The Chapter also provides M/C and other unrepresented employees with compensation increases, payments, and benefits comparable to negotiated increases and benefits for represented employees. This emergency rule ensures that upon approval by the Director of the Budget, the President implements these essential benefits and provisions in a timely fashion for M/C and other unrepresented employees and retirees in the manner required by Chapter and in accordance with the State's obligations. Accordingly, these amendments must be adopted as emergency rules in accordance with Section 202(6) of the State Administrative Procedure Act.

**Subject:** Provision of the health benefit plan for active and retired New York State employees.

**Purpose:** To conform 4 NYCRR 73.12 with Chapter 491 of the Laws of 2011.

**Text of emergency rule:** RESOLVED, That the first paragraph of subdivision (b) of section 73.3 of Title 4 NYCRR is hereby amended to read as follows:

73.3(b) Rate of contribution

 

The rate of contribution of New York State on account of the coverage
of its employees, post retirees and their dependents shall be 100 percent of
the charge on account of individual coverage and 75 percent of the charge
on account of dependent coverage, except that for the [optional benefit
plans] Health Maintenance Organization options the State's contribution
shall not exceed the same dollar amount as is paid by the State under the
basic benefit plan. Effective October 1, 2011, for those employees
employed in a title allocated or equated to salary grade 9 or below, the
State's rate of contribution for such employees and their dependents
enrolled in the Empire Plan or a Health Maintenance Organization shall
be 88 percent of the charge on account of individual coverage and 73
percent of the charge on account of dependent coverage; provided,
however, that for hospital/medical/mental health and substance abuse
coverage provided under a Health Maintenance Organization, the State's
rate of contribution shall not exceed 100 percent of its dollar contribution
for such coverage under the Empire Plan. For employees employed in a
title allocated or equated to salary grade 10 or above, the State's rate of
contribution for such employees and their dependents enrolled in the
Empire Plan or a Health Maintenance Organization shall be 84 percent of
the charge on account of individual coverage and 69 percent of the charge
on account of dependent coverage, provided, however, that for hospital/
medical/mental health and substance abuse coverage provided under a
Health Maintenance Organization, the State's rate of contribution shall
not exceed 100 percent of its dollar contribution for such coverage under
the Empire Plan. Effective October 1, 2011, the rate of contribution on account
of the coverage of post retirees shall be as follows:

(i) **for retirees who retired on or after January 1, 1983, and employees
retiring prior to January 1, 2012**, New York State shall contribute 88
percent of the charge on account of individual coverage and 73 percent of
the charge on account of dependent coverage, provided, however, that for
hospital/medical/mental health and substance abuse coverage provided
under a Health Maintenance Organization, the State's rate of contribution
shall not exceed 100 percent of its dollar contribution for such coverage
under the Empire Plan;

(ii) for employees retiring on or after January 1, 2012, from a title
allocated or equated to salary grade 9 or below, New York State shall
contribute 88 percent of the charge on account of individual coverage and
73 percent of the charge on account of dependent coverage, provided,
however, that for hospital/medical/mental health and substance abuse
coverage provided under a Health Maintenance Organization, the State's
rate of contribution shall not exceed 100 percent of its dollar contribution
for such coverage under the Empire Plan;

(iii) for employees retiring on or after January 1, 2012, from a title
allocated or equated to salary grade 10 or above, New York State shall
contribute 84 percent of the charge on account of individual coverage and
69 percent of the charge on account of dependent coverage, provided,
however, that for hospital/medical/mental health and substance abuse
applicable. In the event the provisions of the agreement
are different from the provisions of this Chapter, the provisions of



the agreement shall be controlling. The president may, upon [certification] approval by the Director of [Employee Relations] the Budget, provide for the [supplementation of benefits] extension of the negotiated provisions of such agreement, in whole or in part, [provided hereinabove for] to officers and employees not in a negotiating unit within the meaning of article 14 of the Civil Service Law and may extend provisions regarding the modified state cost of premium or subscription charges to such employees or retirees.

**This notice is intended** to serve only as a notice of emergency adoption. This agency intends to adopt this emergency rule as a permanent rule and will publish a notice of proposed rule making in the State Register at some future date. The emergency rule will expire December 25, 2011.
**Text of rule and any required statements and analyses may be obtained from:** Shirley LaPlante, NYS Department of Civil Service, AESSOB, Albany, NY 12239, (518) 473-6598, email: shirley.laplante@cs.state.ny.us
**Regulatory Impact Statement**
1. Statutory authority: Section 160 (1) of the Civil Service Law authorizes the President of the State Civil Service Commission to establish regulations concerning the eligibility of active and retired employees to participate in the health benefit plan authorized by Article XI of the Civil Service Law. Section 161-a of the Civil Service Law authorizes the President of the State Civil Service Commission to implement those provisions of a collective bargaining agreement between the state and an employee organization which provide for health benefits in a manner consistent with the terms thereof, and to extend such benefits in whole or in part to employees not subject to the provisions of such agreement. Section 167(8) of the Civil Service Law provides that notwithstanding any inconsistent provision of law, where and to the extent that a collective bargaining agreement between the State and an employee organization provides that the cost of premium or subscription charges for eligible employees covered by such agreement may be modified pursuant to the terms of such agreement, the President of the State Civil Service Commission, upon approval of the Director of the Budget, may extend the modified State cost of premiums or subscription charges for employees not subject to a collective bargaining agreement and retirees and shall promulgate the necessary rules or regulations to implement this provision.
2. Legislative objectives: The President of the State Civil Service Commission has been granted broad authority to prescribe regulations concerning the administration of the health benefit plan authorized by Article XI of the Civil Service Law. Consistent with such authority, the President is amending the Rules and Regulations of the Department of Civil Service with respect to the extension of health plan benefits provided to active and retired employees not subject to collective bargaining.
3. Needs and benefits: Chapter 491 of the Laws of 2011 implements the terms of a collective bargaining agreement covering members of the Administrative Services Unit, the Institutional Services Unit, and Operational Services Unit, and the Division of Military and Naval Affairs Unit represented by the Civil Service Employees Association (CSEA).

The Chapter also establishes terms and conditions of employment for employees designated as Management/ Confidential (M/C) and other unrepresented employees. The Chapter provides that modified state cost of premium or subscription charges for health insurance coverage may be extended to M/C and other unrepresented employees and retirees. The Chapter also provides M/C and other unrepresented employees with compensation increases, payments, and benefits comparable to negotiated increases and benefits for represented employees. This emergency rule ensures that the President implements these essential benefits and provisions in a timely fashion for M/C and other unrepresented employees and retirees in the manner required by the Chapter and in accordance with the State's obligations.

4. Costs:

a. Cost to regulated parties for the implementation of and continuing compliance with the rule: This rule conforms the Regulations of the Department of Civil Service with Chapter 491 of the Laws of 2011 and relevant provisions of such law will be implemented through ministerial acts performed by the New York State Department of Civil Service as administrator of the New York State Health Insurance Program. There are no specific costs associated with implementation of and continuing compliance with this rule.

b. Costs to the agency, the State and local governments for the implementation and continuation of the rule: This rule conforms the Regulations of the Department of Civil Service with Chapter 491 of the Laws of 2011 and will be implemented through ministerial acts performed by the New York State Department of Civil Service as administrator of the New York State Health Insurance Program. There are no specific costs to New York State associated with implementation and continuation of this rule and, as the proposal applies only to certain State employees and retirees, it will not impose any costs upon local governments.

c. The information, including the source(s) of such information, and methodology upon which the cost analysis is based: Preliminary estimates regarding administrative costs associated with providing the subject benefits to M/C and other unrepresented employees and retirees have been evaluated by the Department of Civil Service.

5. Local government mandates: The proposal applies only to certain State Classified Service employees and retirees and will not impose any mandates upon local governments.

6. Paperwork: The proposal will not require any new or additional application or reporting forms.

7. Duplication: The proposal does not duplicate or conflict with any State or federal requirements.

8. Alternatives: This rule reflects the only appropriate method of implementing the provisions of Chapter 491 of the Laws of 2011 with respect to providing M/C and other unrepresented employees and retirees with the health plan benefits in the manner required by the Chapter timely and in accordance with the State's obligations.

9. Federal standards: This proposal does not exceed any minimum standards of the federal government for the same or similar subject areas.

 

10. Compliance schedule: Compliance will commence automatically upon the effective date of this proposal.

**Regulatory Flexibility Analysis**

Since this emergency rule serves only to provide for essential health plan benefits for certain M/C and other unrepresented employees and retirees, it has no economic impact and places no reporting, recordkeeping or other compliance requirements upon small businesses, as defined by Section 102(8) of the State Administrative Procedure Act, or any local government. Therefore, a Regulatory Flexibility Analysis (RFA) is not required by Section 202-b of such Act.

**Rural Area Flexibility Analysis**

Since this emergency rule serves only to provide for essential health plan benefits for certain M/C and other unrepresented employees and retirees, without regard to the geographic distribution of personal residences or work locations of such employees and retirees, this emergency rule will not impose any adverse economic impact or create reporting, recordkeeping or other compliance requirements for public and private entities in rural areas, as defined in Section 102(10) of State Administrative Procedure Act. Therefore, a Rural Area Flexibility Analysis (RAFA) is not required by Section 202-bb of such Act.

**Job Impact Statement**

By modifying Title 4 NYCRR to provide for essential health plan benefits for certain M/C and other unrepresented employees and retirees, this emergency rule will positively impact jobs or employment opportunities for covered employees, as set forth in Section 201-a(2)(a) of the State

# Rule Making Activities NYS Register/October 12, 2011

**2**

Administrative Procedure Act (SAPA). Therefore, a Job Impact Statement (JIS) is not required by Section 201-a of such Act.




# EXHIBIT K



# Retired Public Employees Association, Inc.

435 NEW KARNER ROAD • ALBANY, NY 12205 • (518) 869-2542 • FAX (518) 869-0631 e-mail: mail@rpea.org
**Stanley Winter, President**                                                                           **Michael B Fitzgerald, Executive Director**

October 20, 2011

The Honorable Patricia Hite
Acting NYS Department of Civil
 Service Commission President
NYS Department of Civil Service
Alfred E. Smith State Office Building
Albany, NY  12239

## CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Dear President Hite:

The Retired Public Employees Association, Inc. (RPEA) notes the Department of Civil Service's posting of an Emergency Rule that would affect the Health Benefit Plan for Active and Retired New York State Employees, I.D. No. CVS-41-11-000017-E, Filing No. 854, filed on September 27, 2011 and to take effect on that date, in the State Register, dated October 12, 2011.

With respect to such "Emergency Rule" providing, in pertinent part, that:

*Effective October 1, 2011, the rate of contribution ...shall be as follows:*

*(i) for retirees who retired on or after January 1, 1983, and employees retiring prior to January 1, 2012, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage..., and*
*(ii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 9 or below, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage,...and*
*(iii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 10 or above, New York State shall contribute 84 percent of the charge on account of individual coverage and 69 percent of the charge on account of dependent coverage....*

RPEA, on behalf of retirees of the State as an employer and their dependents in general and its members who are retirees of the State as an employer and their dependents in particular, objects to the adoption of such provisions for the following reasons:

## POINT I

Except as otherwise provided by an agreement between the State and an employee organization entered into pursuant to Article fourteen of the Civil Service Law, Section 167.1(a) requires the State to contribute nine-tenths of the cost of premiums or subscription charges for health insurance coverage of each such State employee or retired State employee and three-quarters of the cost of premium or subscription charges for the coverage of dependents of such State employees and retired State employee except as otherwise provided by Section 167.1(a).

Suffice it to note that "It is well-settled that a State regulation should be upheld if it has a rational basis and is not unreasonable, arbitrary, capricious **or contrary to the statute under which it was promulgated"** (see *Kuppersmith v Dowling*, 93 NY2d 90, 96) [emphasis supplied].

Clearly the Emergency Rule CVS-41-11-00007-E and, presumably, a final rule that would track Emergency Rule CVS-41-11-00007-E "is contrary to the statute under which it was promulgated" with insofar as it requires a retiree of the State as the employer to pay more than (1) 10% of the health insurance premium for individual health insurance coverage and (2) 25% of the health insurance premium for dependent health insurance coverage.

## POINT II

Assuming, but not conceding, that Civil Service Law §167.8 as relied upon by the President as authority for promulgating the changes set out in CVS-41-11-00007-E is viable, nothing in the "memorandum in support" of Senate 5486 which was signed into law as Chapter 491 of the Laws of 2011, and which, in pertinent part, amended Section 167.8, suggests that this amendment was to apply to a retiree of the State as the employer.
Indeed, the consistent theme, as demonstrate in the Sponsor's Memorandum's reference the amendment of CSL §167.8, is that the provision would apply with respect to "employer and employee" shares of the cost of health insurance and conspicuous by its absence is any reference to "retirees." The Sponsor's Memorandum states:

2

UUI-20-2011 IHU 01:20 TH    RI LH                    UIU UUU 2U4Z          .. UI

 

"Section 2 of Part A of this law amends Civil Service Law § 167(8) to provide authority to modify the **employer and employee shares of health premium and subscription costs under the New York State Health Insurance Plan.**" (emphasis supplied)

As the Sponsor's Memorandum further explains, the bill is intended to apply as follows:

> "Part B of this bill provides the State's approximately **12,000 unrepresented employees** who are prohibited from collective negotiations by the Taylor Law, including managerial or confidential ("M/C") employees, with benefits and increases in compensation at levels that are comparable to the benefits and increases in compensation received by employees represented by employee organizations." [emphasis supplied]

Again, the phrasing of the Sponsor's Memorandum – "provides the State's approximately 12,000 unrepresented employees" – clearly neither contemplates nor implies that retirees of the State as the employer are to be subjected to the extension of the terms negotiated in the course of collective bargaining pursuant to Article 14 of the Civil Service Law with respect to any ratio of health insurance contributions by the State and its employees in such collective bargaining unit in contrast to the President, with the approval of the Director of the Budget, electing to promulgate a rule, regulation or policy under color of §167.8 extending such provisions to managerial or confidential employees and unrepresented employees.

## POINT III

Assuming, arguendo, that in some way §167.8 is deemed applicable to retirees of the State as an employer, such application would be prospective only, applying to those employees of the State retiring on or after the claimed effective date, September 27, 2011, of the emergency rule as was the case when §167.1(a) was amended in 1983.

The "prospective application" of changes in retiree contributions for health insurance is reflected in both the Bill Jacket concerning the measure that was signed into law as Chapter 14 of the Laws of 1983, a "Governor's Program Bill," enacting the amendment to Civil Service Law, Section 167.1(a) changing the ratio of employer and employee contributions for health insurance prospectively as of January 1, 1983 with respect to employees of the State as the employer retiring on or after January 1, 1983 and continuing in place the superior contribution ratios for those retirees of the State as the employer retiring on or before December 31, 1982.

In a letter to you dated, September 14, 2011, RPEA offered a proposed amendment to the President's Rules which should have been promulgated instead of the above Emergency Rule. For the above reasons, and for the reasons stated in our letter of September 14, 2011, RPEA respectfully requests an immediate withdrawal of the Emergency Rule and promulgation of our suggested proposed amendment which would be consistent with legal and historical precedent as we have painstakingly demonstrated.

Sincerely,

Alan Dorn
Executive Director

cc: Comptroller DiNapoli

4

# RANDALL AFFIDAVIT

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ALBANY

**AFFIDAVIT OF
HARVEY RANDALL**

Retired       Public      Employees
Association,  Inc.;  Stanley  Winter,
as  an  individual  and  President,
Retired——————Public—————Employees
Association,  Inc.;  Alan  Dorn,  as  an
individual  and  Executive  Director,
Retired       Public      Employees
Association,  Inc.;  Hon.  Jules  L.
Spodek;  Hon.  David  R.  Townsend;
Helen M. Bulson; Victor L. Costello;
Joy Godin; Francis Hamblin; A. Joanne
Lantz;  William  C.  Moore;  John  H.
Neary;  David  B.  Smingler;  Kathleen
Stallmer; and Frosine Stolis,

**ALBANY COUNTY**
INDEX NO.

RJI NO. _____

HON. _____

            Plaintiff-Petitioners,

    -Against-

Hon.  Andrew  Cuomo,  Governor,  State
of  New  York;  New  York  State
Department  of  Civil  Service;  New
York    State    Civil    Service
Commission;  Patricia  Hite,  Acting
President;  New  York  State  Civil
Service  Commission;  New  York  State
Health   Insurance   Program;   State
Director of the Budget; Director of
Employee    Relations,    Governors
Office  of  Employee  Relations;  and
New  York  State  Comptroller,  as  a
necessary party,

            Defendant-Respondents.

Harvey Randall, being duly sworn, deposes and says that the following statements are true and correct under the penalties of perjury:

1.     I hold a Bachelor of Arts degree from City College of New York, a Master of Public Administration degree from The Maxwell Graduate School of Public Affairs, Syracuse University and a Juris Doctor degree from Albany Law School. I was admitted to practice before New York State courts of record and the United States District Court, Northern District of New York, in 1969.

2.     I began service as an employee of the State of New York in July 1954 as a Public Administration Intern and subsequently served in various positions with the New York State Department of Civil Service during the period September 1, 1954 through July 14, 1960. I then served in various capacities with the Central Administration of the State University of New York, including serving as Director of State University Personnel for the State University of New York System, from September 21, 1960 until I accepted an appointment as Director of Research, Office of Employee Relations [now known as the Governor's Office of Employee Relations], effective October 21, 1971. I served in that capacity until March 3, 1976, whereupon I returned to the New York State Department of Civil Service to serve in various capacities with the Department's Office of Counsel, ultimately retiring from the position of Principal Attorney, New York State Department of Civil Service, effective July 10, 1987.

−2−

3.     Since retiring in 1987 I have published New York Public Personnel Law, a "LawBlog"

focusing on New York Public Personnel Law [http:// publicpersonnellaw.blogspot.com]. I have

also authored several books and have served as an expert witness and consultant concerning

matters involving the New York State civil service law and related laws. The books I have co-

authored include The Discipline Book, a Concise Guide to Discipline in the New York State

Public Service, 2009; Layoff, Preferred Lists, and Reinstatement, 2011; and The General

Municipal Law Section 207-a and 207-c Case Book, 2011. I have written a number of articles

addressing New York State civil service law matters that have been published in Municipal

Lawyer, a joint publication of the Municipal Law Section of the New York State Bar Association

and the Edwin G. Michaelian Municipal Law Resource Center of Pace University: Leaves of

Absences for Disability Pursuant to Civil Service Law Sections 71 and 72 [Vol. 25, #2 (Spring

2011)]; Appointment to Positions in New York State's Civil Service [Vol. 24, No.4 (Fall 2010)];

and The Anatomy of a Layoff [Vol. 21, No. 3 (Summer 2009)].

4.     I am familiar with the laws, rules and regulations providing for and controlling the State of

New York's health insurance plan for employees and retirees of the State of New York as an

employer.

5.     Article 14 of the Civil Service Law, typically referred to as the Taylor Law, was enacted

during the administration of Governor Nelson A. Rockefeller and took effect September 1, 1967,

which statute, for the first time, provided for collective bargaining between the State of New

York as an employer and duly recognized or certified employee organizations representing State

employees in designated collective bargaining units. I recall that while I was serving as Director

of Research of the Office of Employee Relations, now the Governor's Office of Employee Relations [GOER], negotiations were conducted between the State of New York and the several employee organizations representing employees in the several collective bargaining units established pursuant to the Taylor Law.

6.    The Office of Employee Relations, where I served as Director of Research, was responsible for negotiating collective bargaining agreements with the employee organizations representing employees in such negotiating units.

7.    I recall that in the course of these initial collective negotiations there were discussions with key officials of the Executive Chamber, the Division of the Budget and the Department of Civil Service concerning the fact that the officers and employees of the State designated as managerial or confidential within the meaning of the Taylor Law were excluded from representation for the purpose of collective bargaining. Thus, management or confidential employees would not be eligible to receive the benefit of negotiated terms and conditions of employment as a matter of a negotiated collective bargaining agreement.

8.    I recall that in response to these concerns a joint statement or memorandum was signed by then Secretary to the Governor Al Marshall, Budget Director T. Norman Hurd and Civil Service Commission President Ersa Poston, [frequently then referred to as Governor's Negotiating Committee] and endorsed by the then Director of the [Governor's] Office of Employee Relations, Abe Lavine, stating that such managerial and confidential employees would be provided for in a manner similar to employees in collective bargaining units of the State with

—4—

respect to the terms and conditions of their employment as officers and employees of the State.

On information and belief, this statement or memorandum was published and the Office of

Employee Relations distributed it to personnel directors or directors of employee relations in the

various State departments and agencies, which officials were then to provide a copy to State

officers and employees designated managerial or confidential and officers and employees in an

unrepresented status within the meaning of the Taylor Law employed their respective

organizations.

9.     I believe that this intent was reflected in Civil Service Law 161-a(1). "Implementation of

negotiated agreements", wherein it is provided as follows:

"Where, and to the extent that, an agreement between the state and an employee organization
entered into pursuant to article fourteen of this chapter provides for health benefits, the president,
after receipt of written directions from the director of employee relations, shall implement the
provisions of such agreement consistent with the terms thereof and to the extent necessary shall
adopt regulations providing for the benefits to be thereunder provided. **The president, with the
approval of the director of the budget, may extend such benefits, in whole or in part, to
employees not subject to the provisions of such agreement.**" [Emphasis supplied.]

10. Insofar as Subdivision 8 of Section 167 of the Civil Service Law prior to its amendment by

Chapter 491 of the Laws of 2011 addressed the extension of such benefits to retirees of the State

as the employer, it is significant to note that Section 167.8 provided:

"Notwithstanding any inconsistent provision of law, where and to the extent that an agreement
between the state and an employee organization entered into pursuant to article fourteen of this
chapter so provides, the state cost of premium or subscription charges for eligible employees
covered by such agreement may be increased pursuant to the terms of such agreement and for a
duration provided by such agreement and pursuant to rules and regulations as may be established

by the president. Such increase in state cost shall only apply during the period if eligibility provided by such agreement **and shall not be applied during retirement.** [Emphasis supplied.]

11. Civil Service Law 167.1(a), entitled "Contributions", governs the ratio of the contributions, if any, which must be made by retirees and by the State on behalf of its retirees for their health insurance premiums.. Civil Service Law 167.1(a) provides that State employees who retired prior to January 1, 1983 do not contribute payment for their "individual" health insurance premiums and the State pays the full cost of health insurance premiums for individual coverage for employees who retired prior to January 1, 1983. Section 167.1(a) further provides that the State shall pay 90% of the retiree's health insurance premium for individual coverage on behalf of State employees who retired on or after January 1, 1983 while the retiree is to contribute 10% of the cost of their health insurance premiums for individual coverage. Insofar as the ratio of retiree-employer contributions for dependent health insurance premiums with respect to employees of the State retiring on or after January 1, 1983 is concerned, Section 167.1(a) requires the State to pay 75% and the retiree to pay 25% of the premium for such dependent coverage.

12. The percentage of contributions paid by State retirees who retired on or after January 1, 1983 for health insurance premiums has remained governed by Section 167.1(a) from January 1, 1983 to the present.

13. Pursuant to a Message of Necessity dated June 22, 2011, and prior to the ratification of new collective bargaining agreements between the State and two of its largest unions,

the Civil Service Employees Association and the Public Employees Federation by its

members on August 16, 2011 and November 3, 2011 respectively, on June 22 the Senate

and on June 23 the Assembly passed Senate 5846 [Assembly A8513] amending the

provisions of Section 167.8 of the Civil Service Law, which measure was thereafter

signed into law by the Governor as Chapter 491 of the Laws of 2011 on August 17, 2011,

and reads as follows, [deleted provisions in brackets and struck through; new material

underlined]:

8. Notwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible employees covered by such agreement may be [increased] modified pursuant to the terms of such agreement [and for a duration provided by such agreement and pursuant to rules and regulations as may be established by the president. Such increase in state cost shall only apply during the period of eligibility provided by such agreement and shall not be applied during retirement]. The president, with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement referenced above and shall promulgate the necessary rules or regulations to implement this provision.


14. The Sponsor's Memorandum in support of both Senate 5846 and Assembly 8513 amending

Section 167.8 as recited herein above clearly explains that the amendment was intended to apply

to officers and employees of the State as the employer not subject to the terms of a negotiated

agreement, but does not refer to "retiree" therein, directly or indirectly.


 In the words of the Sponsor's Memorandum:

"Section 2 of this part amends Civil Service Law §167(8) to provide authority to modify the **employer and employee** shares of health premium and subscription costs under the New York State Health Insurance Plan." [Emphasis supplied.]

Referring to "Part B" of the bill, the Sponsor's Memorandum continues:

PART B OF THE BILL:

"This part of the bill establishes terms and conditions of employment for **M/C and other unrepresented employees**." [Emphasis supplied.]

The term "M/C" is typically used when referring to "managerial and confidential employees" within the meaning of the Taylor Law.

15. The State Legislature, which is presumed to be aware of its mandates with respect to retirees of the State and their dependents as set out in Section 167.1(a) of the Civil Service Law, did not amend 167.1(a) of the Civil Service Law in 2011. While the 2011 amendment to section 167.8 includes the word "retirees" within the ambit of the subdivision, considering the legislative history of 167.8 insofar as retirees of the State as an employer are concerned, I conclude that the only way to harmonize and give full force and effect to Civil Service Law Sections 161-a, 167.1(a) and 167.8 insofar as persons retired or retiring from the State as an employer are concerned is that the legislative intent in amending Section 167.8 was to limit the authority of the President of the Civil Service Commission to electing to extend the modified state cost of such premium or subscription charges to employees or retirees not subject to the terms of a bargaining agreement negotiated in 2011 [1] to employees in the relevant negotiating unit retiring during the term of the controlling collective bargaining agreement and [2] to those State officers and employees not subject to the terms and conditions of employment set out in a collective bargaining agreement retiring during the term of the relevant collective bargaining agreement.

16.  In my opinion nothing in the history of either Civil Service Law section 161-a or section

167.8 remotely suggests that provisions set out in a collective bargaining agreement negotiated in

2011 were intended to result in a diminution or reduction of the ratio of the State's contribution

for health insurance premiums set out in §167.1(a) for individuals and their dependents  already

retired from State as an employer but clearly indicates that the terms and conditions of such

agreements would be controlling only with respect to individuals in the several relevant

collective negotiating units retiring on or after the effective date of the collective bargaining

agreement and could be extended, at the discretion of the President of the Civil Service

Commission with the approval of the Director of the Budget, to officers and employees of the

State excluded from collective bargaining within the meaning of the Taylor Law retiring on or

after the effective date of the relevant collective bargaining agreement. In other words, it was not

the Legislature's intent to have the President of the Civil Service Commission, by rule or

regulation or policy, extend the terms of a collective bargaining agreement negotiated in 2011

retroactively to persons who retired on or after January 1, 1983 and prior to October 1, 2011 but

only prospectively, i.e., to those employees retiring on or after October 1, 2011.


DATED:  Albany, New York
        December 7, 2011

HARVEY RANDALL


Sworn to before me this
7th day of December, 2011

NOTARY PUBLIC

Francine A. French
Notary Public, State of New York
Reg. No. 01FR4763486
Qualified in Saratoga County
My Commission Expires October 17, 2014

—9—

# VERIFICATIONS

 

## VERIFICATION

STATE OF NEW YORK          )
                          ) SS.:
COUNTY OF *ALBANY*         )

STANLEY WINTER, being duly sworn, deposes and says that the following statements are true:

Deponent is a plaintiff-petitioner in the annexed complaint-petition; deponent has read the foregoing complaint-petition seeking to declare that the administrative implementation of an increase in the percentage of contribution for health insurance coverage payable by current New York State retirees enrolled in the New York State Health Insurance Plan (NYSHIP) allegedly effective on October 1, 2011 is invalid and null and void, and declaring that the emergency regulation published on October 12, 2011 by the New York State Department of Civil Service purportedly implementing the increase in the percentage of contribution for health insurance coverage payable by current New York State retirees enrolled in NYSHIP, and any regulations with similar import which may be promulgated, are invalid and null and void; the same is true to my own knowledge, except as to matters alleged upon information and belief, and as to these matters, deponent believes them to be true; the grounds of my knowledge and information and belief are based on the notification received from the Department of Civil Service, the publication of the emergency regulation in the State Register, the documents attached to the complaint-petition, conversations I have had with others, and my knowledge and experience.

                                        _____
                                        STANLEY WINTER

Sworn to before me this
30ᵗʰ day of *November*          2011

_____
NOTARY PUBLIC

ANTHONY S. CANTORE
Notary Public, State of New York
Residing in Albany County
My Commission Expires Sept. 30, *2013*
Registration #02CA4508184

 

VERIFICATION

STATE OF NEW YORK )
                           ) SS.:
COUNTY OF  _ALBANY_         )

     ALAN DORN, being duly sworn, deposes and says that the following statements are true:

     Deponent is a plaintiff-petitioner in the annexed complaint-petition; deponent has read the foregoing complaint-petition seeking to declare that the administrative implementation of an increase in the percentage of contribution for health insurance coverage payable by current New York State retirees enrolled in the New York State Health Insurance Plan (NYSHIP) allegedly effective on October 1, 2011 is invalid and null and void, and declaring that the emergency regulation published on October 12, 2011 by the New York State Department of Civil Service purportedly implementing the increase in the percentage of contribution for health insurance coverage payable by current New York State retirees enrolled in NYSHIP, and any regulations with similar import which may be promulgated, are invalid and null and void; the same is true to my own knowledge, except as to matters alleged upon information and belief, and as to these matters, deponent believes them to be true; the grounds of my knowledge and information and belief are based on the notification received from the Department of Civil Service, the publication of the emergency regulation in the State Register, the documents attached to the complaint-petition, conversations I have had with others, and my knowledge and experience

                                          ALAN DORN

Sworn to before me this
_30th_ day of _NOVEMBER_        2011

NOTARY PUBLIC

ANTHONY S. CANTORE
Notary Public, State of New York
Residing in Albany County
My Commission Expires Sept. 30, _2013_
Registration #02CA4508184



## VERIFICATION

STATE OF NEW YORK      )
                          ) SS.:
COUNTY OF *ALBANY*    )

        VICTOR L. COSTELLO, being duly sworn, deposes and says that the following statements are true:

        Deponent is a plaintiff-petitioner in the annexed complaint-petition; deponent has read the foregoing complaint-petition seeking to declare that the administrative implementation of an increase in the percentage of contribution for health insurance coverage payable by current New York State retirees enrolled in the New York State Health Insurance Plan (NYSHIP) allegedly effective on October 1, 2011 is invalid and null and void, and declaring that the emergency regulation published on October 12, 2011 by the New York State Department of Civil Service purportedly implementing the increase in the percentage of contribution for health insurance coverage payable by current New York State retirees enrolled in NYSHIP, and any regulations with similar import which may be promulgated, are invalid and null and void; the same is true to my own knowledge, except as to matters alleged upon information and belief, and as to these matters, deponent believes them to be true; the grounds of my knowledge and information and belief are based on the notification received from the Department of Civil Service, the publication of the emergency regulation in the State Register, the documents attached to the complaint-petition, conversations I have had with others, and my knowledge and experience.

                                 *Victor L. Costello*
                                 VICTOR L. COSTELLO

Sworn to before me this
30ᵗʰ day of *November*      2011

        *Anthony S. Cantore*
        NOTARY PUBLIC

ANTHONY S. CANTORE
Notary Public, State of New York
Residing in Albany County
My Commission Expires Sept. 30, 2013
Registration #02CA4508184



## VERIFICATION

STATE OF NEW YORK     )
                             ) SS.:
COUNTY OF *ALBANY*    )

         FROSINE STOLIS, being duly sworn, deposes and says that the following statements are true:

         Deponent is a plaintiff-petitioner in the annexed complaint-petition; deponent has read the foregoing complaint-petition seeking to declare that the administrative implementation of an increase in the percentage of contribution for health insurance coverage payable by current New York State retirees enrolled in the New York State Health Insurance Plan (NYSHIP) allegedly effective on October 1, 2011 is invalid and null and void, and declaring that the emergency regulation published on October 12, 2011 by the New York State Department of Civil Service purportedly implementing the increase in the percentage of contribution for health insurance coverage payable by current New York State retirees enrolled in NYSHIP, and any regulations with similar import which may be promulgated, are invalid and null and void; the same is true to my own knowledge, except as to matters alleged upon information and belief, and as to these matters, deponent believes them to be true; the grounds of my knowledge and information and belief are based on the notification received from the Department of Civil Service, the publication of the emergency regulation in the State Register, the documents attached to the complaint-petition, conversations I have had with others, and my knowledge and experience.

                                       FROSINE STOLIS

Sworn to before me this
30ᵗʰ day of _Novimber_    2011

                           
NOTARY PUBLIC

ANTHONY S. CANTORE
Notary Public, State of New York
Residing in Albany County
My Commission Expires Sept. 30, *2013*
Registration #02CA4508184



## VERIFICATION

STATE OF NEW YORK)
              ) SS.:
COUNTY OF ALBANY )

      LEWIS B. OLIVER, JR., ESQ., an attorney duly admitted to the practice of law in the courts of New York State, with law offices at 156 Madison Avenue, Albany, New York affirms under the penalties of perjury that the following statements are true:

      1.   I am an attorney duly admitted to the practice of law in the courts of New York State, and am the attorney for the Plaintiffs-Petitioners, Retired Public Employees Association, Inc., et al., herein.   I have read the foregoing Verified Petition dated November 30, 2011 concerning the implementation of an increase in the percentages of the contributions payable by retirees of the State of New York who retired on or after January 1, 1983 and prior to October 1, 2011; the same is true to my own knowledge, except as to matters alleged upon information and belief, and as to those matters, I believe them to be true; the grounds of my knowledge and information and belief are the exhibits attached to the complaint-petition, documents obtained from plaintiff-petitioners, and documents in my legal files pertaining to this matter.   This verification is made by affirmant because the plaintiff-petitioners Hon. Jules L. Spodek, Hon. David R. Townsend, Helen M. Bulson, Joy Godin, Francis Hamblin, A. Joanne Lantz, William C. Moore, John H. Neary, David B. Smingler, and Kathleen Stallmer are not located in Albany County where affirmant has his law office.

 

DATED:     Albany, New York
           December 7, 2011

_Lewis B. Oliver, Jr._
LEWIS B. OLIVER, JR., ESQ.
Oliver Law Office
Attorney for Plaintiff-Petitioners
156 Madison Avenue
Albany, New York 12202
518-463-7962

Co    t, County of                                          Year

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ALBANY

Retired Public Employees Association, Inc.; Stanley Winter, as an individual and President, Retired Public Employees Association, Inc.; Alan Dorn, as an individual and Executive Director, Retired Public Employees Association, Inc.; Hon. Jules L. Spodek; Hon. David R. Townsend; Helen M. Bulson; Victor L. Costello; Joy Godin; Francis Hamblin; A. Joanne Lantz; William C. Moore; John H. Neary; David B. Smingler; Kathleen Stallmer; and Frosine Stolis,

               Plaintiff-Petitioners,

     -Against-

Hon. Andrew Cuomo, Governor, State of New York; New York State Department of Civil Service; New York State Civil Service Commission; Patricia Hite, Acting President, New York State Civil Service Commission; New York State Health Insurance Program; State Director of the Budget; Director of Employee Relations, Governor's Office of Employee Relations; and New York State Comptroller as a necessary party,

          Defendant-Respondents.

   NOTICE OF PETITION, SUMMONS, AND VERIFIED COMPLAINT-PETITION

LEWIS B. OLIVER, JR., ESQ.
Attorney for Plaintiff-Petitioners
*Office and Post Office Address*

156 Madison Avenue
Albany, New York   12202
518-463-7962

Due and timely service of a copy of the within                              is hereby admitted.
Dated,
Attorney(s) for                                        ........................................................................

(NOTICE OF ENTRY)
Sir:—Please take notice that the within is a true copy of a

duly entered in the office of the clerk of the within named court on

(NOTICE OF SETTLEMENT)
Sir:—Please take notice that an order of which the within is a true copy will be presented for settlement to the
Hon.                                        one of the judges of the within named Court,
at
on the        day of                              at          M.
Dated,                          Yours, etc.


To

Attorney(s) for                                    *Office and Post Office Address*

STATE OF NEW YORK
SUPREME COURT: COUNTY OF ALBANY

_____

Retired Public Employees Association, Inc.; Stanley Winter, as an individual and
President, Retired Public Employees Association, Inc.; Alan Dorn, as an individual and
Executive Director, Retired Public Employees Association, Inc.; Hon. Jules L. Spodek;
Hon. David R. Townsend; Helen M. Bulson; Victor L. Costello; Joy Godin; Francis
Hamblin; A. Joanne Lantz; William C. Moore; John H. Neary; David B. Smingler;
Kathleen Stallmer; and Frosine Stolis,

Plaintiff-Petitioners,

-Against-

Hon. Andrew Cuomo, Governor, State of New York; New York State Department of Civil
Service; New York State Civil Service Commission; Patricia Hite, Acting President, New
York State Civil Service Commission; New York State Health Insurance Program; State
Director of the Budget; Director of Employee Relations, Governor's Office of Employee
Relations; and New York State Comptroller as a necessary party,

Defendant-Respondents.

_____

ALBANY COUNTY INDEX NO. 7586-11

_____

# PLAINTIFF-PETITIONER'S MEMORANDUM OF LAW

_____

LEWIS B. OLIVER, JR., ESQ.
Oliver Law Office
Attorneys for Plaintiffs-Petitioners
156 Madison Avenue
Albany, New York  12202
518-463-7962

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF FACTS.................................................................3

POINT I

CIVIL SERVICE LAW 167(1)(a) PROVIDES THAT THE STATE WILL PAY FOR HEALTH BENEFITS OF RETIREES AT THE RATE OF 90% OF THE COST OF PREMIUMS FOR RETIRED STATE EMPLOYEES WITH INDIVIDUAL COVERAGE, AND 75% OF THE COST OF PREMIUMS FOR RETIRED EMPLOYEES WITH DEPENDENT COVERAGE, AND THE PLAIN AND UNAMBIGUOUS LANGUAGE OF THE STATUTE PRECLUDES THE INTERPRETATION BY THE COMMISSIONER OF CIVIL SERVICE TO DECREASE THE RATE OF PAYMENT BY THE STATE TO 88% FOR INDIVIDUAL COVERAGE AND 73% FOR FAMILY COVERAGE, THUS INCREASING THE RATE OF PAYMENT BY RETIREES BY 2% ACROSS-THE-BOARD ............................14

POINT II

THE ADMINISTRATIVE INCREASE IN THE PERCENTAGE OF CONTRIBUTION TO BE PAID BY RETIREES FOR NYSHIP FROM 10% OF PREMIUMS FOR INDIVIDUAL COVERAGE TO 12%, AND FROM 25% FOR DEPENDENT COVERAGE TO 27%, VIOLATES THE CONTRACT CLAUSE IN ARTICLE I, SECTION 10 (1) OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 6 OF THE NEW YORK STATE CONSTITUTION.................................................................22

POINT III

THE ADMINISTRATIVE INCREASE IN THE PERCENTAGE OF CONTRIBUTION TO BE PAID BY RETIREES FOR NYSHIP FROM PAYING 10% FOR INDIVIDUAL COVERAGE to 12%, and from 25% TO 27% FOR DEPENDENT COVERAGE, FOR THEIR MEDICAL BENEFITS COVERAGE VIOLATES ARTICLE III, SECTION 1 OF THE NEW YORK STATE CONSTITUTION BECAUSE IT IS AN IMPROPER DELEGATION OF AUTHORITY OF THE LEGISLATURE TO THE EXECUTIVE WITHOUT ADEQUATE STANDARDS AND GUIDELINES .......................................32

## TABLE OF CONTENTS (CONTINUED)

**CONCLUSION** ...........................................................................................................................**44**

## TABLE OF CASES

Advance–Rumely Co. v. Jackson, 287 US 283 (1932)

A.E. Nettleton Co. v. Diamond, 27 NY2d 182 (1970), appeal dismissed 401 US 969 (1971)

Alliance of American Insurers v. Chu, 77 NY2d 573 (1991)

Alweis v. Evans, 69 NY2d 199 (1987)

Board of Regents v. Roth, 408 US 564 (1972)

Civil Service Police Association v. County of Oneida, 78 AD2d 1004 (4th Dept. 1980), motion for appeal denied 53 NY2d 603 (1981)

Cleveland Board of Education v. Loudermill, 470 US 532 (1985)

Finger Lakes Racing Association v. New York State Racing and Wagering Board, 45 NY2d 471 (1978)

Freitas v. Geddes Savings and Loan Assn., 63 NY2d 254 (1984)

Goodwin v. Perales, 88 NY2d 383 (1996)

Home building & Loan Assn. v. Blaisdell, 290 US 398 (1934)

Kirschenbaum v. General Outdoor Advertising Co., 258 NY 489 (1932)

Kuppersmith v. Dowling, 93 NY2d 90 (1999)

Lippman v. Sewanhaka School District, 66 NY2d 313 (1985)

Matter of Beer Garden v. New York State Liquor Authority, 79 NY2d 266 (1992)

Matter of Bernstein v. Toia, 43 NY2d 437 (1977)

Matter of Board of Education v. Allen, 6 NY2d 127 (1959)

Matter of Consolidated Edison Co. of New York v. Department of Environmental Conservation, 71 NY2d 186 (1988)

Matter of County of Chautauqua v. Civil Service Employees Association, Local 1000, AFSCME, and AFL–CIO, 8 NY3d 517 (2007)

Matter of Economico v. Village of Pelham, 50 NY2d 120 (1980)

Matter of General Electric Capital Corporation v. New York State Division of Tax Appeals, 2 NY3d 249 (2004)

Matter of Harbolic v. Berger, 43 NY2d 102 (1977)

Matter of Hodes v. Axelrod, 70 NY2d 364 (1987)

Matter of Humphreys v. State Insurance Fund, 298 NY 327 (1949)

Matter of Jones v. Berman, 37 NY2d 42 (1975)

Matter of Marburg v. Cole, 286 NY 202 (1941)

Matter of Medical  Society of the State of New York v. Serio, 100 NY2d 854 (2003)

Matter of Nicholas v. Kahn, 47 NY2d 24 (1979)

Matter of Picone v. Commissioner of Licenses of the City of New York, 241 NY 157 (1925)

Matter of Zalensky v. Crucible Steel, 91 AD2d 807 (3rd Dept. 1982)

Montgomery v. Daniels, 38 NY2d 41 (1975)

Patrolman's Benevolent Association v. City of New York, 41 NY2d 205 (1976)

Patterson v. Carey, 41 NY2d 714 (1977)

People v. Bunis, 9 NY2d 1 (1961)

People v. Newman, 32 NY2d 379 (1973), cert. denied 414 US 1163 (1974)

Rapp v. Carey, 44 NY2d 157 (1978)

Rent Stabilization Association of N.Y. City  v. Higgins, 83 NY2d 156 (1993), cert. denied 512 US 1213 (1994)

Rotunno v. City of Rochester, 124 Misc2nd 448 (Sup. Ct. Monroe County 1984)

State Division of Human Rights v. Genesee Hospital, 50 NY2d 113 (1980)

T.D. v. New York State Office of Mental Health, 228 AD2d 95 (1996)

United States Trust Co. v. New Jersey, 431 US 1 (1977)

## PRELIMINARY STATEMENT

This is a memorandum of law in behalf of the plaintiff-petitioners in this combined Article 78 proceeding and action for a declaratory judgment which is returnable in Special Term, Supreme Court, Albany County, located at the Albany County Courthouse, 16 Eagle Street, Albany, New York at 9:30 AM on February 17, 2012.

This is a combined declaratory judgment action pursuant to CPLR 3001 and CPLR Article 78 proceeding to declare that implementation of an increase in the percentages of the contributions payable by retirees of the State of New York who retired on or after January 1, 1983 and prior to October 1, 2011 (hereafter "retirees") and are participating in the New York State Health Insurance Plan (hereafter NYSHIP), from 10% of the cost of premiums for individual medical coverage to 12%, and from 25% of the cost of premiums for dependent coverage to 27%, violates Civil Service Law 167(1)(a) and the Due Process Clause of the United States and New York State Constitution and other statutory and constitutional provisions.

The relief requested herein is a final judgment and order pursuant to CPLR 3001 and CPLR Article 78 containing the following relief:

(a)     Declaring that the administrative implementation of an increase in the percentages of the contributions for medical benefits under NYSHIP payable by State retirees and/or their dependents participating in NYSHIP in excess of that set forth in Civil Service Law 167(1)(a) allegedly effective on October 1, 2011 is invalid and null and void; and

(b)     Declaring that the emergency regulation filed on September 27, 2011, and to take effect on October 1, 2011, and published in the State Register in an issue dated October 12, 2011 promulgated by the New York State Department of Civil Service purportedly implementing the increase in the percentages of contributions for NYSHIP by retirees participating in NYSHIP is invalid and null and void; and

–1–

(c)        Granting a preliminary and permanent injunction prohibiting the defendant-respondents or any of the their officers, agents, or employees from implementing the October 1, 2011 increases in the percentages of the contributions for health insurance benefits under NYSHIP by retirees participating in NYSHIP and enjoining the said defendant-respondents from implementing the proposed amended regulations published in the State Register on December 14, 2011; and

(d)        Directing that any increases for NYSHIP paid by State retirees since October 1, 2011 under color of the notification and/or said emergency regulation be refunded; and

(e)        For the costs and disbursements of this action; and

(f)        For such other and further relief as the Court may deem just and proper.

## STATEMENT OF FACTS

New York State Civil Service Law Article 11 governs health insurance for civil service employees and retirees in New York State.

Civil Service Law 165, entitled "Termination of active employment", provides that the health benefit coverage of any employee and his or her dependants shall cease upon the discontinuance of his or her term of office or employment, subject to regulations which may be promulgated or prescribed by the President of the Civil Service Commission.

Civil Service Law 163(3), in pertinent part, provides that:

"The President shall adopt regulations prescribing the conditions under which an employee or retired employee may elect to participate in or withdraw from the plan ... [upon] from a retirement or pension plan or system administered and operated by the State of New York, or a civil division thereof, including the New York State Teachers' Retirement system and the optional retirement programs established under Article 3 Part V, and Article 8-b of the Education Law."

Civil Service Law 167(1)(a), entitled "Contributions", governs contributions, if any,

–2–

which must be made by retirees for their health insurance benefits. Civil service Law 167(1)(a) provides, in pertinent part, as follows:

> "The full cost of premium or subscription charges for the coverage of retired state employees who are enrolled in the statewide and the supplementary health benefit plans established pursuant to this article and who retired prior to January first, nineteen hundred eighty-three shall be paid by state. Nine-tenths of the cost of the premium or subscription charges for the coverage of state employees and retired state employees retiring on or after January first, nine-teen hundred eighty-three who are enrolled in the statewide and supplementary health benefit plans shall be paid by the state. Three-quarters of the cost of premium or subscription charges for the coverage of dependents of such state employees and retired state employees shall be paid by the state."

A copy of the pertinent parts of the Bill Jacket for Laws of 1983 Chapter 14, which enacted Civil Service Law 167(a)(1) with the current percentage contribution scheme for medical benefits for retirees, is attached to the complaint-petition as Exhibit A. The provisions of Civil Service Law 167(1)(a) have been implemented in the regulations of the Civil Service Commission at 4 NYCRR Part 73, which has language parallel to the statute.

Under the statute, retired State employees who retired prior to January 1, 1983 do not contribute payment for their health insurance coverage as an individual, and the State pays the full cost of health insurance benefits for employees who retired prior to January 1, 1983. The statute also provides that State employees who retired on or after January 1, 1983 contribute 10% of the cost of their health insurance premiums for individual coverage, and 25% of the cost for dependent coverage; the State pays the remaining 90% for individual coverage and 75% for dependent coverage.

The plaintiff-petitioners herein, Stanley Winter, Alan Dorn, Hon. Jules L. Spodek, Hon. David R. Townsend, Helen M. Bulson, Victor L. Costello, Joy Godin, Francis

Hamblin, A. Joanne Lantz, William C. Moore, John H. Neary, David B. Smingler, Kathleen Stallmer, and Frosine Stolis are all retirees who were retired from State service after December 31, 1982 but prior to October 1, 2011, and since their retirements, pursuant to the mandates of Civil Service Law 167(1)(a), the contribution percentages of all said plaintiff-petitioners for their NYSHIP coverage has been at the statutory rate of 10% for individual coverage and, where appropriate, 25% for dependent coverage.

Civil service Law 161–a entitled "Implementation of Negotiated Agreements" provides that, should an agreement between the State and an employee organization provide for health benefits, the President of the Civil Service Commission, after receipt of written directions from the Director of Employee Relations, shall implement the provisions of the contract by the adopting regulations and, with the approval of the Director of the Budget, the President may extend such benefits to <u>employees</u> not subject to the agreement [emphasis supplied]. Civil Service Law 161-a provides as follows:

> "Where, and to the extent that, an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter provides for health benefits, the president, after receipt of written directions from the director of employee relations shall implement the provisions of such agreement consistent with the terms thereof and to the extent necessary shall adopt regulations providing for the benefits to be thereunder provided. The president, with the approval of the director of the budget, may extend such benefits, in whole or in part, to employees not subject to the provisions of such agreement.
>
> 2. Insofar as the provisions of this section are inconsistent with any other act, general or special, or any rule or regulation adopted thereunder, the provisions of this section shall be controlling and insofar as the regulations promulgated by the president pursuant to subdivision one of this section are inconsistent with any rule or regulation, the provisions of such regulations shall be controlling.
>
> 3. There is hereby created a council on employee health insurance to

supervise the administration of changes to the health benefit plan negotiated in collective negotiations and to provide continuing policy direction to insurance plans administered by the state the provisions of any other law to the contrary notwithstanding. The council shall consist of the president, the director of the division of the budget, and the director of employee relations."

(Added L.1979, c. 307, §19.  Amended L.1985, c. 302, §7; L.2010, c. 56, pt. T, §10, eff. June 22, 2010, deemed eff. April 1, 2010.)

Upon information and belief, during May and June 2011 the State of New York and the Civil Service Employee Association (CSEA), on behalf of individuals in certain collective bargaining units, entered into collective bargaining agreements (contracts) pursuant to Article 14 of the Civil Service Law that provided for an increase in the percentage of contribution for health care coverage to be paid by employees in the relevant collective bargaining units represented by CSEA.  A copy of the press release by Governor Cuomo dated June 22, 2011 describing the terms of the CSEA contract is attached to the complaint-petition as Exhibit B.

The terms and conditions of the relevant collective bargaining agreements entered into between the State and CSEA did not apply to (a) State employees in collective bargaining units represented by other certified or recognized employee organizations (such as the Public Employees Federation [PEF], the second largest collective bargaining unit) for the purposes of Article 14 of the Civil Service Law, nor did the terms and conditions of the collective bargaining agreements entered into between the State and CSEA apply with respect to (b) employees designated managerial or confidential within the meaning of the Taylor Law, (c) unrepresented employees, or (d) retirees.

Laws of 2011 Chapter 491 entitled "State officers and employees–collective-bargaining–compensation and salaries" went into effect on August 17, 2011. These Laws

–5–

contained provisions implementing the terms of the CSEA contracts negotiated by CSEA and the State of New York. A copy of Laws of 2011 Chapter 491 is attached the complaint-petition as Exhibit C, and a copy of the Memorandum in Support for Senate 5856, the bill which became Chapter 491, is attached to the complaint-petition as Exhibit D.

Laws of 2011 Chapter 491 did not amend the provisions of Civil Service Law 167(1)(a) which specifically provides that the State will pay 90% of the cost of the premium for health care coverage for retired State employees who retired after January 1, 1983 and are enrolled in the State health care benefit plan, and 75% of the cost of the premium for retired State employees with coverage for dependents.

Nor did the Laws of 2011 Chapter 491 did not amend the provisions of Civil Service Law 161-a, which provides that the President of the Civil Service Commission shall promulgate regulations to implement a collective bargaining agreement only with respect to "employees" not subject to the provisions of such agreement, and that the regulations promulgated by the President shall be controlling insofar as they are inconsistent with any rule or regulation.

During the last week in August 2011, the New York State Department of Civil Service, Employee Benefits Division, issued a notification concerning changes in the percentage of the contributions that retirees would be required to pay for NYSHIP which was entitled "NYSHIP Rate Changes Effective October 1, 2011". This notification was received by each of the plaintiff-petitioners herein during the last week in August 2011, and, on information and belief, was sent to all retirees of the State of New York as the

–6–

employer and to all vestees [as defined in 4 NYCRR 73.1(g)*] affected by such changes during the last week in August 2011. A copy of the notification entitled "NYSHIP Rate Changes Effective October 1, 2011" dated August 2011 [hereafter referred to as "notification"] is attached to the complaint-petition as Exhibit E.

Under the notification, the Department of Civil Service notified the retirees that the Department of Civil Service was administratively changing the percentages of their contributions for NYSHIP based solely on the collective bargaining agreements entered into by the State and CSEA, wherein it was stated: "The terms of a collective bargaining agreement have been administratively extended to Retirees and Vestees of New York State Government and their enrolled dependents." See Exhibit E, p. 1.   The notification informed the retirees that the administrative change would result in a change in the percentages of retirees contribution to payment for NYSHIP that would be effective on October 1, 2011, wherein it was stated: "This will result in a NYSHIP rate change effective October 1; the new rates included in this publication will be in effect through the end of 2011." See Exhibit E, p. 1.

The notification also informed the retirees that as a result of the changes in the percentages of their contribution for NYSHIP, such individuals would have a special option transfer during September 2011 within which to choose a new health insurance program, and that no action was required if such an individual wished to keep his or her current health insurance option, wherein it was stated: "As a result of these rate changes, there will be a Special Option Transfer Period, September 1 through September 30, 2011. You may

---

* Although both retirees and other vestees were affected by the change and received the notification, all individuals affected by the change will hereafter be referred to as "retirees".

select the Empire Plan or a NYSHIP-approved Health Maintenance Organization (HMO) serving your area. No action is required if you wish to keep your current health insurance option." See Exhibit E, p. 1.  The notification went on to inform the retirees of the various health insurance coverage options from among which they might choose, and the monthly premium payments for each available to such individuals. See Exhibit E, pp. 2-3, Rate Sheet. The notification also informed the retirees that this was the only notice they would receive of a rate change in medical benefit programs wherein it was stated: "Check your plan – this is the only notice of a rate change." See Exhibit E, pp. 2-3, Rate Sheet. The notification informed retirees that in order to choose a different health care plan option they must submit a "NYSHIP Option Transfer Request" form to the Department of Civil Service Employee Benefits Division no later than September 30, 2011. See Exhibit E, pp. 5-6, "If You Are Changing Your Health Insurance Option" and "NYSHIP Option Transfer Request".

The notification did not inform retirees that there would be a percentage increase in contributions that retirees would be paying for their NYSHIP participation, but the notification did provide a chart showing the dollar amount that retirees would be required to contribute for each of the health insurance programs from among which they might select the one in which they elected to participate. See Exhibit E, p.4, "Enrollee Contributions for Retirees and Vestees".  The chart in the notification contained dollar amounts for NYSHIP which had calculated built-in increases in payments by retirees of 2% for each health insurance program. Thus, according to the figures in the chart, where retirees had formerly contributed 10% for individual health care insurance premiums,

–8–

retirees with individual coverage would pay 12% commencing on October 1; and retirees who had formerly contributed 25% for dependent health insurance premiums would pay 27%. See Exhibit E, p. 4, "Enrollee Contributions for Retirees and Vestees".

Furthermore, the notification informed retirees that deductions from their monthly retirement pension checks or direct deposit would be made automatically at the new percentage of contribution for health insurance premiums commencing on October 1, 2011, and might be reflected in their September 30 pension check. See Exhibit E, p. 7, "Sample Pension Check Stub".

During the last week in August 2011, the New York State Department of Civil Service, Employee Benefits Division, also issued a Special Report concerning changes in the percentage of contributions that retirees would be required to pay for NYSHIP which was entitled "NYSHIP HMO SPECIAL REPORT."  This two page Special Report contains a summary of the changes effective October 1, 2011 contained in the notification.  This Special Report was received by each of the plaintiff-petitioners herein during the last week in August 2011, and, upon information and belief, was sent to all State retirees and vestees affected by such changes during the last week in August 2011.  A copy of the Special Report entitled "NYSHIP HMO SPECIAL REPORT" dated August 2011 [hereafter referred to as "special report"] is attached to the complaint-petition as Exhibit F.

This increase of the percentage of retiree contributions for NYSHIP was administratively imposed on retirees notwithstanding the fact that the State Legislature did not amend Civil Service Law 167(1)(a), nor otherwise provide any authorization for an increase in the percentage of a retiree's contribution for NYSHIP.  See Affidavit of Harvey

–9–

Randall attached to the complaint-petition.

On August 23, 2011 Stanley Winter, President of RPEA, wrote a letter to Mr. Alphonso David, Deputy Secretary to Governor Cuomo, with a copy to Gary Johnson, Director of the Governor's Office of Employee Relations, requesting the that the Civil Service Commission and Governor Cuomo not increase the percentages of the contributions for NYSHIP for retirees. The letter recounted a conversation plaintiff-petitioner Winter had at a meeting with the Deputy Secretary to the Governor and Commissioner Gary Johnson on August 11, 2011, and at the meeting RPEA had advocated that there be no increase in the percentages of contributions for NYSHIP for current retirees. A copy of the letter from President Winter to the Deputy Secretary to the Governor and Director Gary Johnson dated August 23, 2011 is attached to the complaint-petition as Exhibit G.

On September 14, 2011 Alan Dorn, Executive Director of RPEA, wrote a letter to Patricia Hite, Acting President of the New York State Civil Service Commission, objecting to the extension of the terms of a collective bargaining agreement concerning increased percentages of contributions for NYSHIP to current retirees, since retirees are neither employees within the meaning of the Taylor Law nor subject to the terms and conditions of a collective bargaining agreement negotiated by the State and an employee organization pursuant to the Taylor Law. The letter stated that retired employees are not in a collective bargaining unit within the meaning of Article 14 of the Civil Service Law, and that employee organizations negotiating for health insurance benefits do not and may not represent retirees, and therefore there was no authority for the Department of Civil Service

–10–

to extend the terms of a collective bargaining agreement to persons who have already retired. The letter requested that the percentages of the contributions being paid by retirees not be increased, and that any proposed regulations should not include any increases in the percentages of contributions for NYSHIP to be paid by retirees who had retired prior to October 1, 2011. A copy of the letter from Executive Director Alan Dorn to Patricia Hite, Acting New York State Department of Civil Service Commission President, dated September 14, 2011 is attached to the complaint-petition as Exhibit H, and a copy of a similar letter by Executive Director Dorn to Thomas DiNapoli, New York State Comptroller, also dated September 14, 2011, requesting the Comptroller not to deduct the increased percentages of contributions for NYSHIP from a retiree's retirement allowance, is attached to the complaint-petition as Exhibit I.

More than 60 days have elapsed since RPEA requested the Department of Civil Service not to increase the percentages of contributions for NYSHIP for retirees, and RPEA has not received any acknowledgement of its request, and has not been advised of any action taken in response to its letter.

On October 12, 2011 the Department of Civil Service caused an emergency rulemaking notification to be published in the New York State Register under Rulemaking Activities, and this emergency rulemaking was entitled "Provision of the Health Benefit Plan for Active and Retired New York State Employees" (I.D. No. CVS–41–11–00007–E). A complete copy of the emergency rulemaking notification published by the Department of Civil Service on October 12, 2011 [hereafter referred to as "emergency rule"] is attached to the complaint-peition as Exhibit J. The emergency rule purports to extend the increases in

–11–

the percentages of contributions for NYSHIP agreed to by CSEA on behalf of employees of the State in collective bargaining units represented by CSEA and to unilaterally impose such changes in the percentages of the contributions for NYSHIP set out in the collective bargaining agreements between the State and CSEA to retirees including the plaintiff-petitioners.

On October 20, 2011 Alan Dorn, Executive Director of RPEA, wrote a letter to Patricia Hite, Acting President of the New York State Civil Service Commission, objecting to the emergency rule published in the State Register on October 12, 2011. The letter also pointed out that the introducer's Memorandum in support of S5486, which was enacted as Laws of 2011 Chapter 491 and in pertinent part amended Civil Service Law 167(8), stated that the amendment applied to "employers and employees" share of health premium costs under NYSHIP, not retirees. A copy of the letter from Executive Director Alan Dorn to Patricia Hite, Acting New York State Civil Service Commission President, dated October 20, 2011 is attached to the complaint-petition as Exhibit K.

On December 14, 2011 the Department of Civil Service caused a Notice of Proposed Action to be published in the New York State Register, and this proposed amendment to the regulations at 4 NYCRR Part 73 was entitled "Provision of the Health Benefit Plan for Active or Retired New York State Employees (P)" (ID no. CVS–50–11–00005–P). A complete copy of the Notice of Proposed Action published by the permissible service on December 14, 2011 [hereafter referred to as "notice of the amended regulation"] is attached hereto as Exhibit L. The notice of amended regulation purports to amend 4 NYCRR Part 73.3 and 73.12 to conform with any increases in the percentage of

contributions for NYSHIP agreed to by the CSEA collective bargaining units and set forth in laws of 2011 Chapter 491 to retirees including plaintiff–petitioners.  The notice of proposed action states that the proposed regulation will adopt the terms of the emergency rule "which is now proposed for permanent adoption." See Exhibit L, Section 10.  [Since the proposed emergency rule expires on December 31, 2011, the emergency rule is not extended by the notice, and there is a 45 day public comment period on the notice of amended regulation, it appears that the notice is not in compliance with the requirements of the State Administrative Procedure Act because there is a conflict between the expiration of the urgency rule and the effective date of the amended regulation].

On December 27, 2011 Allen Board, Executive Director of RICO, wrote a letter to Patricia Wright, acting President of the United States Service Commission objecting to the Notice of Amended Regulation published in the State Register on December 14, 2011.  The letter objected to the increase in the percentage of contribution by retirees for health care insurance in direct violation of Civil Service Law 167(1)(a), and to the extension of the terms of a collective bargaining agreement concerning the percentage of contribution for health insurance with CSEA to retirees who are not represented by any collective bargaining unit.  A copy of the letter from Executive Director Allen Board to Patricia Wright, acting New York State Civil Service Commission President, dated December 27, 2011 is attached hereto as Exhibit M.

–13–

## POINT I

**CIVIL SERVICE LAW 167(1)(a) PROVIDES THAT THE STATE WILL PAY FOR HEALTH BENEFITS OF RETIREES AT THE RATE OF 90% OF THE COST OF PREMIUMS FOR RETIRED STATE EMPLOYEES WITH INDIVIDUAL COVERAGE, AND 75% OF THE COST OF PREMIUMS FOR RETIRED EMPLOYEES WITH DEPENDENT COVERAGE, AND THE PLAIN AND UNAMBIGUOUS LANGUAGE OF THE STATUTE PRECLUDES THE INTERPRETATION BY THE COMMISSIONER OF CIVIL SERVICE TO DECREASE THE RATE OF PAYMENT BY THE STATE TO 88% FOR INDIVIDUAL COVERAGE AND 73% FOR DEPENDENT COVERAGE, THUS INCREASING THE RATE OF PAYMENT BY RETIREES BY 2% ACROSS-THE-BOARD**

Civil service Law 167(1)(a) clearly and unambiguously provides that the State will pay 90% of the cost of premiums for retired State employees with individual coverage, and 75% of the course for retired employees with family or dependent coverage. This statute fixes the maximum rate of contribution retirees would have to pay for health care benefits at 10% of the cost of premiums for individual coverage, and 25% for dependent coverage.

The emergency rule implemented by the Commissioner of Civil Service effective on October 12, 2011, and the notice of proposed rule making published in the State Register on December 14, 2011, makes a 2% across-the-board increase in the rate of contribution by retirees. Under the administrative increase, retirees percentage rate of contribution for individual coverage will rise to 12% of the cost of premiums, and to 27% for dependent coverage.

This administrative increase contradicts the clear language of the statute in Civil Service Law 167(1)(a). Instead of the State paying 90% of individual coverage and 75% of dependent coverage, the State will pay only 88% of individual coverage and 73% of

dependent coverage.[*]

An administrative agency can not adopt regulations that contradict the text of legislation governing the subject matter of its action. <u>Matter of General Electric Capital Corporation v. New York State Division of Tax Appeals</u>, 2 NY3d 249, 254 (2004); <u>Goodwin v. Perales</u>, 88 NY2d 383, 395 (1996); <u>Rent Stabilization Association of N.Y. City v. Higgins</u>, 83 NY2d 156, 169 (1993), cert. denied 512 US 1213 (1994); <u>State Division of Human Rights v. Genesee Hospital</u>, 50 NY2d 113 (1980); <u>Finger Lakes Racing Association v. New York State Racing and Wagering Board</u>, 45 NY2d 471 (1978); <u>Matter of Nicholas v. Kahn</u>, 47 NY2d 24, 31 (1979); <u>Matter of Humphreys v. State Insurance Fund</u>, 298 NY 327 (1949); <u>Rotunno v. City of Rochester</u>, 124 Misc 2d 448, 451 (Sup. Ct. Monroe County 1984).

An agency may adopt a rule or regulation that interprets or fills in the gaps in legislation so long as it is consistent with and in harmony with the statute's purpose, but a regulation adopted by an agency that is inconsistent with its enabling legislation is lacking in reason and essentially arbitrary. <u>Matter of General Electric Capital Corporation v. New York State Division of Tax Appeals</u>, 2 NY3d 249, 254 (2004); <u>Matter of Bernstein v. Toia</u>, 43 NY2d 437, 448 (1977); <u>Matter of Marburg v. Cole</u>, 286 NY 202, 212 (1941);

It is fundamental that the Court, in interpreting a statute, should effectuate the intent of the Legislature, and that where the statutory language is clear and unambiguous, the Court should construe the statute so as to give effect to the plain meaning of the words used in the statute. <u>Patrolman's Benevolent Association v. City of New York</u>, 41 NY2d 205,

---

[*] Since Civil Service Law provides that State retirees' contribution to payment of their health care benefits will be deducted from their pension checks or direct deposits, the Commissioner has unilaterally implemented this rate increase through purely administrative means.

208 (1976); <u>T.D. v. New York State Office of Mental Health</u>, <u>supra</u>, 228 AD2d 95, 105–106;

Statutes, sections 92, 95.

In seeking to interpret a statute, the intent of the Legislature is to be sought first

from the language of the act itself, and the statute is to be construed according to its most

natural and obvious sense.  <u>Matter of Zalensky v. Crucible Steel</u>, 91 AD2d 807 (3rd Dept.

1982); <u>Civil Service Police Association v. County of Oneida</u>, 78 AD2d 1004 (4th Dept. 1980),

motion for appeal denied 53 NY2d 603 (1981).

The plain language of Civil Service Law 167(1)(a) could not be more clearly stated.

"1. (a) The full cost of premium or subscription  charges for the coverage of
retired state employees who are enrolled  in  the  statewide  and the
supplementary health insurance plans established  pursuant to this  article
and who retired prior to January first, nineteen hundred eighty-three
shall be paid by the state. <u>Nine-tenths of  the  cost  of  premium or
subscription charges for the coverage of state  employees and retired state
employees retiring on or after January first, nineteen hundred eighty-
three who are enrolled in the statewide  and supplementary health insurance
plans shall be paid by the state</u>. <u>Three-quarters</u> of  the  cost of premium
or subscription charges for the  coverage of <u>dependents</u> of  such state
employees and  retired  state  employees  <u>shall  be  paid  by the state</u>."
[emphasis added]

No language could be clearer that the percentage of health care premiums the State

must pay for retirees is 90% for those with individual coverage and 75% for those with

dependant coverage.

A Court should construe a statute in order to effect the intent of the Legislature.

The intent of the Legislature with which a statute is enacted should be determined from the

context, from the occasion or necessity of the law, from the relief sought to be corrected,

and from the objects and remedy in view.  Statutes, section 95.

There is nothing to indicate that the Legislature intended to change or repeal the

clear and explicit language in Civil Service Law 167(1)(a) that the State will pay 90% of the premiums for health care coverage of retirees with individual coverage and 75% with dependent coverage. It is axiomatic that an administrative agency may not by its regulations expand the grant of authority by the Legislature in a statute, and the rules and regulations of the agency must function within this statutory mandate. Kuppersmith v. Dowling, 93 NY2d 90, 96 (1999); Freitas v. Geddes Savings and Loan Assn., 63 NY2d 254, 264 (1984); Matter of Jones v. Berman, 37 NY2d 42, 53 (1975).

The interpretation of Civil Service Law 167(1)(a) and Laws 2011 Chapter 431 by the President of the Civil Service Commission--that section 167(1) gives the Commissioner authority to increase the percentage of contribution by State retirees--is clearly wrong. The emergency rule and the proposed amended regulations cite Section 167(1) as its apparent authority to increase the percentage of contribution by retirees for their health care coverage [see Exhibit J, emergency rule; Exhibit L, proposed amended regulations].

The interpretation of Civil Service Law Section 167(1)(a)  by the Commissioner is clearly contrary to the plain language of the statute and the statute is not entitled to any deference by the courts.

Courts should scrutinize administrative rules and regulations for reasonableness and rationality in conformity to the statutory foundation for the agency action. Kuppersmith v. Dowling, 93 NY2d 90, 96 (1999).

An agency has no authority to promulgate rules and regulations without statutory authority either express or implied, because such a rule or regulation would be by definition irrational and tantamount to legislation by administrative fiat. Kuppersmith v.

Dowling, supra, 93 NY2d at 96; State Division of Human Rights v. Genesee Hospital, 50 NY2d 113 (1980); Matter of Harbolic v. Berger, 43 NY2d 102, 109 (1977); Matter of Jones v. Berman, 37 NY2d 42, 53 (1975).  This is precisely what the President of the Civil Service Commission has done in this case, decreed without any legislative basis that the percentage of contributions by current retiree for their health care benefits must be increased.

What the defendant-respondents may argue is that Laws of 2011 Chapter 491 repeals the provisions of Section 167(1)(a) which mandates the State to pay for health care benefits for State retirees at the rate of 90% for individual coverage and 75% for dependent coverage.  Laws of 2011 Chapter 491 does not expressly repeal the language in Section 167(1)(a) which mandates the State to pay 90% and 75% of health care coverage for retirees respectively, and therefore the defendant respondents may argue only that Laws of 2011 Chapter 491 repeals section 167(1)(a) by implication.

If the Legislation has enacted a statute and intends to repeal it, the Legislation generally enacts a new statute that specifically repeals the former law.  It is well established that repeal of a statute by implication is not favored.  Matter of Consolidated Edison Co. of New York v. Department of Environmental Conservation, 71 NY2d 186, 195 (1988); Alweis v. Evans, 69 NY2d 199, 204 (1987); People v. Newman, 32 NY2d 379, 390 (1973), cert. denied 414 US 1163 (1974);.  T.D. v. New York State Office of Mental Health, supra, 228 AD2d at 108.  Unless there is clear evidence of an intent by the Legislature to repeal an earlier piece of legislation in a later statute, the courts "must, if at all possible, give full effect to both statutes".  People v. Newman, supra, 32 NY2d at 389.  It is only when the later statute is "in such conflict [with the earlier statute] that both cannot be given effect"

–18–

that a repeal of a statute by implication may be found. <u>Matter of Board of Education v.</u> <u>Allen</u>, 6 NY2d 127, 142 (1959); <u>T.D. v. New York State Office of Mental Health</u>, <u>supra</u>, 228 AD2d at 109;

Where two statutes relate to the same subject matter they should be read harmoniously and consistently and should both be given effect if possible. <u>Alweis v. Evans</u>, 69 NY2d 199, 204 (1987); <u>T.D. v. New York State Office of Mental Health</u>, <u>supra</u>, 228 AD2d at 106.

In Chapter 491 the Legislature amended only Civil Service Law 167(8), it did not amend section 167(a)(1). The 90%-75% formula for the percentage of retirees' health care benefits to be paid by the State was not changed. The Legislature did not express any intent to repeal or modify the States percentages of contribution to health care benefits of retirees in section 167(a)(1).

When it enacted Laws 2011 Chapter 491, the Legislature is presumed to have known that Civil Service Law 167(1)(a) provides that the State will pay 90% of health care coverage for State retirees with individual coverage, and 75% for retirees with dependent coverage. The grant of authority to the President of the Civil Service Commission in Chapter 491 to modify the percentage of health care payments for currently active State employees was very explicit and detailed, but retirees are hardly mentioned. The President of the Civil Service Commission may have authority to modify health care benefits for employees in different collective bargaining units differently, but that does not grant the President authority to repeal or amend Section 167(a)(1) by changing the percentage of contribution for retirees who retired before October 1, 2011.

–19–

The notification, emergency rule, and the proposed amended regulation promulgated by the President of the Civil Service Commission in this case, increasing the percentage of contribution for medical coverage for retired persons in NYSHIP, contradicts the explicit language in Civil Service Law 167(1)(a) which provides that the State will pay 90% of their individual coverage and 75% of dependent coverage. The President of the Civil Service Commission may believe that the State's current financial condition makes it desirable that retirees should pay a greater percentage of their medical coverage, however Civil Service has no authority to overrule or alter or contradict the explicit language of the statute enacted by the Legislature.

If the Legislature wished to increase the percentage of payment by retired persons, it would know how to draft language repealing or amending the language containing the 90%-75% formula section 167(1)(a), but the Legislature has not deemed it necessary to impose such an increase on retirees. The President of the Civil Service Commission does not have authority to promulgate rules or regulations that contradict the Legislature:

> "Laws are made by the law-making power and not by the administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be."

Matter of Picone v. Commissioner of Licenses of the City of New York, 241 N.Y. 157, 162 (1925).

The Legislature has not deemed it necessary to impose an increase in the percentage of payment for health care coverage by State retirees, and the administrative increase in the percentage of contribution for health care benefits by retirees implemented by the President of the Civil Service Commission should be declared invalid and null and void.

\* \* \* \* \* \* \*

Reading Civil Service Law section 167(1)(a) and Laws of 2011 Chapter 491 together and attempting to interpret them harmoniously in order to give both effect, could result in an interpretation which would give the President authority to modify the percentage of health insurance premiums paid for retirees prospectively only. In other words, the percentage the State would pay for persons who retired after 1983 but before October 1, 2011 would remain at 90% for individuals and 75% for dependent coverage, but the percentage that the State would pay for persons who retire after October 1, 2011 could be modified by an across-the-board increase in the percentages employees who retire after October 1, 2011 would pay for their health coverage to 12% and 27% respectively, thus decreasing the percentage paid by the State for persons who retire after October 1, 2011 to be consistent with the new CSEA contract.  Reading section 167(1)(a) and Chapter 491 in para material to apply prospectively only to persons who retire after October 1, 2011 would give meaning and effect to both statutes. Reading Section 167(1)(a) and Chapter 491 together to apply prospectively only is also consistent with past practices of the Legislature in enacting laws that pertain to payment of health care benefits for State retirees. There is a long history over the last 30 years of the Legislature making changes in the percentage of health care premiums for retirees prospective only.

Civil Service Law 167(1)(a) and Laws of 2011 Chapter 491 arguably both relate to the percentage of health insurance premiums for State retirees to be paid by the State. However both statutes could be interpreted consistently.  Section 167 (1)(a) requires the State to pay 90% of the health insurance premiums for persons who retired after 1983, and

Chapter 491 which is effective October 1, 2011 could be read to allow the President of the Commission to modify the percentage of health insurance premiums for persons who retired after the effective date of the statute.  In other words, Chapter 491 could be interpreted to give the President authority to modify the percentage of health insurance premiums paid for persons who retire after October 1, 2011 only.

While an interpretation of the statutes at section 167(1)(a) and Laws of 3011 Chapter 491, Section 2, that the Legislature intended to authorize Commissioner to make changes in the percentage of contribution by the State for retirees may seem more plausible than the much broader power asserted by the President of the Civil Service Commission, such an interpretation flies in the fact of the principles that the Legislature is presumed to know what the law provides, that implied repeal of a statutes is disfavored, and that a regulation can not contradict a statute.  If the Legislature had intended to grant authority to the President to alter the clear and explicit language in Civil Service Law 167(1)(a), the Legislature would have said so but it did not.

**POINT II**

**THE ADMINISTRATIVE INCREASE IN THE PERCENTAGE OF CONTRIBUTION TO BE PAID BY RETIREES FOR NYSHIP FROM 10% OF PREMIUMS FOR INDIVIDUAL COVERAGE TO 12%, AND FROM 25% FOR DEPENDENT COVERAGE TO 27%, VIOLATES THE CONTRACT CLAUSE IN ARTICLE I, SECTION 10 (1) OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 6 OF THE NEW YORK STATE CONSTITUTION**

Article I, Section 10(1) of the United States Constitution provides that "[n]o State shall...pass any... law impairing the Obligation of Contracts." Similarly, Article I, Section 6 of the New York State Constitution provides "[n]o person shall be deprived of life, liberty

–22–

or property without due process of law.", which means that "the State may not deprive a party to a contract of an essential contractual attribute without due process of law." Consumers Union of US, Inc. v. State of New York, 5 NY3d 327, 359 (2005); Patterson v. Carey, 41 NY2d 714, 720 (1977).

Under the federal Constitution, the impairment of contract clause is not an absolute bar to subsequent modification of a State's own financial obligations. An impairment may be constitutional if it is reasonable and necessary to serve an important public purpose under the police power. In other words, a statute which impairs a contract that a state has previously entered into may be justified by an appropriate exercise of the police power. United States Trust Co. v. New Jersey, 431 US 1, at 19 (1977).

It is not necessary that an impairment totally destroy the obligation of the state under the contract in order to violate the contract impairment clause. However, the extent of the impairment is a relevant factor in considering the reasonableness of the impairment. United State's Trust Co. V. New Jersey, supra, 431 US at 21.

The law is similar under the New York State Constitution. When a statute is challenged on non-procedural grounds as a violation of due process, the test is whether the deprivation or impairment of contract rights has a fair, just and reasonable connection with the promotion of the health, comfort, safety and welfare of society, that is, the means provided by the statute must be reasonably related to the goal to be achieved. Patterson v. Carey, supra, 41 NY2d at 720–721.

State statutes can create contractual rights that are binding on the state. Alliance of American Insurers v. Chu, 77 NY2d 573, 585 (1991). Constitutionally protected property

interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Board of Regents v. Roth, 408 US 564, 577 (1972). The courts must look to state law in order to determine whether federally protected contractual rights have been created by a statute.

In this case, Civil Service Law 167(1)(a) explicitly provides that the State of New York will pay 90% of the premiums for individual medical coverage under NYSHIP, and 75% of the premiums for dependent coverage, for State retirees. This is precisely the type of state statute which creates a contract or vested property interest that is protected by the United States Constitution and the New York State Constitution. Alliance of American Insurers v. Chu, supra, 77 NY2d at 585 (state statute granted contributors to property and liability insurance security fund property rights in the income generated for their contributions to the fund, and subsequent state legislation that diverted income and assets of the fund to the state's general accounts violated the contract impairment clause of the federal and state constitutions); Matter of Economico v. Village of Pelham, 50 NY2d 120, 125 (1980); Board of Regents v. Roth, supra, 408 US at 577; Cleveland Board of Education v. Loudermill, 470 US 532, 538 (1985).

The mere fact that the State has negotiated an increase in the percentage of the premiums for medical benefits paid by the currently employed union members in collective bargaining agreements with CSEA and/or other unions, and that the State wishes to save money by also increasing the percentage of premiums for benefits paid by State retirees, does not cancel the contractual obligation of the State to pay 90% of individual coverage and 75% of dependent coverage for State retirees. New York State can not renege on its

–24–

contractual obligations simply because it wants to save money. If the State could renege on contracts it had previously entered into because it wanted to save money, all contracts with the State would be meaningless:

> "The only justification the State can offer for the breach of its commitment is the enhancement of the state's general revenues. It is self-evident that this cannot justify the State's actions; the State's commitment to preserve the fund would be meaningless if it could be overcome by its desire to use funds for other purposes."

Alliance of American Insurers v. Chu, 77 NY2d 573, 588–589 (1991).

Under these principles, the administrative increase in the percentage of premiums paid by State retirees for their medical benefits clearly violates the prohibitions against impairment of contracts in the federal and State constitutions.

Civil Service Law 167(1)(a) is a type of State statute which constitutes a contract by the State with its retirees. Section 167(1)(a) is a promise by the State to its employees that when they retire the State will pay 90% of their individual premiums for medical benefits under NYSHIP, and 75% of dependent coverage premiums. During the term of their employment, State retirees relied on this promise as an assurance that after their retirement they would receive affordable medical care for themselves and their families because they would have to pay only 10% (or 25% in the case of dependent) for their medical coverage. Many State workers could have had higher paying jobs in the private sector, but chose to remain in State service in order to obtain the promised medical benefits after their retirement. During the term of their employment, the State retirees contributed to NYSHIP fund which would be paying for their medical benefits after retirement. In planning their retirement years, State retirees relied on the promise of receiving medical

benefits and having to pay only 10% of the premiums (or 25% for dependents) in their financial planning and retirement budgets.

The State retirees contract with New York for payment of 90% of their medical benefits premiums (or 75% for dependent coverage) became finalized at the time of their retirement, and the percentage payable by the retirees may not be increased without violating the impairment clause. Medical benefits are not a part of retirement benefits within the meaning of Article V, Section 7 of the New York State Constitution [Lippman v. Sewanhaka School District, 66 NY2d 313 (1985)], and therefore during the term of their active employment State employees do not have contractual rights to the promised retirement medical benefits. As with retirement benefits under Article V, Section 7, the State employees' rights to the State's payment of 90% (or 75% of dependent coverage) of their medical benefits becomes vested at the time of their retirement.

The notification, emergency rule, and proposed amended regulation are clearly an abrogation of the promise in Civil Service Law 167(1)(a). Section 167(1)(a) squarely states that the State will pay 90% of individual premiums and 75% of dependent premiums for State retirees medical benefits. An across-the-board increase in the percentage of premiums payable by State retirees by 2% is an impairment of New York State's obligation to pay the State retirees medical benefits at the promised rate.

The 2% across-the-board increase in payments for medical benefits under NYSHIP is not such an insignificant change in the State's obligation to retirees that it would not be deemed impairment under the contract clause. The contract clause is not an absolute bar to subsequent modification of a state's financial obligations, particularly if the change is an

–26–

exercise of the police power and is limited or temporary.  <u>Home building & Loan Assn. v.</u> <u>Blaisdell</u>, 290 US 398, 439 (1934).

However, the 2% across-the-board increase promulgated by the President of the Civil Service Commission is a permanent and significant economic hardship to retirees who are on a fixed pension income.  For example, plaintiff-petitioner A. Joanne Lantz was employed by the New York State Department of Education where she held the position of Specialist in Pupil Personnel Guidance for 10 years. Ms. Lantz is currently a participant in NYSHIP, and she is enrolled in the United Health Care Plan with individual coverage. Prior to October 1 her monthly contribution for the individual health insurance premium was $170.78 per month.  Under the proposed increase in the percentage of contributions for NYSHIP by retirees, Ms. Lantz's payment for health insurance premium will be $198.92 per month, an increase of $28.14 per month.

For retirees with dependent coverage, the 2% increase could range up to $500.00 a year or more in additional payments for medical coverage.  An increase of $500.00 per year in payments for medical benefits is a significant breach of the State's obligations toward a retiree who is receiving only $15,000.00 per year in pension payments.  Since the State retirees' share of the cost of medical benefits is deducted from monthly pension checks, this would be a substantial decrease in annual pension income for State retiree who had been a CSEA union member.  The extent of the impairment of the State's obligation to its retirees, who are on a fixed pension income and relying upon the State's promise to pay for their medical coverage during retirement, is serious and substantial.

Most importantly, the 2% across-the-board increase in payments for medical

–27–

benefits for retirees imposed by the President of the Civil Service Commission is not an exercise of the police power by the State, but is simply an economic ploy to generate income for the State.  Exercise of the police power by the State involves laws and statutes for "the promotion of the health, comfort, safety and welfare of society".  In order for an impairment of a State's contractual obligation not to violate the impairment clause there must be a "fair, just and reasonable connection" between the statute and exercise of the police power. Patterson v. Carey, supra, 41 NY2d at 720–721.

In Patterson v. Carey, supra, 41 N.Y.2d 714, the Legislature enacted a statute that rescinded an increase in tolls promulgated by the Jones Beach State Parkway Authority for use of parkway for 120 days.  The Court of Appeals held that the statute deprived bondholders of their property since the toll was the sole source of funds for payment of the bonds and therefore was an essential attribute of the bondholders contract with the Authority. The deprivation of contractual rights was achieved without due process of law, since there was no reasonable relationship between the asserted goal of reducing traffic congestion to the public health, comfort, welfare and since the statute would have prevented toll dodging for a period of only 120 days. See also United States Trust Co. v. New Jersey, 431 US 1 (1977); Advance–Rumely  Co. v. Jackson, 287 US 283, 288 (1932); Alliance of American Insurers v. Chu, 77 NY2d 573 (1991) (state statute which diverted income from  income producing assets of insurance fund was impairment of the State's contractual obligations under the United States Constitution contract clause and Article 1 Section 7 of the State Constitution); Matter of Hodes v. Axelrod, 70 NY2d 364 (1987); Kirschenbaum v. General Outdoor Advertising Co., 258 NY 489 (1932).

–28–

At the time State employees retired before October 1, 2011, Civil Service Law 167(a)(1) created a vested right in State retirees that New York would pay 90% of their individual health care coverage under NYSHIP and 75% for dependent coverage. A 2% across-the-board increase in the percentage of payments by State retirees is a violation of that contract, and the impairment has no legitimate purpose under the police power. This administrative increase in the percentage of payments for medical benefits is an economic recourse, to save money for the State. This is a clear violation of the contract impairment clause of the federal and State constitutions.

In this case the administrative increase in the percentage of payments by State retirees for medical benefits has absolutely no relationship to the police power. Exercise of the police power by the state typically involves health or safety measures or enforcement of criminal laws that are necessary for the survival of society. Montgomery v. Daniels, 38 NY2d 41, 54 (1975); A.E. Nettleton Co. v. Diamond, 27 NY2d 182, 193 (1970), appeal dismissed 401 US 969 (1971); People v. Bunis, 9 NY2d 1, 4 (1961). The administrative increase in the percentage of payments for medical benefits by State retirees has no purpose related to preserving the health or safety or welfare of society in general. It is purely a budgetary and financial measure to increase income for the State.

In May or June 2011 the State negotiated a collective bargaining agreement with CSEA and certain other collective-bargaining units which provided for a 2% increase in the cost of medical coverage under NYSHIP for current CSEA union members who are currently employed by and working for the State. The increase in the cost of medical coverage for CSEA members in the collective bargaining agreement was negotiated purely

as a financial measure to save the State money on account of an alleged budget shortfall anticipated in the 2011–2012 fiscal year.  Instead of facing layoffs of State employees who were CSEA members, the collective bargaining agreement with CSEA contained certain "give-backs" which were designed to save money for the State budget.  The 2% increase in the cost of medical coverage for current CSEA members was one of these givebacks.   In consideration of these givebacks, CSEA members were guaranteed there would be no State layoffs for the five-year term of the collective bargaining agreement and received salary increases in the 4th and 5th years of the contract and other benefits.  See Exhibit B, Governor Andrew Cuomo Announces Five Year Labor Agreement with Civil Service Employees Association.  Yet, retirees do not get any benefits from the CSEA or other contracts.

Nor does the collective bargaining agreement between the State and CSEA reached in May and June 2011, and later with other employee unions, have any impact on the contractual rights of State retirees.  CSEA, PEF, and other State employee unions represent current State employees only in collective bargaining. Once the State employee retires, they are no longer represented in collective bargaining by CSEA and other employee unions.   Under the Taylor Law recognized collective bargaining units for current State employees such as CSEA have authority to negotiate away vested rights of union members in collective bargaining agreements in exchange for other benefits. Matter of County of Chautauqua v. Civil Service Employees Association, Local 1000, AFSCME, and AFL–CIO, 8 NY3d 517 (2007).

For example, in the 2011 collective bargaining agreement between the State of New

York and CSEA, CSEA agreed to a 2% increase in the percentage of medical premiums paid by union members for medical coverage in exchange for a five-year contract containing a no layoff clause for the term of the contract, and salary increases in the 4th and 5th years of the collective bargaining agreement. See Exhibit B, Governor Cuomo Announces Five Year Labor Agreement with Civil Service Employee's Association.

However, the Taylor Law provides that State retirees are not represented by collective-bargaining units, and State employee unions such as CSEA (PEF etc.) have no authority to bargain for State retirees. Accordingly, the concessions in the recent CSEA collective bargaining agreement, whereby current State employees who are CSEA members will pay an increased percentage of 2% of the premium for their medical coverage, do not apply to State retirees such as the plaintiff-petitioners herein. This is logical since State retirees will not receive the quid pro quo for these concessions that CSEA members will receive, because State retirees are not subject to layoff or pension increases. Retirees do not share in any benefits of the CSEA contract or other collective bargaining agreements.

All in all, the Administration increase in the percentage of contribution to be paid by retirees for NYSHIP from 10% of premiums for individual coverage to 12%, and from 25% for dependent coverage to 27%, violates the contract clause in Article I, Section 10(1) of the United States Constitution and Article I Section 6 of the New York State Constitution. Accordingly, the increase should be null and void.

## POINT III

**THE ADMINISTRATIVE INCREASE IN THE PERCENTAGE OF CONTRIBUTION TO BE PAID BY RETIREES FOR NYSHIP FROM PAYING 10% FOR INDIVIDUAL COVERAGE to 12%, and from 25% TO 27% FOR DEPENDENT COVERAGE, FOR THEIR MEDICAL BENEFITS COVERAGE VIOLATES ARTICLE III, SECTION 1 OF THE NEW YORK STATE CONSTITUTION BECAUSE IT IS AN IMPROPER DELEGATION OF AUTHORITY OF THE LEGISLATURE TO THE EXECUTIVE WITHOUT ADEQUATE STANDARDS AND GUIDELINES.**

The administrative increase in the percentage of contribution to be paid by retirees for NYSHIP violates Article III, Section 1 of the New York State Constitution because the Legislature has not delegated the authority to increase contributions for medical benefits by retirees to the President of the Civil Service Commission or any other agency. Only the Legislature has authority to enact legislation and make laws under Article III, Section 1 of the New York State Constitution which provides: "The legislative power of this state shall be vested in the Senate and Assembly."

An administrative agency possesses only those powers expressly delegated to it by the Legislature, together with those powers required by necessary implication. <u>Matter of Beer Garden v. New York State Liquor Authority</u>, 79 NY2d 266, 276 (1992); <u>T.D. v. New York State Office of Mental Health</u>, <u>supra</u> 228 AD2d at 107. Although the Legislature may delegate the power to adopt regulations in order to implement statutes to an administrative agency, the Legislature may not cede its fundamental policy responsibility to make social and political policy to an administrative agency. <u>Matter of Medical Society of the State of New York v. Serio</u>, 100 N.Y.2d 854, 864 (2003). The administrative agency has flexibility in promulgating its regulations, but the regulations must be within the scope of the legislative

–32–

delegation and may not exceed the scope of authority delegated by the Legislature.

The Legislature can not delegate its lawmaking power to make social and political policy to an administrative agency, but the State Constitution allows the Legislature to delegate broad powers to an agency charged with administering a law  enacted by the Legislature as long as the Legislature has set forth reasonable standards and safeguards for the agency to follow in promulgating its regulations.

In this case, the Legislature has not delegated the authority to fix the contribution rate of State retirees for medical coverage under NYSHIP to any agency.  Civil Service Law 167(1)(a) specifically provides that the State will pay 90% of the premium for individual coverage and 75% of the premium for dependent coverage.  This is a precise legislative determination, which could hardly be more specific, about the percentage of contribution by the State for the retirees medical coverage, and it leaves no room for the President of the Civil Service Commission or any other administrative agency to reduce the contribution by the State, or conversely increase the percentage of contribution by retirees.

Moreover, the Legislature may not delegate a legislative function unless it provides adequate standards and guidelines for the administrative agency to follow in implementing a statute. "Without such standards there is no government of law, but only government of men left to set their own standards, with resultant authoritarian possibilities". Rapp v. Carey, 44 NY2d 157, 162 (1978).

The standards and guidelines may allow the administrative agency wide discretion and flexibility, but agency regulations may not exceed the scope of authority granted by the statute.

It is axiomatic that, in order to be consistent with the standards and guidelines set by the Legislature in delegating its authority, the regulations promulgated by an administrative agency can not contradict the statute sought to be implemented by the agency. Regulations that are inconsistent with a statute are arbitrary and capricious and beyond the scope of authority of the administrative agency to promulgate.

In this case, the regulations contained in the notification, the emergency rule, and the proposed amended regulation exceed the scope of the authority granted by the Legislature concerning the percentage of contribution payable by retirees for their health care coverage under NYSHIP.  Section 167(1)(a) is explicit that the State will pay 90% of premiums for individual coverage and 75% of premiums for dependent coverage, which leaves 10% to be paid by retirees for individual coverage and 25% to be paid by retirees for dependent coverage. There is no authorization in Section 167(1)(a) for the President of the Civil Service Commission to change the percentage of contribution by the State.

There is no authorization in Section 167(a)(1) for the President to legislate a 2% across-the-board increase in the percentage of contribution payable by retirees for their health care.  The increase in percentage of contribution by State retirees is directly contrary to Section 167(1)(a), and therefore is arbitrary and capricious, beyond the scope of authority delegated by the Legislature, and must be declared invalid.

The statutory structure for   providing health care benefits for State retirees

demonstrates the Legislature's intent in Section 167(1)(a) was that retirees should benefit from an increase in the percentage of contribution by the State for health care payments that might be negotiated by the current State employees in their collective-bargaining agreements, but the Legislature never intended for the President of the Civil Service Commission or any other agency to have authority to increase the percentage of contribution payable by retirees.

It is black letter law that a long-standing administrative interpretation of a statute by an agency is entitled to great weight in determining the intent of the Legislature and meaning of the statute. Civil Service Law 161–a, entitled "Implementation of Negotiated Agreements", provides that where there is an agreement between the State and a state union such as CSEA, PEF, etc.) the President of the Civil Service Commission, with approval of the Director of the Budget, may extend the provisions of the collective bargaining agreement, in whole or part, to "employees" not subject to the provisions of such agreement. The statute provides:

> "1. Where, and to the extent that, an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter provides for health benefits, the president, after receipt of written directions from the director of employee relations, shall implement the provisions of such agreement consistent with the terms thereof and to the extent necessary shall adopt regulations providing for the benefits to be thereunder provided. The president, with the approval of the director of the budget, may extend such benefits, in whole or in part, to employees not subject to the provisions of such agreement.
>
> 2. Insofar as the provisions of this section are inconsistent with any other act, general or special, or any rule or regulation adopted thereunder, the provisions of this section shall be controlling and insofar as the regulations promulgated by the president pursuant to subdivision one of this section are inconsistent with any rule or regulation, the provisions of such regulations shall be controlling.

–35–

3. There is hereby created a council on employee health insurance to supervise the administration of changes to the health benefit plan negotiated in collective negotiations and to provide continuing policy direction to insurance plans administered by the state the provisions of any other law to the contrary notwithstanding. The council shall consist of the president, the director of the division of the budget, and the director of employee relations." [emphasis added]

The language in Section 161–a, allowing the President of the Civil Service Commission to extend the benefits of a collective bargaining agreement to State "employees" not covered by the agreement, was intended by the Legislature to allow employees who are not subject to a collective bargaining agreement, such as Management Confidential employees who are excluded from membership in any unions, to receive the benefits of a collective bargaining agreement.   [See Affidavit of Harvey Randall]. Significantly, the President could extend the benefits to employees not subject to the provisions of a collective bargaining agreement only with the approval of the Director of the Budget because historically collective bargaining agreements have almost always increased the percentage payable by the State for current State employees, and approval by the Director of the Budget to extend these benefits to employees was required because this would also involve an increase in the State budget.  (See Affidavit of Harvey Randall). Significantly, the President is empowered to extend the benefits of union contracts to "employees" not subject to the agreement, but not to retirees.

Civil Service Law 165 entitled "Termination of Active Employment" provides in pertinent part that the health care benefit coverage of any employee or his dependents "shall cease upon the discontinuance of his or her term of office or employment...." Thus, health care benefits for employees terminate at retirement. Retirees from State service in

–36–

the retirement system are entitled to receive health care benefits under NYSHIP.

Civil Service Law 167(1)(a) entitled "Contributions" provides that 90% of the cost of premium or subscription charges for the coverage of "State employees and retired State employees" retiring on or after January 1, 1983 will be paid by the State, and that 75% of the cost of premiums for dependent coverage "of such State employees and retired State employees" shall be paid by the State. Notably, this statute provides that the State will pay the same percentage for health care coverage of current state employees, as well as state retirees. The statute provides as follows:

> "1. (a) The full cost of premium or subscription charges for the coverage of retired state employees who are enrolled in the statewide and the supplementary health insurance plans established pursuant to this article and who retired prior to January first, nineteen hundred eighty-three shall be paid by the state. Nine-tenths of the cost of premium or subscription charges for the coverage of state employees and retired state employees retiring on or after January first, nineteen hundred eighty-three who are enrolled in the statewide and supplementary health insurance plans shall be paid by the state. Three-quarters of the cost of premium or subscription charges for the coverage of dependents of such state employees and retired state employees shall be paid by the state."

The history of collective bargaining in the 1980s, 1990s, and 2000s shows that over the years State employee collective bargaining unts (unions) consistently achieved increases in the percentage of contribution for health care payable by the State for current State employees who were members of the unions.

In order to allow for administrative adjustment to the pattern of negotiated increases in contributions for medical benefits for State employees over the years, the Legislature provided in Civil Service Law 167(8) that the costs of premiums for employees covered by the collective bargaining agreements "may be increased" during the terms of

–37–

the agreement by the Commissioner of Civil Service, that the President could establish rules and regulations providing for the increases, and that the increases in State costs would only apply during the period provided in the collective bargaining agreement "and shall not be applied during retirement".  The statute provides:

> "8. Notwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible employees covered by such agreement may be modified pursuant to the terms of such agreement. The president, with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement referenced above and shall promulgate the necessary rules or regulations to implement this provision."

Significantly, Section 167(8) allowed the President to increase the percentage of contribution for medical premiums for "State employees covered by such agreement", but not for State retirees.  Further, the increase in State contributions terminated at the time the state employee reached retirement.

The President of the Civil Service Commission has for decades interpreted the statutory structure in Civil Service Law Article 11, including sections 160, 161–a, 165, and 167, to mean that when State unions such as CSEA negotiated an increase in the percentage of health care premiums for their membership, the increase in health care premiums has also been made applicable to Management Confidential employees who are not covered by collective bargaining agreements.  Thus, successive increases in the percentage of health care costs paid by the State for  members of CSEA have been passed on to Management Confidential employees (including, for example, judges) over the past several decades [see Affidavit of Harry Randall].

–38–

However, these increases in State contribution to health care coverage has never been passed on to State retirees.  The percentage of health care payments paid by the State for State retirees has consistently remained at 90% for individuals and 75% for dependent coverage, as specifically provided in Section 167(1)(a).  Implementation of these increases in the percentage of contribution for retirees is specifically prohibited by section 167(8).  In other words, the President has for decades interpreted the statutory structure to mean that the benefit increases in the contribution rate by the State negotiated with union members may be extended to current employees, such as Management Confidential, but not to State retirees.

The Legislature has never granted to the Commissioner of Civil Service authority to change or alter the provisions of Civil Service Law 167(1)(a) concerning the percentage of contribution for medical benefits for State retirees.  Under the statutory structure in Civil Service Law Article 11, the President has authority to extend the benefit of increased percentage of contribution for medical benefits negotiated by CSEA (or PEF, etc.) to Management Confidential employees who are not covered by collective bargaining agreements, but the President has never asserted or exercised the authority to extend the benefit of this increased percentage of State contributions for health care to State retirees.  The history of the interpretation of Article 11 by the Commissioner is consistent with the statutory structure.

The historical interpretation of Article 11 by the President of Civil Service Commission is entitled to great weight in interpreting the intent of the Legislature and meaning of Article 11.  The President's power to adjust the percentage of contribution for

–39–

medical benefits set forth in Section 167 (1)(a) has always been extended to current State employees not covered by collective bargaining agreements, but never to State retirees.  If the Legislature had intended for the President to have authority to change the percentage of contribution for medical coverage for State retirees, it would have happened within the last 30 years, but the percentage of contribution by the State for retirees has always remained level at 90% for individual coverage and 75% for dependent coverage.

A State agency is bound by its interpretation of its jurisdictional statute and by its interpretation of its own regulations.   While a State administrative agency may change or reverse its interpretation of its own regulations, in order to be effective the State agency must explain the basis for and justify a reversal in its interpretation.  Richardson case.  The Commissioner of Civil Service has not provided any valid explanation for the change in interpretation of the historic meaning given to Section 167(1)(a).

The emergency rule published in the State Register by the Commissioner on October 12, 2011, as well as the proposed amended regulation published on December 14, 2011 erroneously cite Laws of 2011 Chapter 491 as a justification for increasing the percentage of contribution by State retirees for medical coverage.  Both Civil Service Law 161-a and Civil Service Law 167(8) authorize the President to extend the benefits of collective bargaining agreements "to employees" not subject to the provisions of the agreement, but not to retirees.   These statutes restrict the power of the Commissioner from changing the 90%-75% formula for retirees.  While the President may change the formula for current State employees not covered by collective bargaining agreements who are not retired (such as Management Confidential), there is no authority to increase or decrease or

–40–

otherwise alter the percentage paid by the State for retirees medical benefits which is explicitly set forth in Section 167(1)(a).  Laws of 2011 Section 491 Section 2 does not repeal or amend Section 161–a, which restricts the authority of the President "to employees", not retirees.

The amendment to Civil Service Law 167(8) contained in Laws of 2011, Chapter 491, sec. 2 does not change the result for State retirees.  The phrase "or retirees not subject to an agreement referenced above" contained in the amendment to Civil Service Law 167(8) [see Laws of 2011 Chapter 491 sec 2] is nonsensical and can not be interpreted to give the President of the Civil Service Commission authority to deviate from the percentage of contribution for retirees provided in Section 167(1)(a) because retirees are never covered by collective-bargaining agreements.  Under the Taylor Law, retirees are excluded from collective bargaining and are excluded from union membership.  Moreover, the Amendment to subdivision (8) does not repeal or alter the plain language of Section 167(1)(a) that the State will pay 90% of individual medical coverage of State retirees and 75% for dependent coverage.  Subdivision (1)(a) is in the same statute as subdivision (8) of Section 167, and if the Legislature had intended to repeal subdivision (1)(a) or to allow the President to alter the 90%-75% formula administratively, the Legislature would have said so.

The mere fact that the CSEA and the state reached a collective bargaining agreement does not provide adequate guidelines for the president of the Civil Service Commission to be delegated authority by the Legislature to promulgate regulations that alter or change the specific provisions of Civil Service Law 167(1)(a) which mandate that

the State contribute to retiree medical benefits payments according to the 90%-75% formula.  Collective bargaining agreements with different unions could have different times regarding payment of medical benefits for union members, and laws of 2011 Chapter 491, Section 2 provides no standards or guidance for the Commissioner to apply in fixing the percentage of State contributions for retirees. For example, CSEA's contract with the State may provide that the CSEA members will pay 50% of their medical benefits and received a 5% salary increase, while PEF's contract with the State may provide that its members will pay 25% of their medical benefits and receive a 4% salary increase, and that same time NYSCOBA's contract with the State may provide that its members will pay 15% of their medical benefits and receive a 3% salary increase with a guarantee of no layoffs during the term of the contract.

The amendment to Civil Service Law 167(8) enacted bylaws of 2011 Chapter 491 Section 2 provides no guidelines for the President of the Civil Service Commission to determine which of these different provisions about the percentage of medical benefits payable by the State should be applied to State retirees.  The amendment to Section 167(8) says something very vague and unclear or about medical benefits and retirees, but the amendment does not provide the Commissioner with any guidance about whether or which collective bargaining agreement should be applied to State retirees.  In the example above, the amended language, clearly does not provide any guidance to the President of the Civil Service Commission about whether to promulgate a regulation requiring State retirees to pay 50% of medical benefits as in the CSEA contract, or 25% as in the PEF's contract, or 15% as in the NYSCOBA contract. The Commissioner's selection of which percentage of

medical benefits retirees should be would be completely arbitrary because the statute contains no standards or guidelines.

The amendment to Section 167(8) provides not one shred of guidance or standards about which collective bargaining agreement arrived at between the union and the State should be applied to State retirees. It is pure happenstance that CSEA was the first union to achieve a collective bargaining agreement with the State in 2011, and therefore the terms of the CSEA contract for the percentage of payment of medical coverage was applied to retirees. For the President of the Commission to select the first contract arrived at between the State and any of the major unions would be completely arbitrary. In 5 years the PEF's contract could be arrived at first, and the President could apply the terms for the percentage of medical benefits to be paid by the State in the PEF contract to State retirees. In any given year, the selection of which collective bargaining agreement will apply to State retirees is a decision that the President would have to make on an arbitrary basis because the statute provides no guidelines.

The President of the Civil Service Commission does not have statutory authority conferred in any act of the Legislature to increase the percentage of contribution for participation in NYSHIP by State retirees.   While the President may believe it is a good idea during financially difficult times to burden retirees with paying an increased percentage of their health care coverage, this is a policy decision which must be made by the Legislature and not an administrative agency. Members of collective bargaining units are bound by the collective bargaining agreements reached by the unions, but retirees are not members of and are not represented by unions. The collective bargaining units have no

authority to represent retirees, and can not waive the clear and specific provisions of Section 167(1)(a) regarding the percentage of medical benefits for retirees to be paid by the State.

## CONCLUSION

WHEREFORE, it is respectfully requested that this Court grant a final judgment and order pursuant to CPLR 3001 and CPLR Article 78 containing the following relief:

(f)     Declaring that the administrative implementation of an increase in the percentages of the contributions for medical benefits under NYSHIP payable by State retirees and/or their dependents participating in NYSHIP in excess of that set forth in Civil Service Law 167(1)(a) allegedly effective on October 1, 2011 is invalid and null and void; and

(g)     Declaring that the emergency regulation filed on September 27, 2011, and to take effect on October 1, 2011, and published in the State Register in an issue dated October 12, 2011 promulgated by the New York State Department of Civil Service purportedly implementing the increase in the percentages of contributions for NYSHIP by retirees participating in NYSHIP is invalid and null and void; and

(h)     Granting a preliminary and permanent injunction prohibiting the defendant-respondents or any of the their officers, agents, or employees from implementing the October 1, 2011 increases in the percentages of the contributions for health insurance benefits under NYSHIP by retirees participating in NYSHIP and enjoining the said defendant-respondents from implementing the proposed amended regulations published in the State Register on December 14, 2011; and

(i)     Directing that any increases for NYSHIP paid by State retirees since October 1, 2011 under color of the notification and/or said emergency regulation be refunded; and

(j)     For the costs and disbursements of this action; and

(f)     For such other and further relief as the Court may deem just and proper.

–44–

DATED:      Albany, New York
            January 20, 2011

                              RESPECTFULLY SUBMITTED,


                              *Lewis B. Oliver, Jr.*
                              LEWIS B. OLIVER, JR., ESQ.
                              Oliver Law Office
                              Attorney for Plaintiff-Petitioners
                              156 Madison Avenue
                              Albany, New York 12202
                              518-463-7962

# EXHIBIT L



**NY Department of State-Division of Administrative Rules**

**Home   Search   Help   ©**



## Welcome to the online source for the New York State Register

**12/14/11 N.Y. St. Reg. CVS-50-11-00005-P**

Term ▌ Best Section ▌
12/14/11 N.Y. St. Reg. CVS-50-11-00005-P

NEW YORK STATE REGISTER
  VOLUME XXXIII, ISSUE 50
    December 14, 2011
      RULE MAKING ACTIVITIES
        DEPARTMENT OF CIVIL SERVICE
          PROPOSED RULE MAKING
            NO HEARING(S) SCHEDULED
**I.D No.** CVS-50-11-00005-P

➡Provision of the Health Benefit Plan for Active and Retired New York State Employees

PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is hereby given of the following proposed rule:

**Proposed Action:**
Amendment of sections 73.3(b) and 73.12 of Title 4 NYCRR.

**Statutory authority:**
Civil Service Law, sections 160(1), 161-a and 167(8)

**Subject:**
Provision of the health benefit plan for active and retired New York State employees.

**Purpose:**
To conform 4 NYCRR 73.12 with Chapter 491 of the Laws of 2011.

**Text of proposed rule:**
RESOLVED, That the first paragraph of subdivision (b) of section 73.3 of Title 4 NYCRR is hereby amended to read as follows:

73.3(b) ◄**Rate**➤ of ◄**contribution**➤.

The ◄**rate**➤ of ◄**contribution**➤ of New York State on account of the coverage of its employees, post retirees and their dependents shall be 100 percent of the charge on account of individual coverage and 75 percent of the charge on account of dependent coverage, except that for the [optional benefit plans] *Health Maintenance Organization options* the State's contribution shall not exceed the same dollar amount as is paid by the State under the basic benefit plan. *Effective October 1, 2011, for those employees employed in a title allocated or equated to salary grade 9 or below, the State's rate of contribution for such employees and their dependents enrolled in the Empire Plan or a Health Maintenance Organization shall be 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage; provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's* ◄**rate**➤ *of* ◄**contribution**➤ *shall not exceed 100 percent of its dollar* ◄**contribution**➤ *for such coverage under the Empire Plan. For employees employed in a title allocated or equated to salary grade 10 or above, the State's* ◄**rate**➤ *of* ◄**contribution**➤ *for such*

employees and their dependents enrolled in the Empire Plan or a Health Maintenance Organization shall be 84 percent of the charge on account of individual coverage and 69 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's ◄rate► of ◄contribution► shall not exceed 100 percent of its dollar ◄contribution► for such coverage under the Empire Plan. Effective October 1, 2011, the ◄rate► of ◄contribution► on account of the coverage of post retirees shall be as follows:

(i) for retirees who retired on or after January 1, 1983, and employees retiring prior to January 1, 2012, New York State shall ◄contribute► 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan;

(ii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 9 or below, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical /mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan;

(iii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 10 or above, New York State shall contribute 84 percent of the charge on account of individual coverage and 69 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical /mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's ◄rate► of ◄contribution► shall not exceed 100 percent of its dollar ◄contribution► for such coverage under the Empire Plan.

The ◄rate► of ◄contribution► of a participating employer on account of the coverage of its employees, post retirees and their dependents shall be not less than 50 percent of the charge on account of individual coverage and 35 percent of the charge on account of dependent coverage. A participating employer may elect to pay higher rates of contribution for the coverage of its employees, retired employees and their dependents; provided, however, that if a participating employer so elects to pay a higher or lower rate of contribution for its retired employees or their dependents, or both, than that paid by the State for its retired employees or their dependents, or both, amounts withheld from the retirement allowances of its retired employees for their share of premium or subscription charges, if any, shall, if the president so requires, be paid to such participating employer which shall pay into the health insurance fund the full cost of premium or subscription charges for the coverage of such retired employees and their dependents; and provided that notice of such election shall be furnished to the Department of Civil Service not less than 60 days prior to the date on which it is proposed to make such higher ◄rate► of ◄contribution► effective. The ◄contributions► payable by a prior retiree shall be equal to the ◄contributions► payable by active employees and post retirees having similar coverages; the employer's ◄contributions► shall be the difference between the ◄contributions► of the prior retiree and the total charges on account of coverage for such prior retiree. Notwithstanding the foregoing provisions:

FURTHER, Section 73.12 of Title 4 NYCRR is hereby amended to read as follows:

The provisions of this Chapter, insofar as they apply to employees in the negotiating units established pursuant to article 14 of the Civil Service Law and their dependents, shall be continued; provided, however, that during periods of time when there is in effect an agreement between the State and an employee organization reached pursuant to the provision of said article 14, the provisions of such agreement and the provisions of this Chapter shall both be applicable. In the event the provisions of the agreement are different from the provisions of this Chapter, the provisions of the agreement shall be controlling. The president may, upon [certification] approval by the Director of [Employee Relations] the Budget, provide for the [supplementation of benefits] extension of the negotiated provisions of such agreement, in whole or in part, [provided hereinabove for] to officers and employees not in a negotiating unit within the meaning of article 14 of the Civil Service Law and may extend provisions regarding the modified state cost of premium or subscription charges to such employees or retirees.

**Text of proposed rule and any required statements and analyses may be obtained from:**
Shirley LaPlante, NYS Department of Civil Service, Albany, NY 12239, (518) 473-6598, email:
shirley.laplante@cs.state.ny.us

**Data, views or arguments may be submitted to:**
Mark Worden, Associate Attorney, NYS Department of Civil Service, Albany, NY 12239, (518) 473-2624, email: mark.worden@cs.state.ny.us

**Public comment will be received until:**
45 days after publication of this notice.

**Regulatory Impact Statement**
1. Statutory Authority: Section 160(1) of the Civil Service Law authorizes the President of the State Civil Service Commission to establish regulations concerning the eligibility of active and retired employees to participate in the health benefit plan authorized by Article XI of the Civil Service Law. Section 161-a of the Civil Service Law authorizes the President of the State Civil Service Commission to implement those provisions of a collective bargaining agreement between the state and an employee organization which provide for health benefits in a manner consistent with the terms thereof, and to extend such benefits in whole or in part to employees not subject to the provisions of such agreement. Section 167(8) of the Civil Service Law provides that notwithstanding any inconsistent provision of law, where and to the extent that a collective bargaining agreement between the State and an employee organization provides that the cost of premium or subscription charges for eligible employees covered by such agreement may be modified pursuant to the terms of such agreement, the President of the State Civil Service Commission, upon approval of the Director of the Budget, may extend the modified State cost of premiums or subscription charges for employees not subject to a collective bargaining agreement and retirees and shall promulgate the necessary rules or regulations to implement this provision.

2. Legislative Objectives: The President of the State Civil Service Commission has been granted broad authority to prescribe regulations concerning the administration of the health benefit plan authorized by Article XI of the Civil Service Law. Consistent with such authority, the President is amending the Rules and Regulations of the Department of Civil Service with respect to the extension of health plan benefits provided to active and retired employees not subject to collective bargaining.

3. Needs and Benefits: Chapter 491 of the Laws of 2011 implements the terms of a collective bargaining agreement covering members of the Administrative Services Unit, the Institutional Services Unit, and Operational Services Unit, and the Division of Military and Naval Affairs Unit represented by the Civil Service Employees Association (CSEA). The Chapter also establishes terms and conditions of employment for employees designated as Management/Confidential (M/C) and other unrepresented employees. The Chapter provides that modified state cost of premium or subscription charges for health insurance coverage may be extended to M/C and other unrepresented employees and retirees. The Chapter also provides M/C and other unrepresented employees with compensation increases, payments, and benefits comparable to negotiated increases and benefits for represented employees. This rule ensures that the President implements these essential benefits and provisions in a timely fashion for M/C and other unrepresented employees and retirees in the manner required by the Chapter and in accordance with the State's obligations.

4. Costs:

a. Cost to regulated parties for the implementation of and continuing compliance with the rule: This rule conforms the Regulations of the Department of Civil Service with Chapter 491 of the Laws of 2011 and relevant provisions of such law will be implemented through ministerial acts performed by the New York State Department of Civil Service as administrator of the New York State Health Insurance Program. There are no specific costs associated with implementation of and continuing compliance with this rule.

b. Costs to the agency, the State and local governments for the implementation and continuation of the rule: This rule conforms the Regulations of the Department of Civil Service with Chapter 491 of the Laws of 2011 and will be implemented through ministerial acts performed by the New York State Department of Civil Service as administrator of the New York State Health Insurance Program. There are no specific costs to New York State associated with implementation and continuation of this rule and, as the proposal applies only to certain State employees and retirees, it will not impose any costs upon local governments.

c. The information, including the source(s) of such information, and methodology upon which the cost analysis is based: Preliminary estimates regarding administrative costs associated with providing the subject benefits to M/C and other unrepresented employees and retirees have been evaluated by the Department of Civil Service.

5. Local Government Mandates: The proposal applies only to certain State Classified Service employees and retirees and will not impose any mandates upon local governments.

6. Paperwork: The proposal will not require any new or additional application or reporting forms.

7. Duplication: The proposal does not duplicate or conflict with any State or federal requirements.

8. Alternatives: This rule reflects the only appropriate method of implementing the provisions of Chapter 491 of the Laws of 2011 with respect to providing M/C and other unrepresented employees and retirees with the health plan benefits in the manner required by the Chapter timely and in accordance with the State's obligations.

9. Federal Standards: This proposal does not exceed any minimum standards of the federal government for the same or similar subject areas.

10. Compliance Schedule: Compliance commenced automatically upon the effective date of the emergency adoption of this regulation which is now proposed for permanent adoption.

### Regulatory Flexibility Analysis
Since this rule serves only to provide for essential health plan benefits for certain M/C and other unrepresented employees and retirees, it has no economic impact and places no reporting, recordkeeping or other compliance requirements upon small businesses, as defined by Section 102(8) of the State Administrative Procedure Act, or any local government. Therefore, a Regulatory Flexibility Analysis (RFA) is not required by Section 202-b of such Act.

### Rural Area Flexibility Analysis
Since this rule serves only to provide for essential health plan benefits for certain M/C and other unrepresented employees and retirees, without regard to the geographic distribution of personal residences or work locations of such employees and retirees, this rule will not impose any adverse economic impact or create reporting, recordkeeping or other compliance requirements for public and private entities in rural areas, as defined in Section 102(10) of State Administrative Procedure Act. Therefore, a Rural Area Flexibility Analysis (RAFA) is not required by Section 202-bb of such Act.

### Job Impact Statement
By modifying Title 4 NYCRR to provide for essential health plan benefits for certain M/C and other unrepresented employees and retirees, this rule will positively impact jobs or employment opportunities for covered employees, as set forth in Section 201-a(2)(a) of the State Administrative Procedure Act (SAPA). Therefore, a Job Impact Statement (JIS) is not required by Section 201-a of such Act.

12/14/11 NY-ADR CVS-50-11-00005-P RM

END OF DOCUMENT

 Term ◖◗ Best Section ◗

© 2012 Thomson Reuters. No Claim to Orig. U.S. Govt. Works.

Doc 1 of 100 ◖

Cite List

 THOMSON REUTERS™

# Civil Service, Department of

## 1 / Provision of the Health Benefit Plan for Active and Retired New York State Employees (P)

Provision of the Health Benefit Plan for Active and Retired New
York State Employees
I.D. No. CVS-50-11-00005-P
PURSUANT TO THE PROVISIONS OF THE State Administrative Procedure Act, NOTICE is
hereby given of the following proposed rule:
Proposed Action: Amendment of sections 73.3(b) and 73.12 of Title 4
NYCRR.
Statutory authority: Civil Service Law, sections 160(1), 161-a and 167(8)
Subject: Provision of the health benefit plan for active and retired New
York State employees.
Purpose: To conform 4 NYCRR 73.12 with Chapter 491 of the Laws of 2011.
Text of proposed rule: RESOLVED, That the first paragraph of subdivision (b) of section 73.3 of
Title 4 NYCRR is hereby amended to read as follows:

73.3(b) Rate of contribution.
The rate of contribution of New York State on account of the coverage
of its employees, post retirees and their dependents shall be 100 percent of
the charge on account of individual coverage and 75 percent of the charge
on account of dependent coverage, except that for the [optional benefit
plans] Health Maintenance Organization options the State's contribution
shall not exceed the same dollar amount as is paid by the State under the
basic benefit plan. Effective October 1, 2011, for those employees
employed in a title allocated or equated to salary grade 9 or below, the
State's rate of contribution for such employees and their dependents
enrolled in the Empire Plan or a Health Maintenance Organization shall
be 88 percent of the charge on account of individual coverage and 73
percent of the charge on account of dependent coverage; provided,
however, that for hospital/medical/mental health and substance abuse
coverage provided under a Health Maintenance Organization, the State's
rate of contribution shall not exceed 100 percent of its dollar contribution
for such coverage under the Empire Plan. For employees employed in a
title allocated or equated to salary grade 10 or above, the State's rate of
contribution for such employees and their dependents enrolled in the
Empire Plan or a Health Maintenance Organization shall be 84 percent of
the charge on account of individual coverage and 69 percent of the charge
on account of dependent coverage, provided, however, that for hospital/
medical/mental health and substance abuse coverage provided under a
Health Maintenance Organization, the State's rate of contribution shall
not exceed 100 percent of its dollar contribution for such coverage under
the Empire Plan. Effective October 1, 2011, the rate of contribution on account of the coverage of
post retirees shall be as follows:
**(i) for retirees who retired on or after January 1, 1983, and employees retiring prior to
January 1, 2012, New York State shall contribute 88
percent of the charge on account of individual coverage and 73 percent of
the charge on account of dependent coverage, provided, however, that for
hospital/medical/mental health and substance abuse coverage provided**

**under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan;**

(ii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 9 or below, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan;

(iii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 10 or above, New York State shall contribute 84 percent of the charge on account of individual coverage and 69 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan.

The rate of contribution of a participating employer on account of the coverage of its employees, post retirees and their dependents shall be not less than 50 percent of the charge on account of individual coverage and 35 percent of the charge on account of dependent coverage. A participating employer may elect to pay higher rates of contribution for the coverage of its employees, retired employees and their dependents; provided, however, that if a participating employer so elects to pay a higher or lower rate of contribution for its retired employees or their dependents, or both, than that paid by the State for its retired employees or their dependents, or both, amounts withheld from the retirement allowances of its retired employees for their share of premium or subscription charges, if any, shall, if the president so requires, be paid to such participating employer which shall pay into the health insurance fund the full cost of premium or subscription charges for the coverage of such retired employees and their dependents; and provided that notice of such election shall be furnished to the Department of Civil Service not less than 60 days prior to the date on which it is proposed to make such higher rate of contribution effective.

The contributions payable by a prior retiree shall be equal to the contributions payable by active employees and post retirees having similar coverages; the employer's contributions shall be the difference between the contributions of the prior retiree and the total charges on account of coverage for such prior retiree. Notwithstanding the foregoing provisions:

FURTHER, Section 73.12 of Title 4 NYCRR is hereby amended to read as follows:

The provisions of this Chapter, insofar as they apply to employees in 1the negotiating units established pursuant to article 14 of the Civil Service Law and their dependents, shall be continued; provided, however, that during periods of time when there is in effect an agreement between the State and an employee organization reached pursuant to the provision of said article 14, the provisions of such agreement and the provisions of this Chapter shall both be applicable. In the event the provisions of the agreement are different from the provisions of this Chapter, the provisions of the agreement shall be controlling. The president may, upon [certification] approval by the Director of [Employee Relations] the Budget, provide for

the [supplementation of benefits] extension of the negotiated provisions of such agreement, in whole or in part, [provided hereinabove for] to officers and employees not in a negotiating unit within the meaning of article 14 of the Civil Service Law and may extend provisions regarding the modified state cost of premium or subscription charges to such employees or retirees.

Text of proposed rule and any required statements and analyses may be obtained from: Shirley LaPlante, NYS Department of Civil Service, Albany, NY 12239, (518) 473-6598, email: shirley.laplante@cs.state.ny.us Data, views or arguments may be submitted to: Mark Worden, Associate Attorney, NYS Department of Civil Service, Albany, NY 12239, (518) 473-2624, email: mark.worden@cs.state.ny.us

Public comment will be received until: 45 days after publication of this notice.

Regulatory Impact Statement
1. Statutory Authority: Section 160(1) of the Civil Service Law
authorizes the President of the State Civil Service Commission to establish regulations concerning the eligibility of active and retired employees
to participate in the health benefit plan authorized by Article XI of the
Civil Service Law. Section 161-a of the Civil Service Law authorizes the
President of the State Civil Service Commission to implement those provisions of a collective bargaining agreement between the state and an employee organization which provide for health benefits in a manner consistent with the terms thereof, and to extend such benefits in whole or in part
to employees not subject to the provisions of such agreement. Section
167(8) of the Civil Service Law provides that notwithstanding any inconsistent provision of law, where and to the extent that a collective bargaining agreement between the State and an employee organization provides
that the cost of premium or subscription charges for eligible employees
covered by such agreement may be modified pursuant to the terms of such
agreement, the President of the State Civil Service Commission, upon approval of the Director of the Budget, may extend the modified State cost
of premiums or subscription charges for employees not subject to a collective bargaining agreement and retirees and shall promulgate the necessary
rules or regulations to implement this provision.
2. Legislative Objectives: The President of the State Civil Service Commission has been granted broad authority to prescribe regulations concerning the administration of the health benefit plan authorized by Article XI
of the Civil Service Law. Consistent with such authority, the President is
amending the Rules and Regulations of the Department of Civil Service
with respect to the extension of health plan benefits provided to active and
retired employees not subject to collective bargaining.
3. Needs and Benefits: Chapter 491 of the Laws of 2011 implements
the terms of a collective bargaining agreement covering members of the
Administrative Services Unit, the Institutional Services Unit, and
Operational Services Unit, and the Division of Military and Naval Affairs
Unit represented by the Civil Service Employees Association (CSEA).

The Chapter also establishes terms and conditions of employment for employees designated as Management/Confidential (M/C) and other unrepresented employees. The Chapter provides that modified state cost of

premium or subscription charges for health insurance coverage may be extended to M/C and other unrepresented employees and retirees. The Chapter also provides M/C and other unrepresented employees with compensation increases, payments, and benefits comparable to negotiated increases and benefits for represented employees. This rule ensures that the President implements these essential benefits and provisions in a timely fashion for M/C and other unrepresented employees and retirees in the manner required by the Chapter and in accordance with the State's obligations.

4. Costs:

a. Cost to regulated parties for the implementation of and continuing compliance with the rule: This rule conforms the Regulations of the Department of Civil Service with Chapter 491 of the Laws of 2011 and relevant provisions of such law will be implemented through ministerial acts performed by the New York State Department of Civil Service as administrator of the New York State Health Insurance Program. There are no specific costs associated with implementation of and continuing compliance with this rule.

b. Costs to the agency, the State and local governments for the implementation and continuation of the rule: This rule conforms the Regulations of the Department of Civil Service with Chapter 491 of the Laws of 2011 and will be implemented through ministerial acts performed by the New York State Department of Civil Service as administrator of the New York State Health Insurance Program. There are no specific costs to New York State associated with implementation and continuation of this rule and, as the proposal applies only to certain State employees and retirees, it will not impose any costs upon local governments.

c. The information, including the source(s) of such information, and methodology upon which the cost analysis is based: Preliminary estimates regarding administrative costs associated with providing the subject benefits to M/C and other unrepresented employees and retirees have been evaluated by the Department of Civil Service.

5. Local Government Mandates: The proposal applies only to certain State Classified Service employees and retirees and will not impose any mandates upon local governments.

6. Paperwork: The proposal will not require any new or additional application or reporting forms.

7. Duplication: The proposal does not duplicate or conflict with any State or federal requirements.

8. Alternatives: This rule reflects the only appropriate method of implementing the provisions of Chapter 491 of the Laws of 2011 with respect to providing M/C and other unrepresented employees and retirees with the health plan benefits in the manner required by the Chapter timely and in accordance with the State's obligations.

9. Federal Standards: This proposal does not exceed any minimum standards of the federal government for the same or similar subject areas.

10. Compliance Schedule: Compliance commenced automatically upon the effective date of the emergency adoption of this regulation which is now proposed for permanent adoption.

Regulatory Flexibility Analysis
Since this rule serves only to provide for essential health plan benefits for
certain M/C and other unrepresented employees and retirees, it has no
economic impact and places no reporting, recordkeeping or other compliance requirements upon
small businesses, as defined by Section 102(8) of
the St a t e Admini s t r a t ive Proc edur e Ac t , or  any  loc a l gove rnment .
Therefore, a Regulatory Flexibility Analysis (RFA) is not required by
Section 202-b of such Act.
Rural Area Flexibility Analysis
Since this rule serves only to provide for essential health plan benefits for
certain M/C and other unrepresented employees and retirees, without
regard to the geographic distribution of personal residences or work locations of such employees
and retirees, this rule will not impose any adverse
economic impact or create reporting, recordkeeping or other compliance
requirements for public and private entities in rural areas, as defined in
Section 102(10) of State Administrative Procedure Act. Therefore, a Rural
Area Flexibility Analysis (RAFA) is not required by Section 202-bb of
such Act.
Job Impact Statement
By modifying Title 4 NYCRR to provide for essential health plan benefits
for certain M/C and other unrepresented employees and retirees, this rule
will positively impact jobs or employment opportunities for covered employees, as set forth in
Section 201-a(2)(a) of the State Administrative
Procedure Act (SAPA). Therefore, a Job Impact Statement (JIS) is not
required by Section 201-a of such Act.

# EXHIBIT M



# Retired Public Employees Association, Inc.

435 NEW KARNER ROAD • ALBANY, NY 12205 • (518) 869-2542 • FAX (518) 869-0631 e-mail: mail@rpea.org
Stanley Winter, President                                                              Alan Dorn, Executive Director

December 27, 2011

Mark Worden, Esq.
Associate Attorney,
NYS Department of Civil Service,
Alfred E. Smith State Office Building
Albany, NY 12239

CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Dear Mr. Worden:

The Retired Public Employees Association, Inc. (RPEA), on behalf of itself and its
approximately 40,000 members, objects to the adoption of the amendments to 4 NYCRR
73.3(b) and 4 NYCRR 73.12 as reported in the State Register as **"PROPOSED RULE
MAKING, NO HEARING(S) SCHEDULED … I.D. No. CVS-50-11-00005-P,"**
insofar as it applies to individuals who retired from the State as their employer on or after
January 1, 1983 and prior to October 1, 2011.

This proposed rule appears to be identical to **EMERGENCY RULE MAKING … I.D.
No. CVS-41-00007-E,"** filed on September 27, 2011, and in essence, proposes to make
the Emergency Rule permanent.  As you are aware, RPEA, by letter to the Honorable
Patricia Hite, dated October 20, 2011, objected to the Emergency Rule stating our reasons
therefor and offering an alternative proposed rule in accordance with law.  A copy of said
letter of October 20, 2011 and attached alternative proposed rule is attached hereto and
made a part hereof.

In addition, you may be aware that the NYS Department of Civil Service, Patricia Hite,
Acting President, NYS Civil Service Department, the NYS Civil Service Commission,
and the New York State Health Insurance Program are all named Defendant-Respondents
in an action commenced by RPEA in Supreme Court of the State of New York, Albany
County (Index No. 7586-11) challenging the above referenced Emergency Rule and *de
facto*, this identical proposed rule.  These four named Defendant-Respondents were all
duly served in said action on December 12, 2011 at your offices in the Alfred E. Smith
Office State Office Building, Albany, NY 12239.

Without limiting RPEA's causes of action in the aforesaid legal action, following are
some of the salient reasons for our objection to this proposed rule making:

Civil Service Law, §167.1(a) now mandates the State's contribution percentage of the
cost of premium or subscription charges for the coverage of retired state employees

Mark Worden, Esq.
December 27, 2011
Page 2.

retiring on or after January first, nineteen hundred eighty-three who are enrolled in the
Statewide and supplementary health benefit plans. The proposed rule making
contravenes the clear mandate of this provision of law.

The President [of the State Civil Service Commission], in extending the modified State
cost of premium or subscription charges for retirees not subject to collective bargaining
agreements referenced in the amendment to Civil Service Law, §167.8 by Chapter 491 of
the Laws of 2011, Part A, §2, is acting *ultra vires* and in contravention of law. Prior to
its amendment by Chapter 491 of the Laws of 2011, §167.8 provided as follows:

> "8. Notwithstanding any inconsistent provision of law, where and to the
> extent that an agreement between the state and an employee organization
> entered into pursuant to article fourteen of this chapter so provides, the
> state cost of premium or subscription charges for eligible employees
> covered by such agreement may be increased pursuant to the terms of such
> agreement and for a duration provided by such agreement and pursuant to
> rules and regulations as may be established by the president. Such increase
> in state cost shall only apply during the period if eligibility provided by
> such agreement **and shall not be applied during retirement**." (Emphasis
> supplied.)

When the Legislature amended §167.8 by enacting Senate 5846 which upon approval by
the Governor became Chapter 491 of the Laws of 2011, the Sponsor's Memorandum in
Support of Senate 5846 explained that the amendment was intended to apply to officers
and employees of the State as the employer including officers and employees of the State
as the employer not subject to the terms of a negotiated agreement, but does not mention
or refer to "a retiree" or "a retired employee" therein, directly or indirectly.

Indeed, conspicuous by its absence is any reference to "retired employee" or "retiree" in
this Memorandum, which states:

> "Section 2 of this part amends Civil Service Law §167(8) to provide
> authority to modify the **employer and employee** shares of health premium
> and subscription costs under the New York State Health Insurance Plan."
> (Emphasis supplied.)

Referring to "Part B" of the bill, the Memorandum continues:

> "PART B OF THE BILL:
>
> "This part of the bill establishes terms and conditions of employment for
> **M/C and other unrepresented employees**." (Emphasis supplied.)

Senate 5846 reads as follows (deleted provisions in brackets and ~~struck through~~; new
material underlined):

Mark Worden, Esq.
December 27, 2011
Page 3.

> "8. Notwithstanding any inconsistent provision of law, where and to the
> extent that an agreement between the state and an employee organization
> entered into pursuant to article fourteen of this chapter so provides, the
> state cost of premium or subscription charges for eligible employees
> covered by such agreement may be [increased] modified pursuant to the
> terms of such agreement [and for a duration provided by such agreement
> and pursuant to rules and regulations as may be established by the
> president.  Such increase in state cost shall only apply during the period of
> eligibility provided by such agreement and shall not be applied during
> retirement].   The president, with the approval of the director of the
> budget, may extend the modified state cost of premium or subscription
> charges for employees or retirees not subject to an agreement referenced
> above and shall promulgate the necessary rules or regulations to
> implement this provision."

This amendment, with respect to retirees of the State as the employer, provides that the
President, with the approval of the Director of the Budget, "may extend the modified
state cost of premium or subscription charges for ... retirees ... and shall promulgate the
necessary rules or regulations to implement this provision."  Significantly, §167.8 only
authorizes the President, with the approval of the Director of the Budget, to promulgate
the necessary rules or regulations with respect to *"retirees"* of the State as the employer
in contrast promulgating such rules with respect to *"retired employees"* of the State as the
employer.

The State Legislature, which is presumed to be aware of its mandates with respect to
**retired** employees of the State and their dependents as set out in §167.1(a) of the Civil
Service Law, did not amend §167.1(a) of the Civil Service Law.  As to the inclusion of
the word "retiree" in §167.8 as amended, it is essential that the Legislature's intent when
it amended §167.8 as reflected in the Sponsors' Memorandum be considered by the
President when promulgating rules and regulations to implement the provisions of §167.8
in order to make certain that such rules reflect that intent and are in harmony with the
provisions of Civil Service Law §167.1(a) and §167.8 as amended.  In other words, the
President's rules or regulations with respect to implementing the provisions of §167.8
must be consistent with and reflect both that legislative intent and the mandates of Civil
Service Law §167.1(a) insofar as persons retired or retiring from the State as the
employer are concerned.

Insofar as retirees are concerned, it is clear that in amending §167.8 the Legislature
intended to limit the authority of the President of the Civil Service Commission to extend
the modified State's cost of such premium or subscription charges to reflect terms and
conditions set out in a collective bargaining agreement negotiated pursuant to Article 14
of the Civil Service Law in 2011, and successor such agreements, to (1) employees in the
relevant negotiating unit during the term of the controlling collective bargaining
agreement *retiring during the term of such collective bargaining agreement*; and (2)
State officers and employees not subject to the terms and conditions of employment set

Mark Worden, Esq.
December 27, 2011
Page 4.

out in any collective bargaining agreement *retiring during the term of the relevant collective bargaining agreement.*

Accordingly, we urge that the proposed rule language [~~in brackets and struck out below~~] be deleted and the language set out below *in italics* be adopted by the President to amend 4 NYCRR 73.3(b), Rate of contribution, as set out in CVS-50-11-00005-P, thereby reflecting the Legislature's intent in its passing Senate 5846, thereafter signed into law as Chapter 491 of the Laws of 2011, with respect to individuals who retired from the State on or after January 1, 1983 and prior to October 1, 2011 and in harmony with the provisions of §§167.1(a) and 167.8 (as amended) of the Civil Service Law .

### 73.3(b) Rate of contribution.

The rate of contribution of New York State on account of the coverage of its employees, post retirees and their dependents shall be 100 percent of the charge on account of individual coverage and 75 percent of the charge on account of dependent coverage, except that for the [optional benefit plans] Health Maintenance Organization options the State's contribution shall not exceed the same dollar amount as is paid by the State under the basic benefit plan. Effective October 1, 2011, for those employees employed in a title allocated or equated to salary grade 9 or below, the State's rate of contribution for such employees and their dependents enrolled in the Empire Plan or a Health Maintenance Organization shall be 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage; provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan. For employees employed in a title allocated or equated to salary grade 10 or above, the State's rate of contribution for such employees and their dependents enrolled in the Empire Plan or a Health Maintenance Organization shall be 84 percent of the charge on account of individual coverage and 69 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan. Effective October 1, 2011, the rate of contribution on account of the coverage of post retirees shall be as follows:

(i) [~~for retirees who retired on or after January 1, 1983, and employees retiring prior to January 1, 2012, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan;~~]

*for retirees who retired on or after October 1, 2011, and employees retiring prior to January 1, 2012, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage, provided, however, (a) New York State shall contribute 90 percent of the charge on account of individual coverage on behalf of*

Mark Worden, Esq.
December 27, 2011
Page 5.

*state employees who retired on or after January 1, 1983 and prior to October 1, 2011 and 75*
*percent of the charge on account of dependent coverage on behalf of state employees who retired*
*prior to October 1, 2011 and (b) that for hospital/medical/mental health and substance abuse*
*coverage provided under a Health Maintenance Organization, the State's rate of contribution*
*shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan;*

It is further urged, for the reasons indicated above, that 4 NYCRR 73.12 as set out in CVS-50-11-00005-P also be amended by the President by inserting the language set out below in italics, to read as follows:

The provisions of this Chapter, insofar as they apply to employees in the negotiating units established pursuant to article 14 of the Civil Service Law and their dependents, shall be continued; provided, however, that during periods of time when there is in effect an agreement between the State and an employee organization reached pursuant to the provision of said article 14, the provisions of such agreement and the provisions of this Chapter shall both be applicable. In the event the provisions of the agreement are different from the provisions of this Chapter, the provisions of the agreement shall be controlling. The president may, upon [certification] approval by the Director of [Employee Relations] the Budget, provide for the [supplementation of benefits] extension of the negotiated provisions of such agreement, in whole or in part, [provided hereinabove for] to officers and employees not in a negotiating unit within the meaning of article 14 of the Civil Service Law and may extend provisions regarding the modified state cost of premium or subscription charges to such employees or retirees *retiring on or after October 1, 2011.*

Thank you for your consideration of our objections as outlined above.

Very truly yours,

Alan Dorn
Executive Director

Enclosure

Cc:     Honorable Thomas P. DiNapoli
        Lewis B. Oliver, Jr, Esq.



# Retired Public Employees Association, Inc.

**435 NEW KARNER ROAD • ALBANY, NY 12205 • (518) 869-2542 • FAX (518) 869-0631 e-mail: mail@rpea.org**
Stanley Winter, President                                                                 Alan Dorn, Executive Director

October 20, 2011

The Honorable Patricia Hite
Acting NYS Department of Civil
  Service Commission President
NYS Department of Civil Service
Alfred E. Smith State Office Building
Albany, NY  12239

<u>CERTIFIED MAIL – RETURN RECEIPT REQUESTED</u>

Dear President Hite:

The Retired Public Employees Association, Inc. (RPEA) notes the Department of Civil Service's posting of an Emergency Rule that would affect the Health Benefit Plan for Active and Retired New York State Employees, I.D. No. CVS-41-11-00007-E, Filing No. 854, filed on September 27, 2011 and to take effect on that date, in the State Register, dated October 12, 2011.

With respect to such "Emergency Rule" providing, in pertinent part, that:

> *Effective October 1, 2011, the rate of contribution ...shall be as follows:*
>
> *(i) for retirees who retired on or after January 1, 1983, and employees retiring prior to January 1, 2012, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage..., and*
> *(ii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 9 or below, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage, ...and*
> *(iii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 10 or above, New York State shall contribute 84 percent of the charge on account of individual coverage and 69 percent of the charge on account of dependent coverage....*

RPEA, on behalf of retirees of the State as an employer and their dependents in general and its members who are retirees of the State as an employer and their dependents in particular, objects to the adoption of such provisions for the following reasons:

## POINT I

Except as otherwise provided by an agreement between the State and an employee organization entered into pursuant to Article fourteen of the Civil Service Law, Section 167.1(a) requires the State to contribute nine-tenths of the cost of premiums or subscription charges for health insurance coverage of each such State employee or retired State employee and three-quarters of the cost of premium or subscription charges for the coverage of dependents of such State employees and retired State employee except as otherwise provided by Section 167.1(a).

Suffice it to note that "It is well-settled that a State regulation should be upheld if it has a rational basis and is not unreasonable, arbitrary, capricious **or contrary to the statute under which it was promulgated"** (see *Kuppersmith v Dowling*, 93 NY2d 90, 96) [emphasis supplied].

Clearly the Emergency Rule CVS-41-11-00007-E and, presumably, a final rule that would track Emergency Rule CVS-41-11-00007-E "is contrary to the statute under which it was promulgated" with insofar as it requires a retiree of the State as the employer to pay more than (1) 10% of the health insurance premium for individual health insurance coverage and (2) 25% of the health insurance premium for dependent health insurance coverage.

## POINT II

Assuming, but not conceding, that Civil Service Law §167.8 as relied upon by the President as authority for promulgating the changes set out in CVS-41-11-00007-E is viable, nothing in the "memorandum in support" of Senate 5486, which was signed into law as Chapter 491 of the Laws of 2011, and which, in pertinent part, amended Section 167.8, suggests that this amendment was to apply to a retiree of the State as the employer.
Indeed, the consistent theme, as demonstrate in the Sponsor's Memorandum's reference the amendment of CSL §167.8, is that the provision would apply with respect to "employer and employee" shares of the cost of health insurance and conspicuous by its absence is any reference to "retirees." The Sponsor's Memorandum states:

2

"Section 2 of Part A of this law amends Civil Service Law § 167(8) to provide authority to modify the **employer and employee shares of health premium and subscription costs under the New York State Health Insurance Plan.**" (emphasis supplied)

As the Sponsor's Memorandum further explains, the bill is intended to apply as follows:

"Part B of this bill provides the State's approximately **12,000 unrepresented employees** who are prohibited from collective negotiations by the Taylor Law, including managerial or confidential ("M/C") employees, with benefits and increases in compensation at levels that are comparable to the benefits and increases in compensation received by employees represented by employee organizations." [emphasis supplied]

Again, the phrasing of the Sponsor's Memorandum – "provides the State's approximately 12,000 unrepresented employees" – clearly neither contemplates nor implies that retirees of the State as the employer are to be subjected to the extension of the terms negotiated in the course of collective bargaining pursuant to Article 14 of the Civil Service Law with respect to any ratio of health insurance contributions by the State and its employees in such collective bargaining unit in contrast to the President, with the approval of the Director of the Budget, electing to promulgate a rule, regulation or policy under color of §167.8 extending such provisions to managerial or confidential employees and unrepresented employees.

## POINT III

Assuming, arguendo, that in some way §167.8 is deemed applicable to retirees of the State as an employer, such application would be prospective only, applying to those employees of the State retiring on or after the claimed effective date, September 27, 2011, of the emergency rule as was the case when §167.1(a) was amended in 1983.

The "prospective application" of changes in retiree contributions for health insurance is reflected in both the Bill Jacket concerning the measure that was signed into law as Chapter 14 of the Laws of 1983, a "Governor's Program Bill," enacting the amendment to Civil Service Law, Section 167.1(a) changing the ratio of employer and employee contributions for health insurance prospectively as of January 1, 1983 with respect to employees of the State as the employer retiring on or after January 1, 1983 and continuing in place the superior contribution ratios for those retirees of the State as the employer retiring on or before December 31, 1982.

3

In a letter to you dated, September 14, 2011, RPEA offered a proposed amendment to the President's Rules which should have been promulgated instead of the above Emergency Rule.  For the above reasons, and for the reasons stated in our letter of September 14, 2011, RPEA respectfully requests an immediate withdrawal of the Emergency Rule and promulgation of our suggested proposed amendment which would be consistent with legal and historical precedent as we have painstakingly demonstrated.

                                        Sincerely,

                                        S/
                                        Alan Dorn
                                        Executive Director

cc: Comptroller DiNapoli

4