UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LILLIAN ROBERTS, DISTRICT COUNCIL 37, et al.,

Plaintiffs,

Civil Case No.: 1:12-cv-0046
(MAD) (DRH)

- against -

THE STATE OF NEW YORK, et al.,

Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

MARY J. O'CONNELL
General Counsel
Attorney for Plaintiffs
District Council 37, AFSCME, AFL-CIO
125 Barclay Street, 5th Floor
New York, New York 10007
Tel. (212) 815-1450
Fax: (212) 815-1440

/s/Erica Gray-Nelson
Erica C. Gray-Nelson, Of Counsel
egray-nelson@dc37.net
Bar Roll No.: 516294

## TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT**...................................................................1

**BRIEF STATEMENT OF FACTS** .............................................................1

**STANDARD OF REVIEW FOR A MOTION TO DISMISS** .....................6

A.   Federal Rules of Civil Procedure, Rule 12(b)(1) Standard for Motion to Dismiss...........6

B.   Federal Rules of Civil Procedure, Rule 12(b)(6) Standard for Motion to Dismiss..........7

### POINT I

**THE DISTRICT COURT HAS SUBJECT MATTER JURISDICTION
IN THIS MATTER** ..................................................................7

A.   Plaintiffs' Complaint Sets Forth Sufficient Facts to Establish Subject
     Matter Jurisdiction to Adjudicate Their Claims ........................................9

B.   Plaintiffs Have State a Cause of Action for Relief .....................................12

     i.     The Eleventh Amendment Does Not Preclude this Action ..................12

     ii.    Defendants Are Liable Under 42 U.S. C. § 1983.............................14
     iii.   Plaintiffs' Remedy Operates Prospectively to Remedy Defendants'
         Unconstitutional Actions .....................................................16

### POINT II

**THE COURT MAY EXERCISE SUPPLEMENTAL JURISDICTION
OVER PLAINTIFFS' STATE LAW CLAIMS** ......................................17

A.   The Court Has Supplemental Jurisdiction Over Plaintiffs' Article 78 Claims ....17
B.   This Court Has Supplemental Jurisdiction Over Plaintiffs' State
     Constitutional Claims ................................................................21

### POINT III

**DEFENDANTS BREACHED THEIR AGREEMENTS WITH
THE PLAINTIFFS.**...................................................................22

A.   Plaintiffs Had A Vested Right in Their Retiree Health Insurance Benefits.........22

B.  The Facts Establish That the State Breached Plaintiffs' Vested
Contract Rights..................................................................................26

**POINT IV**

**DEFENDANTS HAVE UNCONSTITUTIONALLY IMPAIRED
PLAINTIFFS' CONTRACTS** .........................................................................27

A.  The Contract Impairments Are "Substantial"...........................................28
B.  The Means Are Not "Reasonable and Necessary to Achieve an Important
Public Purpose"...................................................................................28

**CONCLUSION**...................................................................................................30

## PRELIMINARY STATEMENT

The Complaint asserts that the State defendants violated the United States Constitution by impairing the contractual rights of retired members of plaintiff union, District Council 37, AFSCME, AFL-CIO ("DC 37" or "Union"), who were beneficiaries of the relevant collective bargaining agreements ("CBAs") in effect at the time of their retirement, and by legislatively modifying the New York Civil Service Law to comport with the contractual violation. The Complaint further alleges that defendants violated the due process of clauses of the New York State and the U.S. Constitutions when they unilaterally increased plaintiffs-retirees' contribution to the State's retirement health benefit plan, consequently reducing plaintiffs' health insurance benefits, without due process of law.

As such, the Complaint asserts facts squarely grounded in federal law, which triggers this Court's jurisdiction to adjudicate the claims raised therein. Nonetheless, defendants have moved to dismiss the Complaint on jurisdictional grounds as well as on the basis of plaintiffs' substantive claims. For the reasons set forth below, defendants' motion to dismiss must fail.

## BRIEF STATEMENT OF FACTS

This Memorandum of Law in Opposition to the Motion to Dismiss incorporates herein the facts as alleged in the Complaint. However, in further support of the instant Opposition, plaintiffs note the following relevant facts.

Plaintiffs Mildred Brown ("Brown"), Shanomae Wiltshire ("Wiltshire"), Norma Galloway ("Galloway"), Charmaine Hardaway ("Hardaway") and Maurice Bouyea ("Bouyea") are former members of Local 1359, the Rent Regulation Services Unit ("RRSU"), an affiliate of Plaintiff

1

District Council 37. See Complaint at ¶¶ 13-17.[1] Plaintiffs Brown, Galloway, Hardaway and Bouyea retired from state employment prior to October 1, 2011. See Compl. at ¶¶ 13, 15-17. Plaintiff Wiltshire retired on December 16, 2011. See Compl. at ¶14. Brown, Wiltshire, Galloway, Hardaway and Bouyea were covered by the Rent Regulation Services Unit Agreement ("RRSU Agreement") in effect from 2007 through 2011. See Compl. at ¶¶ 13-17. (A copy of the Agreement is annexed to the Affirmation of Erica C. Gray-Nelson in Opposition to the Motion to Dismiss as Appendix A). In addition, by virtue of their years of service, plaintiffs were also covered by RRSU agreements that were in effect beginning as early as 1985. See Compl. at ¶¶ 13-17.

Article 9 of the RRSU Agreement currently in effect contains the following language:

> §9.1 Continuation
> The State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on April 1, 2007 with the State's health insurance carriers *unless specifically modified or replaced pursuant to this Agreement.* (Emphasis added).

> §9.2(n) Eligibility
> Effective January 1, 1992, *an employee who is eligible to continue health insurance coverage upon retirement* and who is entitled to sick leave credit to be used to defray any employee contribution toward the cost of the premium, may elect an alternative method of applying the basic monthly value of the sick leave credit. Employees selecting the basic sick leave credit may elect to apply up to 100 percent of the calculated basic monthly value of the credit toward defraying the required contribution to the monthly premium *during their own lifetime.* If employees who elect that method predecease their eligible covered dependents, the dependents may, if eligible, continue to be covered, but must pay the applicable dependent survivor share of the premium. Employees selecting the alternative method may elect to apply only up to 70 percent of the calculated

---

[1] All references to the Complaint filed on January 10, 2012 will hereafter be cited to, "Compl. at ¶ __."

basic monthly value of the credit toward the monthly premium *during their own lifetime*. Upon the death of the employee, however, any eligible surviving dependents may also apply up to 70 percent of the basic monthly value of the sick leave credit toward the dependent survivor share of the monthly premium for the duration of the dependents' eligibility. *The State has the right to make prospective changes to the percentage of credit to be available under this alternative method for future retirees as required to maintain the cost neutrality of this feature of the plan*. The selection of the method of sick leave credit application must be made at the time of retirement, and is irrevocable. In the absence of a selection by the employee, the basic method shall be applied. (Emphasis supplied).

§9.4 Empire Plan Premium
The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage toward hospital/medical/mental health and substance abuse/prescription drug components provided under the Empire Plan. Compl. at ¶ 52.

Therefore, with respect to RRSU members and retirees, the health insurance contribution rates that the State agreed to pay, 90% for individual and 75% for dependent coverage, may not be changed unless modified or replaced pursuant to the CBA. See Compl. at ¶¶ 52, 73-74. The RRSU Agreement further provides that the State may make prospective changes only to sick leave credits that future retirees may use to defray the cost of health insurance premiums. See Compl. at ¶ 77. In unilaterally increasing the contribution rate for retirees the State effectively diminished the value of the retirees' sick leave credits to be used to defray health insurance premium costs. Furthermore, current and former employees covered by the RRSU Agreement are not bound by the State's contract with the Civil Service Employees Association ("CSEA") upon which the amendment to Civil Service Law, §167(8) is based. See Compl. at ¶ 72.

Plaintiff Steven Schwartz ("Schwartz") was an employee of the Office of Court Administration/Unified Court System, separate and apart from the Executive Branch, and was

3

represented by the Court, County and Department of Probation Employees Unit ("Court Unit"). See Compl. at ¶ 18. Up until his retirement on July 1, 2011, he was covered by the Court Unit agreement in effect from 2007 through 2011, and which continues by operation of law until a new agreement is reached. See Compl. at ¶ 18. (A copy of the Court Unit Agreement is annexed to the Affirmation of Erica Gray-Nelson as Appendix B). Plaintiff Schwartz participated and continues to participate in the New York State Health Insurance Plan. See id.

Court Unit members who retired between January 1, 1983 and October 1, 2011 contributed 10% towards the cost of individual coverage and 25% toward the cost of dependent coverage for health insurance in retirement as described in the above contracts. See Compl. at ¶ 56. Thus, from the date of his retirement until October 1, 2011, plaintiff Schwartz contributed ten percent (10%) toward the cost of his health insurance premiums. See Compl. at ¶ 18. While the Court Unit contract does not contain the same language as Article 9 of the RRSU Agreement, it is clear that for over twenty-seven years Schwartz and others similarly situated received the same benefits and had a vested right to continue to receive the health insurance benefits in effect at the time of their retirement. See Compl. at ¶¶ 54, 55, 106, 119-124.

In addition, the New York Civil Service Law Section §167(1) (a) requires that the State pays 90% of the cost of individual health insurance coverage and 25% of the cost of dependent coverage. See Compl. at ¶ 65. This requirement has not been legislatively modified. See Comp. at ¶ 71. Moreover, prior to the enactment of Chapter 491 Laws of 2011, Civil Service Law §167(8) read as follows:

4

> Notwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, *the state cost of premium or subscription charges for eligible employees covered by such agreement may be increased pursuant to the terms of such agreement* and for a duration provided by such agreement and pursuant to rules and regulations as may be established by the president. Such increase in state cost shall only apply during the period of eligibility provided by such agreement and *shall not be applied during retirement.* (Emphasis added).

Compl. at ¶ 69.

Thus, the law in effect at the time of plaintiffs Brown, Galloway, Hardaway, Bouyea and Schwartz's retirement recognized that the State may increase its own premium cost and that retirees were exempt from the State's authority to modify its health insurance contribution on behalf of retirees. See Compl. at ¶ 69. Nevertheless, the State Legislature hastily amended the Civil Service Law to permit the State to modify health insurance premium costs that would also apply to retirees, even though it did not repeal the provision requiring the State to pay the 90% and 25% rates for retirees' health insurance premiums. See Compl. at ¶70. The effect of this change in the retiree contribution rate was to require plaintiffs and others similarly situated to pay more for their health insurance then they paid under the contracts in the effect at the time of their retirement.

As of September 27, 2011, the only contracts in existence between DC 37 and the State covering RRSU and Court Unit members were the 2007-2011 agreements, and since no successor agreements have been negotiated, those agreements remain in effect by operation of law. See Compl. ¶¶ 72, 93. Therefore, Plaintiffs had a vested right in the health insurance benefits earned during their employment with defendant State. Defendants violated plaintiffs' due process rights when they implemented the new increases without providing plaintiffs with notice and an

opportunity to be heard. See Compl. at ¶¶ 128-147, 164-172. In addition, the passage and implementation of Chapter 491 of the Laws of 2011 raising plaintiffs' health insurance contribution rates from 10% to 12% for individual coverage and from 25% to 27% for dependent coverage constitutes an impairment of the RRSU and Court Unit agreements in violation of Article 1, § 10, Clause 1 of the United States Constitution. The only "rationale" or "purpose" asserted by the defendants for substantially impairing plaintiffs' contract rights was that it was necessary to implement the negotiated agreement between the State and the CSEA. See Compl. at ¶¶ 68, 91, 111. However, the substantial impairment of plaintiffs' contract rights was not necessary for the State to implement the negotiated agreement between the State and the CSEA, and the substantial impairment of those rights served no legitimate public purpose.

## STANDARD OF REVIEW FOR A MOTION TO DISMISS

A.     Federal Rules of Civil Procedure, Rule 12(b)(1) Standard for Motion to Dismiss.

A case may be dismissed for lack of subject matter jurisdiction where a district court finds that it "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States of America, 201 F.3d 110, 113 (2d Cir. 2000). A court may refer to evidence outside the pleadings to determine whether it has subject matter jurisdiction over a plaintiff's claims. See id. at 113. Plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists. See id.

While jurisdiction must be shown affirmatively and is not made by drawing inferences from the pleadings favorable to the party asserting it, "a plaintiff need only make a prima facie showing of subject matter jurisdiction." Faccio v. U.S. Dep't of Housing and Urban Dev., 2011 U.S. Dist.

6

LEXIS 3383 at *3-4 (N.D.N.Y. Jan. 13, 2011) (citation omitted), aff'd, 2011 U.S. App. LEXIS

19774 (2d Cir. 2011).

B.    Federal Rules of Civil Procedure, Rule 12(b)(6) Standard for Motion to Dismiss.

When considering a Rule 12(b)(6) motion to dismiss, a district court must accept the facts

alleged in the complaint as true, and must construe all reasonable inferences in the plaintiff's favor.

See J.S., et al. v. Attica Central Sch., 386 F.3d 107, 116; 2004 U.S. App. LEXIS 20880 (2d Cir.

2004).   However, the plaintiff must set forth "'enough facts to state a claim to relief that is plausible

on its face.'" Johnson, et al. v. N.Y.S. Dep't of Corr. Serv., 709 F. Supp. 2d 178, 182; 2010 U.S.

Dist. LEXIS 42741 at **5 (N.D.N.Y. Apr. 30, 2010), citing, Bell Atlantic Corp. v. Twombly, 550

U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).

"[B]oth Rule 12(b)(1) and Rule 12(b)(6) require liberal construction of plaintiffs' complaint

and the acceptance of all factual allegations as true." Johnson v. N.Y.S. Dep't of Corr. Serv., 709 F.

Supp. 2d at 182.

## POINT I

### THE DISTRICT COURT HAS SUBJECT MATTER JURISDICTION IN THIS MATTER

The State defendants submit that this Court does not have subject matter jurisdiction over the

instant action.   They contend that: (i) they are not "persons" for purposes of 42 U.S.C. §1983; (ii)

they are immune from suit based upon the doctrine of sovereign immunity; and (iii) they are entitled

to the protection of 11th Amendment immunity.   Plaintiffs disagree. The Complaint properly asserts

subject matter jurisdiction.[2] "Subject matter jurisdiction defines the court's authority to hear a given type of case . . . ." United States v. Morton, 467 U.S. 822, 828 (1984). The subject matter jurisdiction provisions of Title 28 having broadest application are those granting the district courts power to entertain cases based on federal questions. United States v. Dowty Woodville Polymer Ltd., 110 F.3d 861 (2d Cir. 1997).

A federal court has subject matter jurisdiction over a cause of action only when it "has authority to adjudicate the cause" as pled in the complaint. Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422 (2007). Each factual issue necessary to support subject matter jurisdiction "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the

---

[2] Jurisdiction in the Complaint is based upon 28 U.S.C. §1331, 28 U.S.C. §1343 and the Court's supplemental jurisdiction under 28 U.S.C. §1367. These statutes provide:

28 U.S.C. § 1331:
The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. § 1343(a):
The district courts shall have original jurisdiction of any civil action authorized by law to b e commenced by any person . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

28 U.S.C. §1367(a):
. . . the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Thus, a district court has discretion to hold a hearing to resolve factual disputes that bear on the court's jurisdiction.

Here, this case is at the pleading stage and since no evidentiary hearings have been held, in reviewing a motion to dismiss under Rule 12(b)(1), the Court must accept the facts as alleged as true. See, supra, Johnson, 709 F. Supp. 2d 178, 182; see also Lujan, 504 U.S. at 561 ("At the pleading stage, general factual allegations . . . may suffice [to establish jurisdiction], for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.").

### A. Plaintiffs' Complaint Sets Forth Sufficient Facts to Establish Subject Matter Jurisdiction to Adjudicate Their Claims.

Federal question jurisdiction may encompass two types of actions: First, those suits involving direct federal questions, i.e., a claim premised on the United States Constitution or on a federal statute. See Rhode Island Fishermen's Alliance, Inc. v. Rhode Island Dep't of Envtl. Mgmt., 583 F.3d 42 (1st Cir. 2009). Second, those suits that raise embedded federal questions, such as, where a plaintiff pleads a state law cause of action that "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng.' & Mfg., 545 U.S. 308, 314 (2005).

When pleading a federal cause of action the Federal Rules of Civil Procedure require a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, every federal question case must comply with the well-pleaded complaint rule. See, e.g., Bell Atlantic Corp., 550 U.S. 544, 555 (stating, "a plaintiff's obligation to provide the 'grounds'

9

for his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . ."). To satisfy the rule, the plaintiff's well-pleaded complaint must exhibit, within its four corners, either an explicit federal cause of action or a state law cause of action that contains an embedded question of federal law that is both substantial and disputed. See W. 14th St. Comm'l Corp. v. 5 W. 14th Owners Corp., 815 F.2d 188, 193 (2d Cir. 1987). Thus, if the district court had original jurisdiction over any one of the causes of action, then it had supplemental jurisdiction over the rest. See 28 U.S.C. § 1367; United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

The federal question jurisdiction of district courts also encompasses causes of action created by federal statutes, such as, 42 U.S.C. § 1983, which explicitly authorizes a private remedy for acts that are taken under color of state law and violate rights secured by federal law. Hertz Corp. v. City of New York, 1 F.3d 121 (2d Cir. 1993) (42 U.S.C. § 1983 creates civil liability for deprivations of certain federal rights under color of state law and is a procedural vehicle which permits suit for violations of constitutional and federal statutory provisions). In such cases, federal law both creates the cause of action, supplying the underlying substantive rules that govern defendants' conduct, and authorizes plaintiffs to enforce the rights created.

As the defendants acknowledged, this action involves alleged violation of federal and state constitutional rights; seeks declaratory and injunctive relief under the Contract Clause, Article I, §10, cl. 1 of the United States Constitution, the Fifth and 14th Amendments to the United States Constitution, 42 U.S.C. §1983, and various state claims pursuant to the Court's supplemental jurisdiction. Plaintiffs' Complaint demonstrates that they have set forth sufficient facts to invoke

10

this Court's jurisdiction. For example, for their first cause of action, plaintiffs allege that the defendants violated Article I §10 of the United States Constitution by passing and implementing a law that unconstitutionally impairs the contractual rights of the plaintiffs. See Compl. at ¶¶ 101-111. In that, defendants impaired the CBAs in effect at the time of plaintiffs' retirement by increasing their contribution rates and diminishing the value of their sick leave credits to defray the costs of health insurance premiums guaranteed for life. See Compl. at ¶¶52, 96.

In addition, there is a federal question requiring the interpretation of federal law as to whether a contract clause claim can be asserted under 42 U.S.C. § 1983. See, e.g., Larsen v. Commonwealth of Pennsylvania, 154 F.3d 82 (3rd Cir. 1998) (cause of action under § 1983 lies for impairment of contract under the contract clause of the United States Constitution as applied to states under the Fourteenth Amendment when state law attempted to take away vested retiree health benefits); Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 887 (9th Cir. 2003) (the right of a party not to have a State, or a political subdivision thereof, impair its obligations of contract is a right secured by the first article of the United States Constitution - deprivation of that right may therefore give rise to a cause of action under section 1983); contra Crosby v. City of Gastonia, 635 F.3d 634 (4th Cir. 2011) (reaching an opposite conclusion).

The defendants contend that plaintiffs have not alleged that a state actor infringed upon a particular federally protected right. See *Def. Mtn. to Dismiss,* fn. 11. To the contrary, plaintiffs have asserted that defendants Hite and Megna improperly imposed upon them increased contribution rates for the State's health insurance plan, constitutionally impairing their rights pursuant to the collective bargaining agreements in effect. See Compl. at ¶¶ 78-96. The State has foreclosed an adequate remedy by legislatively modifying the Civil Service Law to comport with the impairment. See id.

Plaintiffs has also alleged in a third cause of action that defendants violated the 14th Amendment and 42 U.S.C. §1983 when they increased plaintiffs' contribution rates without notice and a reasonable opportunity to be heard. See Compl. at ¶¶ 128-147. Thus, a federal constitutional question exists as to whether the plaintiffs were denied their due process rights prior to the termination of a vested benefit by the defendants. See Goldberg v. Kelly, 397 U.S. 254, 261 (1970), superseded on other grounds, (noting that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires an evidentiary hearing before a recipient of certain government benefits, in this case welfare benefits, can be deprived of such benefits). As in Goldberg, the14th Amendment requires the plaintiffs to receive due process of law prior to defendants reducing their health insurance benefits through an increase their health insurance premiums. Thus, the Court has subject-matter jurisdiction to adjudicate plaintiffs' claims under federal question jurisdiction, and defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b) (1) should be denied.

      B.     Plaintiffs Have Stated a Cause of Action for Relief.

           i.     The Eleventh Amendment Does Not Preclude this Action.

Defendants posit that the Eleventh Amendment is a bar to this action. The argument set forth in defendants' motion goes to the viability of the remedy and not to validity of the claim. The Eleventh Amendment states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const., amend. XI. The Amendment is "'rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity.'" Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994) (internal citations omitted). "'It is inherent in the nature of sovereignty not to

be amenable to the suit of an individual without [the sovereign's] consent.'" Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Although the Amendment, by its terms, bars only federal suits against state governments by citizens of another state or foreign country, it has been interpreted also to bar federal suits against state governments by a state's own citizens as well as state court actions against state governments, see Alden v. Maine, 527 U.S. 706, 712 (1999).

While Congress may abrogate the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment, see U.S. Const., amend. XIV, § 5; Tennessee v. Lane, 541 U.S. 509, 518 (2004), as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity. See Lapides v. Bd. of Regents, 535 U.S. 613, 618-19 (2002). The immunity recognized by the Eleventh Amendment extends beyond the states themselves to "state agents and state instrumentalities" that are, effectively, arms of a state. Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997); see also, McGinty v. New York, 251 F.3d 84, 95 (2d Cir. 2001).

However, unconstitutional actions by state officials acting in their official capacity can still be redressed in federal court. In Ex parte Young, the Supreme Court established an important limit on the sovereign-immunity principle. See 209 U. S. 123 (1908), superseded by statute, 5 U.S.C § 702 (removing the sovereign immunity bar for other than monetary damages). The Court explained that because an unconstitutional legislative enactment is "void," a state official who enforces that law "comes into conflict with the superior authority of [the] Constitution," and therefore is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority

13

of the United States." Id. at 159–160. A court applying the doctrine of Ex parte Young to determine if the 11th Amendment bars a suit need only conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." Verizon Md. Inc. v. Public Serv. Comm'n of Md., 535 U. S. 635, 645 (2002).

This doctrine has existed alongside the Supreme Court's sovereign immunity jurisprudence for more than a century, accepted as necessary to "permit the federal courts to vindicate federal rights." Pennhurst State School v. Halderman ("Pennhurst"), 465 U. S. 89, 105 (1984). It rests on the premise that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. In this case, a straightforward inquiry clearly demonstrates that the Complaint alleges a violation of federal law and seeks declaratory and injunctive relief which can be properly characterized as prospective. See Compl. at pp.36-38. Plaintiffs have named the offending state officials in their official capacity and seek prospective relief to prevent the continual unconstitutional impairment of contract by the State defendants. Thus, the Court should find that the 11th Amendment does not constitute a bar to this action by virtue of Ex parte Young.

ii.      Defendant' Are Liable Under 42 U.S.C. §1983.

Title 42 U.S.C. § 1983 authorizes claims against those officials in their individual capacity for compensatory and punitive damages. Hafer v. Melo, 502 U.S. 21, 29-30 (1991). Suit can also be brought against them under section 1983 in their individual capacities for both prospective and retrospective relief. Posr v. Court Officer Shield #207, 180 F.3d 409, 414 (2d Cir.1999). Although, as discussed above, the Eleventh Amendment limits official capacity claims against state officials to prospective injunctive relief, it does not affect damage claims against those officials in their

14

individual capacity based upon actions taken in their official capacities. State officials sued in their

individual capacities are "persons" within the meaning of 1983. Unlike official capacity defendants -

who are not "persons" because they assume the identity of the government that employs them. <u>See</u>

<u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 71 (1989). Officers sued in their personal

capacity come to the court as individuals and thus fit comfortably within the statutory term "person,"

<u>cf.</u> 491 U.S., at 71, n. 10.

      Moreover, 1983's authorization of suits to redress deprivations of civil rights by persons

acting "under color of" state law means that the defendants may be liable for damages to the

plaintiffs precisely because of their authority as state officers. The defendants' assertion that acts

that are both within their official authority and necessary to the performance of governmental

functions, including the change to rates of contribution benefits at issue, should be considered acts of

the State that cannot give rise to a personal capacity action is unpersuasive. That contention ignores

the Supreme Court's holding that 1983 was enacted to enforce provisions of the Fourteenth

Amendment against those who carry a badge of a State and represent it in some capacity, <u>Hafer</u>, 502

U.S. 21, 22, whether they act in accordance with their authority or misuse it, <u>Scheuer v. Rhodes</u>, 416

U.S. 232, 243.

      Furthermore, defendants' theory would absolutely immunize state officials from personal

liability under1983 solely by virtue of the "official" nature of their acts, in contravention of this

Court's immunity decisions. <u>See, e.g., Scheuer, supra</u>. Moreover, the Eleventh Amendment does not

bar 1983 personal capacity suits against state officials in federal court. <u>Id.</u> at 237, 238.

15

iii.    Plaintiffs' Remedy Operates Prospectively to Cure
        Defendants' Unconstitutional Actions.

Defendants' claim in Point II contends that compensatory relief is not available to the plaintiffs because plaintiffs seek reimbursement for health insurance premiums unlawfully deducted. However, plaintiffs' Complaint makes clear that they seek prospective relief. See Compl. at pp.36-38. In Milliken v. Bradley, 433 U.S. 267 (1977), the Court expanded somewhat the notion of what "prospective" relief involves, by holding that ordering a state to put into effect, at public expense, a program which would remedy the effects of a school district's past discrimination did not violate the Eleventh Amendment. The Court held that the plan, although "compensatory" in nature, "operate[d] prospectively to bring about the delayed benefits of unitary school system," and did not award damages for past operations of the segregated school system. Id. at 290. The Court's insistence on fitting such relief under a "prospective" label solidified the distinction it has drawn between prospective and retroactive relief in setting the boundaries of the Eleventh Amendment's bar on suits against a state in federal court. The distinction accommodates an individual's right to obtain relief in federal court from state officials' unconstitutional actions with the states' right not to have their public coffers depleted with large retroactive damage awards. See Santiago v. NYS Dep't of Corr. Serv., 945 F.2d 25 (2d Cir. 1991).

In the instant case, the Complaint seeks a plan to prospectively bring about relief from the defendants' unconstitutional actions. Prospective relief can be fashioned in a form to reduce contributions by the plaintiffs to remedy the defendants' illegal conduct.

16

## POINT II

## THE COURT MAY EXERCISE SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' STATE LAW CLAIM

A.    The Court Has Supplemental Jurisdiction Over Plaintiffs' Article 78 Claims.

Defendants contend that Plaintiffs' State law claims brought under C.P.L.R. Article 78 cannot proceed in this Court because the "State of New York has not empowered the federal courts to hear Article 78 claims." *Def. Mtn. to Dismiss*, Point III.B, p.16.  Defendants are wrong.  The Court's authority to hear an Article 78 claim or any other claim for that matter is derived from Article III of the United States Constitution.  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966) ("Gibbs"); see also, Pennhurst State School & Hosp., supra, 465 U.S. 89, 97-98, 120.  The Court has discretionary authority to exercise supplemental or pendent jurisdiction. See Gibbs 383 U.S. at 726; see also, Pennhurst, 465 U.S. at 120.  The statute permitting pendent jurisdiction states in relevant part as follows:

> . . . in any civil action of which the courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. §1367(a).

It has long been held that generally, "when a federal court obtains jurisdiction over a federal claim, it may adjudicate other related claims over which the court otherwise would not have jurisdiction." Pennhurst, 465 U.S. at 117.  It has also long been held that "a federal court may resolve a case solely on the basis of a pendent state law claim, and that in fact the court usually should do so in order to avoid federal constitutional questions." Id.  In determining whether to

17

exercise pendent jurisdiction, "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." Id. at 122. As set forth above, none of Plaintiffs' federal or state law claims are barred by the Eleventh Amendment. Therefore, this Court can exercise supplemental jurisdiction over Plaintiffs' state law claims even if the claims seek relief pursuant to C.P.L.R. Article 78.

One Eastern District case cited by the defendants states that "[t]he overwhelming majority of district courts confronted with the question of whether to exercise supplemental jurisdiction over Article 78 claims have found that they are without power to do so or have declined to do so". Reed v. Medford Fire Department, Inc., 806 F. Supp. 2d 594, 617-618 (E.D.N.Y. 2011). However, the court concluded in the next paragraph that "... it is unclear whether district courts can exercise supplemental jurisdiction over Article 78 claims . . .", and did not render a determination on whether it could exercise supplemental jurisdiction in this case. Id.

Even though, some district courts have declined to exercise supplemental jurisdiction over Article 78 claims, it has been noted that these "decisions couch their rulings in discretionary language – the courts *decline* to exercise supplemental jurisdiction" - leaving open the question whether, in the right circumstances, a federal court may choose to exercise jurisdiction over an Article 78 claim. See Cartagena v. City of New York ("Cartagena"), 257 F. Supp. 2d 708, 709-710 (S.D.N.Y. 2003) (stating that it did not have discretion to exercise supplemental jurisdiction over the Article 78 claim before it). Meanwhile, the Cartagena Court approved the decision to exercise jurisdiction over an Article 78 claim in Yonkers Racing Corp. v. City of Yonkers, 858 F.2d 855 (2d Cir. 1988) calling it "a highly unusual one." 257 F. Supp. 2d. at 709-711. Following Cartagena, the

18

Southern District rejected the Cartagena Court's analysis stating:

> [t]he language in Article 78 quoted by defendants is equally unhelpful
> to their position. State law may direct that '[a] proceeding under this
> article shall be brought in [state] supreme court,' N.Y. C.P.L.R.
> §7084, but this requirement has nothing to do with whether the
> proceeding falls within a federal jurisdictional statute. If such a
> directive could deprive federal courts of jurisdiction, state
> legislatures, not Congress, would control the power of the federal
> judiciary.

Casale v. Metropolitan Transportation Authority ("Casale"), 2005 U.S. Dist. LEXIS 31559 at *16-17

(S.D.N.Y. Dec. 6, 2005). The Casale Court further determine that an Article 78 proceeding may be

removed to federal court. Id. at *16-17. In making this finding, the Court relied on a test enunciated

in Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg. ("Grable"), 545 U.S. 308, 314 (2005),

that determines removal is appropriate where the state claim necessarily raises a stated federal issue,

actually disputed and substantial, which a federal forum may entertain without disturbing any

congressionally approved balance of federal and state judicial responsibility. Casale, 2005 U.S. Dist.

LEXIS 31559 at *20.

The Casale Court also relied on the ruling in City of Chicago v. International College of

Surgeons ("Chicago"), 522 U.S. 156 (1997). See id. at *19. In Chicago, the complaint challenged

two administrative decisions by the Chicago Landmarks Commission as well as federal

constitutional claim under the Fifth and Fourteenth Amendments. See 522 U.S. at 159-160. The City

of Chicago removed both lawsuits to federal district court on the basis of federal question

jurisdiction where the cases were consolidated. After dismissing some of the constitutional claims

and exercising supplemental jurisdiction over the state law claims, the court granted summary

judgment in favor of the City, ruling that the ordinance and the Commission's proceedings were

19

consistent with the Federal and State Constitutions and that the Commission's findings were supported by the evidence in the record and were not arbitrary and capricious. The Court of Appeals for the Seventh Circuit reversed and remanded the case to state court, concluding that the District Court was without jurisdiction. Chicago, 522 U.S. at 161. The Supreme Court reversed finding that neither the jurisdictional statutes nor prior decisions suggest that federal jurisdiction was lacking. Id. at 162-163.

The Court found that the federal court properly recognized that it could also exercise supplemental jurisdiction over the state law claims because they were part of the same case or controversy, stating that:

> . . . this Court has long adhered to principles of pendent and ancillary jurisdiction by which federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact such that the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case. Congress has codified those principles in the supplemental jurisdiction statute, which combines the doctrines of pendent and ancillary jurisdiction under a common heading. 28 U.S.C. §1367. ....That provision applies equal force to cases removed to federal court as to cases initially filed there; . . .

Chicago, 522 U.S. at 164-166 (citations and internal quotations omitted).

All of the cases that Defendants cite for the proposition that the Court cannot exercise jurisdiction over Plaintiffs' Article 78 claims in the instant case rely on the faulty reasoning of Cartagena. The Article 78 claims neither raise novel or complex issues of state law nor predominate over the federal constitutional claims over which the Court has original jurisdiction. Nor do exceptional circumstances or other compelling reasons exist for declining jurisdiction. Moreover, as

20

more fully discussed below, no abstention doctrine applies to prevent the exercise of jurisdiction.

The instant case is analogous with the Supreme Court's decision in Chicago. The Article 78 claims here are predicated on the federal constitutional claims asserted over which, this Court does have original jurisdiction. In fact, Plaintiffs' state law claims arise from the same case or controversy as the federal claims. Indeed, the claims asserted here under Article 78 are not only predicated on a violation of federal constitutional rights, but also are derived from a common nucleus of operative fact such that it would be expected to try them all on one judicial proceeding. As such, the resolution of the Article 78 claims will turn in large part on the resolution of the federal constitutional claims. Therefore, not only is this Court empowered to exercise supplemental jurisdiction over Plaintiffs' State law claims, it is proper to exercise supplemental jurisdiction in this case.

B.   This Court Has Supplemental Jurisdiction Over Plaintiffs' State Constitutional Claims.

Plaintiffs have also alleged that defendants violated the New York State Constitution. See Compl. at ¶ 168. Article 1, §6, of the New York Constitution provides that no person "shall be deprived of life, liberty or property without due process of law." Thus, the State may not deprive a party to a contract of an essential contractual attribute without due process of law. The Complaint avers that Plaintiffs have a vested property right to maintain the same contribution rates contained in the contract that was in effect on the date each retiree retired. See Compl. at ¶¶ 167-169. The Complaint further asserts that defendants' increase in plaintiffs-retirees' contribution rates for health insurance violated Article I, §6 of the State Constitution. See Compl. at ¶ 170. For the reasons stated in Point II.A, herein, the Court may also exercise supplemental jurisdiction of plaintiffs' State constitutional claims.

21

The defendants also claim that plaintiffs' state law claims are barred by the Younger abstention doctrine. See *Def. Mtn. to Dismiss*, Point IV, pp.16-18. However, Younger does not apply to the facts of the instant case. In Younger v. Harris, the United States Supreme Court held that a plaintiff who had a pending state court proceeding involving the same facts and the same parties could not pursue his federal claims in federal court. See 401 U.S. 37, 49 (1971) (noting "Here a proceeding was already pending in the state court, affording Harris an opportunity to raise his constitutional claims."). In this case, plaintiffs are not parties in the state proceeding defendants referenced, RPEA v. State of New York, et al., Index No. 7586-2011 (Albany County Special Term). Furthermore, the RPEA proceeding does not include the specific collective bargaining contracts in issue. Therefore, plaintiffs cannot be assured that the specific constitutional violations alleged in the Complaint can or will be remedied by the RPEA proceeding in which they are not parties.

## POINT III

### DEFENDANTS BREACHED THEIR AGREEMENTS WITH THE PLAINTIFFS

A.     Plaintiffs Had a Vested Right in Their Retiree Health Insurance Benefits.

New York State courts have consistently found that parties to a collective bargaining agreement can create vested, lifetime rights to unchanged health insurance benefits for retirees. See Hudock v. Village of Endicott, 28 A.D.3d 923 (3d Dept. 2006); Della Rocco v. City of Schenectady, 252 A.D.2d 82 (3d Dept. 1998); Meyers v. City of Schenectady, 244 A.D.2d 845 (3d Dept. 1997), leave to appeal denied, 91 N.Y.2d 812 (1998).

These State court decisions on retiree health insurance are entirely consistent with the Second Circuit decisions in the area of vested rights for retiree health insurance, and are consistent with the

22

prevailing weight of authority among the federal circuit courts. See American Federation of Grain Millers v. Int'l Multifoods Corp., 116 F.3d 976, 979-980 (2d Cir. 1997); Schonholz v. Long Island Jewish Medical Center, 87 F.3d 72 (2nd Cir. 1996); Joyce v. Curtiss-Wright Corporation, 171 F.3d 130 (2nd Cir. 1999); see also, United Automobile Aerospace and Agricultural Workers v. Yard-Man ("Yard-Man"), 716 F.2d 1476 (6th Cir. 1983); Noe v. Polyone Corporation, 520 F.3d 548 (6th Cir. 2008); Steelworkers v. Textron, 836 F.2d 6 (1st Cir 1987); Keffer v. H.K. Porter, Co., Inc., 872 F.2d 60, 64 (4th Cir 1989); Bidlack v. Wheelabrator Corp., 993 F.2d 603 (7th Cir. 1993).

The Court in Yard-Man first set-out the most comprehensive analysis of the "inference" that the right to retiree health insurance is a vested, lifetime right, establishing what is now called the "Yard-Man inference." 716 F.2d at 1482. In Yard-Man, the Sixth Circuit stated that, when a union and an employer enter into a contract containing explicit language granting retirees the right to health insurance, it gives rise to an inference of vested rights because: (1) retiree health insurance is a "status" benefit, so it should logically continue during the individual's entire retirement; (2) it is a form of delayed compensation; and (3) unions do not represent retirees in collective barging negotiations. Likewise, as previously noted, New York courts have held there is an inference that retiree health insurance benefits are vested, unless otherwise stated. See, e.g., Della Rocco, supra, 252 A.D.2d at 84. This doctrine is based on the common-sense reasoning that unions only represent people while they are actively employed; and, "since the retirees are not involved in subsequent negotiations, it is logical to assume that the bargaining unit intended to insulate retirees from losing important insurance rights during subsequent negotiations by using language in each and every contract which fixed their rights to coverage as of the time they retired." Della Rocco, supra, 252

23

A.D.2d at 84.

Similarly, the Second Circuit has held that contract language covering retiree health insurance can give rise to a vested, lifetime right, depending on the factual record of the parties' intent, and concluded that: "It is enough to point to written language capable of reasonably being interpreted as creating a promise on the part of the employer to vest the recipients' benefits." American Federation of Grain Millers 116 F.3d at 980. Accordingly, the Second Circuit's view is that retiree health insurance can be a vested, lifetime right if the parties intended it to be so. As stated in Meyers v. City of Schenectady, "There is no surer way to find out what parties meant than to see what they have done." 244 A.D.2d at 847. The Meyers court further notes, "We agree that the City's own 19-year practice of continuing to provide fully paid health insurance to plaintiffs' class ... constitutes very substantial evidence that the provisions in question were intended to provide benefits to retirees for the entire period of their retirement. Clearly, one of the more important aids in the interpretation of a contract is the construction placed upon it by the contracting parties." Id.

Here, the evidence shows the parties' intent was to guarantee a vested, lifetime right to a set percentage rate of contributions to premiums (10% contributions to premiums for individual coverage and 25% for family coverage) for former State employees who were in the RRSU and Court units and covered by the RRSU and Court Unit agreements while employed and who retired between January 1, 1983 and October 1, 2011. This evidence includes the language and negotiating history of the RRSU and Court Unit contracts from 1983 to the present, the language and legislative history of Chapter 14 of the Laws of 1983, and the unequivocal, long-standing past practice regarding the implementation and application of the agreements from 1983 to the present.

24

The State cites <u>Aeneas McDonald PBA v. City of Geneva</u>, 92 N.Y.2d 326 (1998), in defense of plaintiffs' breach-of-contract claim, which, contrary to the State's claims, supports the vested rights of the retirees herein.  The contract in the <u>Aeneas McDonald</u> case was completely silent on the subject of retiree health insurance, unlike the contracts at issue herein.  See <u>Aeneas McDonald</u>, 92 N.Y.2d at 333.  Where a contract does exist, courts may "look to the past practice of the parties to give definition and meaning to the language in an agreement, including a collective bargaining agreement, which is ambiguous."  <u>Id.</u>  Therefore, <u>Aeneas McDonald</u> supports plaintiffs' claim that past practice can be relied upon to clarify the meaning of the contract language, and the State's reliance on <u>Aeneas McDonald</u> is entirely misplaced.  Moreover, retirees do not need to point to "unambiguous language" of vesting in a collective bargaining agreement to support a claim of vesting.  <u>American Federation of Grain Millers</u>, 116 F.3d at 980; <u>see also</u>, <u>Schonholz v. Long Island Jewish Medical Center</u>, 87 F.3d 72 (2nd Cir. 1996), <u>Joyce v. Curtiss-Wright Corporation</u>, 171 F.3d 130 (2nd Cir. 1999).

Defendants also cite <u>Lippman, et al. v. Bd. of Educ. of Sewanhaka Cent. High Sch. Dist., et al.</u>, 66 N.Y.2d 313 (1985), for the proposition that the Civil Service Law creates no contractual right to health insurance benefits for retirees.  See <u>Def. Mtn. to Dismiss</u>, pp.25-27.  In <u>Lippman</u>, the court analyzes Civil Service Law, §167 within the context of Article V, §7 of the State Constitution, which expressly states that retirement benefits are contractual in nature.  See <u>Lippman</u>, 66 N.Y.2d 313, 315-317.  Here, the court determined that there was no contract, express or implied between the school district and retired employees to maintain the same contribution rates for health insurance premiums.  See <u>id.</u> at 315.  <u>Lippman</u> further notes that if more than an incidental relationship to the retirement

25

system is found, an employee benefit will be held to be protected by the Constitution. See id. at 317.

The facts of this case are distinguishable from those in Lippman. Here, for example, the RRSU Agreement clearly addresses the issue of retiree health insurance in Article 9. See Compl. at ¶ 52. Furthermore, Article 9 of the RRSU Agreement references "lifetime" benefits affecting retired members' health insurance premiums, which could give rise to a reasonable inference to a vested right in those benefits. See id. In addition, from 1983 to October 1, 2011, employees who retire under the RRSU and Court Unit contracts received the same health insurance contribution rates as bargaining unit members under the agreement in effect at the time of their retirement, giving rise to an implied contract. See Compl. at ¶ 56. Clearly, based on the facts of this case, unlike in Lippman, more than an incidental relationship can be found to bring the retirees' health insurance benefits within the protection of Article V, §7.

      B.     The Facts Establish That the State Breached Plaintiffs' Vested Contract Rights.

As previously noted, Article 9 of the RRSU Agreement sets forth the health insurance premium rates that the State has agreed to contribute on behalf of current members and retirees. The language has been essentially unchanged from 1983 to 2011. The relevant, essentially unchanged language states, "The State agrees to continue to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage . . . provided under the Empire Plan." In addition, §9.2(n) provides employees with the option of applying 100% of the value of their sick leave credit to defray the cost of their monthly contribution premium "during their own lifetime." Section 9.2(n) further authorizes the State to make prospective changes only to the percentage credit available to future retirees. See Compl. at ¶ 52.

26

Thus, the State erroneously argues that plaintiffs have not directed the Court to contractual language which may be interpreted as granting vested, lifetime rights to an unchanging percentage rate of premium contributions. See *Def. Mtn. to Dismiss*, pp. 21-22. As previously noted, Article 9 of the RRSU Agreement contains such language. This contract language, the parties' bargaining history and the Legislative history of Chapter 14 of the Laws of 1983 indicating that changes in health insurance benefits should only be applied prospectively raise questions of fact that cannot be decided on a motion to dismiss.

## POINT IV

### DEFENDANTS HAVE UNCONSTITUTIONALLY IMPAIRED PLAINTIFFS' CONTRACTS

By passing Chapter 491 of the Laws of 2011, defendants have unconstitutionally impaired the contracts that locked-in the percentage contribution rates for retirees for the life of each retiree. The Contract Clause of the United States Constitution provides in relevant part, "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." Article I, § 10, cl. 1. In United States Trust Co. v. New Jersey, 431 U.S. 1, 25-26 (1977), the U.S. Supreme Court set forth the test to establish a violation of the Contract Clause --- first, the impairment of the contract must be "substantial" and, secondly, the impairment of the contract must be shown not to be "reasonable and necessary" for the State to achieve "an important public purpose." Here, the record shows that there is a "substantial" impairment of the retiree health insurance provisions of the contracts, and the impairment is not reasonable and necessary to accomplish an important public purpose.

27

A.      The Contract Impairments Are "Substantial."

Denying the plaintiffs-retirees' rights to the contractually guaranteed contribution rates for retiree health insurance is clearly a substantial impairment. The Second Circuit has held that the substantiality of contract impairment may be determined by examining "the extent to which reasonable expectations under the contract have been disrupted." Sanitation & Recycling Indus. v. City of New York, 107 F.3d 985, 993 (2d Cir. 1997). Here, the retirees had well-established expectation that this longstanding benefit would continue.    When the Union negotiated the right of its members to pay the 10/25 percentage contribution rate, it necessarily included those members who would ultimately receive the same in retirement. It is the nature of negotiations that each party gives up something to get something else. For the RRSU and Court Unit to keep the 10/25 percentage contribution rate, the union by necessity had to sacrifice other benefits. Accordingly, as the courts have held, when an employer unilaterally takes away a bargained-for right that is obtained through union contract negotiations, it is a "substantial" impairment.

B.      The Means Are Not "Reasonable and Necessary To Achieve an
        Important Public Purpose."_____

The Supreme Court has mandated that the impairment of a contract is constitutional only if it is "reasonable and necessary" for a governmental body to achieve "an important public purpose." United States Trust Co., 431 U.S. at 25-26 (1977). In Association of Surrogates v. State, 940 F.2d at 766, 774 (2d Cir. 1991), the Second Circuit held that, although the alternatives to impairing contracts may not be "popular among politician-legislatures, [] that is precisely the reason that the contract clause exists." And as stated in Opinion of Justices, 135 N.H. 625, at 634 (1992), "the State cannot resort to contract violations to solve its fiscal problems." Id. Where a governmental body attempts

28

to impair its own contracts, the Supreme Court requires particularly careful consideration, because, as the Court cautions in United States Trust Co., supra, 431 U.S. at 30-31, the governmental body may be tempted to act based on sheer "self-interest." See also, Allied Structural Steel Co v. Spannaus, 438 U.S. 234 (1978); Surrogates, 940 F.2d 766, 774; Condell, supra, 983 F.2d 415.

Here, the State gave only a vague justification for impairing the retirees' contract rights, citing to "extraordinary fiscal challenges." *Def. Mtn. to Dismiss*, p. 30. No "emergency" had been declared and there had been no specific findings as to the reasons for impairing these contracts. If saving money to reduce a budget deficit was a legitimate basis for a governmental body to violate its contractual obligations, no government contracts would ever be safe. For this very reason, it has been held that deference by the courts in such situations is inappropriate, because it would give a government too much leeway to "find a use for extra money, especially when taxes do not have to be raised." United States Trust Co., supra, 431 U.S. at 30-31. The Contract Clause "exists as a constitutional check on state legislation" for just this reason. Allied Structural Steel Co. v. Spannaus, supra, 438 U.S. at 245. It has further been held that, as here, "[b]road reference to an economic problem does not speak to the policy consideration and tailoring that is required to pass scrutiny under the Plaintiffs' Contract Clause challenge. Defendants cannot rest such a substantial impairment of its contracts on such a minute basis." Donohue, et. al. v. Paterson, et. al., 715 F. Supp. 2d 306 (N.D.N.Y. 2010).

In the instant case, there is no careful plan to deal with an economic disaster; rather, for politically expedient reasons, the defendants are attempting to avoid its contractual obligations so that the State can reduce its budget deficit. Applying the relevant case law and principles, defendants

29

clearly are not impairing these contracts through reasonable and necessary means for an important public purpose as defendants only justification for the contract impairment is the generalized desire to lessen the State budget deficit. See Compl. at ¶¶ 110-112.

Plaintiffs Brown, Wilthsire, Galloway, Hardaway, Bouyea and Schwartz and all others similarly situated were employees who rendered years of service in exchange for compensation including a fixed and vested right to receive certain health insurance benefits upon their retirement. Plaintiffs had a reasonable expectation to receive vested health insurance benefits pursuant to the collective bargaining agreements and the statutory provisions of Civil Service Law §167 in effect at the time of their retirement. See, e.g., Sanitation & Recycling Indus., 107 F.3d 985.

**CONCLUSION**

Based on the foregoing, defendants' motion to dismiss must be denied.

Dated: New York, New York
      April 18, 2012

Respectfully submitted,

MARY J. O'CONNELL
General Counsel
District Council 37, AFSCME, AFL-CIO
Attorney for Plaintiffs
125 Barclay Street, 5th Floor
New York, New York 10007
Tel. (212) 815-1450
Fax: (212) 815-1440

By: /s/Erica Gray-Nelson
      Erica C. Gray-Nelson, Of Counsel
      Bar Roll No.: 516294
      egray-nelson@dc37.net

TO:    Charles J. Quackenbush, Esq. (via ECF)

30

# Faccio (N.D.N.Y.)

*2011 U.S. Dist. LEXIS 3383, \**

DANIEL FACCIO; FACCIO FAMILY, Plaintiffs, -against- U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT; MISS MARY, Defendants.

1:10-CV-0715 (LEK/RFT)

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

2011 U.S. Dist. LEXIS 3383

January 13, 2011, Decided
January 13, 2011, Filed

**SUBSEQUENT HISTORY:** Affirmed by Faccio v. United States HUD, 2011 U.S. App. LEXIS 19774 (2d Cir. N.Y., Sept. 28, 2011)

**CORE TERMS:** retaliation, forma pauperis, matter jurisdiction, citations omitted, factual allegations, legal conclusions, suspect class, jurisdictional, discriminated, plausibility, conclusory, quotation, favorable, sovereign, immune, common law, failure to investigate, discriminatory, electrical, apartments, hardships, notice, faulty, spoke

**COUNSEL:  [\*1]** Daniel Faccio, Plaintiff, Pro se, Kingston, NY.

Faccio Family, Plaintiff, Pro se, Kingston, NY.

For U.S. Department of Housing and Urban Development, Buffalo Office, Defendant: Barbara D. Cottrell, Office of United States Attorney - Albany, Albany, NY.

**JUDGES:** Lawrence E. Kahn, U.S. District Judge.

**OPINION BY:** Lawrence E. Kahn

**OPINION**

**DECISION AND ORDER**

**I. INTRODUCTION**

On June 18, 2010, Daniel Faccio and the Faccio family (collectively, "Plaintiffs") filed a document putting the United States Department of Housing and Urban Development ("HUD") and Miss Mary of HUD's Buffalo office on notice of their "intention to file a claim . . . for damages, declaratory relief, and injunctive relief." Dkt. No. 1. On the same day, Plaintiffs moved for leave to proceed *in forma pauperis*. Dkt. No. 2. On June 29, 2010, Magistrate Judge David R. Homer issued an Order in which he deemed the June 18, 2010 notice a *pro se* complaint and granted Plaintiffs *in forma pauperis* status. Dkt. No. 3.

Presently before the Court is Defendants' Motion to dismiss. Dkt. No. 11. For the following reasons, that Motion is granted.

**II. BACKGROUND**

Plaintiffs' Complaint alleges that in June of 2009, Daniel Faccio called HUD's Buffalo office and spoke with Miss **[*2]** Mary to ask for HUD's help in investigating allegedly discriminatory and retaliatory actions against his family that were perpetrated by the Glens Falls Housing Authority ("GFHA"). Compl. (Dkt. No. 1). According the Complaint, as a result of GFHA's actions, Plaintiffs are living in unsuitable and dangerous conditions. Plaintiffs state that they have had to live in two non-section 8 approved apartments that were too small, covered in dangerous black mold, and equipped with faulty electrical systems. Id. Plaintiffs claim to have incurred $6000 in expenses associated with faulty electrical wiring, experienced continued exposure to the mold, and been forced to call inspectors, and relocate apartments. Id. Plaintiffs assert that all of these conditions result from GFHA's discrimination and retaliation against them. Id.

The gravamen of the Complaint is that Miss Mary and HUD were "supposed to help . . . but instead . . . failed to help, and because of this [Plaintiffs] are still being discriminated against and [their] shelter standards have not improved at all." Id. Plaintiffs claim that the various hardships that they have endured may not have occurred had HUD investigated their complaints **[*3]** against GFHA. Id. Moreover, Plaintiffs assert that HUD's failure to investigate is the result of discrimination by HUD against the Faccio family and constitutes retaliation. Id. They allege that HUD and Miss Mary's conduct was in violation constitutional, federal, state, and common law. Id.

On September 13, 2010, Defendants filed the instant Motion to dismiss (Dkt. No. 11) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs have not opposed the Motion.

## III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may assert as a defense a court's lack of subject matter jurisdiction over the action. FED. R. CIV. P. 12(b)(1). In the face of such a jurisdictional challenge, a plaintiff "bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists." APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted); Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). "Accordingly, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) **[*4]** (citations, quotations, and alterations omitted). However, to withstand a motion to dismiss under Rule 12(b)(1), a plaintiff need only make a *prima facie* showing of subject matter jurisdiction. Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507, (2d Cir. 1994).

In reviewing a motion seeking dismissal pursuant to Rule 12(b)(6), the Court must "accept all [factual] allegations in the complaint as true and draw all inferences in the light most favorable to" the non-moving party. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal,    U.S.    , 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Allegations which merely announce "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" "are not entitled to the assumption of truth" and are insufficient to defeat a motion to dismiss. Id. at 1949-50. Accordingly, the Court must "begin by identifying pleadings that . . . are no more than conclusions" and exclude these from consideration. Id. at 1950. As to any remaining well-pleaded **[*5]** factual allegations, the Court will "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." Id. The determination of whether a complaint states a plausible claim is "context specific" and "requires the reviewing court to draw on its judicial experience and common sense." Id.

Additionally, where a litigant proceeds *in forma pauperis*, the Court has an independent obligation to review the sufficiency of such litigant's complaint. See 28 U.S.C. § 1915(e)(2)(B) (2). Section 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) . . . the court **[*6]** shall dismiss the case at any time if the court determines that — . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

## IV. DISCUSSION

Applying the above standards, Plaintiffs' Complaint must be dismissed. First, Plaintiffs have alleged no facts supporting this Court's subject matter jurisdiction over their action. HUD is an entity of the United States government. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586, 61 S. Ct. 767, 85 L. Ed. 1058 (1941); Presidential Gardens Assocs. v. United States, 175 F.3d 132, 140 (2d Cir. 1999) (citing United States v. Mitchell, 463 U.S. 206, 212, 103 S. Ct. 2961, 77 L. Ed. 2d 580 (1983)). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that her claims fall within an applicable waiver." Makarova, 201 F.3d at 113 (citations omitted); Presidential Gardens Assocs., 175 F.3d 132. Here, Plaintiff has offered nothing to show such waiver.

Plaintiffs' Complaint must also be dismissed **[*7]** for failure to state a claim. While Plaintiffs allege violations of constitutional, federal, state, and common law, they provide no support for these claims. Plaintiffs allege only that a HUD representative, Miss Mary, spoke with Daniel Faccio, and that neither she nor HUD initiated an investigation of Plaintiffs' complaints of discrimination by GFHA. Plaintiffs then assert in a conclusory fashion, that the failure to investigate was itself discriminatory, a form of retaliation, and the possible cause of various hardships suffered. Compl.

To succeed on an equal protection claim, a plaintiff "must prove purposeful discrimination directed at an identifiable or suspect class." Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Plaintiffs have not identified with any suspect class and make no allegations that HUD or Miss Mary intentionally discriminated against them based on race, national origin, or gender. Rather, Plaintiffs' apparent basis for their discrimination and retaliation claims is simply HUD's failure to launch an investigation after Daniel Faccio complained about GFHA by telephone. This is insufficient to state a plausible claim of discrimination or **[*8]** retaliation. Compounding this deficiency, Plaintiffs fail to allege that HUD or Miss Mary was legally obligated to investigate such claims or was capable of providing the relief that they desired.

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 11) is **GRANTED**, and Plaintiffs' Complaint (Dkt. No. 1) is **DISMISSED**, and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

## IT IS SO ORDERED.

DATED: January 13, 2011

Albany, New York

/s/ Lawrence E. Kahn

Lawrence E. Kahn

U.S. District Judge

Service: **Get by LEXSEE®**
Citation: **2011 us dist lexis 3383**
View: Full
Date/Time: Tuesday, April 17, 2012 - 1:33 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
⊕ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
➊ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

In    About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# Faccio (2nd Cir.)

*442 Fed. Appx. 599, \*; 2011 U.S. App. LEXIS 19774, \*\**

Daniel Faccio, Faccio Family, Plaintiffs-Appellants, v. U.S. Department of Housing and Urban Development, Buffalo Office, Miss Mary, Defendants-Appellees.

11-378-cv

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

442 Fed. Appx. 599; 2011 U.S. App. LEXIS 19774

September 28, 2011, Decided

**NOTICE:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**PRIOR HISTORY:  [\*\*1]**
Appeal from a judgment of the United States District Court for the Northern District of New York (Kahn, J.).
Faccio v. United States HUD, 2011 U.S. Dist. LEXIS 3383 (N.D.N.Y, Jan. 13, 2011)

**CORE TERMS:** Fair Housing Act, general rule, pro se, reasonable inferences, failed to investigate, injustice, manifest

**COUNSEL:** Daniel Faccio, Pro se, Kingston, NY, for Plaintiff-Appellant Daniel Faccio.

Paula Ryan Conan, Assistant United States Attorney; Richard S. Hartunian, United States Attorney for the Northern District of New York; Syracuse, NY, for Defendant-Appellee U.S. Department of Housing and Urban Development.

**JUDGES:** PRESENT: PIERRE N. LEVAL, PETER W. HALL, RAYMOND J. LOHIER, JR., Circuit Judges.

**OPINION**

**[\*600]  SUMMARY ORDER**

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiff-Appellant Daniel Faccio, *pro se*, appeals the district court's judgment granting Defendant-Appellee U.S. Department of Housing and Urban Development's ("HUD's") motion to dismiss his complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

This Court reviews *de novo* the district court's dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), "construing the complaint liberally,  **[\*\*2]** accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

(2009). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Faccio failed to oppose the dismissal motion below. He now argues for the first time on appeal that HUD was not entitled to sovereign immunity and that his complaint stated a claim under the Fair Housing Act. The well-established rule is that a court of appeals will not consider an issue raised for the first time on appeal. *See Singleton v. Wulff*, 428 U.S. 106, 120-21, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976). Although we may, in our discretion, disregard the general rule when necessary to remedy manifest or obvious injustice, *see Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 527 (2d Cir. 1990), Faccio has not demonstrated that review of these issues **[**3]** is necessary to remedy manifest injustice and, in any event, his arguments are meritless.

The district court properly determined that Faccio's complaint failed to state a claim. Contrary to Faccio's argument on appeal, his complaint did not suggest that he had a plausible claim against HUD under the Fair Housing Act. No right of action lies against HUD for its failure to investigate a charge of discrimination under the Fair Housing Act. *See Marinoff v. U.S. Dep't of Hous. & Urban Dev.*, 78 F.3d 64, 65 (2d Cir. 1996) (per curiam). Nor did Faccio's allegations suggest that he had any plausible claim against "Miss Mary," the individual HUD employee whom he alleged had failed to investigate his complaint of discrimination. To the extent that Faccio's invocation of 42 U.S.C. § 1983 could be construed as an attempt to assert a *Bivens* claim against "Miss Mary," his allegation that she failed to investigate his discrimination complaint did not suggest a violation of any of his constitutional rights cognizable as a *Bivens* claim.

Although Faccio purported to assert claims on behalf of unidentified members of his family, he is without power to do so because, as a non-attorney *pro se* litigant, he **[**4]** may not represent anyone but himself, *see Berrios v. New York City Housing Authority*, 564 F.3d 130, 132-33 (2d Cir. 2009), and there is no indication in the record, other than by Faccio's assertion, that his family members in any way authorized the bringing of suit in their names. Thus, the dismissal here will not have any *res judicata* effect on Faccio's individual family members because they were never made parties to the action. *See EDP Med. Computer Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007).

**[*601]** We have considered all of Faccio's arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

Service: **Get by LEXSEE®**
Citation: **2011 U.S. App. LEXIS 19774**
View: Full
Date/Time: Tuesday, April 17, 2012 - 1:34 PM EDT

\* Signal Legend:
● - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
(A) - Citing Refs. With Analysis Available
(i) - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

In

About LexisNexis  | Privacy Policy  | Terms & Conditions  | Contact Us
Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# Casale

2005 U.S. Dist. LEXIS 31559, *

NICHOLAS CASALE, Plaintiff, -against- METROPOLITAN TRANSPORTATION AUTHORITY, PETER
S. KALIKOW, Chairman, METROPOLITAN TRANSPORTATION AUTHORITY, KATHERINE N. LAPP,
Executive Director, METROPOLITAN TRANSPORTATION AUTHORITY, MARTIN SANSVERIE,
Inspector General, METROPOLITAN TRANSPORTATION AUTHORITY, and GARY DELLAVERSON,
Director, Labor Relations, METROPOLITAN TRANSPORTATION AUTHORITY, Defendants.

05 Civ. 4232 (MBM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 31559

December 5, 2005, Decided
December 6, 2005, Filed

**SUBSEQUENT HISTORY:** As Amended December 16, 2005.
Corrected by Casale v. Metro. Transp. Auth., 2005 U.S. Dist. LEXIS 34637 (S.D.N.Y., Dec. 16, 2005)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff former city employee sued defendants, a city transportation authority and its executives, based on his termination. The initial complaint was a special proceeding brought in state court under N.Y. C.P.L.R. art. 78. He amended the petition by adding a claim under 42 U.S.C.S. § 1983. Defendants removed the case to federal court. The employee moved to remand and for attorney fees and costs. Defendants contested the motion.

**OVERVIEW:** The employee's initial Article 78 proceeding alleged that his termination was arbitrary and capricious and sought a name-clearing hearing to vindicate his Fourteenth Amendment right to show the falsity of defendants' charges. After the employee amended his complaint by adding a 42 U.S.C.S. § 1983 claim for monetary damages, defendants removed the suit. The employee moved to remand claiming that removal was untimely because it was not filed within 30 days of the original petition. The court granted the motion. Contrary to defendants' contention, Article 78 proceedings were civil actions within original federal question jurisdiction and were removable. The original petition triggered the 28 U.S.C.S. § 1446(b) 30-day removal period. Although it commenced a special proceeding, the original complaint stated that the employee's name-clearing request hinged on a determination that his Fourteenth Amendment rights had been violated. Thus, the amended complaint did not drastically change the original complaint such that it revived defendants' right to remove the suit. Additionally, the court denied the employee's request for attorney fees and costs as it would not deter improper removal.

**OUTCOME:** The court granted the employee's motion for remand, but denied his request for attorney fees, costs, and disbursements.

**CORE TERMS:** removal, original petition, federal question, notice, removable, civil action, removability, initial pleading, ascertain, name-clearing, intelligently, revival, state cause of action, predicate, time limit, special proceeding, attorney fees, administrative action, federal law, original jurisdiction, right of removal, revive, state law, arbitrary and capricious, right of action, facts necessary, money damages, federal cause of action, jurisdictional,

disbursements

## LEXISNEXIS(R) HEADNOTES

Civil Procedure > Remedies > Writs
**HN1** N.Y. C.P.L.R. art.78 establishes a state mechanism for judicial review of administrative action that would have been provided earlier through writs of certiorari to review, mandamus, and prohibition. N.Y. C.P.L.R. § 7801 et seq. (1994 & Supp. 2005).

Civil Procedure > Removal > Basis
**HN2** See 28 U.S.C. § 1441(a).

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions
**HN3** Original federal question jurisdiction exists over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C.S. § 1331. The statute grants jurisdiction not only where federal law creates a cause of action, but also where state law necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibility. The existence of a federal cause of action to enforce a federal predicate to a state cause of action is evidence relevant to, but not dispositive of, Congress's intent.

Civil Procedure > Removal > Proceedings > Time Limitations
**HN4** If an initial pleading is removable, the first paragraph of the federal statute governing procedure for removal establishes a 30-day time limit for filing a notice of removal. The second paragraph of the statute allows 30 days for filing a notice of removal in response to an amended pleading only if the initial pleading was not removable.

Civil Procedure > Removal > Proceedings > Time Limitations
**HN5** See 28 U.S.C.S. § 1446(b).

Civil Procedure > Removal > Proceedings > Time Limitations
**HN6** The United States Court of Appeals for the Second Circuit has held that the 30-day time period in the first paragraph of 28 U.S.C.S. § 1446(b) begins to run only when defendant is able to "intelligently ascertain" removability from the face of the initial pleading. A pleading must recite all the facts necessary to support removal, and defendants need not embark on an investigation to discover jurisdictional facts outside the four corners of the pleading.

Civil Procedure > Removal > Proceedings > Time Limitations
**HN7** Even when a defendant fails to remove within 30 days of a removable initial pleading as required by the first paragraph of 28 U.S.C.S. § 1446(b), the judge-made "revival doctrine" may prevent remand. This doctrine revives a defendant's right of removal if an amended pleading changes the nature of a case so substantially that it is as if a new action has been brought. The right to revive must be determined in each case with reference to its purposes and those of the 30-day limitation on removal to which it is an exception, and against a background of general considerations relating to the proper allocation of decision-making responsibility between state and federal courts.

Civil Procedure > Remedies > Writs
**HN8** Article 78 proceedings allow petitioners to seek relief previously obtainable through writs of certiorari to review, mandamus, and prohibition. N.Y. C.P.L.R. § 7801. A

court presiding over an Article 78 proceeding may consider only a limited range of questions, but one of these questions is whether the body or officer failed to perform a duty enjoined upon it by law. N.Y. C.P.L.R. § 7803(1). Claims based on the federal Constitution are routine in Article 78 proceedings.

Civil Procedure > Removal > Basis > Federal Questions

*HN9* The "intelligently ascertain" test demands that an initial pleading provide the facts necessary to support removal. When federal question jurisdiction is at issue, this requirement is met if the initial pleading contains a claim that explicitly and necessarily relies on federal law.

Civil Procedure > Removal > Proceedings > Time Limitations

*HN10* The judge-made revival doctrine for removal should be applied in an exceedingly narrow scope.

Civil Procedure > Removal > Proceedings > Time Limitations

*HN11* The revival doctrine resurrects a defendant's right of removal when the time bar would not serve the purposes of the limitation in any significant way.

Civil Procedure > Removal > Postremoval Remands
Civil Procedure > Remedies > Costs & Attorney Fees

*HN12* An order remanding a case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. 28 U.S.C.S. § 1447(c). The purpose of this statute is to prevent the abuse, unnecessary expense and harassment suffered by a plaintiff as a result of improper removal. Bad faith is not a prerequisite to requiring payment. A decision to award costs and attorney fees demands a test of overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties.

**COUNSEL: [*1]** NORMAN SIEGEL, ESQ., (Attorney for plaintiff), New York, NY.

STEVEN J. HYMAN, ESQ., ALAN E. SASH, ESQ., (Attorneys for plaintiff), McLaughlin & Stern LLP, New York, NY.

NEIL H. ABRAMSON, ESQ., PETER P. RAHBAR, ESQ., DYLAN S. POLLACK, ESQ., (Attorneys for defendants Metropolitan Transportation Authority, Peter S. Kalikow, Katherine N. Lapp, and Gary J. Dellaverson), Proskauer Rose LLP, New York, NY.

LOUIS PECHMAN, ESQ., (Attorney for defendant Matthew D. Sansverie), Berke-Weiss & Pechman LLP, New York, NY.

**JUDGES:** MICHAEL B. MUKASEY, U.S.D.J.

**OPINION BY:** Michael B. Mukasey

**OPINION**

AMENDED OPINION AND ORDER

MICHAEL B. MUKASEY, U.S.D.J.

Defendants Metropolitan Transportation Authority ("MTA") and persons sued as MTA executives [1] removed this case from New York State Supreme Court, New York County, where plaintiff

Nicholas Casale had initiated a special proceeding under Article 78 of New York's Civil Practice Law and Rules [2] and then amended his petition to create a hybrid special proceeding and action by adding a claim under 42 U.S.C. § 1983. In the initial verified petition ("original petition"), plaintiff alleged that the decision to terminate his [*2] employment as Deputy Director of Security for the MTA was arbitrary and capricious, in bad faith, and contrary to law, and that defamatory information disseminated with the stated reasons for his termination violated his Fourteenth Amendment right to due process; he sought reinstatement, back pay, and a name-clearing hearing. (Verified Pet. (Pet.), PP 49, 56) Plaintiff's amended verified petition/complaint ("amended petition") includes an additional claim for damages under § 1983 predicated on the same alleged due process violation. (Am. Verified Pet./Compl. (Am. Pet.), P 58) Plaintiff now moves to remand the case to state court on the ground that defendants' failure to remove within 30 days of receiving the original petition requires application of the time bar imposed by 28 U.S.C. § 1446(b). Plaintiff also seeks attorney fees, costs, and disbursements pursuant to 28 U.S.C. § 1447(c) for improper removal. For the following reasons, plaintiff's motion for remand is granted, but the request for attorney fees, costs, and disbursements is denied.

## FOOTNOTES

1 Among those sued was Matthew D. Sansverie, incorrectly referred to in the caption as Martin Sansverie. [*3]

2 HN1 Article 78 of New York's Civil Practice Law and Rules establishes a state mechanism for judicial review of administrative action that would have been provided earlier through writs of certiorari to review, mandamus, and prohibition. N.Y. C.P.L.R. § 7801 et seq. (McKinney 1994 & Supp. 2005).

I.

The underlying dispute in this case began when plaintiff was fired from his position as Deputy Director of Security for the MTA on May 9, 2003. (Id. P 2) However, plaintiff's motion for remand does not relate to the circumstances leading to his dismissal, but only to the events thereafter.

On or about September 8, 2003, plaintiff commenced an Article 78 proceeding against defendants in New York State Supreme Court, New York County. (Affirmation of Steven J. Hyman (Hyman Aff.), P 4) Plaintiff's notice of petition stated that he would move the Court for "a judgment pursuant to CPLR Article 78, CPLR §§ 7803 and 7804." (Notice of Pet.) The original petition asserted two claims. The first contained the following two paragraphs:

> Petitioner is entitled to a name-clearing hearing [*4] to vindicate his Fourteenth Amendment right not to be deprived of his liberty interest in order to demonstrate the falsity of the stigmatizing charges made by respondents that "might seriously damage his standing and associations in the community" or that "might impose on him a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities."

> Respondents have otherwise violated Petitioner's rights under the Fourteenth Amendment of the Constitution of the United States. (Pet., PP 49, 50)

The second claim alleged that "petitioner's termination was arbitrary and capricious and otherwise in bad faith in that it was without legitimate basis in fact or law," and so he should be reinstated and awarded back pay. (Id. PP 56-57)

On September 15, 2004, defendants (then respondents) received a notice of motion and a supporting affirmation that disclosed plaintiff's (then petitioner's) intent to move for permission

to amend the original petition. (Notice of Removal, P 1) Annexed to the notice and affirmation was a copy of the amended petition. (*Id.* P 2) The affirmation stated that, in response to a recent Second Circuit decision holding that **[*5]** compensatory damages were available in § 1983 actions where the defendant had failed to provide a name-clearing hearing, plaintiff wished to add a § 1983 claim and seek money damages in addition to other available relief. (Hyman Aff., PP 6-9 (citing *Patterson* v. *City of Utica*, 370 F.3d 322 (2d Cir. 2004)))

At a State Supreme Court appearance on December 21, 2004, counsel for defendants MTA, Peter Kalikow, Katherine Lapp, and Gary Dellaverson said that they did not oppose the motion to amend, but could not stipulate to the amendment for fear that they would waive their right to removal should they do so. (Decl. of Neil H. Abramson ("Abramson Decl.), PP 4-5) Although the parties submitted a proposed order granting the amendment as unopposed, the Court instead ruled on the motion to amend in a decision and order dated April 7, 2004. (*Id.* PP 5-7)

In addition to granting the motion to amend, the same decision and order addressed the substantive issues of the case. First, the Court held that plaintiff had established a "stigma plus" due process violation and was therefore entitled to a name-clearing hearing. (Notice of Removal, Ex. 2, 10-11) Second, the Court ordered **[*6]** an evidentiary hearing on whether the MTA's decision to fire plaintiff was arbitrary and capricious. (*Id.* at 12-14) The Court also determined that the Office of Inspector General is not distinct from the MTA, and therefore denied a motion to dismiss by defendant Sansverie. (*Id.* at 14) The decision and order was filed as a "non-final disposition" on April 12, 2005, and a notice of entry was served on defendants on April 15, 2005. (Abramson Decl., P 7)

On April 22, 2005, in a conference before the State Supreme Court, plaintiff's attorneys stated that plaintiff intended to proceed with the amendment, and defendants' counsel advised the Court that they would be removing the case to federal court. (Notice of Removal, P 4) The Court told the parties that it would not move forward until the question of removal had been resolved, and asked counsel for defendants to indicate in the notice of removal that the Court was prepared to proceed expeditiously pursuant to its decision and order. (*Id.*) Plaintiff served the amended petition on defendants that same day through a supplemental summons/notice of petition. (Abramson Decl., P 7)

The amended pleading contains three claims. The first **[*7]** two are identical to the claims in the original petition described above. (Am. Pet., PP 44-56) The third asserts that "respondents deprived Mr. Casale of a liberty interest without due process in violation of the Fourteenth Amendment of the Constitution of the United States and 42 U.S.C. § 1983, by making stigmatizing statements about him when terminating him from the MTA and failing to give him a name-clearing hearing." (*Id.* P 58) In addition to the relief sought in the original petition, the amended petition seeks a money judgment for lost wages, damage to reputation, standing, and business activities, and physical and emotional distress resulting from defendants' failure to provide a name-clearing hearing. (*Id.* PP 4, 60-61)

On April 28, 2005, defendants filed a notice of removal in this court pursuant to 28 U.S.C. §§ 1441 and 1446. The notice states that the first and third claims in the amended petition fall within this court's federal question jurisdiction under 28 U.S.C. § 1331, and that supplemental jurisdiction under 28 U.S.C. § 1367 is appropriate with respect to any purely **[*8]** state claims within the pleading. (Notice of Removal, PP 6-9)

II.

Plaintiff moves to remand this case to New York State Supreme Court, New York County, on the ground that defendants' notice of removal was untimely because it was not filed within 30 days of receipt of the original petition.

A. *30-day Time Limit for Removal*

Under the general removal statute, **HN2** "except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed." 28 U.S.C. § 1441(a) (2000).**HN3** Original federal question jurisdiction exists over "all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* § 1331. Recently, the Supreme Court has elaborated upon the scope of the "arising under" language in the federal question statute. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.,* 545 U.S. 308, 125 S. Ct. 2363, 2366-68, 162 L. Ed. 2d 257 (2005). The statute grants jurisdiction not only where federal law creates a cause of action, but also where state law "necessarily raises a stated federal issue, actually disputed and substantial, **[*9]** which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibility." *Id.* at 2368. The existence of a federal cause of action to enforce a federal predicate to a state cause of action is "evidence relevant to, but not dispositive of," Congress's intent. *Id.* at 2370.

Defendants' challenges to the removability of plaintiff's original petition -- a prerequisite for application of the time bar as described below -- present this court with two questions. First, are claims brought within Article 78 proceedings outside the realm of original federal question jurisdiction and therefore precluded from removal? Second, does the Supreme Court's holding in *Grable* cast any doubt on jurisdiction where the federal predicate in a state cause of action rests on a constitutional right enforceable through § 1983 but not through a federal cause of action created by the constitutional amendment in which the right is found?

**HN4** If an initial pleading is removable, the first paragraph of the federal statute governing procedure for removal establishes a 30-day time limit for filing a notice of removal. **[*10]** The statute mandates that **HN5** "[the notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446 (b). The second paragraph of the statute allows 30 days for filing a notice of removal in response to an amended pleading only if the initial pleading was not removable. This part of the statute provides that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.*

**HN6** The Second Circuit has held that the 30-day time period in the first paragraph of 28 U.S.C. § 1446(b) begins to run only when the defendant is able to "intelligently ascertain" removability from the face of the initial pleading. *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 205-06 (2d Cir. 2001). The pleading must recite **[*11]** all the facts necessary to support removal, and defendants need not embark on an investigation to discover jurisdictional facts outside the four corners of the pleading. *Id.* at 206; *see also Harris v. Bankers Life & Cas. Co.,* 425 F.3d 689, 694-98 (9th Cir. 2005). The purpose of limiting application of the time bar to such circumstances is to spare the federal courts superfluous litigation arising from unwarranted removal. *Soto v. Apple Towing,* 111 F. Supp. 2d 222, 225 (E.D.N.Y. 2000) (quoting *E.W. Howell Co. v. Underwriters Lab., Inc.,* 596 F. Supp. 1517, 1520 (E.D.N.Y. 1984)); *see also Harris,* 425 F.3d at 698 (stating that such an interpretation of the statute "guards against premature and protective removals and minimizes the potential for a cottage industry of removal litigation").

Case law concerning the "intelligently ascertain" test tends to involve initial pleadings that fail to include all of the details necessary to determine diversity jurisdiction, *e.g., Whitaker,* 261 F.3d at 206; *Harris,* 425 F.3d at 695-96, or that are ambiguous as to whether **[*12]** the plaintiff is asserting purely state claims, *e.g., Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 524-25 (5th Cir. 1994); *Soto,* 111 F. Supp. 2d at 224. This court confronts a different problem. Plaintiff's original petition initiated an Article 78 proceeding through a state cause of action predicated on the violation of a federal constitutional right. The facts necessary to support removal were all present. However, as discussed below, the law regarding the removability of

claims brought in Article 78 proceedings remains disputed, and the law governing whether a federal predicate to a state cause of action creates federal question jurisdiction demands application of the recently articulated *Grable* test, the consequences of which are not yet clear. The question, then, is how, if at all, these legal ambiguities -- generated by a factually unambiguous initial pleading -- bear upon the "intelligently ascertain" analysis.

## B. The "Revival Doctrine"

*HN7* Even when a defendant fails to remove within 30 days of a removable initial pleading as required by the first paragraph of 28 U.S.C. § 1446(b), the judge-made "revival **[*13]** doctrine" may prevent remand. This doctrine revives a defendant's right of removal if an amended pleading changes the nature of a case so substantially that it is as if a new action has been brought. *See Johnson* v. *Heublein Inc.,* 227 F.3d 236, 241 (5th Cir. 2000); *Wilson* v. *Intercollegiate (Big Ten) Conference,* 668 F.2d 962, 965-66 (7th Cir.), *cert. denied,* 459 U.S. 831, 103 S. Ct. 70, 74 L. Ed. 2d 70 (1982); *Gerety* v. *Inland Newspaper Representatives, Inc.,* 152 F. Supp. 31, 32-33 (S.D.N.Y 1957). The Second Circuit has not had occasion to comment on the doctrine's application, but the Seventh Circuit, noting candidly that "it is idle to pretend that" any formulation of the doctrine is "self-defining," has provided a comprehensive analytical framework. *Wilson,* 668 F.2d at 965. "The right to revive must be determined in each case with reference to its purposes and those of the 30-day limitation on removal to which it is an exception, and against a background of general considerations relating to the proper allocation of decision-making responsibility between state and federal courts." *Id.* This court must address such **[*14]** "purposes" and "general considerations" in relation to plaintiff's § 1983 claim -- the only addition to the original petition -- in order to determine if the amended petition revives defendants' right of removal.

## III.

### A. The Original Petition and the 30-Day Time Limit

#### 1. Removability of Article 78 Proceedings

Defendants argue that, because the original petition initiated only an Article 78 proceeding, the claims in that petition were not within the original jurisdiction of the lower federal courts and were thus not removable under the general removal statute. Defendants specify no statutory ground for this argument, but base their contention on a single district court case and New York law itself. Neither of these sources presents a convincing reason for holding that the normal rules of federal question jurisdiction do not apply to Article 78 proceedings. The buried root of defendants' argument seems to lie in the notion that an Article 78 proceeding falls outside the "civil action" language of the federal question statute and the general removal statute. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions **[*15]** arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1441(a) ("Any civil action . . . may be removed . . . ."). Yet Supreme Court and Second Circuit precedent suggests the contrary.

Defendants cite *Kelly* v. *City of Mount Vernon,* 344 F. Supp. 395 (S.D.N.Y 2004), and Article 78 itself, N.Y. C.P.L.R. § 7804 (McKinney 1994), in support of their position. *Kelly,* without citation, pronounced that "this court has no original jurisdiction over an Article 78 claim." 344 F. Supp. 2d at 406. Despite this broadly worded repudiation of jurisdiction, however, *Kelly* is easily distinguished from this case on its facts. The claim at issue in *Kelly* had no federal element whatsoever; like plaintiff's second claim, it challenged an administrative decision as lacking substantial evidentiary basis and as arbitrary and capricious. *Id.* Yet the universe of claims brought in Article 78 proceedings does not stop with those arising from lack of evidence or lack of reasoned basis. *HN8* Article 78 proceedings allow petitioners to seek relief previously obtainable through writs of certiorari **[*16]** to review, mandamus, and prohibition. N.Y. C.P.L.R. § 7801. A court presiding over an Article 78 proceeding may consider only a limited range of questions, but one of these questions is "whether the body or officer failed to perform

a duty enjoined upon it by law." *Id.* § 7803(1). Claims based on the federal Constitution are routine in Article 78 proceedings. *E.g.Swinton* v. *Safir,* 93 N.Y.2d 758, 762-764, 720 N.E.2d 89, 697 N.Y.S.2d 869 (1999) (deciding, based on federal case law but in an appeal from an Article 78 proceeding, whether the petitioner was entitled to a name-clearing hearing). It appears that plaintiff's first claim -- that he is "entitled to a name-clearing hearing to vindicate his Fourteenth Amendment right" -- invoked a state cause of action allowing vindication of a federal constitutional right. (Pet., PP 49) The broad language in *Kelly*takes no account of the possibility that a claim brought in an Article 78 proceeding, as here, may be predicated on a violation of federal rights. The quoted statement in *Kelly* is simply overbroad when applied here.

The language in Article 78 quoted by defendants is equally unhelpful to their **[*17]** position. State law may direct that "[a] proceeding under this article shall be brought in [state] supreme court," N.Y. C.P.L.R. § 7804, but this requirement has nothing to do with whether the proceeding falls within a federal jurisdictional statute. If such a directive could deprive federal courts of jurisdiction, state legislatures, not Congress, would control the power of the federal judiciary.

Although defendants do not explain why claims in an Article 78 proceeding could not lie within the original jurisdiction of the federal courts, they imply that an Article 78 proceeding is not a "civil action" within the meaning of 28 U.S.C. §§ 1331 and 1441(a). That reasoning was articulated in *Greenberg* v. *Veteran,* 710 F. Supp. 962 (S.D.N.Y.), *rev'd on other grounds* 889 F.2d 418 (2d Cir. 1989), where the District Court found that "the wisdom of a general rule permitting the removal of Article 78 proceedings" is "dubious." *Id.* at 972 n.10. Yet the *Greenberg* Court's eloquent dicta expounding on why an Article 78 proceeding is not a "civil action" under the general removal statute **[*18]** does not withstand the force of subsequent Supreme Court and Second Circuit decisions. The *Greenberg* Court concluded that the term "civil action" may encompass "appeals from state or municipal administrative action via writ of prohibition or mandamus." *Id.* at 970. However, that Court declared it "beyond cavil that a statutory appeal of administrative state action, whether or not it involves diverse parties or a federal question, may not be filed in federal court." *Id.* at 971. From this principle, the *Greenberg* Court concluded that it was unlikely "Congress intended the term 'civil action' under the removal statute to be so sponge-like as to allow its absorption of every conceivable type of proceeding involving appeal from state or municipal administrative action which touches upon a federal question." *Id.* The *Greenberg* Court's initial presumption has since lost its cogency, as has the outcome that Court deduced.

In *City of Chicago* v. *International College of Surgeons,* 522 U.S. 156, 118 S. Ct. 523, 139 L. Ed. 2d 525 (1997), the Supreme Court addressed whether "a case containing claims that local administrative action violates federal law, but also **[*19]** containing state law claims for on-the-record review of the administrative findings, is within the jurisdiction of federal courts." *Id.* at 163. In that case, the Court held that federal constitutional challenges to municipal administrative action brought under the Illinois Administrative Review Law were within the federal question jurisdiction of the district courts, and thus removable. *Id.* at 163-66. The Court recognized that these "federal constitutional claims were raised by way of a cause of action created by state law." *Id.* at 165. It found that this state law provenance made no difference with respect to whether the issues presented the "substantial question of federal law" necessary for federal question jurisdiction. *Id.* (quoting *Franchise Tax Bd. of Cal.* v. *Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 13, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)) (internal quotation mark omitted). Thus, the fundamental premise in *Greenberg* -- that it is "beyond cavil that a statutory appeal of administrative state action . . . may not be filed in federal court," 710 F. Supp. at 971 -- is not "beyond cavil" at all. Moreover, **[*20]** fear that allowing removal of Article 78 proceedings would threaten federalism is unfounded because, as the Supreme Court explained recently, the federal question inquiry itself precludes jurisdiction where adjudication of a federal issue within a state claim would "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc.,* 125 S. Ct. at 2368.

It is irrelevant that the particulars of an Article 78 proceeding might not track those of the Illinois Administrative Law. In *Freeman* v. *Burlington Broadcasters, Inc.,* 204 F.3d 311 (2d Cir. 2000), the Second Circuit applied the principles of *City of Chicago* when considering the removability of a case challenging an administrative decision in Vermont. *Id.* at 316. The Circuit made plain that technicalities of local procedure, such as what an action or pleading is called, do not affect federal question jurisdiction and removability. *See id.* at 317 ("The well-pleaded complaint rule is concerned with the existence of a federal question on the face of the document invoking a state court's jurisdiction, **[*21]** not whether that document bears the label 'complaint.'"). As did the Supreme Court in *City of Chicago* and the Second Circuit in *Freeman,* I find that "neither the jurisdictional statutes nor . . . prior decisions suggest that federal jurisdiction [was] lacking" with respect to the original petition. *City of Chi.,* 522 U.S. at 163. [3]

### FOOTNOTES

[3] Two other aspects of Second Circuit case law provide further evidence that an Article 78 proceeding is a "civil action" subject to the ordinary rules of federal question jurisdiction and removal. Although these considerations are not in themselves proof that Article 78 proceedings are removable, they show that this court's reliance on *City of Chicago* and *Freeman* is consistent with the inner logic of this Circuit's treatment of Article 78 proceedings.

First, a holding that Article 78 proceedings are not "civil actions" with respect to the general removal statute would conflict with precedent establishing that Article 78 proceedings are "civil actions" with respect to other removal statutes. *E.g., Greenberg* v. *Veteran,* 889 F.2d 418, 421-22 (2d Cir. 1989) (allowing removal based on the "refusal clause" of 28 U.S.C. § 1443(2), which allows removal of "civil actions . . . for refusing to do any act on the ground that it would be inconsistent" with a law providing for equal rights).

Second, other district courts within this circuit have allowed removal of Article 78 proceedings under the general removal statute without questioning whether the state case was a "civil action." *E.g., Still* v. *DeBuono,* 927 F. Supp. 125, 128-29 (S.D.N.Y 1996).

I conclude that these factors, in addition to the recent Supreme Court and Second Circuit precedent addressing directly the question of jurisdiction over state proceedings to review administrative action, outweigh earlier general remarks contrasting special proceedings to civil actions for other purposes. *E.g., Davidson* v. *Capuano,* 792 F.2d 275, 280 (2d Cir. 1986) (stating, when considering the preclusive effect of an Article 78 proceeding, that "[a] special proceeding . . . differs from a civil action in several ways").

## [*22]

2. *Removability of a Fourteenth Amendment* Predicate

Defendants also argue that the original petition was not subject to federal question jurisdiction, and therefore was not removable, because the Fourteenth Amendment itself does not create a private right of action, and because plaintiff could have asserted his constitutional claim initially in a § 1983 suit. Although *Grable* suggests that how Congress provides for the enforcement of federal rights may affect federal question jurisdiction when violations of federal statutes serve as predicates to state law claims, [4] this case involves a constitutional question that neither becomes insubstantial nor "threatens to affect[] the normal currents of litigation," *Grable & Sons Metal Prods., Inc.,* 125 S. Ct. at 2371, simply because Congress provided an alternative federal mechanism for private enforcement.

---

**FOOTNOTES**

**4** In *Grable*, the Court treated a federal cause of action to enforce a statutory right as a "welcome mat," whose absence means "keep out" in certain circumstances when violation of the right is predicate to a state cause of action. 125 S. Ct. at 2370.

---

**[*23]** *Grable* involved a state quiet title action that hinged on federal tax law. *Id.* at 2366. The Second Circuit applied *Grable* where the underlying federal issue was the uniform rate requirement for cable operators under 47 U.S.C. § 543(d). *Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 191 (2d Cir. 2005). Neither *Grable* nor *Broder* suggests that earlier cases treating predicate constitutional violations should be reexamined. In particular, neither diminished the force of *City of Chicago*, where the Supreme Court held that the plaintiffs' federal constitutional challenges, which were brought under the Illinois Administrative Review Law but nonetheless turned "exclusively on federal law," were "unquestionably" within the scope of federal question jurisdiction. *City of Chi.*, 522 U.S. at 164. The same result follows here with respect to the first claim in plaintiff's original petition.

Even if this court were bound to re-evaluate whether an allegation of a Fourteenth Amendment violation passes *Grable*'s test without considering *City of Chicago*, the outcome would be the same. It is true that **[*24]** the Second Circuit has held that there is no private right of action directly under the Fourteenth Amendment, but this holding relied on a determination by the Supreme Court that Congress had provided for identical private enforcement through § 1983. *Turpin* v. *Mailet*, 591 F.2d 426, 427 (2d Cir. 1979) (per curiam). Turpin does not establish that the rights protected by the Fourteenth Amendment are insubstantial or that Congress intended to limit the district courts' power to decide constitutional questions to the framework of § 1983. That a federal statute defines how private actors can enforce pre-existing constitutional rights through a federal cause of action does not imply that disputes over those rights do not "arise under the Constitution" when they occur in the setting of a state cause of action.

Thus, plaintiff's original petition was removable and it is necessary to determine whether the pleading triggered the 30-day time limit under 28 U.S.C. § 1446(b).

3. *The "Intelligently Ascertain" Test*

None of defendants' arguments suggests that the original petition failed to allege a jurisdictional fact **[*25]** whose absence would cause the initial pleading to fail the "intelligently ascertain" test. Rather, defendants contend that the original petition did not allow them to ascertain removability because it commenced a special proceeding rather than a plenary action and because it presented a state cause of action predicated on the Fourteenth Amendment, which does not itself create a private right of action. As discussed above, it is true that neither the Supreme Court nor the Second Circuit has explained directly what claims, if any, are removable in an Article 78 proceeding under the general removal statute. It is also true that *Grable*'s concern for the "normal currents of litigation" leaves room for argument that constitutional provisions without direct private rights of action do not fall within the "arise under" language in 28 U.S.C. § 1331. However, although this court has confronted these legal issues in deciding whether the original petition was removable, such issues have no bearing on whether there has been the notice of removability required by the "intelligently ascertain" test to trigger the 30-day time limit under 28 U.S.C. § 1446(b).

**[*26]** As the Second Circuit explained in *Whitaker*, **HN9** the "intelligently ascertain" test demands that an initial pleading provide the facts necessary to support removal. 261 F.3d at 206. When federal question jurisdiction is at issue, this requirement is met if the initial pleading contains a claim that explicitly and necessarily relies on federal law. *See Soto*, 111 F. Supp. 2d at 224-25 (holding that defendant could not intelligently ascertain removability where complaint alleged national origin discrimination without a statutory reference). Plaintiff's original petition

contained such a claim. The first claim stated directly that plaintiff's request for a name-clearing hearing hinged on a determination that plaintiff's Fourteenth Amendment rights had been violated. There was no ambiguity suggesting that plaintiff was basing his claim entirely on state law with no federal component, say by predicating the claim for a name-clearing hearing on the Due Process Clause in the New York State Constitution, N.Y. Const. art. 1, § 6. Defendants may be correct that the removability of the original petition was unclear, but plaintiff held back no facts whose presence **[\*27]** would have made removability clearer. If the "intelligently ascertain" test could defeat removability whenever there was present the kind of uncertainty described in defendants' submissions to this court, the only way an initial pleading could ever trigger the 30-day time limit in 28 U.S.C. § 1446(b) would be for it to present unassailable legal justification for potential removal. Yet the sheer multiplicity of district court decisions and the often manifest acumen of the legal profession are powerful evidence that there is little in the law that is unassailable. Such a test would effectively nullify the first paragraph of 28 U.S.C. § 1446(b).

Moreover, defendants' proposed expansion of the "intelligently ascertain" test does not serve the test's purposes. Requiring a plaintiff to allege all facts necessary for federal question removability relieves defendants of a duty to investigate the plaintiff's intentions while the clock is ticking under 28 U.S.C. § 1446(b). *Cf. Whitaker*, 261 F.3d at 206 (holding, in a diversity case, that the defendants were not required to investigate addresses left out **[\*28]** of the complaint). Yet when an initial pleading is unambiguous as to a plaintiff's intentions, like the original petition was in this case, there is nothing left to "investigate" -- plaintiffs know nothing more than defendants do. A defendant need do no more than conduct legal research and make a reasoned decision about whether to remove; there is no pressure to make hasty removals based on incomplete information that might be impossible to gather in 30 days. In other words, the policy concerns that lead courts to guard against "guessing" by defendants, *see Richstone* v. *Chubb Colonial Life Ins.*, 988 F. Supp. 401, 403 (S.D.N.Y. 1997), do not justify defendants' proposed gloss on the statutory text.

Because plaintiff's original petition was removable and satisfied the "intelligently ascertain" test, defendants are now time-barred from removing the case unless plaintiff's amended petition revived their right to do so.

### B. *The Amended Petition and the Revival Doctrine*

Addition of the § 1983 claim in the amended petition warrants no relief from the statutory time bar. Other district courts have concluded that **HN10**the judge-made revival doctrine should be applied **[\*29]** in "an exceedingly narrow scope, to function exclusively as an 'escape hatch' in those cases in which the facts identified [by the Seventh Circuit] in *Wilson* as being enough to overcome the dual policy interests served by the thirty day time limit are found." *Dunn* v. *Gaiam, Inc.*, 166 F. Supp. 2d 1273, 1279 (C.D. Cal. 2001); *accord Clegg* v. *Bristol Meyers-Squibb Co.*, 285 B.R. 23, 31 (M.D. Fla. 2002). I agree. Plaintiff's amended pleading, whose third claim employs a new procedural mechanism to resolve the single disputed substantive issue stated in the pre-existing first claim, does not fall within this narrow scope, even though the amended pleading seeks a form of relief -- compensatory money damages -- that is not available in Article 78 proceedings.

As the Seventh Circuit described in *Wilson*, the 30-day limit in 28 U.S.C. § 1446(b) serves two purposes: to prevent the defendant from removing in response to negative developments in state court, and to avoid "the waste and delay of resources involved in starting a case over in a second court after significant proceedings, extending over months or even years, **[\*30]** may have taken place in the first court." *Wilson*, 668 F.2d at 965. **HN11**The revival doctrine resurrects a defendant's right of removal when the time bar "would not serve the purposes of the limitation in any significant way." *Id.* at 966. To be sure, there is no indication here that when plaintiff amended, defendants anticipated the State Supreme Court's adverse decision and order, and notified that Court of their intention to remove as a result. However, the amendment "did not change the original [petition] so drastically" that the second purpose of

the limitation -- preventing waste and delay -- would not be served by enforcing the limitation. *Id.*

Plaintiff's claim for a name-clearing hearing in the original petition rested solely on an allegation that defendants had deprived plaintiff of a liberty interest in violation of the Fourteenth Amendment. The basis for plaintiff's § 1983 claim is that same substantive right. Over a year and a half passed between when that issue was placed before the State Supreme Court in September 2003 and when that Court rendered its decision in April 2005. It is true that the § 1983 claim raises additional hurdles **[*31]** to liability, such as qualified immunity. *See Harlow* v. *Fitzgerald,* 457 U.S. 800, 810, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). It is also true that the claim converted an Article 78 proceeding into a hybrid special proceeding/plenary action, and introduced new procedural rules with respect to discovery. *See Davidson* v. *Capuano,* 792 F.2d 275, 280 (2d Cir. 1986) (discussing the streamlined procedures for resolution of Article 78 proceedings). However, these features are all incidental to the "basic legal theory of the action" -- the constitutional violation. *Wilson,* 668 F.2d at 966.

The only significant way in which this case differs from *Wilson*, which held that the addition of a § 1983 claim to allegations of Fifth and Fourteenth Amendment violations did not revive the removal period, *id.* at 964, 966, is that here the § 1983 claim seeks a form of relief not available in an Article 78 proceeding -- compensatory money damages, N.Y. C.P.L.R. § 7806 (allowing only damages "incidental to **[*32]** the primary relief sought"). This difference does not require a different result. The Seventh Circuit wrote in *Wilson* that the "amendments did not change the target of [the plaintiff's] attack or the nature of relief sought." *Wilson,* 668 F.2d at 966. Here, plaintiff's amendment did change the nature of the relief sought, and came in response to a definitive statement by the Second Circuit that § 1983 allows for recovery of money damages when a name-clearing hearing itself would not make the plaintiff whole. *See Patterson* v. *City of Utica,* 370 F.3d 322, 338 (2d Cir. 2004). However, the Seventh Circuit's statement does not suggest that a new form of relief is either necessary or sufficient to revive the right of removal. It is merely one characteristic of an amended pleading that courts must take into account when considering "the purposes of both the 30-day limitation and its judicially engrafted exception." *Wilson,* 668 F.2d at 966. In this case, the basis of the first claim is identical to the basis of the third claim, and defendants took no issue with litigation of this right in state court even though the case was originally **[*33]** removable. Thus, application of the time bar to the amended pleading would substantially serve the purposes of the statute by preventing waste and delay.

The one case that defendants cite as allowing revival supports enforcement of the time bar here. In *Barnes* v. *Cathers & Dembrosky,* 2003 U.S. Dist. LEXIS 22223, 02 CV 5296 (RO), 2003 WL 22928640 (S.D.N.Y. Dec. 10, 2003), the Court held that addition of federal RICO claims to claims under state law and the federal Sherman Act revived the right of removal. 2003 U.S. Dist. LEXIS 22223, [WL] at *1. The Court stated that by adding the RICO claims, the "plaintiffs substantially altered the litigation with the first federal claim over which the state court had concurrent jurisdiction, and faced defendants with the necessity of removing to obtain federal judicial oversight of a major and relatively novel area of federal quasi-criminal statutory governance." *Id.* The factors that compelled revival in *Barnes* do not exist in the instant case. First, whereas here the original petition contained a removable claim that would require both state and federal courts to answer the same substantive federal question, the only removable original claim in *Barnes* was brought under **[*34]** the Sherman Act, which was subject to "automatic dismissal" because the state court did not have concurrent jurisdiction. *Id.* Second, the RICO claims in *Barnes* invoked "a major and relatively novel area of federal quasi-criminal statutory governance," *id.*, not, as here, recently clarified standards as to the type of damages available for a particular substantive violation. In short, enforcement of the 30-day time limit in *Barnes* would have done little to serve the statute's purpose of preventing waste and delay; by contrast, enforcement here would serve that purpose.

Because plaintiff's amended petition did not create conditions warranting application of the revival doctrine, removal remains time-barred.

IV.

*HN12* An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The purpose of this statute is to prevent the "abuse, unnecessary expense and harassment" suffered by a plaintiff as a result of improper removal. *Circle Indus. USA* v. *Parke Constr. Group,* 183 F.3d 105, 109 (2d Cir. 1999). Bad faith is not a prerequisite **[*35]** to requiring payment. *Nemazee* v. *Premier, Inc.,* 232 F. Supp. 2d 172, 181 (S.D.N.Y. 2002). Rather, the decision to award costs and attorney fees demands "a test of overall fairness given the nature of the case, the circumstances of the remand, and the effect on the parties." *Morgan Guar. Trust Co. of N.Y.* v. *Republic of Palau,* 767 F. Supp. 561, 563 (S.D.N.Y 1991), *aff'd* 971 F.2d 917 (2d Cir. 1992).

Although plaintiff's motion for remand is granted in whole, an award of costs, disbursements, and attorney fees would not "serve[] the purpose of deterring improper removal." *Circle Indus. USA,* 183 F.3d at 109. As discussed throughout this opinion, defendants' removal petition raised legitimate and sometimes complex questions regarding the removability of Article 78 proceedings, the effect of *Grable* on federal predicates, the "intelligently ascertain" test, and the scope of the revival doctrine. Therefore, equity does not require an award of costs and expenses under 28 U.S.C. § 1447(c).

For the reasons set forth above, plaintiff's motion for remand to New York State Supreme Court, **[*36]** New York County, is granted, except insofar as plaintiff requests costs, disbursements, and attorney fees. Settle order on ten days' notice.

SO ORDERED:

Michael B. Mukasey

U.S. District Judge

Dated: New York, New York

December 16, 2005

Service: **Get by LEXSEE®**
Citation: **2005 us dist lexis 31559**
View: Full
Date/Time: Tuesday, April 17, 2012 - 1:19 PM EDT

* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.

In                    About LexisNexis   | Privacy Policy   | Terms & Conditions   | Contact Us
                    Copyright © 2012 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.