UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Lillian Roberts, Council 37, *et al.*,<br><br>                                        *Plaintiffs*,<br><br>              -against-<br><br>The State of New York, *et al,*<br><br>                                        *Defendants*. | 1:12-CV-0046<br>(MAD)(DRH) |
| The New York State Law Enforcement Officers Union Council 82, *et al.*,<br><br>                                        *Plaintiffs*,<br><br>              -against-<br><br>The State of New York, *et al.*,<br><br>                                        *Defendants*. | 1:11-CV-1525<br>(MAD)(DRH) |
| Danny Donohue, CSEA, *et al.*,<br><br>                                        *Plaintiffs*,<br><br>              -against-<br><br>The State of New York, *et al.*,<br><br>                                        *Defendants*. | 1:11-CV-1530<br>(MAD)(DRH) |
| New York State Correctional Officers & Police Benevolent Association, Inc., *et al.*,<br><br>                                        *Plaintiffs*,<br><br>              -against-<br><br>The State of New York, *et al.*,<br>                                        *Defendants*. | 1:11-CV-1523<br>(MAD)(DRH) |

| | |
|---|---|
| The Police Benevolent Association of the New York State Troopers, Inc., *et al.*,<br><br>*Plaintiffs*,<br><br>-against-<br><br>The State of New York, *et al.*,<br><br>*Defendants*. | 1:11-CV-1526 (MAD)(DRH) |
| The New York State Police Investigators Association, *et al.*,<br><br>*Plaintiffs*,<br><br>-against-<br><br>The State of New York, *et al.*,<br><br>*Defendants*. | 1:11-CV-1527 (MAD)(DRH) |
| Police Benevolent Association of New York State, Inc., *et al.*,<br><br>*Plaintiffs*,<br><br>-against-<br><br>The State of New York, *et al.*,<br><br>*Defendants*. | 1:11-CV-1528 (MAD)(DRH) |
| Kenneth Brynien, PEF, *et al.*,<br><br>*Plaintiffs*,<br><br>-against-<br><br>The State of New York, *et al.*,<br><br>*Defendants*. | 1:11-CV-1533 (MAD)(DRH) |

| | |
|---|---|
| Hyman Kuritz, UUP, *et al.*, <br><br> *Plaintiffs*, <br><br> -against- <br><br> The State of New York, *et al,* <br><br> *Defendants*. | 1:11-CV-1529 (MAD)(DRH) |

**DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF THEIR MOTION TO DISMISS**

        **ERIC T. SCHNEIDERMAN**
        Attorney General of the State of New York
        Attorney for Defendants
        The Capitol
        Albany, New York  12224-0341

By:  Charles J. Quackenbush
      BRN 601683
      Assistant Attorney General, Of Counsel
      (518) 402-2270
      charles.quackenbush@ag.ny.gov

      Kevin P. Hickey
      BRN 509796
      Assistant Attorney General, Of Counsel
      (518) 474-4367
      kevin.hickey@ag.ny.gov

**Table of Contents**

Preliminary Statement ........................................................................................................... 3

Point I:
Plaintiffs cannot avoid prohibitions against subject matter jurisdiction
by mischaracterizing their actions. ...................................................................................... 3

Point II:
Plaintiffs' statute-based and collective bargaining agreement-based claims
are insupportable. ................................................................................................................. 5
  A.  Statute-based claim. ....................................................................................................... 5
  B.  CBA-based claim. .......................................................................................................... 8

Conclusion .......................................................................................................................... 10

2

**Preliminary Statement**

On March 1, 2012 the New York State defendants moved to Dismiss under Fed. R. Civ. P. Rule 12(b)(6) against the nine actions listed above on the grounds of subject matter jurisdiction, federal abstention, legislative immunity and failure to state a claim upon which relief may be granted.  Plaintiffs' Responses, filed on April 18, present no persuasive authority upon which defendants' Motion should be denied.  As more fully set forth in defendants' original Memorandum, and more briefly in this Reply, the plaintiffs cannot redefine the nature of their actions in order to overcome defendants' immunity from suit.  Further, they have failed to state a basis in the Civil Service Law or in their collective bargaining agreements to support their contract clause-based claims.[1]

**Point I**

**Plaintiffs cannot establish subject matter jurisdiction by mischaracterizing their actions.**

The defense has fully briefed the well-settled principles of sovereign immunity.  In response the plaintiffs contend that, since compensatory relief is only "ancillary" to their claims for prospective equitable declaratory relief, sovereign immunity does not bar their claims.  *E.g. Council 37* Response, Point I(B)(iii); *Council 82* Response, Point I; *CSEA* Response, Point I; *NYSCOPBA* Response, Point I; *NYSP PBA* Response, Point I; *NYSPIA* Response, Point I(C); *PBA* Response, Point I(C); *PEF* Response, Point I; UUP Response, Point I(C)-(D).

Plaintiffs' error rests in their mischaracterization of their claims.  Plaintiffs' actions are plainly about money.  They claim that the State is paying a reduced share of their members' health care costs and, as such, plaintiffs are damaged to the extent that their contributions toward

---

[1] Other issues raised in defendants' Motion have been briefed in plaintiffs' Responses, *e.g.* legislative immunity and *Younger* abstention.  For the sake of managing the volume of their Reply the defendants have opted not to venture into renewed discussions on such points.  However, the defendants do not concede the merits of any issues which are not being revisited here.

3

their health insurance premiums have increased. Plaintiffs also emphasize that their claims for compensatory relief are founded upon their collective bargaining agreements. *E.g. Council 37* Response, pp.14-15; *Council 82* Response, pp.23-24; *CSEA* Response, pp.21-22; *NYSCOPBA* Response, pp.14-22. Therefore, these actions are nothing more than breach of contract claims for money damages dressed in constitutional garb. Camouflage is not a proper means by which to convert a State law claim into a federal question. *Saloum v. U.S. Citizenship & Immigration Services, et al*, 437 F.3d 238, 243-44 (2nd Cir. 2006); *Novikova v. IRS, et al*, 2007 WL 2891301 *9 (EDNY 9/28/07); *Rubino v. Ghezzi, et al*, 512 F.2d 431, 433 (2nd Cir. 1975). The actual nature of the relief sought, rather than the style in which a Complaint is pled, will define the nature of an action. *E.g. Wong v. Yoo, et al*, 649 F.Supp.2d 34 (EDNY 2009), *discussing Solnick, et al v. Whalen, et al*, 49 NY2d 224, 229 (1980); *see also Horne v. New York State Dept. of Health*, 287 AD2d 940, 941 (3rd Dept. 2001) (examining reality and essence of action in measuring Article 78 limitation period).

Plaintiffs also argue that jurisdictional rules may be ignored because their actions are ostensibly founded upon due process claims which give rise to federal questions. They ask the Court to disregard decisions such as *Reed v. Medford Fire Department, Inc.*, 806 F.Supp.2d 594, 617-618 (EDNY 2011) and *Cartagena v. City of New York*, 257 F.Supp.2d 708, 709-710 (SDNY 2003), in which district courts have properly refrained from federalizing Article 78 claims. *NYSCOPBA* Response, pp.7-13 (foregoing discussion of cases cited by defendants such as *McNamara v. Kaye, et al*, 360 Fed. Appx. 177 (2nd Cir. 2009]). Plaintiffs' arguments depend upon the existence of a valid due process interest which, as defendants have explained, does not exist. *See* Memorandum in Support of Defendants' Motion to Dismiss, Point VII and Reply Point II, directly below. To the extent that plaintiffs seek to amplify CPLR 7804(2) "excess of jurisdiction" issues into due process causes of action, the Second Circuit has made clear that

4

"constitutional twists" edited into a State law claim shall not be a valid means by which to obtain federal jurisdiction. *Anderson v. Bowen, et al*, 881 F.2d 1, 4-5 (2nd Cir. 1989).

## Point II

### Plaintiffs' statute-based and collective bargaining agreement-based claims are without merit.

Plaintiffs contend that they have acquired a vested contractual entitlement to a perpetually fixed NYSHIP cost contribution percentage. *E.g. Council 37* Response, Point III; *Council 82* Response, Point V; *CSEA* Response, Point IV. This allegation is the wellspring from which the rest of plaintiffs' claims, including their due process theories, flow.

While no statute provides an express contractual right, plaintiffs argue that one should be implied from the Civil Service Law. Plaintiffs argue as well that their entitlement must be implied from prior collective bargaining agreements. *E.g. NYSCOPBA* Response, pp. 20-22; NYSPIA Response, pp.21-23.[2] Neither argument can be sustained.

**A. Statute-based claim.**

Plaintiffs have argued that the long duration of CSL §167(1)(a), and the concomitant history of union contracts incorporating that subsection, have served to "lock in" particular NYSHIP contribution percentages against later Legislative adjustment. *Council 37* Response, p.30; *Council 82* Response, pp.21-26 (rate has become "fixed"); *CSEA* Response, pp.20-23; *NYSCOPBA* Response, pp.19-24 ("fixed" rate); *NYSP PBA* Response, pp.30-34; *NYSPIA* Response, pp.24-30 ("fixed"); *PBA* Response, pp.26-27 ("fixed"); *PEF* Response, pp.18-23, 30 ("fixed"); *UUP* Response, pp.20-22. However, the U.S. District Court for the Southern District of New York recently examined and rejected this theory. In *NYSCOA v. Hite, et al*, 2012 WL 899387 *5-6 (SDNY 3/15/12) - - issued after defendants' Motion had been submitted but before

---

2  References to page numbers in plaintiffs' Responses will be to those inscribed by the PACER system.

Printed [Reproduced] on Recycled Paper

plaintiffs' Response - - the plaintiff union had submitted an application for a Preliminary Injunction barring the State from enforcing the NYSHIP contribution increase at issue in the instant actions. U.S. District Judge Shira A. Scheindlin considered extensive briefing, testimony and argument and concluded that the Civil Service Law bestows no contractual right to a fixed NYSHIP contribution percentage.[3] Relying upon Supreme Court precedent, Judge Scheindlin concluded that the plaintiffs had failed to demonstrate a likelihood of success on their implied contract-based claims:

> The Union's . . .argument is that section 167(1) itself created contractual rights, and section 167(8)'s downward departure from the rates set in section 167(1) was itself an impairment of the Union's contract. At the time that the CBA was signed, the law laid out specific rates and permitted only increases in those rates. Rewriting the law so as to permit decreases in those rates, the Union argues, constituted an impairment of contract. But defendants correctly note that courts are hesitant to read contractual rights into statutes because to do so would too easily preclude New York State from changing its policies:
>
>> ***[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights*** but merely declares a policy to be pursued until the legislature shall ordain otherwise.... Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body[fn36] (fn36 *National R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry. Co.,* 470 U.S. 451, 466, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985) (quoting *Dodge v. Board of Educ.,* 302 U.S. 74, 79, 58 S.Ct. 98, 82 L.Ed. 57 (1937)).

*Id*. at *5 (*emphasis added*). Judge Scheindlin noted that the New York Court of Appeals has reached the same conclusion:

> The New York Court of Appeals has explained that "certain types of legislative acts, including those fixing salaries and compensation ... are not presumed to create a contract"[fn37] (fn37 *Cook v. Binghamton,* 48 N.Y.2d 323, 330, 422 N.Y.S.2d 919, 398 N.E.2d 525 (1979). [The parties] point to no case construing

---

3  Some of the plaintiffs have sought to distinguish the *NYSCOA* decision. *See Council 82* Response, p.24, fn.3; *CSEA* Response, p.23; *NYSCOPBA* Response, p.18, fn.3; *PEF* Response, pp.22-23; *UUP* Response, pp.26-27. The *Council 37*, *NYSPIA*, *NYSP PBA* and *PBA* plaintiffs do not appear to address it.

> section 167(1) as a contract. The language of the statute lays out policy, just like innumerable other laws, and its terms do not "clearly and unequivocally" express an immutable contractual guarantee. Indeed, section 167(8) – both before and after its amendment by Chapter 491 – anticipates that its terms may be altered though negotiation. Reading section 167 as a contract would improperly impair the ability of the Legislature to change its policies regarding its employees' health insurance plans.

*Id*., \*5-6 (*format modified*, *citations & quotations in original*).

Though the plaintiffs have proffered a massive array of decisions, upon review the Court will find they are wholly inapposite. *E.g., Council 37* Response, p.26, *emphasizing United Automobile Aerospace and Agricultural Workers v. Yard-Man*, 716 F.2d 1476 (6th Cir. 1983). In *Yard-Man* the Sixth Circuit determined that a private corporation had improperly eliminated a employee/retiree insurance program. However, the case did not involve public employers/employees, a taxpayer-funded health insurance program or an adjustment of a governmental subsidy under a statute/regulation. *See also NYSCOPBA* Response, p.26 in which counsel present a string of decisions, none of which addressed a statewide adjustment of insurance cost allocations by the State pursuant to a statute.

Federal courts are loath to interfere with public policy adjustments of state legislators. One aspect of federal restraint is the strong presumption that state statutes do not create contractual rights. *Nat'l R. Passenger Corp. v. Atchison, Topeka & Santa Fe. R.. Co.*, 470 U.S. 451, 465-66 (1985). "[T]he principal function of a legislature is not to make contracts, but to make laws that establish the policy of the State." *Id*. A statute may only be treated as a contract ". . .when the language and circumstances evince a legislative intent to create private rights of a contractual nature enforceable against the State." *United States Trust Co. v. New Jersey*, 431 U.S. 1, 17 n.14 (1977). Judge Scheindlin's determination that no contractual right to a NYSHIP contribution rate can be implied from the Civil Service Law exemplifies this principle in practice. Here, as the Court of Appeals found in *Cook*, 48 NY2d at 330-31, the statute in

7

contention -- CSL §167(1)(a) -- represents a measure taken in pursuit of public policy interests, a measure which the Legislature has always had the power to adjust. The defendants respectfully submit that Judge Scheindlin's reasoning, which is fully supported by existing case law from New York's highest Court, was correct and should be given full precedential effect.

**B.  CBA-based claim.**

At the outset of this section it must be emphasized that unions do not represent retirees and have no bargaining rights/obligations on retirees' behalf. *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.,* 404 U.S. 157 (1971); *Myers v. City of Schenectady, et al*, 244 AD2d 845, 847 (3rd Dept. 1997). Retirees have no relevant contractual right, other than their right to receive a pension payment, after leaving State employment. *Lippman v. Board of Education*, 66 NY2d 313, 317 (1985).

That being said, although each of the union plaintiffs has its own collective bargaining agreement, the 2007-2009 *NYSCOPBA* collective bargaining agreement contains the core contractual provisions upon which all of the plaintiffs rely. *See NYSCOPBA* Complaint, Ex. B (1:11-CV-1523, Document 1-2). Section 12.1 provides that, during the contract's duration, "[the] State shall continue to provide all the forms and extent of coverage as defined by the contracts and Interest Arbitration Awards in force on March 31, 2007 with the State health and dental insurance carriers unless specifically modified or replaced pursuant to this Agreement." *Id*. Sections 12.8(a) and 12.8(b) contain the entirety of the parties' contractual agreement regarding their respective contributions toward NYSHIP premiums for the duration of the CBA:

> **12.8(a)**  The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage, provided under the Empire Plan. The State shall pay 90 percent for individual prescription drug coverage and 75 percent for dependent prescription drug coverage under the Empire Plan.
> **12.8(b)**  The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage, toward the hospital/medical/mental health and substance abuse components of each HMO, not to exceed, 100 percent

8

>of its dollar contribution for those components under the Empire Plan. The State will pay 90 percent of the cost of individual prescription drug coverage and 75 percent of the cost of dependent prescription drug coverage under the Health Maintenance Organizations.

The NYSCOPBA contract provided union members with two guarantees. First, for the duration of the collective bargaining agreement, employees would continue to enjoy the opportunity to subscribe to subsidized health/prescription drug benefits. Second, through the duration of the collective bargaining agreement, they would enjoy such benefits at a particular subsidy rate.

If union members actually held a pre-existing perpetual entitlement to §167(1)(a) contribution rates there would have been no need to specify rates in an updated contract at all. Such provisions would have been superfluous. The unions' "past practice" of writing §167(1)(a) percentage rates in their contracts has only evinced their understanding that the ultimate authority over such rates rests with the Legislature. In any event, no section of the NYSCOPBA contract specified a guarantee that members would have perpetual access to health insurance at any fixed rate. Any effort to construe such an entitlement is an exercise in imagination. The terms of plaintiffs' contracts have been explicit. As Judge Scheindlin observed,

>The CBA constituted the parties' final agreement. Under New York law, "[w]here the language of a contract is unambiguous, its interpretation is a matter of law and effect must be given to the intent of the parties as reflected by the express language of the agreement. . . . It is a court's task to enforce a clear and complete written agreement according to the plain meaning of its terms, without looking to extrinsic evidence to create ambiguities not present on the face of the document" and a "mere assertion by a party that contract language means something other than what is clear when read in conjunction with the whole contract is not enough to create an ambiguity. . . ."

*NYSCOA* at *3 (*footnotes omitted*), *citing 1550 Fifth Ave. Bay Shore, LLC v. 1550 Fifth Ave., LLC,* 297 AD2d 781 (2nd Dept. 2002); *New York City Off–Track Betting Corp. v. Safe Factory Outlet, Inc.,* 28 AD3d 175 (1st Dept. 2006). In these actions, as in *NYSCOA*, there is no reason to venture into a search for penumbral terms or obligations.

9

**Conclusion**

For the reasons discussed above and in their original Memorandum the defendants respectfully request that plaintiffs' actions be dismissed in their entirety.

Dated: Albany, New York
April 27, 2012

**ERIC T. SCHNEIDERMAN**
Attorney General of the State of New York
Attorney for New York State Defendants
The Capitol
Albany, New York  12224

By: s\Charles J. Quackenbush
Charles J. Quackenbush
Assistant Attorney General, of Counsel
(518) 402-2270
charles.quackenbush@ag.ny.gov

**TO:**   Jeffrey P. Mans, Esq.
Sheehan, Greene Law Firm
Counsel for plaintiffs in *NYSCOPBA*
54 State Street, Suite 1001
Albany, NY 12207

Christine A. Caputo Granich, Esq.
New York State Law Enforcement
Officers Union, District 82
Counsel for plaintiffs in *Council 82*
63 Colvin Avenue
Albany, NY 12206

Stephen G. DeNigris, Esq.
Office of Stephen G. DeNigris
Counsel for plaintiffs in *NYSP PBA*
2100 M Street, N.W., Suite 170-283
Washington, DC 20037-1233

Mark T. Walsh, Esq.
Richard C. Reilly, Esq.
Gleason, Dunn Law Firm
Counsel for plaintiffs in *NYSPIA & PBA*
40 Beaver Street
Albany, NY 12207

Robert T. Reilly, Jr., Esq.
New York State United Teachers
Counsel for plaintiffs in *UUP*
800 Troy-Schenectady Road
Latham, NY 12110-2455

Paul S. Bamberger, Esq.
Civil Service Employees
Association, Inc.
Counsel for plaintiffs in *CSEA*
143 Washington Avenue
P.O. Box 7125, Capitol Station
Albany, NY 12224

Lisa M. King, Esq.
Public Employees Federation, AFL-CIO
Office of General Counsel
Counsel for plaintiffs in *PEF*
1168-70 Troy-Schenectady Road
Albany, NY 12110

Erica C. Gray-Nelson, Esq.
District Council 37
Counsel for plaintiffs in *Council 37*
125 Barclay Street
New York, NY 10007

10