UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LILLIAN ROBERTS, as Executive Director of DISTRICT
COUNCIL 37, AFSCME, AFL-CIO, et al.,

                                                  Plaintiffs,

                      -against-                                              Civil Case No.:
                                                                         1:12-CV-0046
THE STATE OF NEW YORK, et al.,                        (MAD) (CFH)

                                                Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR RECONSIDERATION

                                                      MARY J. O'CONNELL
                                                      General Counsel
                                                      District Council 37, AFSCME, AFL-CIO
                                                      Attorney for Plaintiffs

                                                      By: /s/Erica Gray-Nelson
                                                           Erica C. Gray-Nelson
                                                           Bar Roll No.: 516294
                                                           egray-nelson@dc37.net

## TABLE OF CONTENTS

Page

**PRELIMINARY STATEMENT**............................................................2

**STATEMENT OF THE CASE**............................................................3

**ARGUMENT**............................................................5

### POINT I

**THE DEFENDANTS HAVE NOT SET FORTH A PROCEDURAL BASIS FOR THEIR MOTION**............................................................5

### POINT II

**DEFENDANTS' MOTION IS UNTIMELY**............................................................6

### POINT III

**THE RPEA DECISION PROVIDES NO BASIS FOR RECONSIDERATION**............................................................7

### POINT IV

**THE DEFENDANTS' ARGUMENTS FAIL ON THE MERITS**............................................................9

### POINT V

**DEFENDANTS' ARGUMENTS REGARDING ABSTENTION AND JURISDICTION CANNOT BE ASSERTED IN A MOTION FOR RECONSIDERATION**............................................................17

**CONCLUSION**............................................................19

## PRELIMINARY STATEMENT

On January 10, 2012, Lillian Roberts, et al. (hereinafter "Council 37 plaintiffs") commenced this action by filing a Complaint with this Court against the State defendants. The Complaint alleged multiple claims against the defendants including federal impairment of contract and federal and state due process claims. On March 1, 2012, the State defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. Rule 12(b). On April 18, 2012, the Council 37 plaintiffs filed their opposition papers to defendants' motion to dismiss this action. Subsequently, on December 3, 2012, the Court issued a Decision and Order granting the State's motion to dismiss in part and denying it in part.

Thereafter, the Supreme Court of New York, Albany County, in *Retired Public Employees Association, Inc. (RPEA) et al. v. Cuomo, et al.*, 2012 N.Y. Misc, LEXIS 5714 (Sup. Ct. Albany Co., Dec. 17, 2012), rendered a decision dismissing the therein plaintiffs' Article 78/declaratory action against the State defendants. A copy of the *RPEA* Decision is annexed to the Quackenbush Declaration in Support of the State's Motion for Reconsideration as Appendix A, Docket No. 22-3. The defendants now move pursuant to Fed. R. Civ. P. Rule 60 for reconsideration of this Court's December 3, 2012 Decision, entirely on the basis of the State Supreme Court's decision in *RPEA v. Cuomo*.

The plaintiffs in the instant action submit that defendants' motion for reconsideration must be denied because they have not set forth a procedural basis for the motion, the motion is untimely, the defendants have not met their burden for reconsideration and *RPEA v. Cuomo* is patently distinguishable on the facts and the law.

2

## STATEMENT OF THE CASE

At the outset, it should be noted that the Council 37 plaintiffs' Complaint, Docket No. 1, expressly alleges the existence of eight (8) consecutive contracts, from 1984 to 2011, between Council 37 and the State of New York, covering State employees, including retired members who are beneficiaries under the contracts. *See* Docket No. 1, ¶¶ 48, 49, 50, 53, 54. In addition, the most recent Rent Regulation Services Unit ("RRSU") Agreement, covering employees in RRSU, contains explicit language which addresses health insurance coverage for retired members of RRSU. *See* Docket No. 1, ¶ 52. This language is restated as follows for the convenience of the Court:

> §9.1 Continuation
> The State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on April 1, 2007 with the State's health insurance carriers ***unless specifically modified or replaced pursuant to this Agreement***. (Emphasis added).
>
> §9.2(n) Eligibility
> Effective January 1, 1992, an employee who is eligible to continue health insurance coverage upon retirement and who is entitled to sick leave credit to be used to defray any employee contribution toward the cost of the premium, may elect an alternative method of applying the basic monthly value of the sick leave credit. Employees selecting the basic sick leave credit may elect to apply up to 100 percent of the calculated basic monthly value of the credit toward defraying the required contribution to the monthly premium ***during their own lifetime***. If employees who elect that method predecease their eligible covered dependents, the dependents may, if eligible, continue to be covered, but must pay the applicable dependent survivor share of the premium. Employees selecting the alternative method may elect to apply only up to 70 percent of the calculated basic monthly value of the credit toward the monthly premium ***during their own***

3

> ***lifetime***. Upon the death of the employee, however, any eligible surviving dependents may also apply up to 70 percent of the basic monthly value of the sick leave credit toward the dependent survivor share of the monthly premium for the duration of the dependents' eligibility. The State has the right to make ***prospective*** changes to the percentage of credit to be available under this alternative method for future retirees as required to maintain the cost neutrality of this feature of the plan. The selection of the method of sick leave credit application must be made at the time of retirement, and is irrevocable. In the absence of a selection by the employee, the basic method shall be applied. (Emphasis supplied).
>
> §9.4  Empire Plan Premium
> The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage toward hospital/medical/mental health and substance abuse/prescription drug components provided under the Empire Plan.

*See id.*

Therefore, with respect to RRSU members and retirees, for example, the health insurance contribution rates that the State agreed to pay may not be changed unless modified or replaced pursuant to the aforesaid Agreement. *See* Docket No. 1, ¶¶ 73-74. Further, with respect to retirees, this Agreement requires the State to make prospective changes only to, for example, sick leave credits that may be applied to defray the cost of health insurance premiums. *See* Docket No. 1, ¶ 77.

In addition to the explicit contract-based claims, Council 37 plaintiffs asserted several federal constitutional violations in the Complaint. *See generally*, Docket No. 1.

The Retired Public Employees Association, Inc. ("RPEA"), on the other hand, commenced a combined Article 78 proceeding and declaratory judgment action challenging the State defendants' unilateral implementation of increased health insurance contribution rates for retired New York State employees on the basis of claims that were substantially different from the claims asserted in Council

4

37's Complaint; or were based on facts that were insufficiently plead to support the RPEA plaintiffs' claims. *See* Docket 10-3, RPEA Petition annexed as Appendix A to Quackenbush Declaration. More importantly, the RPEA plaintiffs did not allege the existence of a contract with the State as a basis for relief.

Nevertheless, the State defendants now move this Court pursuant to Fed. R. Civ. P. Rule 60 to reconsider its December 3, 2012 Decision and Order, and dismiss all of the plaintiffs' remaining claims based entirely upon *RPEA, supra*, which the State defendants assert constitutes "exceptional circumstances, in the form of an intervening change in controlling law, which require reconsideration." *See* Docket No. 22-1, p. 6.

## ARGUMENT

### POINT I

### THE DEFENDANTS HAVE NOT SET FORTH A PROCEDURAL BASIS FOR THEIR MOTION

Defendants purport to move "under Fed. R. Civ. P. Rule 60". Rule 60 only applies to final orders. *See, e.g., Tamayo v. City of New York*, 2004 U.S. Dist. LEXIS 5656 (S.D.N.Y., Mar. 31, 2004).[1] Inasmuch as the Order at issue, Docket No. 19, is not a final Order, defendants have not set forth a procedural basis upon which this Court may act.

---

[1] Unreported cases are being submitted as Appendices to Plaintiffs' Affirmation in Opposition to the State Defendants' Motion for Reconsideration.

## POINT II

## **DEFENDANTS' MOTION IS UNTIMELY**

Even if defendants had set forth the proper procedural vehicle for the motion for reconsideration, according to the Local Rule regarding motions for reconsideration, their motion is untimely:

> Unless Fed. R. Civ. P. 60 otherwise governs, a party may file and serve a motion for reconsideration or reargument no later than **FOURTEEN DAYS** after the entry of the challenged judgment, order or decree.

N.D.N.Y L.R. 7.1(g) (emphasis in original). Defendants failed to comply with this time limit. Even if the defendants are given fourteen (14) days from the date of the claimed "intervening change in controlling law", they are nevertheless untimely. The *RPEA* decision was issued on December 17, 2012, a full forty-one (41) days before this motion was filed.[2]

Furthermore, no "excusable neglect" for the delay has been offered. *See* Fed. R. Civ. P. Rule 6(b)(1)(B).

---

[2] Defendants cannot claim to have not been aware of the decision as they highlighted its pendency in their original motion and their counsel represented the defendants therein.

6

# POINT III

## THE *RPEA* DECISION PROVIDES NO BASIS FOR RECONSIDERATION

Even if the defendants did set forth an appropriate procedural basis for their motion, and made it in a timely fashion, they have, nevertheless, not met the prerequisites for advancing a motion for reconsideration.

A strict standard governs motions for reconsideration. The "clearly erroneous" standard of review applies to motions for reconsideration. *See John & Vincent Arduini, Inc. v. NYNEX*, 129 F.Supp.2d 162, 167 (N.D.N.Y. 2001). A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.*, 70 F3d 255, 257 (2d Cir. 1995).

As this Court has already explained:

> In order to prevail on a motion for reconsideration, the movant must satisfy stringent requirements. The court's rulings under such motions are "committed to the sound discretion of the district judge and will not be overturned on appeal absent an abuse of discretion." *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir.1983). Generally, the court recognizes only three possible grounds upon which motions for reconsideration may be granted; they are (1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. *Wilson v. Consolidated Rail Corp.*, 815 F.Supp. 585, 586 (N.D.N.Y.1993) (citing in turn *McLaughlin v. New York*, 784 F.Supp. 961, 965 (N.D.N.Y.1992)).

7

*In re C-TC 9th Ave. Partnership v. Norton Co.*, 182 B.R. 1, 2-3 (N.D.N.Y. 1995).[3]

Here, defendants claim to seek to have this Court reconsider its decision based upon the first ground, a purported "intervening change in controlling law", the decision of New York State Supreme Court in *RPEA*, 201 N.Y. Misc. Lexis 5714. *RPEA* provides no basis for a motion for reconsideration. *RPEA* is a state trial court decision and as such, does not constitute a "controlling" decision warranting reconsideration of a federal court's Decision and Order. *Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 289 F.Supp.2d 337 (E.D.N.Y. 2003) (subsequent ruling of state trial court contrary to a federal district court's earlier ruling is not "controlling authority" and hence not a change in controlling law warranting motion for reconsideration). *See also, Phillips ex rel. Green v. City of New York*, 453 F.Supp.2d 690, 743-44 (S.D.N.Y. 2006) (*citing Aponte v. New York City Health & Hosp. Corp.*, No. 82 Civ. 3778, 1983 U.S. Dist. LEXIS 18340 at *9 (S.D.N.Y. March 23, 1983) ("the rulings…of a state trial court are usually not binding precedent upon federal courts"); *Matter of Verizon N.Y., Inc. v. Environmental Control Bd. of City of N.Y.*, 21 Misc.3d 1120 (Sup. Ct., N.Y. Co., 2008) (decision of one New York trial court "does not constitute binding precedent" on another New York trial court"). Here, defendants have failed to cite a single authority to support their claim that a State Supreme Court decision establishes controlling law.

Thus, inasmuch as defendants' motion for reconsideration of this Court's prior decision rests solely upon the slender reed of the non-controlling, non-binding state trial court decision in *RPEA*,

---

[3] *See also, Sumner v. McCall*, 103 F.Supp.2d 555, 558 (NDNY 2000) (Kahn, D.J.) ("it is not enough…that [the moving party] could now make a more persuasive argument"); *Dandong v. Pinnacle Performance Ltd.*, 2012U.S. Dist. LEXIS 177525 (SDNY Dec. 3, 2012) ("Significantly, on a motion for reconsideration, the standard is not whether this Court would rule the same way if presented with the question for the first time…"); *Johnson v. Lynn-Caron*, 2012 U.S. Dist. LEXIS 127393 (N.D.N.Y., Sept. 7, 2012) ("A motion for reconsideration should not be granted where the moving party

8

this Court should not entertain a motion based upon a purported "intervening change in controlling law".

Furthermore, a motion for reconsideration is not a device to be used by a losing party for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *See Sequa Corp. v GBJ Corp.*, 156 F3d 136, 144 (2d Cir. 1998).

### POINT IV

### THE DEFENDANTS' ARGUMENTS FAIL ON THE MERITS

The RPEA plaintiffs raised three (3) legal challenges. The first was a statutory construction argument based upon the RPEA plaintiffs' interpretation of Civil Service Law §167(1)(a), which established the base contribution rates of 10% for individual plans and 25% for family plans. *See* Docket No. 10-3, pp.39-41. As noted in the RPEA complaint-petition, the State and CSEA negotiated a successor collective bargaining agreement (CBA), which included prospectively modified health insurance contribution rates for its members. *See id.* at p.28. The State extended those modified rates to CSEA members and retirees, and all unrepresented employees and retirees. *See id.*

The RPEA petitioners did not reconcile the amendments to Civil Service Law §167(8) enacted as part of Chapter 491 of the Laws of 2011, which provided that "notwithstanding any inconsistent provision of law" the State could modify the contribution rates based upon any collective bargaining agreement entered into between the State and a public employee union, with §167(1)(a). *See id.* at p.29. Instead, RPEA argued that the rates established by Civil Service Law

---

seeks solely to relitigate an issue already decided…[and] is not to be used for presenting the case under new theories,

§167(1)(a) were mandatory, and since there was no specific amendment to §167(1)(a), the extension of modified contribution rates based upon the CSEA CBA to retirees was *ultra vires* and void. *See id.* at pp.39-41.

In its analysis of this claim, the State Supreme Court determined that based on New York precedence on statutory construction, it was bound to read the statute as a whole. *See RPEA v. Cuomo*, 2012 N.Y. Misc. LEXIS 5714, at p.*7-*12. In so doing, it concluded that the "notwithstanding" language added by Chapter 491 of the Law of 2011 permitted the State to increase the established base contribution rates. *See id.*

In addition, the Supreme Court noted RPEA did not challenge whether the State complied with the requirements set forth in §167(8) to properly modify the rates, and further did not allege any facts to support its claim that the extension of modified rates to "unrepresented employees and retirees" was arbitrary and capricious, or without authority. *See id.* at p.*7.

Contrary to the RPEA plaintiffs' claim, the Council 37 plaintiffs recognized the "notwithstanding" language contained in Civil Service Law §167(8), but asserted that the State nevertheless lacked the authority to implement modified rates since it failed to comply with the prescribed statutory requirements. In addition, the State lacked the authority to implement modified rates to Council 37 retirees on the basis of its contract with CSEA. Unlike the "unrepresented employees and retirees" in *RPEA*, the Council 37 plaintiffs are represented employees and former represented employees (i.e., retirees) who asserted contract rights based upon the terms of negotiated collective bargaining agreements. *See generally,* Docket No. 1, ¶¶ 49, 50, 51, 52, 53, 54, 56, and

---

securing a rehearing on the merits, or otherwise taking a second bite at the apple.").

First, Second, Third and Fourth Causes of Action. The RPEA complaint does not contain similar allegations. *See* Docket 10-3, Quackenbush Decl., Appendix A.

The second legal challenge the RPEA plaintiffs advanced was a contract impairment claim. RPEA asserted that the 2011 chapter amendments to Civil Service Law §167(8) substantially impaired retirees' contract rights contained in Civil Service Law §167(1)(a), the provision which established the base contribution rates of 90% and 75% prior to the 2011 chapter amendments. *See* Docket No. 10-3, Quackenbush Decl., Appendix A, ¶¶ 72-82. However, *RPEA* did not involve claims for relief based upon a contract, whereas Council 37 plaintiffs' claims here are based on the express provisions of a contract. *See* Docket No. 19, Memorandum-Decision and Order, dated December 3, 2012, pp.28-36. Defendants have ignored this critical distinction.

In fact the *RPEA* Court specifically noted that the RPEA plaintiffs:

> failed to allege the existence of an actual contract during the period of their employment which provided that the State is obligated to continue contributing to public retirees' health care at the level applicable at the time of retirement.

*RPEA, supra,* at p.*19. The *RPEA* Decision dismissed the contract claim based upon the lack of any contract between the parties, and not upon the review of any contract language negotiated between the parties regarding health insurance and contribution rates. Consequently, the *RPEA* Court rejected this claim as well.

*Thus, RPEA* is clearly distinguishable on the facts in this action in that Council 37 plaintiffs, who are current employees and future retirees, were assured health care coverage in collective bargaining agreements. The Council 37 plaintiffs asserted contract rights based upon specific language contained in collective bargaining agreements negotiated with the State during the past

11

thirty (30) years, and in part based upon Chapter 14 of the Laws of 1983, which incorporated the negotiated agreement with the State therein establishing the base State contribution rates at 90% and 75%. *See generally*, Docket No. 1, ¶¶ 49, 50, 51, 52, 53, 54, 56, and First, Second, Third, and Fourth Causes of Action.

Further, defendants erroneously contend that *RPEA* addressed and decided the issue of whether the collective bargaining agreements, under which the Council 37 plaintiffs assert their claims for relief, constitute a contract. Previously, this Court analyzed the arguments underlying plaintiffs' contract- based rights, and the defendants have pointed to nothing in the *RPEA* decision that even remotely addresses these arguments.

In denying the State's motion to dismiss the Council 37 plaintiffs' contract impairment claims, this Court noted that specific language contained in the relevant collective bargaining agreements could be read to support plaintiffs' asserted contract claims. *See* Docket No. 19, pp.28-33. Therefore, this Court has already concluded that Council 37 plaintiffs have stated valid causes of action under the agreements; and, to the extent that they may have been incorporated in Chapter 14 of the Laws of 1983 and by longstanding past practices and representations by the State. *See id.* at pp.34-35.

In sum, nothing in the *RPEA* decision even addresses, much less undermines, the contract-based claims for relief asserted by the Council 37 plaintiffs. The defendants' additional argument that no public contract provides anything in perpetuity and that each contract is subject to the negotiation of a superseding contract is both hyperbole and, to the extent it is not, it is incorrect. Under well established New York Law, public employees who retire while the terms of their

12

collective bargaining agreement contain provisions for retiree health insurance at particular contribution rates have a contractual right to have those benefits maintained throughout their retirement. *See, e.g., Della Rocco v. City of Schenectady*, 252 AD2d 82 (3rd Dept. 1998); *Myers v. City of Schenectady*, 244 AD2d 845 (3rd Dept. 1997). *See also, Amer. Fed. Of Grain Millers, AFL-CIO v. Int'l Multifoods Corp.*, 116 F3d 976 (2nd Cir. 1997); *UAW v. Yard-Man, Inc.*, 716 F2d 1476 (6th Cir. 1983).

Likewise, those plaintiffs who are eligible to retire but who are not yet retired have a right to retire under the terms of the collective bargaining agreement while it remains in effect and to continue with the retiree health insurance benefits set forth in that collective bargaining agreement throughout their retirement. The Council 37 plaintiffs do not claim that the rights they acquire under the contract in effect at the time of their retirement last "in perpetuity" but rather throughout their respective retirements. That is the law in New York State.[4]

Finally, the RPEA petitioners claimed that the legislation authorizing the modification of health insurance rates contained in the 2011 chapter amendments was an unlawful delegation of legislative authority. *See* Docket No. 10-3, Appendix A, ¶¶ 83-90. The Supreme Court found such delegation to be well within the broad statutory authority granted by the legislature to Civil Service to implement and regulate health insurance. *See* Quackenbush Decl., Appendix A, pp. 14-17.

Unlike the RPEA plaintiffs, the Council 37 plaintiffs did not assert that it was an improper

---

[4] As collective bargaining agreements are negotiated for successive terms, the parties are free to and often do negotiate changes to the provisions thereof, including changes to the contributions that <u>future</u> retirees will make to their health insurance in retirement; however, neither party can effect a change in the contract unilaterally, and if the State were to purport to make a unilateral change in the contract terms, they would be guilty of an improper practice charge (New York Civil Service Law §209-a[1][d]), the remedy for which is annulment.

delegation of authority to modify retiree health insurance benefits because such benefits are protected in the same manner as pension benefits. Such a claim has been foreclosed by the Court of Appeals' *Lippman* decision (66 N.Y.2d 313 1985).

Defendants have sought to use the reconsideration motion as an opportunity to reargue that *Lippman* is pertinent and controls. As previously stated, the Council 37 plaintiffs do not argue (and never have argued) that CSL §167 grants retiree health insurance rights that are protected by the provisions of the State Constitution that make an employee's vested pension inviolate (Article V, Section 7). Rather, plaintiffs argue that in their collective bargaining agreements, the State agreed to provide health insurance benefits at a fixed rate throughout their retirements as the parties were free to do. *Lippman* did not involve a collective bargaining agreement but rather only the statute, and the petitioners in *Lippman* relied solely upon Article V, Section 7 of the New York State Constitution that protects only "benefits of membership in a retirement system." *Lippman, supra,* at 317.

Notably, the *Lippman* Court not only held that retiree health insurance benefits are not "benefits of membership in a retirement system", but also went on to note that retiree health insurance benefits are "other employment conditions…that may be protected by…collective bargaining agreement". *Id.* Inasmuch as no argument was made by the *Lippman* petitioners that a collective bargaining agreement protected their health insurance benefits in retirement, it is, like *RPEA*, entirely distinguishable.

The defendants' other points are dependent upon the argument that plaintiffs have no contractual right. Inasmuch as defendants' arguments that the *RPEA* decision requires enforcement of the Eleventh Amendment jurisdictional bar are dependent upon the defendants' argument that the

plaintiffs' claims are based on statute not contract, they must fail for the reasons set forth above.

Likewise, the *RPEA* Decision does not foreclose the plaintiffs' argument that defendants' actions were *ultra vires* and that the defendants are not shielded by legislative immunity. Defendants' argument that *RPEA* compels this Court to change its determination regarding legislative immunity is off the mark, and it is based upon a false premise. This Court previously recognized those paragraphs of the Complaint in which plaintiffs made their claim that the acts of defendants Hite and Megna were *ultra vires*. *See generally,* Docket No. 19, citing Docket No. 1. The Complaint speaks to the fact that defendant Hite failed to take/file the required oath of office (*see* Docket No. 1, ¶86), never attended an official meeting of the Commission (*see* Docket No. 1, ¶ 87) and as a result of her lack of authority, defendant Megna *ipso facto* lacked authority (*see* Docket No. 1, ¶¶ 88-89).

All that Justice Ceresia held in *RPEA* was that the State Legislature was authorized to delegate its authority under Section 167(8) of the New York State Civil Service Law and that there were sufficient standards in the delegation. The *RPEA* plaintiffs did not raise the issue that the persons who purported to act, Hite and Megna, were not authorized delegates due to their failure to qualify as such by virtue of Hite not qualifying as the Commissioner/delegate. The Legislature delegated the authority to "the president [of the Civil Service Commission]," not to "Patricia Hite". Because Patricia Hite was not "the president [of the Civil Service Commission]", her actions were not the actions of the lawful delegate.

Thus, the broad language in Justice Ceresia's decision regarding his determination that the legislative delegation was authorized and appropriate has no impact on this Court's previous

15

determination.

Moreover, to the extent the defendants are contending that *RPEA* held that the delegation of authority (assuming it was a proper delegation) permitted defendants to alter the retiree health benefits of the Council 37 retirees, *RPEA* holds no such thing. The section permitting delegation, Civil Service Law §167(8), only delegates authority to modify premium and subscription charges for "retirees not subject to an agreement referenced above [a collective bargaining agreement]." Because the plaintiffs herein are subject to "an agreement referenced above", the defendants' argument suffers from the same infirmity as other arguments suffer from, the *RPEA* Decision was based on the statute and not a collective bargaining agreement.

In addition, the *RPEA* plaintiffs did not assert as the Council 37 plaintiffs did claims under the Fourteenth Amendment to the United States Constitution (Procedural Due Process), claims pursuant to 42 USC §1983 (Civil Rights), constitutional challenge to CSL §167(8) as applied, a breach of contract, and a violation of contract rights established by Chapter 14 of the Laws of 1983 and longstanding practice. *See generally*, Docket No. 1.

Plaintiff respectfully submit that the State's motion for reconsideration must be dismissed because the State Supreme Court Decision in *RPEA* is of no precedential value or authority, and does not constitute "controlling law." Even assuming, *arguendo*, that the *RPEA* Decision constitutes controlling law, a review of the *RPEA* Decision clearly reveals that it did not address or render a decision on the merits of claims as set forth in the Council 37 plaintiffs' Complaint. Specifically, as previously noted, the *RPEA* petitioners failed to raise several specific claims asserted by the Council 37 plaintiffs; the *RPEA* petitioners did not plead or allege sufficient facts to support several of their

claims; the *RPEA* petitioners failed to assert a contract claim based upon a negotiated collective bargaining agreement, which was fundamental to the Council 37 plaintiffs' claims and the Court's December 3, 2012 Decision; and nothing contained in the *RPEA* Decision warrants reconsideration of the Court's December 3, 2012 Decision. Therefore, *RPEA v. Cuomo* does not constitute "an intervening change" in controlling law.

## POINT V

### DEFENDANTS' ARGUMENTS REGARDING ABSTENTION AND JURISDICTION CANNOT BE ASSERTED IN A MOTION FOR RECONSIDERATION

State defendants further assert that the *RPEA* decision impacts this Court's prior decision regarding abstention and jurisdiction. As previously noted, a motion for reconsideration is not a device to be used by a losing party for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F3d 136, 144 (2d Cir. 1998). It is further well established that:

> [a] party is not permitted to "advance new…issues or arguments not previously presented to the Court" on a motion for reconsideration. *Caribbean Trading & Fid. Corp. v. Nigerian Nat'l Petroleum Corp.*, 948 F2d 111, 115 (2d Cir. 1991)(quotation omitted). "Indeed, a party requesting [reconsideration] 'is not supposed to treat the court's initial decision as the opening of a dialogue in which that party may then use Rule [6.3] to advance new facts and theories in response to the court's rulings.'" *Church of Scientology*, 1997 WL 538912, at *2 (quoting *Woodard v. Hardenfelder*, 845 F.Supp. 960, 966 (E.D.N.Y.1994) ("The restrictive application of Local Rule 6.3 helps to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.") (quotation omitted).

*Image Processing Technologies, LLC v. Canon Inc.*, 2012 U.S. Dist. LEXIS 9479 (E.D.N.Y., Jan.

26, 2012). In any event, this Court has previously stated:

> ...defendants' arguments in support of abstention are imprecise. Defendants argue that the Court should abstain from hearing this matter based upon a civil matter currently pending in Albany County but <u>offer no further analysis or argument in favor of *Younger*</u>.

*See* Docket 19, pp.24-25, Memorandum-Decision and Order, dated December 3, 2012 (emphasis supplied). The fact that defendants initially failed to make any argument regarding abstention that *RPEA* impacts dooms any argument they may now seek to make.

Moreover, there is no reason to abstain as the State proceeding does not and cannot affect adequate judicial review of the federal constitutional claims of, among others, the very simple reason that the federal Constitution claims are based on contract, something not found in the State Court case. Further, while defendants believe that it is "worth observing" that the *RPEA* claims to represent the interests of all New York State public retirees, that is not an argument defendants made in their original motion, and it is thus not a basis for a motion for reconsideration. *See, e.g., National Union Fire Ins. Co. v. Stroh Companies, Inc.*, 265 F3d 97, 115 (2nd Cir. 2001). Moreover, defendants have done nothing to establish that assertion as fact. There is no reason for this Court to consider an abstention argument not previously articulated and no basis to change the prior determination.

To the extent this Court previously ruled on the less than fully articulated abstention point made by defendants in their original motion, the *RPEA* decision does nothing to alter this Court's finings. To the contrary, the distinctions made by the *RPEA* Court reinforce this Court's conclusion that the claims of the *RPEA* petitioners are <u>not</u> "inextricably intertwined" with plaintiffs' claims

18

herein as that Court agreed with this Court's distinction regarding contract versus non-contract based claims.

## CONCLUSION

For the reasons stated above, the State defendants' motion for reconsideration must be denied in its entirety.

Dated: New York, New York
March 22, 2013

>Respectfully submitted,
>
>MARY J. O'CONNELL
>GENERAL COUNSEL
>DISTRICT COUNCIL 37,
>AFSCME, AFL-CIO
>Attorney for Plaintiffs
>
>By: /s/Erica Gray-Nelson
>Erica C. Gray-Nelson, of Counsel
>Bar Roll No.: 516294
>125 Barclay Street, 5th Floor
>New York, NY 10007
>Tel: (212) 815-1450
>Fax: (212) 815-1440
>Temp. Tel.: (212) 895-4931
>Temp. Fax: (212) 895-4557
>egray-nelson@dc37.net

To: All Counsel of Record via ECF