UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------X
LILLIAN ROBERTS as Executive Director of
District Council 37, AFSCME, AFL-CIO,
DISTRICT COUNCIL 37, AFSCME, AFL-CIO,
DENNIS IFILL, as President of the Rent          1:12-CV-0046
Regulation Services Unit Employees, Local
1359, District Council 37, AFSCME, AFL-CIO,       MAD/CFH
THE RENT REGULATION SERVICES UNIT EMPLOYEES,
LOCAL 1359, CLIFFORD KOPPELMAN, as President
of the Court, County and Department of
Probation Employees Unit, Local 1070, THE
COURT, COUNTY, AND DEPARTMENT OF PROBATION
EMPLOYEES UNIT, LOCAL 1070 and MILDRED BROWN,
SHANOMAE WILTSHIRE, NORMA GALLOWAY,
CHARMAINE HARDAWAY, MAURICE BOUYEA, STEVEN
SCHWARTZ, on behalf of themselves and all
others similarly situated,

                        Plaintiffs,

          -against-

ANDREW M. CUOMO, as Governor of the State
of New York, PATRICIA A. HITE, as Acting
Commissioner, New York State Civil Service
Department, CAROLINE W. AHL and J. DENNIS
HANRAHAN, as Commissioners of the New York
State Civil Service Commission, ROBERT L.
MEGNA, as Director of the New York State
Division of the Budget, and THOMAS P.
DiNAPOLI, as Comptroller of the State of
New York,

                        Defendants.
----------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

                    ERIC T. SCHNEIDERMAN
                    Attorney General of the
                     State of New York
                    Attorney for Defendants
                    The Capitol
                    Albany, New York 12224
                    (518) 776-2624
                    richard.lombardo@ag.ny.gov

## Table of Contents

PRELIMINARY STATEMENT................................................................1

STATEMENT OF FACTS.....................................................................3

ARGUMENT................................................................................3

    POINT I.............................................................................3

        DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CONTRACT CLAUSE CLAIM (FIRST CAUSE OF ACTION).........................................................................3

            A. No Contractual relationship exists as to the allegedly impaired term because there is no contractual term promising the perpetual continuation of premium contribution rates at a specific level.......................................4

                i.   No contractual relationship exists under the RRSU contracts.............................5

                ii.  No contractual relationship exists under the Court Unit contracts..................8

            B. Even if the court finds a vested right, any such right has not been substantially impaired..........................................................11

                i.   Even if RRSU plaintiffs do have a vested right to a perpetually fixed premium contribution rate, they can demonstrate no substantial impairment of that right......................................12

                ii.  ii.  Even if Court Unit retiree plaintiffs do have a vested right to the same benefits as the majority of represented Executive Branch employees, they can demonstrate no substantial impairment of that right.................14

            C. L. 2011 Ch. 491 served a legitimate public purpose and the means chosen to accomplish that purpose were reasonable and necessary......16

POINT II ................................................................................................ 20

    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
    PLAINTIFFS' BREACH OF CONTRACT CLAIM ............................................ 20

        A. Because there is no viable federal cause of
           action, the court should decline to exercise
           jurisdiction over plaintiffs' state law breach
           of contract claim. ....................................................... 21

        B. The court should dismiss the breach of
           contract claim in any event because it has no
           merit ............................................................................ 22

POINT III .............................................................................................. 23

    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
    PLAINTIFFS' FEDERAL AND STATEDUE PROCESS CLAIMS (THIRD
    AND FIFTH CAUSES OF ACTION) .............................................................. 23

        A. Plaintiffs do not have a constitutionally
           protected property right in a perpetually fixed
           premium contribution rate ...................................... 23

        B. Plaintiffs cannot show they were denied due
           process because they had an adequate state
           court remedy of which they failed to avail
           Themselves .................................................................. 27

        C. Plaintiffs' New York State-based due process
           claim must be dismissed because the State
           Constitution does not provide for a private
           right of action where other remedies, including
           42 U.S.C. §1983, are available ............................. 29

POINT IV ............................................................................................... 31

    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
    PLAINTIFFS' CLAIM THAT DEFENDANTS HITE AND MEGNA
    VIOLATED ARTICLE III, SECTION 1 OF THE NEW YORK
    CONSTITUTION .................................................................................... 31

CONCLUSION ............................................................................................. 33

## <u>Table of Authorities</u>

**Page(s)**

CASES

*AFSCME, Local 264 v. Tobe,*
  2011 U.S. Dist. LEXIS 145728 (W.D.N.Y.) ..................... 28

*Barker v. Time Warner Cable, Inc.,*
  83 A.D.3d 750 (2d Dept. 2011) ............................. 25

*Board of Regents v. Roth,*
  408 U.S. 564 (1972) ....................................... 27

*Brzak v. United Nations,*
  597 F.3d 107 (2d Cir. 2010) ............................... 24

*Buffalo Teachers Federation v. Tobe,*
  464 F.3d 362 (2d Cir. 2006) ......................... 8, 19-20

*Canzona v. Atanasio,*
  118 A.D.3d 837 (2d Dept. 2014) ............................ 25

*Costello v. Town of Fairfield,*
  811 F.2d 782 (2d Cir. 1987) ............................... 28

*Donohue v. Paterson,*
  715 F. Supp. 2d 306 (N.D.N.Y. 2010) ................... 21-23

*Energy Reserves Group v. Kansas Power & Light Co.,*
  459 U.S. 400 (1983) ............................... 8, 15, 19

*General Motors Corp. v. Romein,*
  503 U.S. 181 (1992) ........................................ 8

*Gilmore v. Bouboulis,*
  2016 U.S. Dist. LEXIS 115315 (N.D.N.Y.) ............... 30-31

*Glass v. New York,*
  2017 U.S. Dist. LEXIS 63827 (N.D.N.Y.) ................... 32

*Gounden v. City of New York,*
  2015 U.S. Dist. LEXIS 134887 (E.D.N.Y.) ................. 33

*Hellenic American Neighborhood Action Committee v.*
  *City of New York,*
  101 F.3d 877 (2d Cir. 1996) ........................... 30-31

iii

*Home Building & Loan Association v. Blaisdell*,
   290 U.S. 398 (1934) ......................................... 7

*Horton v. Board of Education of the Sherburneearlville
   Central School District*,
   2017 U.S. Dist. LEXIS 60719 (N.D.N.Y.) ...................... 31

*Jackson v. Roslyn Board of Education*,
   652 F. Supp. 2d 332 (E.D.N.Y. Sept. 3, 2009) ............... 28

*Jordan v. County of Chemung*,
   2017 U.S. Dist. LEXIS 143215 (W.D.N.Y.) .................... 32

*Kirshner v. United States*,
   603 F.2d 234 (2d Cir. 1978) ............................. 7, 20

*Kolbe v. Tibbetts*,
   22 N.Y.3d 344 (2013) ........................................ 9

*Lawrence v. Town of Irondequoit*,
   246 F. Supp. 2d 150 (W.D.N.Y. 2002) ....................... 28

*Litton Financial Printing Division v. NLRB*,
   501 U.S. 190, [1991] ........................................ 9

*Marcic v. Reinauer Transportation Companies*,
   397 F.3d 120 (2d Cir. 2005) ............................... 16

*Matter of Retired Public Empl. Assoc., Inc. v. Cuomo*,
   2012 N.Y. Misc. LEXIS 5714 (N.Y. Sup. Ct. Dec. 17,
   2012) ..................................................... 34

*Miller v. New York City Department of Education*,
   622 Fed. Appx. 38 (2d Cir. 2015) .......................... 28

*Myers v. Wollowitz*,
   1995 U.S. Dist. LEXIS 5297 (N.D.N.Y.) ("42 U.S.C.
   §1983 is the vehicle by which individuals may seek
   redress for alleged violations of their
   constitutional rights.") .................................. 33

*N.Y. State Court Officers Ass'n v. Hite*,
   851 F. Supp. 2d 575 (S.D.N.Y. 2013) ............. 13-14, 17, 19

*Pineman v. Fallon*,
   662 F. Supp. 1311 (D. Conn. 1987) ......................... 29

*Riano v. Town of Schroeppel*,
   2015 U.S. Dist. LEXIS 104328 (N.D.N.Y.) ("New York
   State statutes provide an opportunity for full and
   complete judicial review of all administrative
   determinations. The availability of such judicial
   review satisfies the dictates of procedural due
   process.") ............................................... 30

*S & D Maintenance Co., Inc. v. Goldin*,
   844 F.2d 962 (2d Cir. 1988) .................................. 27

*Sanitation & Recycling Industry, Inc. v. City of New
   York*,
   107 F.3d 985 (2d Cir. 1997) .................................. 15

*Umbach v. Carrington Investment Partners*,
   851 F.3d 147 (2d Cir. 2017) .................................. 16

*United Mine Workers of America v. Gibbs*,
   383 U.S. 715 (1966) ......................................... 24

*Waltz v. Board of Education of the Hoosick Falls
   Central School District*,
   2013 U.S. Dist. LEXIS 129089 (N.D.N.Y.) ............. 26, 30, 32

## CONSTITUTIONS

New York Constitution
   Article I, § 6 ........................................ 6, 32
   Article III, § 1 ..................................... 6, 33-34

New York State constitution ................................. 6, 32

United States Constitution Fourteenth Amendment ........ 6, 29, 33

United States Constitution
   Article I § 10 Contracts Clause ......................... 5, 7

## STATE STATUTES

Civil Service Law 167(1) ..................................... 34

Civil Service Law
   § 167(1) ......................................... 28-29, 35
   § 167(1)(a) ........................................... 35
   § 167(8) (L. 2011 Ch. 491) ........................... passim
   § 167(8)'s ............................................ 35

**FEDERAL STATUTES**

42 U.S.C.
§ 1983.................................................passim

**RULES**

Local Rule 7.1 ...............................................7

**MISCELLANEOUS AUTHORITIES**

New York Civil Practice Law Article 78   6, .................................................30-32

## PRELIMINARY STATEMENT

Plaintiffs are collective bargaining representatives, active employees, and retired former members of the Rent Regulations Services Unit ("RRSU") and the Court Unit who chose to retire prior to the negotiation of the collective bargaining agreements ("CBAs") that succeeded the 2007-2011 CBAs for those unions.  In this action, plaintiffs challenge defendants' extension, to retirees and to current employees, of the negotiated increase in the percentage of contributions that State employees pay for health insurance benefits, which was authorized by a 2011 amendment to Civil Service Law §167(8) (L. 2011 Ch. 491).

The first cause of action alleges that the increase in the percentage of the health insurance premium contribution violated the Contracts Clause of Article I §10 of the United States Constitution.  The Court should dismiss this cause of action because the collective bargaining agreements do not establish a contractual right to a perpetually fixed health insurance premium contribution rate.

The second cause of action alleges that the increase in the percentage of the health insurance premium contribution breached plaintiffs' contractual rights under the 2007-11 CBAs.  The Court should decline to exercise jurisdiction over this state

1

law claim, given that there is no viable federal cause of action.  This claim should be dismissed in any event, because it lacks merit.

The third cause of action alleges that the premium contribution increase violated plaintiffs' right to due process under the Fourteenth Amendment to the United States Constitution.  This cause of action, too, fails because plaintiffs do not have a property interest in a perpetually fixed premium contribution rate.

The fourth cause of action, which alleges that the extension of premium contribution changes was arbitrary and capricious, appears to be a claim pursuant to Article 78 of the New York Civil Practice Law and Rules, which has been dismissed. See docket No. 19 at 18-21.

The fifth cause of action alleges a due process violation under Article I §6 of the New York Constitution.  This cause of action must be dismissed because the State constitution does not provide for such a cause of action when relief is available under 42 U.S.C. §1983.

The sixth cause of action alleges that defendants Hite and Megna violated Article III §1 of the State Constitution by attempting to serve in a legislative role.  The court should decline to exercise jurisdiction over this state law claim

2

which, in any event, has no merit because defendants Hite and Megna acted in accordance with the express terms of Civil Service Law §167(8).

Accordingly, defendants are entitled to summary judgment on all of the remaining causes of action.

## STATEMENT OF FACTS

For a complete statement of the relevant facts, see the accompanying statement of material facts pursuant to Local Rule 7.1 (hereinafter "7.1 statement"); the accompanying declarations of Patricia Hite, David Boland, Darryl Decker, Dominic Colafati, and Helena Lynch; and Exhibits "1" through "10" submitted therewith.

## ARGUMENT

### Point I

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CONTRACT CLAUSE CLAIM (FIRST CAUSE OF ACTION)**

Article I §10 of the United States Constitution provides that "[n]o State shall... pass any Law... impairing the Obligation of Contracts...."  This prohibition, however, "is not an absolute one and is not to be read with literal exactness like a mathematical formula."  Home Building & Loan Association v. Blaisdell, 290 U.S. 398, 428 (1934).  A State may take necessary measures in pursuit of legitimate State goals without

3

bar by the contract clause even though some contract rights may
to some degree be modified or affected. Kirshner v. United
States, 603 F.2d 234, 239 (2d Cir. 1978).

The first step in a contract clause analysis asks "whether
the state law has, in fact, operated as a substantial impairment
of a contractual relationship." Energy Reserves Group v. Kansas
Power & Light Co., 459 U.S. 400, 411 (1983). In this regard,
there are three factors that the court should consider: (1)
whether a contractual relationship exists; (2) whether a change
in law impairs that contractual relationship; and (3) whether
the impairment is substantial." General Motors Corp. v. Romein,
503 U.S. 181, 186 (1992). A State law that impairs a
contractual obligation will not be deemed unconstitutional so
long as: (1) it serves a demonstrated legitimate public purpose,
such as remedying a general social or economic problem; and (2)
the means chosen to accomplish the public purpose is reasonable
and necessary. Buffalo Teachers Federation v. Tobe, 464 F.3d
362, 368 (2d Cir. 2006).

**A. No contractual relationship exists as to the allegedly impaired term because there is no contractual term promising the perpetual continuation of premium contribution rates at a specific level.**

In order for a contract term to be substantially impaired,
the contract term in question must exist in the first instance.

4

As set forth below, the contractual term that Plaintiffs allege was impaired does not exist.

As a general rule, "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement...."  Only "[r]ights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement."  Litton Financial Printing Division v. NLRB, 501 U.S. 190, 207, [1991]).  The court "must look to well established principles of contract interpretation to determine whether the parties intended that the contract give rise to a vested right."  Kolbe v. Tibbetts, 22 N.Y.3d 344, 353 (2013).[1]

### i.    No contractual relationship exists under the RRSU contracts

Plaintiffs assert that section 9.1 of the RRSU 2007-11 CBA, and similar provisions of prior CBAs going back to 1983, provided plaintiffs with a vested right to a perpetually fixed premium contribution rate for their health insurance coverage.  Complaint ¶¶106, 120-22.  Plaintiffs have no such right.  However, to the extent plaintiffs could demonstrate any vested right, the only such right provided to the plaintiffs is to the

---

[1] In Kolbe, the unambiguous language upon which plaintiffs based their claim to a vested right to unchangeable retirement benefits read as follows: "[t]he coverage provided shall be the coverage which is in effect for the unit at such time as the employee retires."  22 N.Y.3d at 353.

5

health insurance coverage that was in effect at the time of
their retirement, not to any specific premium contribution
amount.

Section 9.1 of the 2007-11 RRSU CBA and the State provides
that:

> The State shall continue to provide all the forms and
> extent of <u>coverage</u> as defined by the <u>contracts</u> in
> force on April 1, 2007 with the <u>State health insurance</u>
> <u>carriers</u> unless specifically modified or replaced
> pursuant to this agreement.

7.1 statement ¶15 (emphasis added).

As is clear from the language of this section of the 2007-
11 CBA, the State promised the continuation of coverage.  The
introductory language merely establishes that the coverage in
the previous CBA, to the extent it is defined in the contracts
between the State and the insurance carriers, will continue
unless altered through negotiations.  7.1 statement ¶15.
Accordingly, what is continued are the benefits defined in the
contracts with the insurance carriers.  7.1 statement ¶16.

To the extent "continue" is read to mean continuation after
the expiration of the contract, the question then becomes what
"coverage" is to be continued.  The answer is the coverage that
is defined in the "contracts" (plural) "with the state health
and dental insurance carriers."  The State has promised to
continue to provide "coverage", not as defined in the prior CBA,

6

but in the State's contracts with the insurance carriers that provide coverage to State employees. Premium contribution rates are not a "forms and extent of coverage" under the New York State Health Insurance Plan. The "forms and extent of coverage" is defined in the contracts with the health insurance carriers. 7.1 statement ¶¶16, 23, 25, 31, 33. Those contracts do not define premium contribution terms. 7.1 statement ¶¶17, 34. Therefore, the term "forms and extent of coverage" cannot include within its scope premium contribution rates.

The contracts between the State and the health and dental insurance carriers contain no provision setting forth the premium contribution rates of employees or retirees. 7.1 statement ¶17, 34. Accordingly, to the extent that retirees can show that they have any vested right, such right would be only to continued coverage to the extent that coverage is defined in the State's contracts with the health and dental insurance carriers in effect on April 1, 2007. There is no guarantee of a perpetually fixed contribution rate.

Plaintiffs' claim necessarily requires an argument that the "contracts" mentioned in section 9.1 refers to the CBA that was in effect on March 31, 2007. This is an unworkable interpretation of section 9.1. First, section 9.1 plainly refers to "contracts", not a single contract. Second, the 2007-

7

11 RRSU CBA and all of its predecessors refer to themselves as the "Agreement", not the "contract".   7.1 statement ¶¶15, 20, 22, 24, 26, 28, 30, 32.   There is no plausible reason why section 9.1 of the 2007-11 RRSU CBA would diverge from the language that had been used for decades and refer to a prior CBA as "the contracts" rather than an "Agreement".

The sections of the RRSU CBA that set forth the specific premium contribution rates also support the interpretation that the CBAs do not guarantee a perpetual specific premium contribution rate.   Specifically, section 9.2(i) provides that "[t]he unremarried spouse of an employee, who retires after April 1, 1979, with ten or more years of active State service and subsequently dies, shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees."   7.1 statement ¶¶19, 36.   This provision demonstrates that, when a specific contribution rate is meant to be guaranteed into retirement, it is set forth expressly in the CBA.   No such contribution rates are referred to in section 9.1.

**ii.  No contractual relationship exists under the Court Unit contracts**

Plaintiffs assert that section 8.1 of the Court Unit 2007-11 CBA, and similar provisions of prior CBAs going back to 1983,

8

provided plaintiffs with a vested right to a perpetually fixed premium contribution rate for their health insurance coverage. Complaint ¶¶106, 120-22.  This incorrect.  The only right was that "[t]he State shall continue to provide health and prescription drug benefits administered by the Department of Civil Service."  7.1 statement ¶38; Compl. ¶55.  Accordingly, the extent of retirees' rights is "health and prescription drug benefits".  No right exists to such benefits at any specified level.  Current employees were further entitled to health and prescription drug benefits "at the same contribution level, in the same form and with the same co-payment structure that applies to the majority of represented Executive Branch employees".  Id.

Section 8.1 of the 2007-11 Court Union CBAs provides that:

The State shall continue to provide health and prescription drug benefits administered by the Department of Civil Service.  Employees enrolled in such plans shall receive health and prescription drug benefits to the same extent, at the same contribution level, in the same form and with the same co-payment structure that applies to the majority of represented Executive Branch employees.

7.1 statement ¶38.

In the 2007-11 Court Unit CBA, as in all prior CBAs, the only benefits that were guaranteed to "continue" were "health and prescription drug benefits".  That is it.  "Employees"

9

enrolled in health and prescription benefit plans were further
entitled to receive the same benefits as the majority of
Executive Branch employees.  The contract language "provided
Union members with two guarantees: First, they would continue to
receive health and prescription drug benefits; Second, they
would receive the same benefits on the same terms as the
majority of represented Executive Branch employees." New York
State Court Officers Association v. Hite, 851 F. Supp. 2d 575,
577 (S.D.N.Y. 2013) (the "NYSCOA" case).

In interpreting the identical contractual language in the
NYSCOA case, and rejecting the same arguments made in this case,
a court in the Southern District of New York held:

> Plaintiff's argument is refuted by the plain meaning
> of the words in Article 8.1 of the contract:
> "Employees... shall receive health and prescription
> drug benefits... at the same contribution level...
> that applies to the majority of represented Executive
> Branch employees."  The contract does not guarantee
> that Union members will receive health benefits at the
> rates set by Civil Service Law §167(1).  It guarantees
> that they will receive benefits at the same rates as
> the majority of executive branch employees.

Id. at 579.

It was unambiguous that the "Union's members bargained for
the same health insurance benefits as the majority of executive
branch employees." Id. at 580.  In that decision, the Southern
District court denied the plaintiff's motion for a preliminary

10

injunction, finding that the plaintiff failed to demonstrate a likelihood that it would succeed on its contract impairment claim.  Id. at 582.

Accordingly, although the Southern District court did not distinguish between current employees and retirees, its reasoning nevertheless demonstrates that the plaintiffs in this matter have no vested right to a perpetually fixed premium contribution rate for their health insurance coverage.  Because no contractual relationship exists, plaintiffs' Contract Clause claim must fail.

## B. Even if the Court finds a vested right, any such right has not been substantially impaired.

Should the court find that the plaintiffs have a vested right to a perpetually fixed premium contribution rate for their health insurance coverage, plaintiffs' Contract Clause claim should, nonetheless, be dismissed because plaintiffs can demonstrate no substantial impairment of that right.

The primary consideration in determining whether a contract impairment is substantial is the extent to which reasonable expectations under the contract have been disrupted.  Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 411 (1983).  The impairment of a contractual relationship is greatest where the challenged legislation was wholly unexpected.

11

Sanitation & Recycling Industry, Inc. v. City of New York, 107 F.3d 985, 993 (2d Cir. 1997).  Defendants submit that plaintiffs could have no reasonable expectation that the premium contribution rate for their health insurance coverage that was in effect at the time of their retirement would never change throughout their lives.

### i. Even if the RRSU plaintiffs do have a vested right to a perpetually fixed premium contribution rate, they can demonstrate no substantial impairment of that right.

As demonstrated above, any expectation of a perpetually fixed contribution rate in retirement was patently unreasonable according to the plain language of the RRSU CBAs.  As demonstrated in Point I(A)(i), those agreements guaranteed that the plaintiffs would receive the health insurance coverage that was in effect at the time of their retirement, but that the State's obligation to provide the premium contribution rates set forth in the CBA in effect at the time of retirement ceased upon the termination of the agreement.  Thus, the only reasonable expectation plaintiffs could have is that their contribution rates will be the same as those of current employees.

While the court may consider past practices in interpreting an ambiguous provision of a CBA (Marcic v. Reinauer Transportation Companies, 397 F.3d 120, 131-32 (2d Cir. 2005)), there is no place for extrinsic evidence here, where the terms

12

of section 9.1 are unambiguous (<u>Umbach v. Carrington Investment</u>
<u>Partners</u>, 851 F.3d 147, 157-58 (2d Cir. 2017)).

L. 1983 Ch. 14 could not have given the plaintiffs a
reasonable expectation that their health insurance premium
contribution rates would never increase (complaint ¶¶81-83).  On
the contrary, the provision in the law guaranteeing that those
who retired before January 1, 1983 would pay no contribution was
specifically negotiated on a unique occasion approximately 28
years before this action was commenced.  <u>See</u> Governor's Program
Bill memorandum, contained in Exhibit "16" submitted herewith;
7.1 statement ¶¶58-60.  It is true that, between 1983 and 2011,
there was no change in the contribution rate paid by retirees.
However, during that period, the State made no change to the
contribution rate paid by employees as well.  Thus, all that
this establishes is that, during the period in question, the
need never arose to make any changes to the premium contribution
rates.

Finally, plaintiffs' purported expectation that their
health insurance premium contributions would never increase was
neither reasonable nor realistic given the constant, unrelenting
increases in health insurance costs.

### ii. Even if Court Unit retiree plaintiffs do have a vested right to the same benefits as the majority of represented Executive Branch employees, they can demonstrate no substantial impairment of that right.

This Court should find, as the Southern District court did in the NYSCOA case, that it was not necessary to examine whether the claimed contractual right in the Court Unit CBAs was impaired, because no such right could be found in the plain terms of the contract.  NYSCOA, 851 F. Supp. 2d at 582. However, to the extent that Court Unit retiree plaintiffs could claim a right to a continue paying the previous premium contribution rates after October 1, 2011, plaintiffs' Contract Clause claim should, nonetheless, be dismissed since plaintiffs can demonstrate no substantial impairment of that right.

As demonstrated above, any expectation of a perpetually fixed contribution rate in retirement was patently unreasonable according to the plain language of the Court Unit CBAs.  As demonstrated in Point I(A), those agreements guaranteed only that current employees would receive benefits at the same levels as received by the majority of represented Executive Branch employees and retirees would continue to receive health and prescription benefits administered by the Department of Civil Service.  Thus, the only reasonable expectation retiree plaintiffs could have is that their health and prescription

14

benefits would continue.

To the extent retiree plaintiffs could reasonably expect
their contribution rates to be the same as those of represented
Executive Branch employees, they can demonstrate no substantial
impairment of that right. As of December 1, 2011, there was no
question that a majority of represented Executive Branch
employees were subject to the revised premium contribution
rates. See 7.1 statement ¶¶45, 56. Between October 1, 2011,
when the revised premium contribution rates were applied to
retirees, and December 1, 2011, when the majority of Executive
Branch employees were subject to the revised rates, retirees
paid a total of $21 for individual coverage and $57 for family
coverage. 7.1 statement ¶57. Thus, even if retiree plaintiffs
were entitled to the rates paid by the majority of Executive
Branch employees prior to December 1, 2011, their contractual
rights were not substantially impaired.

To the extent the retiree plaintiffs may rely on alleged
past practices, their reliance is misplaced. If the court were
to consider past practices, "those practices would not place
this plain meaning in doubt: although it may be true that the
Union members' contribution rates had not changed for twenty-
eight years, that simply reflects the fact that the contribution
rates of the majority of executive branch employees had not

15

changed during that time period either." <u>NYSCOA</u>, 851 F. Supp. 2d at 580.

Nor could L. 1983 Ch. 14 have given the plaintiffs a reasonable expectation that their health insurance premium contribution rates would never increase. <u>See</u> <u>supra</u>, Point I(B)(i).

## C. L. 2011 Ch. 491 served a legitimate public purpose and the means chosen to accomplish that purpose were reasonable and necessary.

Should the Court find that either the RRSU plaintiffs or the Court Unit plaintiffs had a right to continue paying the previous premium contribution levels, plaintiffs' Contract Clause claim should, nonetheless, be dismissed since L. 2011 Ch. 491 served a legitimate public purpose and the means chosen to accomplish that purpose were reasonable and necessary.

Even if a State regulation constitutes a substantial impairment, a Contracts Clause violation may not be found if a law "serves a legitimate purpose such as remedying a general social or economic problem and the means chosen to accomplish this purpose are reasonable and necessary." <u>Buffalo Teachers Federation</u>, 464 F.3d at 368. <u>See also</u> <u>Energy Reserves Group, Inc. v. Kansas Power and Light Co.</u>, 459 U.S. 400, 412-13 (1983). In order for a law that impairs a State contract to be reasonable and necessary, it must be shown that the State did

16

not: (1) consider impairing the contract on par with other policy alternatives; (2) impose a drastic impairment when an evident and more moderate course would serve its purpose equally well; or (3) act unreasonably in light of the surrounding circumstances.  Buffalo Teachers Federation, 464 F.3d at 371.

The Legislature enacted L. 2011 Ch. 491 in an effort to close a multi-billion budget gap caused by the Great Recession. 7.1 statement ¶¶61-64.  Thus, it cannot be seriously disputed that the Legislature's public purpose in enacting this law was legitimate.  See Buffalo Teachers Federation v. Tobe, 464 F.3d at 369 ("[C]ourts have often held that the legislative interest in addressing a fiscal emergency is a legitimate public interest."); Kirshner v. United States, 603 F.2d 234, 239 (2d Cir. 1978), cert. denied, 442 U.S. 909 (1979) (no Contract Clause violation where the State's purpose in enacting legislation modifying contract rights was to protect the fiscal integrity of the City of New York).[2]

That the means chosen to accomplish the legitimate public purpose of addressing this catastrophic fiscal emergency were reasonable and necessary is demonstrated by the fact that the

---

[2]In Buffalo Teachers Federation, the court noted that "[i]t cannot be the case, however, that a legislature's only response to a fiscal emergency is to raise taxes.  464 F.3d at 372 (emphasis in original).

challenged statute was enacted after the Division of the Budget
had developed and considered numerous cost savings proposals.
Moreover, the minimal reduction in the State's contribution to
health insurance premiums was but one part of a wide range of
measures adopted by the State which allocated savings all across
the State's functions without disproportionally affecting any
particular State activity.   7.1 statement ¶¶64-87.

Of course, no agency wants the funding for any of its
programs to be reduced.   However, in order to close the multi-
billion budget gap, the State had to make hard choices and,
accordingly, was forced to cut costs all across the board.
Since a range of State operations were subject to budget cuts,
it cannot be said that a more moderate course would have served
the State's legitimate public purpose of reducing the mounting
deficit equally well.

Finally, to the extent plaintiffs seek to rely on Donohue
v. Paterson, 715 F. Supp. 2d 306 (N.D.N.Y. 2010), the court
should not be persuaded.   The only common fact between Donohue
and this case is the undisputed fiscal emergency.   On every
other point, the two cases are starkly distinct.   The Donohue
court considered the unpaid furloughs and a wage and benefits
freeze to be "drastic".   Id. at 322.   Donohue involved
admittedly "extraordinary actions", namely, the "massive

18

furloughing and wage freeze of tens of thousands of workers",
which included a "permanent 20% loss in salary and wages".  Id.
at 315-16.  Here, at issue is a much more modest measure, a
narrowly tailored percentage increase solely to health insurance
premium contributions, with the eighty-plus percent balance
still paid by the State.  There is no reasonable comparison
between the measures at issue in Donohue and the narrow, modest
premium contribution shift at issue here.

Moreover, of paramount importance to the Donohue court was
the lack of legislative endorsement for the drastic measures.
See, e.g., id. at 322-23.  No such concerns are implicated here,
where L. 2011 Ch. 491 was duly enacted by the Legislature
according to the "ordinary course of [the State's]
constitutional process."  Donohue, 715 F. Supp. 3d. at 321.  In
Donohue, the provisions were imposed by extender bills, on a
"take-it-or-leave" it basis, over the Legislature's emphatic
opposition (id. at 323) and the Senate "denie[d] the legitimacy
of the contractual impairments" created by the extender bills
(id. at 320).  The measures "were the sudden and sole work of
the Executive and were proposed in a manner that largely
precluded legislative deliberation."  Id.  Here, the premium
contribution shift was authorized by duly enacted legislation.

In Donohue, the court viewed the record as lacking

sufficient showing of "consideration of needs and alternatives."
Id. at 324.  Here, the premium shift was but one of numerous
proposals considered and enacted.  7.1 statement ¶¶69-82.
Unlike in Donohue, here "the Executive and Legislative bodies
have, in their respective capacities, assessed what actions best
serve the public good...."  Id. at 321.  In Donohue, the court
found that the State did not show that it lacked reasonable
alternatives.  Id. at 322-23.  Here, defendants have shown that
reasonable alternatives have been exhausted.  The premium shift
was but one of numerous necessary measures that affected a range
of State activities.  7.1 statement ¶¶69-82.

Further, in Donohue, there was no question that the
measures enacted were expressly "in contravention of a number
of" collective bargaining agreements.  Id. at 314.  Here, the
imposition of the premium contribution shift is not in
contravention of any identifiable contractual language.

Based upon the foregoing, the first cause of action should
be dismissed.

## Point II

### DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' BREACH OF CONTRACT CLAIM (SECOND CAUSE OF ACTION)

Defendants are entitled to summary judgment on plaintiffs'
breach of contract claim (second cause of action).  First, the

20

court should decline to exercise pendent jurisdiction over
plaintiffs' state law breach of contract claim.  Second, if the
court exercises jurisdiction, that claim should be dismissed in
any event because it has no merit.

**A. Because there is no viable federal cause of action, the court
should decline to exercise jurisdiction over plaintiffs'
state law breach of contract claim.**

It is well settled that, where a plaintiff's federal claims
are dismissed before trial, the court should not exercise
jurisdiction over any pendent state law claims and those claims
should be dismissed as well.  Brzak v. United Nations, 597 F.3d
107, 113-14 (2d Cir. 2010).  See also United Mine Workers of
America v. Gibbs, 383 U.S. 715, 726 (1966) ("Certainly, if the
federal claims are dismissed before trial... the state claims
should be dismissed as well.").

Although the decision whether to exercise pendent
jurisdiction is within the discretion of the court, "[i]n the
usual case in which all federal-law claims are eliminated before
trial, the balance of factors... will point toward declining to
exercise jurisdiction over the remaining state-law claims."
Keady v. Nike, Inc., 23 Fed. Appx. 29, 32 (2d Cir. 2001)
(quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350
(1988)).

21

**B. The court should dismiss the breach of contract claim in any event because it has no merit.**

The essential elements of a State law cause of action for breach of contract are "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."  A party alleging a breach of contract must "demonstrate the existence of a... contract reflecting the terms and conditions of their... purported agreement."  Canzona v. Atanasio, 118 A.D.3d 837, 838-39 (2d Dept. 2014).  The plaintiff must "identify the provisions of the contract that were breached."  Barker v. Time Warner Cable, Inc., 83 A.D.3d 750, 751 (2d Dept. 2011).

For the reasons set forth above demonstrating that there was no impairment of any contract, see supra, Point I(A), there has been no breach of contract because there is no contractual term guaranteeing a perpetual premium contribution rate. Accordingly, even if the court exercises jurisdiction over plaintiffs' state law breach of contract claim, plaintiffs' failure to support the first essential element of that claim -- the existence of a contract -- requires dismissal of the second cause of action.

## Point III

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFFS' FEDERAL AND STATE DUE PROCESS
CLAIMS (THIRD AND FIFTH CAUSES OF ACTION)**

Defendants are entitled to summary judgment on plaintiffs' Due Process claims (third and fifth causes of action) because: (A) plaintiffs do not have a constitutionally protected property right in a perpetually fixed premium contribution rate; (B) plaintiffs had an adequate state court remedy of which they failed to avail themselves; and (C) plaintiffs' New York State-based due process claim must be dismissed because the State Constitution does not provide for a private right of action where other remedies, including 42 U.S.C. §1983, are available.

**A. Plaintiffs do not have a constitutionally protected property right in a perpetually fixed premium contribution rate.**

A plaintiff asserting a due process violation must demonstrate that "he or she possesses a liberty or property interest protected by the Constitution or federal statutes" and that "he or she was deprived of a property or liberty interest without having received notice and an opportunity to be heard regarding the deprivation." Waltz v. Board of Education of the Hoosick Falls Central School District, 2013 U.S. Dist. LEXIS 129089, at *19 (N.D.N.Y.). As demonstrated in Point I, plaintiffs have not identified a term in any of the CBAs

23

guaranteeing premium contributions at a fixed rate in
perpetuity.  However, even if any of the CBAs contained such a
term, that term still would not create a constitutionally
protected property right.

As the Supreme Court has explained, "[t]o have a property
interest in a benefit, a person clearly must have more than an
abstract need or desire for it.  He must have more than a
unilateral expectation of it.  He must, instead, have a
legitimate claim of entitlement to it."  Board of Regents v.
Roth, 408 U.S. 564, 577 (1972).  The Second Circuit has warned
against an expansive reading of "entitlement" and against
affording due process protections to all public contract rights.
See S & D Maintenance Co., Inc. v. Goldin, 844 F.2d 962, 966 (2d
Cir. 1988) ("If the concept of 'entitlement' were [applied to
all public contractual rights], federal courts could be asked to
examine the procedural fairness of every action by a state
alleged to be in breach of its contracts.").  The Second Circuit
went on to explain that, in the cases where a public contract
term is found to create a property interest:

> the Due Process Clause is invoked to protect something
> more than an ordinary contractual right.  Rather,
> procedural protection is sought in connection with a
> state's revocation of a status, an estate within the
> public sphere characterized by a quality of either
> extreme dependence in the case of welfare benefits, or
> permanence in the case of tenure, or sometimes both,

24

as frequently occurs in the case of social security
benefits.

Id. (emphasis in original).

Plaintiffs do not have a property interest in the
difference between the premium contribution they paid previously
and the percentage they currently pay.  Rather, the claimed
differential in the portion of the health insurance premium
contribution is squarely within the type of benefit that the
courts have found do not constitute property rights.  See
Costello v. Town of Fairfield, 811 F.2d 782, 784 (2d Cir. 1987)
(finding no constitutionally protected property interest in
alleged contractual increase in municipal retirement benefits,
explaining, "[a] contract dispute... does not give rise to a
cause of action under section 1983...."); Miller v. New York
City Department of Education, 622 Fed. Appx. 38, 39 (2d Cir.
2015) (finding no property interest in specific disciplinary
procedures in collective bargaining agreement); AFSCME, Local
264 v. Tobe, 2011 U.S. Dist. LEXIS 145728, *21-22 (W.D.N.Y.)
(finding no property interest in contractual wage increases).

Only where a benefit has been denied entirely have courts
found a property interest premised on a benefit conferred in a
public contract.  See Jackson v. Roslyn Board of Education, 652
F. Supp. 2d 332 (E.D.N.Y.) (finding a property right where

25

plaintiff was denied disability retirement benefits and distinguishing cases involving specific types of benefits). Rather, courts have consistently found that there is no constitutionally guaranteed right to a particular level or type of health care benefit in retirement.  See, e.g., Lawrence v. Town of Irondequoit, 246 F. Supp. 2d 150 (W.D.N.Y. 2002).

To the extent that plaintiffs rest their property interest argument on Civil Service law §167(1), prior to the amendments to Civil Service Law §167(8), their argument must fail. Plaintiffs' argument necessarily requires the court to find that the legislature may not amend statutes that set forth particular terms of government benefits.  The court should decline this invitation.  See Pineman v. Fallon, 662 F. Supp. 1311, 1318 (D. Conn. 1987) ("[G]enerally courts have sought to avoid interpreting statutory benefit programs as waiving the exercise of sovereign power to amend the statute in the future.").  Civil Service Law §167(1) simply implemented collectively bargained terms, none of which applied to retirees.  See Governor's Program Bill memorandum, contained in Exhibit "16" submitted herewith.  The statute did not confer any rights.

Accordingly, plaintiffs do not have a constitutionally protected property right in a perpetually fixed premium contribution rate and their Fourteenth Amendment due process

claim should be dismissed.

## B. Plaintiffs cannot show they were denied due process because they had an adequate state court remedy of which they failed to avail themselves.

Even if plaintiffs had identified a deprivation of a

property interest (which they have not), they still have no due

process claim because they had an available post-deprivation

remedy, which satisfies all due process requirements.  It is

well established that:

> Article 78 of the CPLR provides an adequate post-deprivation procedure to satisfy the requirements of constitutional due process where the deprivation of a property interest... arises from random and unauthorized conduct of a government actor rather than from established state procedures.

Gilmore v. Bouboulis, 2016 U.S. Dist. LEXIS 115315, *37

(N.D.N.Y.).  See also Hellenic American Neighborhood Action

Committee v. City of New York, 101 F.3d 877, 882 (2d Cir. 1996)

("[T]here is no constitutional violation (and no available §1983

action) when there is an adequate state postdeprivation

procedure to remedy a random, arbitrary deprivation of property

or liberty." (citing Zinermon v. Burch, 494 U.S. 113, 132

(1990))); Riano v. Town of Schroeppel, 2015 U.S. Dist. LEXIS

104328, *12 (N.D.N.Y.) ("New York State statutes provide an

opportunity for full and complete judicial review of all

administrative determinations.  The availability of such

judicial review satisfies the dictates of procedural due process."); Waltz, 2013 U.S. Dist. LEXIS 129089, *20 ("Where adequate pre-deprivation and post deprivation remedies are available under state law, a party may not prevail on his due process claim.").

Plaintiffs could have availed themselves of a remedy by commencing an article 78 proceeding in state court, which would have had jurisdiction over such a claim if it had been timely filed. Plaintiffs could have asserted their due process claim in an article 78 proceeding, which "provides a hearing and means of redress for petitioners and, in such a proceeding, constitutional issues can be decided." Horton v. Board of Education of the Sherburn-Earlville Central School District, 2017 U.S. Dist. LEXIS 60719, *11 (N.D.N.Y.) (citing Hellenic, 101 F.3d at 881). That plaintiffs erroneously filed an Article 78 claim with this Court, which plainly does not have jurisdiction over such a claim (see docket no. 19 pp. 18-21), does not revive their due process claim.

Plaintiffs do not allege that their premium contributions were increased as a result of a systemic failure. Rather, plaintiffs assert that defendants on a single occasion unilaterally increased the amounts of plaintiffs' premium contribution without notice or an opportunity to be heard. See,

28

e.g., compl. ¶142.  Because plaintiffs allege no facts that
would entitled them to a pre-deprivation hearing, the only
relevant question is whether an adequate post-deprivation remedy
was available.  Hellenic, 101 F.3d 877, 880-82.  It
unquestionably was.  See, e.g., Gilmore, 2016 U.S. Dist. LEXIS
115315, *37.

Accordingly, plaintiffs' failure to properly avail
themselves of an Article 78 proceeding – in state court, where
such a claim could have been heard – is fatal to their due
process claim.  See, e.g., id. at *40-41 (dismissing due process
claim, concluding that the plaintiffs "failed to allege facts
plausibly suggesting a due process violation arising from
established state procedures, and... an Article 78 proceeding
would have afforded sufficient relief to satisfy constitutional
due process requirements....");  Waltz, 2013 U.S. Dist. LEXIS
129089 at *20 ("Where adequate pre-deprivation and post
deprivation remedies are available under state law, a party may
not prevail on his due process claim.").

**C. Plaintiffs' New York State-based due process claim must be
  dismissed because the State Constitution does not provide for
  a private right of action where other remedies, including 42
  U.S.C. §1983, are available.**

In their fifth cause of action, plaintiffs also purport to
assert a due process claim pursuant to Article I §6 of the New

29

York State Constitution.  Complaint ¶168.  However, plaintiffs'
claim that the change to their premium contribution rate
violates the State Constitution must be dismissed because
plaintiffs are able to assert, and have asserted, a due process
claim pursuant to 42 U.S.C. §1983.

It is settled among courts in all four districts within the
New York State that "there is no right of action under the New
York State Constitution for claims that can be brought under
§1983." Jordan v. County of Chemung, 2017 U.S. Dist. LEXIS
143215, *60-61 (W.D.N.Y.) (quoting Dava v. City of New York,
2016 U.S. Dist. LEXIS 115639, *31-32 (S.D.N.Y.)).  See also
Glass v. New York, 2017 U.S. Dist. LEXIS 63827, *12 n.9
(N.D.N.Y.) (holding that claims arising out of the State
Constitution "are only permitted when it is determined that the
plaintiffs have no alternative remedies that would protect their
interests." (internal quotation marks omitted)); Gounden v. City
of New York, 2015 U.S. Dist. LEXIS 134887, *13 n.3 (E.D.N.Y.).

Plaintiffs have unquestionably asserted causes of action
pursuant to 42 U.S.C. §1983.  Their Fourteenth Amendment due
process claim as well as their core claim, the contract
impairment claim (first cause of action) are necessarily
asserted pursuant to 42 U.S.C. §1983.  See Myers v. Wollowitz,
1995 U.S. Dist. LEXIS 5297, *3 (N.D.N.Y.) ("42 U.S.C. §1983 is

the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.").

To the extent that plaintiffs could assert a due process claim pursuant to the State Constitution, it would fail for the same reasons as their federal due process claim -- plaintiffs do not identify a property interest in a specific premium contribution rate in perpetuity, and due process is satisfied because they had an adequate state court remedy.  See supra, Point II(A)-(B).  But plaintiffs' State constitutional due process claim must be dismissed at the outset because such a cause of action is not recognized.

### Point IV

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' CLAIM THAT DEFENDANTS HITE AND MEGNA VIOLATED ARTICLE III §1 OF THE STATE CONSTITUTION SIXTH CAUSE OF ACTION)**

In their sixth cause of action, plaintiffs allege that defendants Hite and Megna violated Article III §1 of the State Constitution when they extended the premium contribution changes pursuant to the authority granted to them in Civil Service Law §167(8).  For the reasons stated in Point II(A), the court should decline to exercise jurisdiction over this state law claim which.  In any event, this claim has no merit because defendants Hite and Megna acted in accordance with the express

terms of Civil Service Law §167(8).

Article III §1 states that the "Legislative power of this state shall be vested in the senate and assembly. Civil Service Law §167(8), duly enacted by the Legislature, states: "The president, with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement referenced above and shall promulgate the necessary rules or regulations to implement this provision." Defendants Hite and Megna acted according to this express authority. 7.1 statement ¶¶49-54. Plaintiffs allege that defendants Hite and Megna violated Civil Service Law 167(1), but this argument necessarily asks the court to ignore the plain language of §167(8), which begins, "[n]otwithstanding any inconsistent provision of law...." This argument has been rejected. See Retired Public Employees Association, Inc. v. Cuomo, 2012 N.Y. Misc. LEXIS 5714, *9-10 (Sup. Ct. Albany Co. 2012) ("Phrases such as 'notwithstanding any provision of law to the contrary'... are verbal formulations frequently employed by the Legislature where it intends to preempt any other potentially conflicting statute.... Thus, where implementation of Civil Service Law §167(8)'s provisions results in different levels of contribution from those that would result from applying other laws such as

32

Civil Service Law § 167(1)(a), Civil Service Law § 167(8)'s

provisions takes precedence.").

Accordingly, defendants Hite and Megna's express

authorization to act pursuant to §167(8) existed

"notwithstanding" any other provision of law, including section

167(1).

### CONCLUSION

FOR ALL THE FOREGOING REASONS, DEFENDANTS
ARE ENTITLED TO SUMMARY JUDGMENT DISMISSING
THE AMENDED COMPLAINT.

Dated: Albany, New York
       November 3, 2017

Yours, etc.,

ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
Attorney for Defendants
By:

RICHARD LOMBARDO
Special Litigation Counsel
Bar Roll No. 513915
The Capitol
Albany, New York 12224
(518) 776-2624
richard.lombardo@ag.ny.gov

33