UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

LILLIAN ROBERTS as Executive Director of District
Council 37, AFSCME, AFL-CIO, DISTRICT
COUNCIL 37, AFSCME, AFL-CIO, DENNIS IFILL,
As President of Rent Regulation Services Unit
Employees, Local 1359, District Council 37, AFSCME,
AFL-CIO, THE RENT REGULATION SERVICES
UNIT EMPLOYEES, LOCAL 1359, CLIFFORD
KOPPELMAN, as President of the Court, County and
Department of Probation Employees Unit, Local 1070,
THE COURT, COUNTY, AND DEPARTMENT OF
PROBATION EMPLOYEES UNIT, LOCAL 1070
and MILDRED BROWN, SHANOMAE WILTSHIRE,
NORMA GALLOWAY, CHARMAINE HARDAWAY,
MAURICE BOUYEA, STEVEN SCHWARTZ, on
Behalf of themselves and all others similarly situated,

                 Plaintiffs,

-against-

THE STATE OF NEW YORK, ANDREW M. CUOMO,
as Governor of the State of New York, NEW YORK
STATE CIVIL SERVICE DEPARTMENT, PATRICIA
AA. HITE, as Acting Commissioner, New York State
Civil Service Department, NEW YORK STATE CIVIL
SERVICE COMMISSION, CAROLINE W. AHL, and
J. DENNIS HANRAHAN, as Commissioners of the New
York State Civil Service Commission, ROBERT L.
MEGNA, as Director of the New York State Division of
the Budget, and THOMAS P. DINAPOLI, as
Comptroller of the State of New York, and NEW YORK
STATE AND LOCAL RETIREMENT SYSTEM,

                 Defendants.
-----------------------------------------------------------------

PLAINTIFFS' LOCAL
RULE 56.1 RESPONSE TO
DEFENDANTS' STATEMENT
OF MATERIAL FACTS AND
STATEMENT
OF ADDITIONAL FACTS
REQUIRING DENIAL OF
DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

12-cv-0046 (MAD/CFH)

Pursuant to Rule 7.1 of the Local Civil Rules for the United States District Court for the Northern District of New York, Plaintiffs Lillian Roberts, District Council 37, AFSCME, AFL-CIO, Dennis Ifill, Local 1359, District Council 37, AFSCME, AFL-CIO, the Rent Regulation Services Unit Employees ("RRSU"), Local 1359, Clifford Koppelman, Local 1070, the Court,

County and Department of Probation Employees Unit ("Court Unit"), Mildred Brown, Shanomae Wiltshire, Norma Galloway, Charmaine Hardaway, Maurice Bouyea, and Steven Schwartz, by and through their attorney, ROBIN ROACH, GENERAL COUNSEL, Erica Gray-Nelson, of Counsel, submit their Local Rule 56.1 Response to Defendants' Statement of Material Facts, and Local Rule 56.1 Statement of Additional Material Facts Requiring the Denial of Defendants' Motion for Summary Judgment as follows:

1. Admit that Lillian Roberts was the Executive Director of Plaintiff District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO but deny that the Complaint was dated January 10, 2010.[1]

2. Admit the statement asserted in Paragraph 2.

3. Admit the statement asserted in Paragraph 3.

4. Admit the statement asserted in Paragraph 4.[2]

5. Admit the statement asserted in Paragraph 5.

6. Admit the statement asserted in Paragraph 6.

7. Admit the statement asserted in Paragraph 7.

8. Deny the statement asserted in Paragraph 8 to the extent that Plaintiffs cannot determine the identities of the named individuals.

9. Admit the statement asserted in Paragraph 9.

10. Admit Defendant Patricia Hite was given the title of "Acting Commissioner" of the New York State Department of Civil Service in 2011, but deny that she was properly appointed to serve in this role.

---

[1] During the pendency of this lawsuit, Lillian Roberts was succeeded by Henry Garrido as Executive Director of District Council 37, AFSCME, AFL-CIO.
[2] During the pendency of this lawsuit, Clifford Koppelman was succeeded by Fausto Sabatino as President of Local 1070, District Council 37, AFSCME, AFL-CIO.

11. Admit the statement asserted in Paragraph 11.

12. Admit the statement asserted in Paragraph 12.

13. Admit the statement asserted in Paragraph 13.

14. Admit the statement asserted in Paragraph 14, and respectfully refer the Court to the true and complete copy of the 2007-2011 RRSU CBA annexed to the Gray-Nelson Affirmation, dated December 20, 2017, as Exhibit A.

15. Admit that Section 9.1 of the 2007-2011 RRSU collective bargaining agreement contains the language as stated; however, deny Defendants' representation of the stated language as interpreted by a previously undisclosed witness.

16. Deny to the extent that the alleged "contracts in force on April 1, 2007 with the State's health insurance carriers" were not produced during discovery or otherwise and, as such, there is no basis upon which to make a determination as to the meaning of the stated contract language.

17. Deny to the extent that the alleged "contracts between the State and any insurance carriers" were not produced during discovery or otherwise and, as such, there is no basis upon which to make a determination as to the content of such contracts.

18. Admit the statement asserted in Paragraph 18.

19. Admit the statement asserted in Paragraph 19.

20. Admit the statement asserted in Paragraph 20.

21. Deny to the extent that the alleged "contracts in force on April 1, 2003 with the State's health insurance carriers" were not produced during discovery or otherwise and, as such, there is no basis upon which to make a determination as to the content of such contracts.

22. Admit that Section 9.1 of the 1999-2003 RRSU collective bargaining agreement contains the language as stated; however, deny Defendants' representation of the stated language as interpreted by a previously undisclosed witness.

23. Deny to the extent that the alleged "contracts in force on April 1, 1999 with the State's health insurance carriers" were not produced during discovery or otherwise and, as such, there is no basis upon which to make a determination as to the meaning of the stated contract language.

24. Admit that Section 9.1 of the 1995-1999 RRSU collective bargaining agreement contains the language as stated; however, deny Defendants' representation of the stated language as interpreted by a previously undisclosed witness.

25. Deny to the extent that the alleged "contracts in force on March 31, 1995 with the State's health insurance carriers" were not produced during discovery or otherwise and, as such, there is no basis upon which to make a determination as to the meaning of the stated contract language.

26. Admit that Section 9.1 of the 1991-1995 RRSU collective bargaining agreement contains the language as stated; however, deny Defendants' representation of the stated language as interpreted by a previously undisclosed witness.

27. Deny to the extent that the alleged "contracts in force on March 31, 1991 with the State's health insurance carriers" were not produced during discovery or otherwise and, as such, there is no basis upon which to make a determination as to the meaning of the stated contract language.

28. Admit the statement asserted in Paragraph 28.

29. Deny to the extent that the alleged "contracts in force on March 31, 1988 with the State's health insurance carriers" have not been produced during discovery or otherwise and, as such, there is no basis upon which to make a determination as to the meaning of the stated contract language.

30. Admit that Section 9.1 of the 1985-1988 RRSU collective bargaining agreement contains the language as stated; however, deny Defendants' representation of the stated language as interpreted by a previously undisclosed witness.

31. Deny to the extent that the alleged "contracts in force on March 31, 1985, with the State's health insurance carriers" were not produced during discovery or otherwise and, as such, there is no basis upon which to make a determination as to the meaning of the stated contract language.

32. Admit that Section 9.1 of the 1984-1985 RRSU collective bargaining agreement contains the language as stated; however, deny Defendants' representation of the stated language as interpreted by a previously undisclosed witness.

33. Deny to the extent that the alleged "contracts in force on April 1, 1984 with the State's health insurance carriers" were not produced during discovery or otherwise and, as such, there is no basis upon which to make a determination as to the meaning of the stated contract language.

34. Deny to the extent that the alleged "contracts between the State and the health insurance providers including those in purportedly in force from 1984 through 2011" were not produced during discovery or otherwise and, as such, there is no basis upon which to make a determination as to their contract provisions and/or contents.

35. Admit the statement asserted in Paragraph 35.

36. Admit the statement asserted in Paragraph 36.

37. Admit the statement asserted in Paragraph 37, and respectfully refer the Court to the true and complete copy of the 2007-2011 Court Unit CBA annexed to the Gray-Nelson Affirmation as Exhibit B.

38. Admit the statement asserted in Paragraph 38.

39. Admit the statement asserted in Paragraph 39.

40. Admit the statement asserted in Paragraph 40, and respectfully refer the Court to the copy of the Press Release annexed to the Lynch Declaration as Exhibit 10 for a true and accurate statement of the contents therein.

41. Deny to the extent that Plaintiffs cannot confirm when the CBA between CSEA and the State covering the period 2011-2016 was actually signed or verify its contents.

42. Deny knowledge or information sufficient to form a belief as to the veracity of the stated language purportedly taken from the 2011-2016 CBA between CSEA and the State.

43. Deny to the extent that Plaintiffs cannot confirm when the Public Employees Federation announced that its members ratified said agreement with the State, and respectfully refer the Court to the Press Release annexed to the Lynch Declaration as Exhibit 12 for a true and accurate statement of the contents therein.

44. Deny knowledge or information sufficient to form a belief as to the veracity of the statement.

45. Admit the statement asserted in Paragraph 45.

46. Admit the statement asserted in Paragraph 46.

47. Admit that Civil Service Law Section 167(8) was amended as stated, but deny that the copy of the Bill annexed to the Lynch Declaration as Exhibit 14 is dated August 17,

2011, and respectfully refer the Court to the copy for a true and accurate statement of the contents therein.

48. Admit the statement asserted in Paragraph 48, and respectfully refer the Court to the copy of the Bill annexed to the Lynch Declaration as Exhibit 14 for a true and accurate statement of its contents.

49. Deny to the extent that Defendant Hite was never duly authorized pursuant to statutory authority to extend the modified rates as stated in Paragraph 49. However, admit that the letter sets forth the purported rate increases for retirees from State service after January 1, 1983, but prior to January 1, 2012.

50. Admit that the record contains a letter dated September 22, 2011, purportedly signed by Defendant Megna. However, Plaintiffs cannot confirm that the referenced letter was signed by Defendant Megna as asserted in Paragraph 50.

51. Deny that Defendant Hite was vested with the authority pursuant to Civil Service Law §§ 160(1), 161-1 and 167(8) to adopt the referenced Resolution, dated September 27, 2011.

52. Admit that the purported Resolution contains the statements as asserted in Paragraph 52.

53. Admit that the Defendants imposed the terms detailed in the purported Resolution, effective October 1, 2011.

54. Deny that Defendant Hite had the authority to certify the adoption of the proposed amendments on an emergency basis; however, admit that the record contains the purported Certification, dated September 27, 2011.

55. Admit the statement asserted in Paragraph 55.

56. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted in Paragraph 56 by a previously undisclosed witness.

57. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted in Paragraph 57.

58. Admit the statement asserted in Paragraph 58.

59. Admit the statement asserted in Paragraph 59.

60. Admit that the 1983 law was enacted to implement agreements reached through collective bargaining; however, deny that there was an express agreement between DC 37 and the State stating the State would continue to pay 100% of the health insurance premium contributions for those who retired prior to January 1, 1983.

61. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 61.

62. Deny knowledge or information sufficient to form a belief as to the veracity of the statement by a previously undisclosed witness in Paragraph 62.

63. Admit the statement asserted in Paragraph 63.

64. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 64.

65. Admit that the State reduced its share of the costs for health insurance premiums for Fiscal year 2011-2012, but deny knowledge or information sufficient to confirm the veracity of other statements asserted by a previously undisclosed witness in Paragraph 65.

66. Deny knowledge of information sufficient to confirm the veracity of the statement asserted by a previously undisclosed witness in Paragraph 66.

67. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 67.

68. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 68.

69. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 69.

70. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 70.

71. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 71.

72. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 72.

73. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 73.

74. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 74.

75. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 75.

76. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 76.

77. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 77.

78. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 78.

79. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 79.

80. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 80.

81. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 81.

82. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 82.

83. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 83.

84. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 84.

85. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted by a previously undisclosed witness in Paragraph 85.

86. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted in Paragraph 86, and further state that Defendant Hite testified that the proposal to increase the contribution rates originated within the Governor's Office. See Gray-Nelson Affirm Exhibit E at 67:12-14.

87. Deny that the State's unilateral increase in the contribution rates for members and retirees resulted in minimal additional costs to members and retirees. Declaration of Steven Schwartz at ¶¶ 17-18.

88. Admit that the record contains a document entitled "Designation of Deputy", dated December 22, 2010, which indicates that Nancy Groenwegen, the then Commissioner and head of the New York State Department of Civil Service, purportedly designated certain persons as her deputies to act in her absence from office as head of the New York State Civil Service.

89. Admit that the Designation of Deputy was filed on December 22, 2010; however, deny that it bestowed on Defendant Hite the statutory authority and powers to act as Commissioner or President of the Department of Civil Service. And further, the Public Officer OATH/Affirmation also attached to the Lynch Declaration shows Defendant Hite's position title that she swore to faithfully discharge as "Director, Division of Classification and Compensation." Lynch Decl. Exhibit 20 at 3.

90. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted in Paragraph 90; however, admit that the Designation of Deputy dated December 22, 2010 list Defendant Hite as number 1 on a list of three individuals to serve in the purported role.

91. Admit the statement asserted in Paragraph 91.

92. Admit that following Commissioner Groenwegen's departure from the New York State Department of Civil Service on December 22, 2010, Defendant Hite was given the title "Acting Commissioner" of the Department.

93. Deny to the extent that Defendant Hite was not a member of the Civil Service Commission by virtue of her Public Officer OATH/Affirmation, which states her duty and responsibilities as Director of the Division of Classification and Compensation executed on December 22, 2010, the same day she was purportedly designated to serve as Acting Commissioner of the New York State Department of Civil Service. Lynch Decl. Exhibit 20 at 3.

11

94. Admit that Defendant Hite was given the title "Acting Commissioner" until Commissioner Groenwegen's successor was appointed.

95. Deny knowledge or information sufficient to form a belief as to the veracity of the statement asserted in Paragraph 95; however, to the extent that these statements suggest that Defendant Hite had the proper authority to take the actions asserted, further deny that Defendant Hite possessed the statutory authority and powers of a duly designated commissioner to pursue said actions.

96. Deny knowledge or information sufficient to form a belief as to the veracity of the statement and further dent that Defendant Hite possessed the statutory authority and powers of a duly designated commissioner to take the actions asserted in Paragraph 96.

97. Deny the statement asserted in Paragraph 97.

98. Admit that the record contains a letter dated September 21, 2011 from Defendant Hite to Defendant Megna purporting to extend the modified State premium contribution rates to unrepresented employees and retirees; however, deny that Civil Service Law § 167(8) authorized Defendant Hite to take this action.

99. Admit that the record contains a Resolution dated September 27, 2011 purporting to amend subdivision (b) of section 73.3 of Title 4 of the New York Code of Rules and Regulations; however, deny that Defendant Hite had the authority pursuant to Civil Service Law §§ 160(1), 161-1, and 167(8) to adopt said Resolution.

## LOCAL RULE 56.1 STATEMENT OF ADDITIONAL FACTS

Plaintiffs hereby assert the following additional undisputed material facts that require the denial of Defendants' Motion for Summary Judgment.

100. Each collective bargaining agreement between the State and RRSU since the 1984-1985 agreement contains the following language in Article 9, in relevant part:

> §9.2(m)(1) Eligibility
> Effective January 1, 1992, an employee who is eligible to continue health insurance coverage upon retirement and who is entitled to sick leave credit to be used to defray any employee contribution toward the cost of the premium, may elect an alternative method of applying the basic monthly value of the sick leave credit. . . .
>
> Employees selecting the basic sick leave credit may elect up to 100 percent of the calculated basic monthly value of the credit toward defraying the required contribution to the monthly premium *during their own lifetime.* . . . (Emphasis in the original).
>
> Employees selecting the alternative method may elect to apply only up to 70 percent of the calculated basic monthly value of their credit toward the monthly premium *during their own lifetime.* . . . (Emphasis in the original)
>
> The State has the right to make *prospective* changes to the percentage of credit to be available under this alternative method for future retirees as required to maintain the cost neutrality of this feature of the plan. The selection of the method of sick leave credit application must be made at the time of retirement, and it is irrevocable. (Emphasis in the original)
>
> §9.4 Empire Plan Premium
> The State agrees to pay 90 percent of the costs of individual coverage and 75 percent of the cost of dependent coverage toward hospital/medical/mental health and substance abuse/prescription drug components provided under the Empire Plan.

Gray-Nelson Affirm Exhibit A at 16-19.

101. From 1982 to 2011 there have been eight (8) consecutive contracts between DC 37 and the State on behalf of the Court Unit.

102. The Court Unit agreements provide that:

> §8.1 Health Insurance
> The State shall continue to provide health and prescription drug benefits administered by the Department of Civil Service, Employees enrolled in such plan s receive health and prescription drug benefits to the same extent, at the same contribution level and in the same form with the same co-payment structure that applies to the majority of represented Executive Branch employees covered by such plans.

Gray-Nelson Affirm Exhibit B at 19.

103. Michael Volforte, the Acting General Counsel of the Governor's Office of Employee Relations stated during his deposition that stated during his deposition that since at least January 1, 2004, the State sought to negotiate for employees retiring after January 1, 2004 . . . a sliding scale of percentage contributions for health insurance premiums based on the length of an employee's retirement date. Gray-Nelson Affirm Exhibit C at 19:10-16; 20:14-20; 21:1-6.

104. Mr. Volforte further stated that if the negotiations had been successful, the State would have sought to implement the sliding scale of percentage contributions in perpetuity. Gray-Nelson Affirm Exhibit C at 22:18-24; 23:3-7-14.

105. In response to the question as to whether benefits negotiated for employees in retirement could be unilaterally changed, Mr. Volforte responded that they could not. Gray-Nelson Affirm Exhibit C at 42:20-24.

106. It was also stated by Mr. Volforte that terms and conditions of employment can be established by a longstanding practice of the state, yet would not be dependent on upon language

contained in a collective bargaining agreement. Gray-Nelson Affirm Exhibit C at 43:18-24; 44:1-2.

107. In 2007, the State's negotiation proposal to United University Professions ("UUP") was a variation of the sliding scale sought to be implemented by the State in which the State's share of contributions would vary depending on a retiree's years of service starting with ten years and up to thirty years. Gray-Nelson Affirm Exhibit C at 74:11-24; 75:1-24; 76:1-14.

108. Mr. Volforte indicated that the proposals to modify the retirees' health insurance rates originated with the State since the unions did not like the idea of raising the cost of premium contributions by retirees. Gray-Nelson Affirm at 90: 12-24. Furthermore, the unions were not receptive to legislative attempts at having this type of proposal put into law. See id. at 91:1-9.

109. In addition to seeking to modify the State's contribution for retirees' health insurance premiums via negotiations, the State had also attempted to pass legislation that would have provided a sliding scale for those retirees with less than thirty years of service upon retirement. Gray-Nelson Affirm Exhibit C at 83:18-24; 84:1-6.

110. The 2011 contract negotiated with the public sector unions included three years of zero percent raises across the board to all public employee unions. Gray-Nelson Affirm Exhibit C at 60: 16-24; 61:1-4. In addition to three years of zero percentage salary increases, the State also sought to modify health insurance contribution rates with all the public employee unions. See id. at 61:10-13.

111. Yet, as the State was moving to implement the modified health insurance contribution rates, there were no discussions about any fiscal emergency. Gray-Nelson Affirm Exhibit C at 67:17-24; 68:1-4.

112. From 2009 through 2011, despite its own dire fiscal predictions, the State was able to pay its bills. Gray-Nelson Affirm Exhibit D, Deposition of Robert Megna at 79:5-24.

113. By the State's own admission, the savings that would come from raising the retirees' premium health insurance contribution would be more significant when applied to prospective retirees. Gray-Nelson Affirm Exhibit D at 80:8-20.

114. On the same day Defendant Hite was designated as one of Commissioner Nancy Groenwegen's deputies in the Civil Service Department, she executed Pubic Officer Oath/Affirmation affirming her duty to serve as the Director of the Division of Classification and Compensation designation. Gray-Nelson Affirm Exhibit E at 20:2-24; Lynch Decl. Exhibit 20.

115. Defendant Hite was never asked by the Governor to assume the duties and responsibilities of acting commissioner of the Civil Service Commission. Gray-Nelson Affirm Exhibit E at 21:12-15.

116. Defendant Hite was never asked by Governor Cuomo or any other governor to assume the duties and responsibilities of president of the Civil Service Department. Gray-Nelson Affirm Exhibit E at 21:16-19.

117. Defendant. Hite never signed an oath of office as acting commissioner of the Civil Service Department. Gray-Nelson Affirm Exhibit E at 22:10-15.

118. Defendant Hite never served as a member of the Civil Service Commission. Gray-Nelson Affirm Exhibit E at 22:6-9.

119. A person is appointed commissioner of the Department of Civil Service by the governor with the advice and consent of the senate. Gray-Nelson Decl. Exhibit E at 30:20-24. The governor then may designate any of the three members of the Civil Service Commission as

president of the Civil Service Commission and head of the Department of Civil Service. Gray-Nelson Affirm Exhibit E at 30:22-24; 31:1-2.

120.   During the time that Defendant Hite was serving as Acting Commissioner of the Department of Civil Service, the Office of the President of the Civil Service Commission was vacant. Gray-Nelson Affirm Exhibit E at 42:1-4.

121.   During her time as Acting Commissioner, Defendant Hite attended meetings of the Civil Service Commission and observed its proceedings but did not participate in the deliberation of issue or vote on any issue at those meetings. Gray-Nelson Affirm Exhibit E at 42: 5-20; 44:18-21.

122.   Early in 2011, Defendant Hite asked Mr. Glaser, Mr. Megan and Mr. Worden if she had the authority as Acting Commissioner to carry out the State's desired actions to increase the retirees' health insurance premium contribution. Gray-Nelson Affirm Exhibit E at 26:18-24; 27:1-5.

123.   Defendant Hite testified that the decision to extend the increased premium health insurance contribution to retirees was made in the first quarter of 2011. Gray-Nelson Affirm Exhibit E at 66:4-13

124.   It was communicated by Mr. Glaser to Defendant Hite that the decision had already been made by the Governor's office. Gray-Nelson Affirm Exhibit E at 67:12-24; 119:15-19

125.   Defendant Hite believed that the language in 161(a)(1) allowed the extension of the State's contribution rates to unrepresented employees and retirees. Gray-Nelson Affirm Exhibit E at 111:1-6.

126.     However, Defendant Hite admitted that § 161 did not specifically state retirees. Gray-Nelson Affirm Exhibit E at 111:14-23.

127.     The State and its collective bargaining counterparts understood that bargaining unit members would continue to pay the contribution rate that they had paid under the contract in effect at the time of their retirement. Declaration of Dennis Sullivan at ¶ 11.

128.     During the parties' long bargaining history there was never any discussion or indication that RRSU and Court Unit members who had already retired would be subject to increases to their contribution rate while in retirement. Sullivan Decl. at ¶ 10. The understanding was clear between the bargaining parties that retired employees' contribution rate(s) for their health insurance premiums would remain the same for the duration of their own lifetime.

129.     This was no different from the application of sick leave credits for retirees' for their own lifetime as stated in the RRSU agreements. Gray-Nelson Affirm Exhibit A at 18.

Dated: New York, New York
       December 20, 2017

<div style="margin-left: 40%;">
ROBIN ROACH<br>
General Counsel<br>
District Council 37, AFSCME, AFL-CIO<br>
Attorney for Roberts Plaintiffs<br>
125 Barclay Street, Room 510<br>
New York, New York 10007<br>
Tel.: (212) 815-1450<br>
<br>
By: <i>Erica Gray-Nelson</i><br>
Erica C. Gray-Nelson<br>
Senior Assistant General Counsel<br>
Bar Roll No. 516294<br>
egray-nelson@dc37.net
</div>

TO:    ERIC T. SCHNEIDERMAN
        Attorney General of the State of New York
        Attorney for Defendants
        Helena Lynch, AAG, Of Counsel
        Helena.lynch@ag.ny.gov
        The Capitol
        Albany, New York 12224
        Tel.: (518) 776-2580

        Richard Lombardo
        Special Litigation Counsel
        richard.lombardo@ag.ny.gov
        Tel.: (518) 776-2624
        (Via ECF)