UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LILLIAN ROBERTS as Executive Director of District
Council 37, AFSCME, AFL-CIO, DISTRICT COUNCIL 37,
AFSCME, AFL-CIO, DENNIS IFILL, as President of the
Rent Regulation Services Unit Employees, Local 1359,
District Council 37, AFSCME, AFL-CIO, THE RENT
REGULATION SERVICES UNIT EMPLOYEES, LOCAL
1359, CLIFFORD KOPPELMAN, as President of the Court,
County and Department of Probation Employees Unit,
Local 1070, THE COURT, COUNTY, AND DEPARTMENT
OF PROBATION EMPLOYEES UNIT, LOCAL 1070 and
MILDRED BROWN, SHANOMAE WILTSHIRE, NORMA
GALLOWAY, CHARMAINE HARDAWAY, MAURICE
BOUYEA, STEVEN SCHWARTZ, on behalf of themselves
and all others similarly situated,

                              **Plaintiffs,**

    vs.                                             1:12-CV-0046
                                                      (MAD/CFH)

ANDREW M. CUOMO, as Governor of the State of New York;
PATRICIA A. HITE, as Acting Commissioner, New York State
Civil Service Department; CAROLINE W. AHL and J. DENNIS
HANRAHAN, as Commissioners of the New York State Civil
Service Commission; ROBERT L. MEGNA, as Director of the
New York State Division of the Budget; and THOMAS P.
DiNAPOLI, as Comptroller of the State of New York,

                              **Defendants.**
_____

**APPEARANCES:**                                    **OF COUNSEL:**

**DISTRICT COUNCIL 37**                 **ERICA C. GRAY-NELSON, ESQ.**
125 Barclay Street                           **XIMENA CASTRO, ESQ.**
New York, New York 10007
Attorneys for Plaintiffs

**OFFICE OF THE NEW YORK**          **HELENA LYNCH, AAG**
**STATE ATTORNEY GENERAL**         **RICHARD LOMBARDO, AAG**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION[1]

In a complaint dated January 10, 2012, Plaintiffs allege that Defendants unilaterally increased the percentage of contributions that Plaintiffs, active and retired employees, are required to pay for health insurance benefits in retirement and, thereby, violated the Contracts and Due Process Clauses of the United States Constitution, impaired Plaintiffs' contractual rights under the terms of their Collective Bargaining Agreement, and violated state law. *See* Dkt. No. 1.

Currently before the Court is Defendants' motion for summary judgment.

## II. BACKGROUND

### A. The Parties

Plaintiff Lillian Roberts was at the relevant times the Executive Director and Chief Executive Officer of Plaintiff District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO ("DC 37"). *See* Dkt. No. 87 at ¶ 1. Plaintiff DC 37 is a

---

[1] The instant case is one of eleven related cases currently before this Court, all brought against, for the most part, the same individual Defendants and are all related to the increase in contribution rates for retirees' health insurance. *See Donohue v. Cuomo*, No. 1:11-cv-1530 (N.D.N.Y.); *NYSCOBA, Inc. v. New York*, No. 1:11-cv-1523 (N.D.N.Y.); *N.Y.S. Law Enforcement Officers Union Council 82, AFSCME, AFL-CIO v. New York*, No. 1:11-cv-1525 (N.D.N.Y.); *Police Benevolent Assoc. of the N.Y.S. Troopers, Inc. v. New York*, No. 1:11-cv-1526 (N.D.N.Y.); *N.Y.S. Police Investigators Assoc., Local 4 IUPA, AFL-CIO v. New York*, No. 1:11-cv-1527 (N.D.N.Y.); *Police Benevolent Assoc. of N.Y.S., Inc. v. New York*, No. 1:11-cv-1528 (N.D.N.Y.); *Krey v. Cuomo*, No. 1:11-cv-1529 (N.D.N.Y.); *Spence v. New York*, No. 1:11-cv-1533 (N.D.N.Y.); *Roberts v. New York*, No. 1:12-cv-46 (N.D.N.Y.); *N.Y. Court Officers Assoc. v. Hite*, No. 1:12-cv-532 (N.D.N.Y.); *Brown v. New York*, No. 1:13-cv-645 (N.D.N.Y.). With minor variations, the related cases all assert the same causes of action and raise the same arguments in the pending motions for summary judgment. The Court has determined that *Donohue v. Cuomo*, No. 1:11-cv-1530 (N.D.N.Y.) shall serve as the "Lead Case." Familiarity with the Lead Case is presumed. The Court adopts and incorporates by reference the related Memorandum-Decision and Order in the Lead Case into this Memorandum-Decision and Order and will only address those facts and legal issues that are distinct from the Lead Case.

not-for-profit corporation and is an employee organization that is the collective bargaining representative for the Rent Regulation Services Unit ("RRSU") and Court Unit employees (the "Court Unit"), who receive benefits through the New York State Health Insurance Program ("NYSHIP"). *See id.* at ¶ 2. Plaintiff Dennis Ifill was, at the time the complaint was filed, the President of Local 1359 and an active New York State employee. *See id.* at ¶ 3. Plaintiff Clifford Koppelman was, at the time of the filing of the complaint, the President of Local 1070, the Court, County and Department of Probation Employees Unit. *See id.* at ¶ 4. Plaintiffs Mildred Brown and Maurice Bouyea were, at the time the complaint was filed, retired former New York State Employees and members of the RRSU unit receiving dependent health insurance benefits through NYSHIP. *See id.* at ¶ 5. Plaintiffs Shanomae Wiltshire, Norma Galloway, and Charmaine Hardaway were, at the time the complaint was filed, retired former New York State employees and members of the RRSU unit receiving individual health insurance benefits through NYSHIP. *See id.* at ¶ 6. Plaintiff Steven Schwartz was, at the time the complaint was filed, a retired former New York State employee and member of the Court Unit receiving individual health insurance benefits through NYSHIP. *See id.* at ¶ 7.

Defendant Andrew M. Cuomo is the Governor of the State of New York. *See id.* at ¶ 9. Defendant Patricia A. Hite was, in 2011, Acting Commissioner of the New York State Department of Civil Service. *See id.* at ¶ 10.[2] Defendants Caroline W. Ahl and J. Dennis Hanrahan were, in 2011, the members of the Civil Service Commission. *See id.* at ¶ 11. Defendant Robert Megna was, in 2011, the Director of the New York State Division of the

---

[2] The Court notes that Plaintiffs object to the assertion that Defendant Hite was Acting Commissioner of the New York State Department of Civil Service. *See* Dkt. No. 87 at ¶ 10. The same objection was raised and addressed by the Court in the Lead Case and will not be repeated in the present matter.

3

Budget. *See id.* at ¶ 12. Defendant Thomas P. DiNapoli is the Comptroller of the State of New York. *See id.* at ¶ 13.

**B.     Collective Bargaining Agreement in Effect in 2011 Between New York and RRSU**

During 2011, the State of New York and the RRSU were parties to a collective bargaining agreement ("CBA") for the period April 2, 2007, through April 1, 2011 (the "2007-11 RRSU CBA"). *See* Dkt. No. 83-2 at ¶ 14. Section 9.1 of the 2007 -11 RRSU CBA provided that "[t]he State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on April 1, 2007 with the State's health insurance carriers unless specifically modified or replaced pursuant to this Agreement." *Id.* at ¶ 15. Section 9.4 of the 2007-11 RRSU CBA provided: "The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage toward the hospital/medical/mental health and substance abuse/prescription drug components provided under the Empire Plan." *Id.* at ¶ 18. Additionally, Section 9.2(i) of the 2007-11 RRSU CBA provided that "[t]he unremarried spouse or domestic partner who has not acquired another domestic partner and otherwise eligible dependent children of an employee, who retires after April 1, 1979, with ten (10), or more years of active State service and subsequently dies, shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage." *Id.* at ¶ 19.

**C.     CBAs in Effect 1982-2011 Between New York and RRSU**

From 1982 to 2011, the various collective bargaining agreements between the State and RRSU contained substantially the same provisions as discussed above. *See* Dkt. No.83-2 at ¶¶ 20-36.

**D.     CBAs Between the State and the Court Unit**

During 2011, the State of New York and the Court Unit were parties to a collective bargaining agreement ("CBA") for the period April 1, 2007, through March 31, 2011 (the "2007-11 Court Unit CBA"). *See* Dkt. No. 83-2 at ¶ 37. Section 8.1 of the 2007-11 Court Unit CBA provided: "The State shall continue to provide health and prescription drug benefits administered by the Department of Civil Service. Employees enrolled in such plans shall receive health and prescription drug benefits to the same extent, at the same contribution level and in the same form and with the same co-payment structure that applies to the majority of represented Executive Branch employees covered by such plans." *Id.* at ¶ 38. All of the Court Unit CBAs from 1982 through 2011 contained this language. *See id.* at ¶ 39.

**E.    CBAs Between the State and CSEA and the State and PEF in 2011**

On June 22, 2011, the Governor issued a press release announcing that the State had reached a five-year labor agreement with the Civil Service Employees Association ("CSEA"). *See* Dkt. No. 83-2 at ¶ 40. The press release announced a two percent increase in the premium contribution rate for Grade 9 employees and below, and a six percent increase for Grade 10 and above. *See id.*

The 2011-16 CBA between CSEA and the State was signed on August 15, 2011, and covered the periods between April 2, 2011 and April 1, 2016. *See id.* at ¶ 41. Section 9.14 of the 2011-16 CSEA CBA provides as follows:

> The State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage toward the hospital/medical/mental health and substance abuse components provided under the Empire Plan. Effective October 1, 2011 for employees in a title Salary Grade 9 or below, the State agrees to pay 88 percent of the cost of individual coverage and 73 percent of the cost of dependent coverage toward the hospital/medical/mental health and substance abuse components provided under the Empire Plan. Effective October 1, 2011 for employees in a title Salary Grade 10 and above or an employee equated to a position title

5

> Salary Grade 10 and above the State agrees to pay 84 percent of the
> cost of individual coverage and 69 percent of the cost of dependent
> coverage toward the hospital/medical/mental health and substance
> abuse components provided under the Empire Plan.

*Id.*

Article 50 of the 2011-16 CSEA CBA, entitled "Conclusion of Collective Negotiations," provided:

> This Agreement is the entire agreement between the State and
> CSEA, terminates all prior agreements and understandings and
> concludes all collective negotiations during its term. During the
> term of this Agreement, neither party will unilaterally seek to
> modify its terms through legislation or other means. The parties
> agree to support jointly any legislation or administrative action
> necessary to implement the provisions of this Agreement. The
> parties acknowledge that, except as otherwise expressly provided
> herein, they have fully negotiated with respect to the terms and
> conditions of employment and have settled them for the term of this
> Agreement in accordance with the provisions thereof.

*Id.* at ¶ 42.

On November 3, 2011, PEF announced that its members ratified a four-year agreement with the State. *See id.* at ¶ 43. The term of that agreement was April 2, 2011 through April 1, 2015. *See id.*

Section 9.2(h) of the 2011-15 PEF CBA states as follows:

> The State agrees to pay 90 percent of the cost of the individual
> coverage and 75 percent of the cost of dependent coverage,
> including prescription drug coverage, provided under the Empire
> Plan. Effective October 1, 2011 for employees in a title Salary
> Grade 9 or below (or an employee equated to a position title Salary
> Grade 9 or below), the State agrees to pay 88 percent of the cost of
> individual coverage and 73 percent of the cost of dependent
> coverage. Effective October 1, 2011 for employees in a title Salary
> Grade 10 and above (or an employee equated to a position title
> Salary Grade 10 and above) the State agrees to pay 84 percent of
> the cost of individual coverage and 69 percent of the cost of
> dependent coverage.

6

*Id.* at ¶ 44.

The members of the CSEA and PEF constitute the majority of represented executive branch employees. *See id.* at ¶ 45.

**F.     Legislation, Administrative Measures, and Fiscal Crisis**

The Court will not repeat all of the facts relating to the 1983 and 2011 Legislation, the fiscal crisis facing the State in 2010 and 2011, or the parties' arguments relating to Defendant Hite acting as the head of the Department of Civil Service. Rather, the Court refers the parties to the discussion set forth in the accompanying Memorandum-Decision and Order from the Lead Case.

**G.     The Complaint and Defendants' Motion for Summary Judgment**

In their first cause of action, Plaintiffs allege that the increase in the percentage of the health insurance premium contribution paid by retirees violated the Contracts Clause of Article I, § 10 of the United States Constitution. Defendants contend that the Court should dismiss this cause of action because the collective bargaining agreements do not establish a contractual right to perpetually fixed health insurance premium contribution rates. Further, Defendants argue that, even if Plaintiffs do have a vested right to a perpetually fixed premium contribution rate, they failed to demonstrate a substantial impairment of that right. Moreover, Defendants contend that they are entitled to summary judgment on this claim because the law at issue served a legitimate public purpose and the means chosen to accomplish that purpose were reasonable and necessary.

The second cause of action alleges that the increase in the percentage of the health insurance premium contribution paid by retirees breached Plaintiffs' contractual rights under the 2007-11 CBAs. Defendants contend that the Court should decline to exercise supplemental jurisdiction over this claim since there is no viable federal claim and that this claim should otherwise be dismissed because it lacks merit.

The third cause of action alleges that the retirees' premium contribution increase violated Plaintiffs' right to due process under the Fourteenth Amendment to the United States Constitution. Defendants argue that they are entitled to summary judgment because Plaintiffs do not have a constitutionally protected property right in perpetually fixed premium contribution rates. Additionally, Defendants contend that, even if Plaintiffs had a property interest, the claim still fails because they had an adequate state-court remedy of which they failed to avail themselves.

The fourth cause of action alleges that Defendants' increase in retiree health insurance contribution rates was "arbitrary and capricious, was contrary to law, including but not limited to the provisions of Civil Service Law § 167(1)(a) and the amended Civil Service Law § 167(8), and was an abuse of discretion." Defendants contend that this cause of action appears to be a claim brought pursuant to Article 78 of the New York Civil Practice Law and Rules, which was previously dismissed. *See* Dkt. No. 83-1 at 9 (citing Dkt. No. 19 at 18-21).

The fifth cause of action alleges a due process violation under Article I, § 6 of the New York State Constitution. Defendants contend that they are entitled to summary judgment as to this claim because the State constitution does not provide for such a cause of action when relief is available under 42 U.S.C. § 1983.

The sixth cause of action alleges that Defendants Hite and Megna violated Article III, § 1 of the State Constitution by attempting to serve in a legislative role. Defendants argue that the Court should decline to exercise supplemental jurisdiction over this claim which, in any event, has no merit because Defendants Hite and Megna acted in accordance with the express terms of Civil Service Law § 167(8).

### III. DISCUSSION

**A.     Standard of review**

8

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.  Plaintiffs' Claims**

The Court will not restate here all of the relevant law or reasons why Defendants' motion for summary judgment is granted as to Plaintiffs' ten named causes of action. Rather, the Court directs the parties to the discussion in the Lead Case, which addresses each of the raised arguments. *See Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102. The Court will only briefly address arguments raised by Plaintiffs that are distinct from those addressed in the Lead Case.

Initially, Plaintiffs argue that the Court should exclude the declarations of Dominic Colafati and Darryl Decker due to Defendants' failure to disclose them as witnesses. *See* Dkt. No. 87-1 at 23-29. As discussed in detail in the Lead Case, Defendants' failure to disclose these witnesses did not result in any prejudice and Plaintiffs have failed to demonstrate that the Court should grant such extraordinary relief.

As discussed in detail in the Lead Case, ordinary principles of contract interpretation require the Court to conclude that none of the CBAs at issue guaranteed a perpetually fixed premium contribution rate into retirement. *See M & G Polymers USA, LLC v. Hobert Freel Tackett*, ___U.S.___, 135 S. Ct. 926, 937 (2015) (holding that, while a CBA may explicitly provide that certain terms continue after the agreement's expiration, when a contract fails to address the duration of retiree benefits, "a court may not infer that the parties intended those benefits to vest for life"). While the CBAs at issue all provide that retirees have the right to continue receiving health insurance through the NYSHIP, they are all silent as to the premium contribution rate to be paid by retirees. *See Serafino v. City of Hamtramck*, 707 Fed. Appx. 345, 352-53 (6th Cir. 2017) ("Looking to the four corners of the agreements, there is no indication that the City intended to provide *any* healthcare benefit to retirees for life, let alone a right to deductible-free, low-co-pay, forever-unalterable healthcare insurance") (emphasis in original). This conclusion is further supported by the legislation passed in 1983 providing that the State would continue to pay the full premium for pre-January 1, 1983 retirees. If retirees had a contractually vested perpetual right to the same contribution rates in effect at the time of their retirement, there would have been no need for an affirmative legislative carve-out specifically applicable to them. Finally, as set forth in the Lead Case, the undisputed facts establish that, even if Plaintiffs had a vested right to a perpetual fixed contribution rate, the small increase to the

10

contribution rate was not a substantial impairment and the increase was reasonable and necessary in furtherance of an important government interest. *See Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102 at 26-32.

Plaintiffs' breach of contract cause of action must also be dismissed. Plaintiffs point to no contractual provision that was breached. The provisions regarding health insurance premiums do not extend beyond the life of the CBA and do not create a vested right to perpetually fixed premium contributions. *See Gallo*, 813 F.3d at 268.

As to Plaintiffs' due process claims, the undisputed facts demonstrate that neither the CBAs nor Civil Service Law § 167 created a property interest in fixed premium contribution rates in retirement. *See Costello v. Town of Fairfield*, 811 F.2d 782, 784 (2d Cir. 1987); *Pineman v. Fallon*, 662 F. Supp. 1311, 1318 (D. Conn. 1987) ("[G]enerally courts have sought to avoid interpreting statutory benefit programs as waiving the exercise of sovereign power to amend the statute in the future"). Nothing prevented New York from amending Section 167(8) and extending the premium shifts negotiated in 2011 to unrepresented employees and retirees. Further, Plaintiffs failed to address Defendants' argument that the due process cause of action is subject to dismissal because of the availability of a post-deprivation Article 78 proceeding. *See Campo v. N.Y.C. Emps. Ret. Sys.*, 843 F.2d 96, 102 (2d Cir. 1988); *Minima v. N.Y.C. Emps. Ret. Sys.*, No. 11-cv-2191, 2012 WL 4049822, \*6 (E.D.N.Y. Aug. 17, 2012). Finally, contrary to Plaintiffs' argument, retiree premium contributions are not a form of deferred compensation. *See M&G Polymers USA LLC*, 135 S. Ct. at 936 ("Retiree benefits are not a form of deferred compensation").

Even assuming that Plaintiffs' *ultra vires* causes of action were not previously dismissed by the Court and are not claims brought pursuant to Article 78 over which the Court would not

11

have subject matter jurisdiction, the claims are still subject to dismissal. As set forth more fully in the Lead Case and *Spence v. Cuomo*, No. 1:11-cv-1533, Dkt. No. 109 at 23-24 (N.D.N.Y.), Defendants Hite and Megna acted in accordance within their authority as provided by Civil Service Law § 167(8).

Finally, as to Plaintiffs' claim that Defendants Hite and Megna violated Article III, § 1 of the New York State Constitution, their arguments are without merit. As discussed in the Lead Case, Defendants Hite and Megna were authorized, pursuant to Civil Service Law § 167(8), to apply the premium shift to retirees, "[n]otwithstanding any inconsistent provision of law." *Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102 at 41-45. Defendants Hite and Megna acted consistent with this authority, granted them by the Legislature, "to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation." *Med. Soc'y v. Serio*, 100 N.Y.2d 854, 865 (2003).

Based on the foregoing, the Court grants Defendants' motion for summary judgment.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** Defendants' motion for summary judgment (Dkt. No. 83) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall attach a copy of the decision in the Lead Case (*Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102) to this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance in the Local Rules.

**IT IS SO ORDERED.**

Dated: September 24, 2018
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge